**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Counsel for Proposed Lead Plaintiff
DeKalb County Employees Retirement
System and New Orleans Employees'
Retirement System and Proposed Lead
Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| HOUSTON MUNICIPAL EMPLOYEES PENSION SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC. AND JOSEPH J. EUTENEUER, <br><br> Defendants. | Case No. 2:19-cv-10860-AB-PLA <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEKALB COUNTY EMPLOYEES RETIREMENT SYSTEM AND NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS** <br><br> Date: March 27, 2020 <br> Time: 10:00 a.m. <br> Dept.: Courtroom 7B <br> Judge: André Birotte Jr. |

*Caption continued on next page.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
CASE NO. 2:19-cv-10860-AB-PLA

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., MARGARET H. GEORGIADIS, YNON KREIZ, JOSEPH J. EUTENEUER, and PRICEWATERHOUSECOOPERS LLP, <br><br> Defendants. | Case No. 2:20-cv-01056-AB-PLA <br><br> <u>CLASS ACTION</u> |

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   STATEMENT OF FACTS...............................................................................4

III.  ARGUMENT ...................................................................................................6

      A.    DeKalb and New Orleans Should Be Appointed Lead Plaintiff...............................................................................6

            1.    DeKalb and New Orleans' Motion Is Timely ...................................................................................6

            2.    DeKalb and New Orleans Have The Largest Financial Interest In The Relief Sought By The Class..............................6

            3.    DeKalb and New Orleans Otherwise Satisfy The Requirements Of Rule 23 ......................................7

            4.    DeKalb and New Orleans Are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA ......................................8

      B.    The Court Should Approve DeKalb and New Orleans' Selection of Counsel ...................................................10

      C.    The Actions Should Be Consolidated ..................................................12

IV.  CONCLUSION..............................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*In re Adams Apple, Inc.*,
829 F.2d 1484 (9th Cir. 1987) .......................................................................12

*Backe v. Novatel Wireless, Inc.*,
2008 WL 5214262 (S.D. Cal. Dec. 10, 2008) ..................................................9

*Basile v. Valeant Pharm., Int'l, Inc.*,
2015 WL 13652714 (C.D. Cal. May 5, 2015).....................................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................6

*Cohen v. United States Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ..........................................................................11

*Hardy v. MabVax Therapeutics Holdings*,
2018 WL 4252345 (S.D. Cal. Sept. 6, 2018).....................................................1

*Lloyd v. CVB Fin. Corp.*,
2011 WL 13128303 (C.D. Cal. Jan. 21, 2011)..............................................8, 13

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
2014 WL 2604991 (N.D. Cal. June 10, 2014)....................................................1

*Roberti v. OSI Sys., Inc.*,
2014 WL 12845727 (C.D. Cal. Mar. 17, 2014)..................................................7

*Schwartz v. Opus Bank*,
2017 WL 5468820 (C.D. Cal. Feb. 23, 2017) .................................................7, 8

*Waterford Twp. Police v. Mattel, Inc.*,
2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ...............................................12

**STATUTES**

Securities Exchange Act of 1934, 15 U.S.C. § 78u-4......................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .....................................................................................2, 6, 7, 8

Fed. R. Civ. P. 42(a)..................................................................................................1, 12, 13

H.R. Conf. Rep. No. 104-369 (1995),
*reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ........................................................9

S. Rep. No. 104-98 (1995),
*reprinted in* 1995 U.S.C.C.A.N. 679 (1995) ........................................................9

Proposed Lead Plaintiff DeKalb County Employees Retirement System ("DeKalb") and New Orleans Employees' Retirement System ("New Orleans") respectfully submit this memorandum of points and authorities in support of their motion for (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") to serve as Lead Counsel for the Class; (3) consolidation of the above-captioned securities class actions (the "Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) any such further relief as the Court may deem just and proper.

## I.     PRELIMINARY STATEMENT

The action is brought on behalf of purchasers of Mattel common stock between August 2, 2017 and August 8, 2019, inclusive (the "Class Period")[1] and alleges that Mattel, Inc. ("Mattel" or the "Company"), certain of its senior executives, and Mattel's auditor PricewaterhouseCoopers LLP ("PwC") violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).   Specifically, the Actions allege that Mattel engaged in a

---

[1] The complaints filed against Mattel assert different class periods.  The complaint in *Houston Municipal Employees Pension System v. Mattel, Inc.*, No. 2:19-cv-10860-AB-PLA (C.D. Cal.) ("*Houston*"), asserts a class period of October 26, 2017 through August 8, 2019, while the complaint New Orleans filed in *New Orleans Employees' Retirement System v. Mattel, Inc.*, No. 2:20-cv-01056-AB-PLA (C.D. Cal.) ("*New Orleans*"), asserts a class period of August 2, 2017 through August 8, 2019.  For purposes of appointing a Lead Plaintiff, courts generally apply the longest class period.  *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014); *Hardy v. MabVax Therapeutics Holdings*, 2018 WL 4252345, at *4 (S.D. Cal. Sept. 6, 2018).  As such, the class period alleged in the *New Orleans* action is relied upon for this Motion.

---

deliberate accounting fraud by improperly understating its income tax expense and then working with its auditor, PwC, to conceal this misstatement and avoid restating the Company's financial results. Mattel investors, including DeKalb and New Orleans, incurred significant losses when, on August 8, 2019, the Company disclosed that it had received a whistleblower letter that spurred an internal investigation and forced Mattel to abruptly cancel a $250 million debt offering scheduled to close that day. Mattel later admitted that its Class Period financial statements were materially false and misleading, revealing that it would restate its financial results and that it had a material weakness in its internal controls over financial reporting.

The PSLRA provides that the "most adequate plaintiff" is to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, the most adequate plaintiff is the movant with the "largest financial interest" in the relief sought by the Class in this litigation and that also makes a *prima facie* showing that it is a typical and adequate class representative under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, DeKalb and New Orleans are the "most adequate plaintiff" by virtue of, among other things, the over $2.5 million in losses that they incurred on their purchases of 823,953 shares of Mattel common stock during the Class Period.[2]

In addition to asserting the largest financial interest, DeKalb and New Orleans readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class and they will fairly and adequately represent the interests of the Class. Indeed, DeKalb and New Orleans are the paradigmatic

---

[2] DeKalb and New Orleans' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Jonathan D. Uslaner, filed concurrently herewith ("Uslaner Decl."). In addition, charts providing calculations of DeKalb and New Orleans' losses are provided as Exhibit B to the Uslaner Decl. All emphasis is added and internal citations omitted unless otherwise noted.

Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with nearly $2 billion in combined assets under management and possess a real financial interest in the litigation. Further, as two institutional investors that have previously served as Lead Plaintiff in other securities class actions prosecuted under the PSLRA—including in actions that have collectively recovered hundreds of millions of dollars for investors—DeKalb and New Orleans fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake those responsibilities to guarantee vigorous prosecution of this action.

DeKalb and New Orleans have already demonstrated their commitment and ability to effectively prosecute this action, including through the filing of the complaint by New Orleans which expanded upon the allegations in the first-filed complaint and asserted additional claims against Mattel's auditor, PwC. Moreover, as set forth in greater detail in the Joint Declaration of Edmund J. Wall and Jesse Evans, Jr., submitted herewith (the "Joint Declaration"), DeKalb and New Orleans have worked closely together, have discussed how they will jointly prosecute this action and oversee their chosen counsel, and otherwise ensure the vigorous yet cost-effective prosecution of this litigation. *See generally* Uslaner Decl., Ex. C.

DeKalb and New Orleans' adequacy is also demonstrated by their selection of Bernstein Litowitz to serve as Lead Counsel for the Class. DeKalb and New Orleans selected Bernstein Litowitz based on their prior experience working with the firm and the firm's established track record of achieving substantial recoveries for the benefit of investors. Bernstein Litowitz is eminently qualified to prosecute this case and has extensive experience in securities fraud litigation, which will benefit the Class.

Based on DeKalb and New Orleans' financial interest in the outcome of this action, and their ability to oversee counsel, DeKalb and New Orleans respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their Motion.

## II.   STATEMENT OF FACTS

Mattel is a global toy-manufacturing conglomerate based in El Segundo, California.  ¶18.[3]   Founded in 1945, Mattel is one of the world's largest toy companies and possesses a portfolio of toy brands and intellectual property including Barbie, Hot Wheels, and, through its 2011 acquisition of HIT Entertainment, Thomas & Friends.  *Id.*  Throughout the Class Period, the Company misrepresented its financial condition and the effectiveness of Mattel's internal controls, including through false certifications that Mattel's senior executives filed with the SEC during each quarter during the Class Period.  ¶¶22-49.  As a result of the Company's misrepresentations and omissions, Mattel securities traded at artificially inflated prices throughout the Class Period.  *See id.*

In truth, Mattel understated its income tax expense by $109 million in the third quarter of 2017 and then worked with its auditor, PwC, to manipulate the Company's accounting to conceal this misstatement and avoid restating the Company's financial results.  ¶¶52-58.  As was ultimately revealed after the end of the Class Period, according to an internal Company whistleblower, Mattel's senior accounting executives internally determined to conceal the errors in the Company's financial statements because, by taking this approach, "at worst we might get a slap on the wrist from the Securities and Exchange Commission," but disclosing the truth and revealing a material weakness in internal controls would have been a "kiss of death." ¶57.

The truth began to emerge on August 8, 2019, when, after the close of trading, Mattel disclosed that the Company's Audit Committee had received a whistleblower letter and that, as a result, it was abruptly cancelling a $250 million debt offering

---

[3] Citations to "¶__" refer to the Complaint for Violations of the Federal Securities Laws filed by New Orleans in the *New Orleans* action, Dkt. No. 1 (filed January 31, 2020).

scheduled to close that day. ¶50. As a result of these disclosures, the Company's stock price declined by $2.12 per share, or over 15%, to close at $11.31 per share on August 9, 2019. ¶51.

Then, on October 29, 2019, Mattel admitted that, following an investigation by the Company's Audit Committee, it would be restating its financial reports for the third quarter 2017 and year-end 2017, revise its financial reports for its previously issued 2016, 2017, and 2018 annual financial statements, and that the Company's internal control over financial reporting was not effective. ¶¶52-54. According to the results of the internal investigation, Mattel determined that "lapses in judgment by management contributed to these failures" and announced the resignation of Defendant CFO Euteneuer. ¶55. Mattel also reported that its accounting errors were made based on "management's reliance on the accounting advice sought and received on the error from the lead audit engagement partner of Mattel's outside auditor," PwC. ¶56.

Following these revelations, at least two securities class actions were filed against Mattel. The first, filed on December 24, 2019, alleges a class period of October 26, 2017 through August 8, 2019. That same day, counsel for the plaintiff in the first-filed action published a notice informing investors of the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is February 24, 2020. Uslaner Decl., Ex. D. Then, on January 31, 2020, New Orleans filed a complaint asserting an expanded class period running from August 2, 2017 through August 8, 2019, and asserting additional claims against Mattel's auditor, PwC. That same date, New Orleans' counsel, Bernstein Litowitz, published a notice alerting investors to the expanded class period alleged and additional named defendants in the *New Orleans* action, and reminded investors of the February 24, 2020 deadline to seek Lead Plaintiff appointment. Uslaner Decl., Ex. E.

## III.    ARGUMENT

## A.    DeKalb and New Orleans Should Be Appointed Lead Plaintiff

DeKalb and New Orleans respectfully submit that they are entitled to appointment as Lead Plaintiff because they are the "persons or group of persons" that are "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws and provides a presumption in favor of the movant that has the "largest financial interest" in the relief sought by the Class and satisfies the relevant requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria.").  As set forth below, DeKalb and New Orleans believe they are the "most adequate plaintiff" and are entitled to be appointed as Lead Plaintiff.

### 1.    DeKalb and New Orleans' Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  On December 24, 2019, the first of the Actions was filed in this District.  That same day, counsel for the plaintiff in the first-filed action published a notice on *Globe Newswire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is February 24, 2020.  *See* Uslaner Decl., Ex. D.  Accordingly, DeKalb and New Orleans have timely moved for appointment as Lead Plaintiff through the filing of this Motion.

### 2.    DeKalb and New Orleans Have The Largest Financial Interest In The Relief Sought By The Class

DeKalb and New Orleans are entitled to be appointed Lead Plaintiff because they have the largest financial interest in the relief sought by the Class.  *See* 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As demonstrated herein, DeKalb and New Orleans suffered losses of approximately $2.5 million on their Class Period purchases of 823,953 shares of Mattel common stock.  *See* Uslaner Decl., Exs. A-B.  To the best of DeKalb and New Orleans' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, DeKalb and New Orleans have the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. DeKalb and New Orleans Otherwise Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the litigation, DeKalb and New Orleans otherwise satisfy the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as lead plaintiff, a movant need only make a "preliminary showing" under Rule 23 that the proposed lead plaintiff's claims are typical and adequate.  *Roberti v. OSI Sys., Inc.*, 2014 WL 12845727, at *3 (C.D. Cal. Mar. 17, 2014).  DeKalb and New Orleans satisfy the typicality and adequacy requirements.

DeKalb and New Orleans' claims are typical of the claims of other purchasers of Mattel common stock.  "Claims are typical under Rule 23 if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Schwartz v. Opus Bank*, 2017 WL 5468820, at *2 (C.D. Cal. Feb. 23, 2017) (Birotte, J.).  Here, DeKalb and New Orleans' claims and the claims of all other Class members arise from the same course of conduct and their legal arguments to prove Defendants' liability are identical.  Indeed, like all other Class members, DeKalb and New Orleans (1) purchased Mattel common stock during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were harmed when the truth was revealed.  As such, DeKalb and New Orleans are typical Class representatives.

DeKalb and New Orleans similarly satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Opus Bank*, 2017 WL 5468820, at *2. DeKalb and New Orleans satisfy these elements because their substantial financial stake in the litigation provides the incentive to vigorously represent the Class's claims. DeKalb and New Orleans' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between DeKalb and New Orleans and other Class members.

Finally, DeKalb and New Orleans have demonstrated their adequacy through their selection of Bernstein Litowitz as Lead Counsel to represent the Class in this action. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively. Thus, DeKalb and New Orleans satisfy the requirements of Rule 23.

### 4. DeKalb and New Orleans Are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, DeKalb and New Orleans are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *Lloyd v. CVB Fin. Corp.*, 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (noting that the PSLRA "establishes a preference that sophisticated institutional investors direct the course of securities cases"); S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood

that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

As set forth in their Joint Declaration, DeKalb and New Orleans are sophisticated institutional investors that have combined assets under management of nearly $2 billion. Uslaner Decl., Ex. C ¶¶2, 4. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action. *Id.* ¶¶3, 5, 9-16; *see also Basile v. Valeant Pharm., Int'l, Inc.*, 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015) (appointing group of two institutional investors as lead plaintiff); *Backe v. Novatel Wireless, Inc.*, 2008 WL 5214262, at *5 (S.D. Cal. Dec. 10, 2008) (same). Moreover, DeKalb and New Orleans' understanding of the duties of the Lead Plaintiff under the PSLRA is informed by their experience successfully prosecuting similar securities class actions on behalf of investor classes. For example, DeKalb recovered $173 million for investors when it served as lead plaintiff, along with two other institutional investors, in *In re Maxim Integrated Products, Inc. Securities Litigation*, No. 08-cv-832 (N.D. Cal), with Bernstein Litowitz as lead counsel, and New Orleans recovered $125 million for investors when it served as lead plaintiff, along with three other institutional investors, in *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.), with Bernstein Litowitz as lead counsel. Uslaner Decl., Ex. C ¶¶3, 5.

As described further in the Joint Declaration, DeKalb and New Orleans are ideally suited to prosecute this litigation, and their collective resources and experience would inure to the benefit of the class. As part of their effort to formalize their commitment to jointly prosecute this action, before seeking appointment as

Lead Plaintiff, respective representatives of DeKalb and New Orleans discussed with one another, among other things: the strength of the claims against Defendants; their strategy for prosecuting the action; the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA; the shared desire of DeKalb and New Orleans to achieve the best possible result for the Class; their shared belief that the action against Mattel and PwC raises important public policy concerns impacting the institutional investor community; and the actions taken to date and to be taken to ensure that the Class's claims will be zealously and efficiently litigated. Uslaner Decl., Ex. C ¶12.

DeKalb and New Orleans have already taken significant steps demonstrating their willingness to protect the interests of the Class. Most notably, New Orleans worked with its counsel, Bernstein Litowitz, to file a complaint that includes additional allegations expanding upon those in the first-filed complaint, and investigated and brought important claims against Mattel's auditor, PwC. Uslaner Decl., Ex. C ¶6. In addition, through the certifications and Joint Declaration, DeKalb and New Orleans have provided detailed evidence of their qualifications, commitment and ability to prosecute this action in a cohesive, cost-effective and vigorous manner. *See generally* Uslaner Decl., Exs. A and C.

In sum, DeKalb and New Orleans have ample willingness, resources, and experience, and are committed to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. DeKalb and New Orleans are precisely the type of institutional investors that Congress envisioned when enacting the PSLRA.

**B.      The Court Should Approve DeKalb and New Orleans' Selection of Counsel**

The Court should approve DeKalb and New Orleans' selection of Bernstein Litowitz to serve as Lead Counsel for the Class.

Pursuant to the PSLRA, the court-appointed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. The Lead Plaintiff's selection is to be honored unless doing otherwise is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. United States Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). The Court should approve DeKalb and New Orleans' selection here.

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Résumé, Uslaner Decl., Ex. F. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz also secured a resolution of $2.43 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.).

Significant examples in which courts in this District and Circuit have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (C.D. Cal.) (recovering $250 million for investors); *In re New Century Securities Litigation*, No. 07-cv-931 (C.D. Cal.) (recovering approximately $125 million for investors); *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.) (recovering $1.05 billion for investors, the largest recovery ever in a securities class action in the Ninth Circuit); *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.) (recovering $480 million for investors); and *In re*

*Clarent Corp. Securities Litigation*, No. 01-cv-3361-CRB (N.D. Cal.) (conducting a four-week trial and obtaining a favorable jury verdict finding the CEO and former auditor of the defendant company liable, leading to a recovery of millions of dollars for investors).

Thus, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation.

## C.   The Actions Should Be Consolidated

DeKalb and New Orleans respectfully request that the Actions against Mattel be consolidated pursuant to Rule 42(a).  Rule 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a).  "Consolidation is within the broad discretion of the district court." *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987); *Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at \*2 (C.D. Cal. Sept. 29, 2017).

On February 6, 2020, this Court ordered that the Actions, listed below, be related pursuant to General Order 19-03 because they arise from the same or closely related transactions, happenings, or events; call for determination of the same or substantially related or similar questions of law and fact; and would entail substantial duplication of labor if heard by different judges. *New Orleans*, Dkt. No. 12.

| Caption | Civil No. | Date Filed |
|---|---|---|
| *Houston Municipal Employees Pension System v. Mattel, Inc.* | 2:19-cv-10860-AB-PLA | December 24, 2019 |
| *New Orleans Employees' Retirement System v. Mattel, Inc.* | 2:20-cv-01056-AB-PLA | January 31, 2020 |

Each of the plaintiffs in these Actions is an investor in Mattel and asserts claims concerning the same parties, transactions, and events.  The Actions present virtually identical factual and legal issues because they each assert claims under Sections 10(b) and 20(a) of the Exchange Act against Mattel and its senior executives and are premised upon substantially similar alleged misstatements regarding the accuracy of the Company's financial statements and the reliability of

its internal control over financial reporting.[4]    Consolidation would promote the conservation of judicial resources by preventing the substantial duplication of labor that would result if the Actions were heard by different judges.

Therefore, DeKalb and New Orleans respectfully request that the Court consolidate the Actions.

## IV.    CONCLUSION

For the reasons discussed above, DeKalb and New Orleans respectfully request that the Court appoint them as Lead Plaintiff, approve their selection of Bernstein Litowitz as Lead Counsel for the Class, consolidate the Actions, and grant any such further relief as the Court may deem just and proper.

Dated:  February 24, 2020                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

-and-

AVI JOSEFSON
(avi@blbglaw.com)
MICHAEL D. BLATCHLEY
(michaelb@blbglaw.com)
1251 Avenue of the Americas

---

[4] While *Houston* and *New Orleans* assert slightly different class periods and *New Orleans* names three additional defendants, courts have routinely held such minor differences do not outweigh the benefits of judicial economy favoring consolidation. *See CVB Fin. Corp.*, 2011 WL 13128303, at *3 ("Neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated. . .Rather, in deciding whether to consolidate actions under Rule 42(a), a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result.").

New York, NY 10020
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Counsel for Proposed Lead Plaintiff DeKalb County Employees Retirement System and New Orleans Employees' Retirement System and Proposed Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470