Jenny Pelaez (Bar No. 326765)
jenny.pelaez@wilmerhale.com
Joshua Vittor (Bar No. 326221)
joshua.vittor@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000

Counsel for Defendant PricewaterhouseCoopers LLP

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re Mattel, Inc. Securities Litigation | Case No. 2:19-cv-10860-AB-PLA |
| | **MEMORANDUM IN SUPPORT OF DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS** |
| | Date: December 4, 2020 |
| | Time: 10:00 a.m. |
| | Courtroom: 7B |
| | Judge: Hon. Andre Birotte |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  BACKGROUND ............................................................................................................3

    A.  Mattel's Accounting For Valuation Allowances .................................3

    B.  PwC's Audit Opinions.........................................................................5

    C.  The Whistleblower and Restatement ....................................................6

III.  ARGUMENT...................................................................................................................8

    A.  The Complaint Fails to Plead Loss Causation ....................................9

    B.  The Complaint Fails to Plead Scienter .................................................14

    C.  Alternatively, the Court Should Dismiss Plaintiffs' Challenge to PwC's Audit Opinions Concerning Year-End Financials ...................20

IV.  CONCLUSION ..............................................................................................................22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
  2017 WL 4759021 (S.D. Cal. Oct. 20, 2017) ......................................................8

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006).................................................................13

*Cunningham v. Identiv, Inc.*,
  716 F. App'x 663 (9th Cir. 2018) ........................................................12

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017).................................................................11

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002)......................................................14, 15, 17

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ...............................................................................9

*Ezra Charitable Tr. v. Tyco Int'l Ltd.*,
  466 F.3d 1 (1st Cir. 2006) ....................................................................15

*Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*,
  607 F. App'x 694 (9th Cir. 2015) .........................................................17

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008)..................................................................14

*Huang v. Higgins*,
  2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)....................................9, 11, 12, 13

*In re Accuray, Inc. S'holder Derivative Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010) ..................................................19

*In re Bofl Holding, Inc. Sec. Litig.*,
  302 F. Supp. 3d 1128 (S.D. Cal. 2018)..................................................11

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................19

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...........................................18, 19

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................19

*In re Daou Sys., Inc. Sec. Litig.*,
  411 F.3d 1006 (9th Cir. 2005)..........................................9, 10, 15, 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  439 F. Supp. 2d 692 (S.D. Tex. 2006) ....................................................8

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) .................................................11

*In re LeapFrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................ 11

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................... 18

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .................................................................................. 9

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158819 (S.D. Cal. Jan. 20, 2005) ...................................................... 21

*In re Software Toolworks, Inc.*,
  50 F.3d 615 (9th Cir. 1994) .................................................................................. 15

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) ..................................................... 10, 13, 15

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................... 18

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) .......................................................................... 14, 18

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ............................................................................................. 21

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ..................................................................... 9, 12, 13

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................................ 11

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) ............................................................... 17

*McCasland v. FormFactor Inc.*,
  2009 WL 2086168 (N.D. Cal. July 14, 2009) ................................................. 16, 17

*McGovney v. Aerohive Networks, Inc.*,
  367 F. Supp. 3d 1038 (N.D. Cal. 2019) ............................................................... 17

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) ................................................................................ 18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ....................................................................... 9, 10, 13

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ............................................................... 2, 15, 16, 19

*Nguyen v. Endologix*,
  962 F.3d 405 (9th Cir. 2020) .................................................................................. 8

*Nuveen Mun. High Income Opp. Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013) ................................................................................ 9

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................................. 8

-iii-

*Overton v. Todman & Co., CPAs, P.C.*,
   478 F.3d 479 (2d Cir. 2007)......................................................................................21
*Reiger v. PricewaterhouseCoopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000).......................................................14, 15, 19
*Rok v. Identiv, Inc.*,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ..............................................................12
*S.E.C. v. Pricewaterhouse*,
   797 F. Supp. 1217 (S.D.N.Y. 1992)........................................................................17
*Special Situations Funds III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014)................................................................14, 15
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................3, 14
*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016)................................................................................20
*Webb v. Solarcity Corp.*,
   884 F.3d 855 (9th Cir. 2018)..................................................................................14
*Weiss v. Amkor Tech*., Inc.,
   527 F. Supp. 2d 938(D. Ariz. 2007)........................................................................11
*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)..............................................................8, 15, 17, 19

**Statutes**
15 U.S.C. § 78u-4(b)(2)(A) ................................................................................14, 20

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum in support of its motion to dismiss the Amended Class Action Complaint (ECF No. 34) (the "Complaint"). PwC also submits the Declaration of Jenny Pelaez, which attaches all exhibits (cited as "Ex.").

## I.  PRELIMINARY STATEMENT

Plaintiffs seek to convert Mattel's fall 2019 financial restatement into a securities fraud claim by asserting that Mattel's SEC filings between 2017 and 2019 contained misstatements relating to unaudited quarterly financial results and the adequacy of internal control over financial reporting. Plaintiffs also assert a much narrower Section 10(b) claim against PwC (Count III), challenging two unqualified audit reports that PwC issued in connection with Mattel's 2017 and 2018 consolidated financial statements. The Complaint fails to state a claim against PwC for three reasons.

*First*, the Complaint does not plead loss causation, *i.e.*, the Section 10(b) element requiring Plaintiffs to plead with particularity that a PwC representation caused Plaintiffs to suffer a loss. In a case involving a publicly traded security, a shareholder pleads loss causation by alleging that the stock price declined following a corrective disclosure of the truth. But Mattel's stock price *did not drop* when Mattel announced, in October 2019, that it would restate its unaudited financial statements for the third and fourth quarters of 2017, and that it had concluded that it did not maintain effective internal control over financial reporting as of December 31, 2018. Mattel's stock price also did not drop when, in November 2019, Mattel issued its restated unaudited quarterly financial statements and PwC revised its audit opinion on Mattel's internal control over financial reporting as of December 31, 2018. While the Complaint does cite a stock drop occurring months earlier in August 2019, in the wake of Mattel's announcement that it learned of a whistleblower letter and was cancelling a debt offering while it investigated, that announcement did not correct any prior disclosure (much less

-1-

any PwC prior disclosure).  Indeed, it supplied no information about the subject of the letter or the investigation, and did not mention PwC, the audits PwC conducted, Mattel's financial statements, or Mattel's internal control over financial reporting. Thus, the Complaint lacks particularized facts showing loss causation.

*Second*, Plaintiffs fail to plead scienter.  Because it generally makes no sense to suppose that an auditor—with nothing to gain and much to lose—would perpetrate fraud in connection with an audit, courts apply a "particularly stringent" standard for pleading auditor scienter.  Controlling authority requires Plaintiffs to plead that PwC's audit procedures "were so deficient that the audit amounted to no audit at all." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011).  However, the Complaint itself shows that PwC conducted robust audits, including that PwC: (i) discovered and caused Mattel to correct an error in Mattel's calculation of its deferred tax asset valuation allowance (which the Complaint cites as the same type of accounting issue that caused the restatement), (ii) suggested enhancements for Mattel to consider to internal controls over the deferred tax asset valuation allowance—including the very control Plaintiffs allege Mattel had started to implement when it allegedly caught the issue giving rise to the restatement, and (iii) gave sound advice, including on the issues Mattel ultimately identified in its restatement.

*Finally*, if the Court does not dismiss the entire claim against PwC (which it should), then at a minimum the Court should dismiss the claim insofar as it alleges that PwC's audit opinions falsely stated that Mattel's 2017 and 2018 consolidated financial statements presented fairly, in all material respects, the financial position of the company, in accordance with accounting principles generally accepted in the United States.  Those opinions were and are true and PwC has not revised them. Mattel's restatement concerns only *unaudited quarterly* financial statements, not the consolidated financial statements as of December 31, 2017 and 2018 and for each of the three years in the period ended December 31, 2018, on which PwC

opined.  Thus, Plaintiffs' attempt to challenge PwC's opinions concerning Mattel's audited annual financial statements fails to state a claim.

## II.     BACKGROUND[1]

### A.     Mattel's Accounting For Valuation Allowances

Mattel in recent years has carried on its balance sheet substantial "deferred tax assets," which the Complaint defines as "an asset that a company can use to reduce or eliminate a future tax liability."  Compl. ¶¶ 4, 81.  Determining the value of a deferred tax asset involves applying complex Generally Accepted Accounting Principles ("GAAP") and related professional guidance in making accounting judgments.  *See id.* ¶¶ 84, 250-59.  Among other steps, a company that books a deferred tax asset must assess whether to record a "valuation allowance," which reduces or offsets the deferred tax asset to reflect any portion that a company does not expect to use to reduce future tax liability.  *See id.* ¶¶ 80-84.

Mattel maintains ultimate responsibility for the consolidated financial statements and financial reports it issues, while an auditor such as PwC is responsible for auditing and expressing opinions on those reports.  PwC has a history of effectively auditing Mattel's accounting for valuation allowances.  For instance, the Complaint recounts that, in late October 2017, during Mattel's preparation of its third quarter financial results, PwC discovered that Mattel had miscalculated its valuation allowance by incorrectly treating a particular asset as "finite-lived" rather than "indefinite-lived."  *See* Compl. ¶¶ 103-108; 264-65.[2]

[1] PwC takes the allegations in the Complaint as true for purposes of this Motion only.  PwC also relies on documents the Complaint incorporates by reference.  *See* Pelaez Decl., Exs. 1-4; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that when assessing securities fraud claims, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  PwC joins Mattel's Request for Judicial Notice, and submits the exhibits to Pelaez Declaration separately for the convenience of the Court.  *See* Pelaez Decl. ¶ 2.

[2] Finite-lived assets, such as machinery, have a defined lifespan, which means a company can amortize them over a specified period.  Indefinite-lived assets, such

-3-

PwC informed Mattel about the error (*id.* ¶ 104) and Mattel corrected it before publishing its unaudited financial results (*id.* ¶ 107).  The Complaint estimates that, by catching the error in its quarterly review, PwC saved Mattel from overstating its quarterly income by "hundreds of millions of dollars."  *Id.*

That episode also caused PwC to suggest enhancements for Mattel to consider in its internal controls over the deferred tax asset valuation allowance.  Compl. ¶ 115.  Mattel tasked Brett Whitaker (a "senior Mattel tax executive," *id.* ¶ 3) with developing those enhancements to internal controls.  *Id.* ¶¶ 115-16.  In January 2018, as part of his effort to do so, Whitaker reviewed financial documentation and identified what he interpreted as another error in the valuation allowance.  *Id.* ¶¶ 118-19.  Specifically, Whitaker discovered that Mattel had treated an asset referred to as "HiT IP" as finite-lived for purposes of calculating the amount of valuation allowance recorded in the third quarter 2017, notwithstanding that it had no book amortization (*i.e.,* a characteristic of an indefinite-lived asset).  *Id.* ¶¶ 119-20.  Thus, Whitaker believed Mattel should have treated HiT IP as indefinite-lived (consistent with Mattel's treatment of the asset for book purposes as of September 30, 2017) when calculating the amount of the valuation allowance, *id.* ¶ 120, which would have increased third quarter net loss by $109 million, *id.* ¶ 121.

Whitaker's discovery touched off a January 2018 process whereby Mattel concluded that HiT IP was finite-lived in the fourth quarter of 2017.  Compl. ¶¶ 119-43.  Thus, according to the Complaint, Mattel implemented this conclusion by "retroactively" classifying HiT IP as finite-lived as of the start of the fourth quarter, on October 1, 2017.  *Id.* ¶¶ 18, 123, 143.  Plaintiffs now allege that Mattel

as trademarks, can remain on the balance sheet indefinitely.  A company can use the deferred tax of a finite-lived asset to reduce a valuation allowance, but must account for the deferred tax of an indefinite-lived asset as part of a valuation allowance.  Compl. ¶¶ 105, 257-59.  Thus, all else equal, characterizing an asset as finite-lived rather than indefinite-lived potentially yields a lower valuation allowance and more income (or less loss).  *See id*. ¶¶ 119, 264-65.

-4-

based this decision not on legitimate professional judgment but rather on a desire to "match the classification" in the third quarter and thus somehow "correct" the valuation allowance as of the fourth quarter. *Id.* ¶ 18; *see also id.* ¶¶ 202, 271, 298, 305.

Almost two years later, when Mattel issued its restatement (discussed below), it maintained the accounting treatment of HiT IP as finite-lived for the fourth quarter of 2017 and future periods. *See* Compl. ¶ 194 (quoting restatement as explaining that change in estimated life of asset "resulted in an *effective correction* of the tax mistreatment for the 2017 annual results. However, the provision for income taxes remained uncorrected for [the third quarter of 2017], which resulted in an overstatement of the tax expense for [the fourth quarter of 2018]" (emphasis added)); *see also id.* ¶ 193 (alleging that when Mattel "reclassified the HiT IP in the fourth quarter, it should have . . . reduced its valuation allowance" for the third quarter, and "recorded [a] credit to income in its originally-issued fourth quarter results"); ¶ 269 (similar). Thus, Mattel's restatement recognized a $109 million increase in the provision for income taxes in the third quarter of 2017 and a $109 million reduction in the provision for income taxes in the fourth quarter, leaving the 2017 full-year results unaffected. *See id.* ¶¶ 194, 271.

## B.    PwC's Audit Opinions

PwC issued two audit opinions that serve as the basis for Plaintiffs' claim against PwC: (i) an opinion included in Mattel's 2017 Form 10-K and (ii) an opinion included in Mattel's 2018 Form 10-K. Compl. ¶¶ 372-78, 415-21. *See* Exs. 1-2 to Pelaez Decl.

The 2017 audit opinion (Ex. 1) stated that PwC had "audited the accompanying consolidated balance sheets of Mattel, Inc. and its subsidiaries as of December 31, 2017 and 2016, and the related consolidated statements . . . for each of the three years in the period ended December 31, 2017." PwC explained that

the "[t]he Company's management is responsible for these consolidated financial statements, for maintaining effective internal control over financial reporting, and for its assessment of the effectiveness of internal control over financial reporting," and that PwC, as the Company's auditor, had the responsibility "to express opinions on the Company's consolidated financial statements and on the Company's internal control over financial reporting based on our audits."  Ex. 1.

Based on its audit, PwC opined that "the consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company as of December 31, 2017 and 2016, and the results of its operations and its cash flows for each of the three years in the period ended December 31, 2017."  *Id.*  PwC also opined that "the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2017."  *Id.*  PwC further warned that "internal control over financial reporting may not prevent or detect misstatements" and that "projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate."  *Id.*  Thus, subject to certain qualifications, PwC offered two basic opinions in its 2017 audit report: (1) that Mattel's financial statements fairly reflected its financial position for the relevant period, and (2) that Mattel had effective internal controls over financial reporting.

PwC's 2018 audit opinion (Ex. 2) included substantively the same opinions and accompanying qualifications and limitations as the 2017 opinion, but addressed time periods as of and ended December 31, 2018.  *See generally* Ex. 2.

### C.     The Whistleblower and Restatement

On August 8, 2019, Mattel filed a Form 8-K announcing that it "was made aware of an anonymous whistleblower letter" and that Mattel had cancelled a planned debt offering "[t]o provide the Company with an opportunity to investigate the matters set forth in the letter" (the "August Announcement").  *See* Ex. 3;

Compl. ¶ 436.  Notably, the August Announcement did not discuss the subject matter of the whistleblower letter or investigation, and did not mention PwC, its audit opinions, Mattel's financial statements, or Mattel's internal control over financial reporting.  *See generally* Ex. 3.  Thereafter, Mattel's stock price declined, which media attributed to the cancellation of the debt offering due to the investigation.  Compl. ¶¶ 436-38.  The Complaint cites nothing suggesting that anyone—analyst, journalist, investor, or otherwise—understood from the August Announcement the existence of any issue involving PwC, its audit opinions, or Mattel's financial statements and internal control over financial reporting.

On October 29, 2019, Mattel announced "that the Company's previously issued *unaudited* consolidated financial statements" for the third and fourth quarters of 2017 required restatement, but that the restatement "had *no impact* on Mattel's full year financial results for 2017 or subsequent periods" (the "October Announcement").  Ex. 4 (emphasis added); Compl. ¶¶ 172-79.  Mattel also announced that "there were material weaknesses in its internal control over financial reporting at the time of the preparation of its financial statements as of September 30, 2017 and December 31, 2017."  Compl. ¶ 178.  Mattel further stated that PwC would "reissue[e] its audit report to reflect an adverse opinion on the Company's internal control over financial reporting as of December 31, 2018."  Ex. 4.  Following this announcement, Mattel's stock price did not decline.  Compl. ¶ 439.

On November 12, 2019, Mattel filed its restated unaudited consolidated financial statements as of and for the three- and nine-months ended September 30, 2017, increasing its net loss for the third quarter of 2017 by $109 million and decreasing its fourth quarter net loss by the same amount (the "November Restatement").  Compl. ¶¶ 187-92.  Mattel did not restate or otherwise indicate any error in its audited consolidated financial statements as of December 31, 2017 and December 31, 2018 or for each of the three years in the period ended December 31,

-7-

2018.  *See id.*  Mattel included in its amended Form 10-K/A that it did not maintain effective internal control over financial reporting.  *Id.* ¶ 190.  The filing also included an amended opinion from PwC, which stated that "a material weakness in internal control over financial reporting existed as of" December 31, 2018.  *Id.* ¶ 191.  Like the October Announcement, the November Restatement did not result in any decline in Mattel's stock price.  *Id.* ¶ 439.

## III.    ARGUMENT

To state a Section 10(b) claim Plaintiffs must allege: "(1) a material misrepresentation or omission [of fact], (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance; (5) economic loss, and (6) loss causation."  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).  Plaintiffs must comply with both the heightened pleading standards of Rule 9 and the stringent requirements of the Private Securities Litigation Reform Act (the "PSLRA").  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  As the Ninth Circuit recently reaffirmed, "the PSLRA's heightened pleading requirements are meaningful ones, requiring courts carefully to evaluate securities fraud complaints to ensure compliance with the statute's elevated pleading standards."  *Nguyen v. Endologix*, 962 F.3d 405, 413 (9th Cir. 2020).  Plaintiffs must plead the elements as to each defendant.  *See, e.g.*, *3226701 Canada, Inc. v. Qualcomm, Inc.*, 2017 WL 4759021, at *11 (S.D. Cal. Oct. 20, 2017); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 439 F. Supp. 2d 692, 711 (S.D. Tex. 2006) ("Plaintiffs must allege facts to satisfy all the elements of a § 10(b) claim as to each defendant, including loss causation . . . .").  Here, Plaintiffs fail to allege loss causation, scienter, and, as to PwC's opinions concerning Mattel's annual financial statements, the existence of a material misrepresentation.

## A.    The Complaint Fails to Plead Loss Causation

To establish loss causation, Plaintiffs must plead a causal connection between PwC's alleged misrepresentations and Plaintiffs' loss. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (complaint must allege "what the causal connection might be between [a plaintiff's] loss and [a defendant's] misrepresentation"); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (plaintiffs "bear[] the burden of proving that a defendant's alleged unlawful act caused the loss for which [] plaintiff[s] seek[] to recover damages" (internal quotation marks and citation omitted)); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (plaintiffs "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event" (citing *Dura*, 544 U.S. at 343-44)).  Where, as here, Plaintiffs rely on an asserted stock price reaction to a corrective disclosure, *see* Compl. ¶¶ 436-37, they must plead with particularity that the "share price fell significantly after the truth became known." *In re Oracle Corp.*, 627 F.3d at 392 (citing *Dura*, 544 U.S. at 347); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062-63 (9th Cir. 2008) (plaintiffs must allege that disclosure "revealed [defendant's fraud] to the market and caused the resulting losses"); *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005).[3]

Applying this standard, the Complaint's fatal flaw lies in its failure to identify any event that <u>both</u> (i) constituted a corrective disclosure (*i.e.*, revealed new information about PwC's audit opinions) and (ii) resulted in a stock price drop.

---

[3] To the extent the Complaint in isolated instances uses language relevant to a "materialization of risk" theory of loss causation (Compl. ¶ 435), that does not help Plaintiffs because the Ninth Circuit has not adopted that theory. *Nuveen Mun. High Income Opp. Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013); *see Huang v. Higgins*, No. 17-CV-04830-JST, 2019 WL 1245136, at *16 (N.D. Cal. Mar. 18, 2019).  Regardless, the Complaint cites no risk that PwC allegedly concealed that later materialized.

-9-

Plaintiffs concede that the statements referencing PwC's audit opinions—the October Announcement (which stated that PwC would be reissuing its 2018 audit opinion on internal control over financial reporting) and the November Restatement (in which Mattel filed an amended Form 10-K/A and included PwC's revised audit opinion)—did not cause a stock drop.  Compl. ¶ 439 (conceding "lack of statistically negative price movement in Mattel's stock price in response to the" October Announcement and November Restatement).  This should come as no surprise; the restated quarterly financial statements, which were unaudited, had no effect on the annual consolidated financial statements, and PwC expressed no opinion on those quarterly financial statements.  Thus, the October Announcement and November Restatement cannot satisfy loss causation.  *See In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1183 (N.D. Cal. 2004) (plaintiff failed to plead loss causation against auditor where complaint failed to allege decline in stock price after auditor disclosed prior existence of material weaknesses in internal controls).

Confronted with this existential problem, the Complaint suggests Plaintiffs will attempt to mischaracterize the August Announcement (which did precipitate a stock price decline) as a corrective disclosure.  *See* Compl. ¶¶ 434-39 (addressing only August Announcement in section titled "Loss Causation").  But that tack fails as to PwC.  As detailed above, the August Announcement supplied virtually no substantive information.  It stated only that Mattel learned of a whistleblower letter and that it was cancelling a debt offering to investigate the allegations contained in the letter.  That does not plausibly correct any prior statement that PwC made.  *See In re Daou Sys., Inc.*, 411 F.3d at 1026-27 (stock drop not causally related to allegedly improper accounting where "the true nature of [the company's] financial condition had not yet been disclosed"); *Metzler*, 540 F.3d at 1063 (no loss causation where disclosures regarding earnings could not "reasonably [be] read to reveal [the subject of the alleged fraud:] widespread financial aid manipulation,");

-10-

*Huang v. Higgins*, No. 17-CV-04830-JST, 2019 WL 1245136, at \*16 (N.D. Cal. Mar. 18, 2019) (dismissing securities claim because plaintiffs did not sufficiently allege "a causal connection" between risks associated with alleged off-label marketing and negative financial news defendant later announced).[4]

The Complaint cites no evidence that *anyone*—not a single analyst, shareholder, investor or otherwise—understood the August Announcement to raise any issue involving PwC or its audit opinions. Indeed, an announcement referring only to a "whistleblower letter" and "investigation" could mean essentially anything, *e.g.*, a corporate governance concern, an employment issue, a toy safety issue, a false advertising issue, etc. Thus, while the August Announcement disclosed a negative development (which may be why the stock price dropped), Plaintiffs allege no basis to conclude the market, through the announcement, learned the truth about any matter relevant to this litigation. *See In re Bofl Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1140 (S.D. Cal. 2018) ("[T]he element of loss causation cannot be adequately made out merely by resting on [negative news about the company] and asserting that where there is smoke, there must be fire.") (quoting *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017)).

Moreover, even if the market somehow could have interpreted the existence of a whistleblower letter and investigation as relating to the matters at issue in this lawsuit—which it could not—merely announcing an investigation does not reveal the truth of anything, and thus does not establish loss causation. *See Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014) ("[T]he announcement of an

[4] *See also In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (dismissing securities claim because alleged corrective disclosures did not disclose wrongdoing); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1040 (N.D. Cal. 2007) (no loss causation where disclosures preceding stock declines did not mention subject of alleged fraud); *Weiss v. Amkor Tech.*, Inc., 527 F. Supp. 2d 938, 946 (D. Ariz. 2007) (dismissing claims on loss causation grounds where complaint alleged stock price fell in response to a press release that did not qualify as a "disclosure correcting the Company's prior statements" and corrective disclosure occurred a month later when company disclosed it would make material adjustments to financial statements).

-11-

investigation, standing alone, is insufficient to establish loss causation."); *Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) (no loss causation because disclosures regarding internal investigation did not reveal fraudulent accounting), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018); *Huang*, 2019 WL 1245136, at *17 (finding investigations did not sufficiently "confirm any speculation" as to whether defendant's allegedly improper off-label marketing practices were improper).

Finally, Plaintiffs cannot salvage their claim by attempting to parrot the narrow holding of *Lloyd v. CVB Financial Corporation*, 811 F.3d 1200 (9th Cir. 2016).  There, a plaintiff alleged that the defendant company, a creditor, had misrepresented the ability of its largest borrower to pay its loans.  The defendant: (i) initially disclosed that it had received an SEC subpoena requesting information regarding its methodology for evaluating bad debt and credit losses, and the stock price dropped (*id.* at 1204-05); and (ii) later disclosed that it was writing off $34 million in the borrower's loans (*id.* at 1210).  The company's stock price moved only in response to the first disclosure, and defendant argued that plaintiffs failed to establish loss causation because only the second disclosure contained corrective information.  The court disagreed, finding on the unique facts presented that the market's failure to react to the second disclosure did not negate loss causation but rather "confirm[ed] that investors understood the [earlier investigation] announcement as at least a partial disclosure of the inaccuracy of the previous [] statements." *Id.*  In so ruling, the court deemed significant that several analysts specifically understood the first disclosure to reflect concern about the defendant's largest borrower's ability to pay.  *Id.* at 1204, 1210.  Thus, at the pleading stage, the court plausibly inferred that the market viewed the first disclosure as having revealed the fraud.

The analogy to *Lloyd* does not work here.  Unlike the first disclosure in *Lloyd*, which communicated information about the substance of the SEC subpoena

-12-

on the same subject matter as the later disclosure, the August Announcement contained *no* information about the subject of the whistleblower letter or investigation, much less a basis to connect either to any accounting or internal control over financial reporting issues, or to PwC's audit opinions.  Nor do Plaintiffs identify analyst commentary (as the *Lloyd* plaintiffs did) suggesting the market understood the August Announcement related to such issues.  Thus, as applied to this case, *Lloyd* reaffirms that, absent particularized allegations establishing that the market understood the disclosure of an investigation to relate to the subject matter of the underlying alleged misstatements, the mere disclosure of an investigation does not establish loss causation.  *See* 811 F.3d at 1209-10; *see also Huang*, 2019 WL 1245136, at *18 (rejecting analogy to *Lloyd* based on allegations of events following investigation disclosure, because events did not confirm any speculation that earlier investigation involved improper marketing practices and thus were "far short of the subsequent disclosure in *Lloyd*" that "directly confirm[ed] the market's fears" about the subpoena).[5]

Accordingly, the August Announcement does not count as a corrective disclosure, and neither were the October Announcement or November Restatement.  Plaintiffs fail to plead loss causation.  *See Metzler*, 540 F.3d at 1062; *In re Van Wagoner Funds, Inc.*, 382 F. Supp. 2d at 1183.[6]

---

[5] Plaintiffs ultimately advance an entirely circular argument.  They have provided the Court with the following syllogism: because Mattel's stock price did not decrease when Mattel announced accounting errors and a restatement in October and November 2019, the market must have incorporated that information earlier.  Compl. ¶ 439.  In addition to being implausible on the facts because no earlier announcement of such information exists, Plaintiffs' position assumes without basis that the restatement of unaudited quarterly financial results would necessarily cause a stock price decline.  But Plaintiffs offer no allegations to support that assumption.  The restatement effectively just shifted $109 million from the third quarter of 2017 to the fourth quarter, with no impact on Mattel's yearly results.  Plaintiffs make no showing that investors in 2019 would find that material.

[6] Plaintiffs cannot cure their failure to establish loss causation, so the Court should dismiss the claim against PwC with prejudice.  *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("district court need not grant leave to amend where the amendment . . . is futile").

-13-

**B.      The Complaint Fails to Plead Scienter**

Plaintiffs also must plead with particularity facts establishing a "strong inference of scienter."  15 U.S.C. § 78u-4(b)(2)(A).  This requires Plaintiffs to plead "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (internal citation omitted).  Plaintiffs must raise an inference of scienter that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  A court must consider "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Id*. at 323-24; *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994).  The Ninth Circuit has made clear that "[t]he bar set by *Tellabs* is not easy to satisfy:  It requires that [plaintiffs] plead an inference of scienter that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Webb v. Solarcity Corp.*, 884 F.3d 855-56 (9th Cir. 2018) (quoting *Tellabs*, 551 U.S. at 324).

Pleading requirements for establishing that an auditor acted with scienter are "particularly stringent."  *Special Situations Funds III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 426 (S.D.N.Y. 2014).  As the Ninth Circuit recognizes, auditors "lack [] a rational economic incentive . . . to participate in fraud" with their clients. *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000), *aff'd sub nom. DSAM Glob. Value Fund v. Altris Software, Inc*., 288 F.3d 385 (9th Cir. 2002).  Thus, the Ninth Circuit has set forth an exacting standard whereby Plaintiffs must allege:

> [m]ore than a misapplication of accounting principles. The plaintiff must allege that the accounting practices were so deficient that the audit amounted to *no audit at all*, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable

-14-

> accountant would have made the same decisions if confronted with the same facts.

*N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011) (quoting *In re Software Toolworks, Inc.*, 50 F.3d 615, 628 (9th Cir. 1994)) (emphasis added).[7]  The Complaint fails to meet these exacting requirements.

Plaintiffs advance the following implausible theory of scienter as to PwC: Mattel decided in January 2018, allegedly on PwC's advice, to characterize "retroactively" the HiT IP asset as finite-lived, not based on legitimate professional judgment, but rather as a "technical" "maneuver" somehow to avoid restating Mattel's third quarter 2017 financial results and disclose a material weakness in internal controls.  *E.g.*, Compl. ¶¶ 123, 145, 199-202.  According to Plaintiffs, PwC took advantage of alleged preexisting internal control deficiencies at Mattel to help Mattel conceal the misstated quarterly results, including by allegedly not reporting the decision to Mattel's Audit Committee.  *E.g., id.* ¶¶ 18, 149, 205, 373-74, 416-17.  However, the Complaint's allegations directly undermine this theory,

---

[7] Additional cases confirm that Plaintiffs cannot establish auditor scienter based on violations of GAAP or generally accepted auditing standards ("GAAS") alone. *See Reiger,* 117 F. Supp. 2d at 1009–10 ("Violations of GAAP or GAAS, standing alone, do not satisfy the particularity or strong inference requirements of the Reform Act because they provide no specific facts upon which a court can infer the state of mind of the accountant or its client, at any specific point in time); *DSAM*, 288 F.3d at 390 ("[A] failure to follow GAAP, without more, does not establish scienter." (quoting *Software Toolworks*, 50 F.3d at 627-28)).  Alleged violations of GAAP or GAAS must be "more than 'minor or technical in nature' . . . to contribute to a strong inference of scienter." *New Mexico*, 641 F.3d at 1098 (quoting *In re Daou Sys., Inc.*, 411 F.3d at 1017).  GAAP or GAAS violations can only support a strong inference of scienter if a plaintiff couples them with allegations that the audit "was such an extreme departure from reasonable accounting practice that [the accountant] knew or had to have known that its conclusions would mislead investors." *In re Van Wagoner Funds, Inc.*, 382 F. Supp. 2d at 1186.  Relatedly, "the mere publication of a restatement is not enough to create a strong inference of scienter." *See, e.g., Zucco*, 552 F.3d at 1000.
Plaintiffs also cannot state a claim by alleging merely that PwC conducted a shoddy audit.  *See New Mexico*, 641 F.3d at 1098 ("[A]lleging a poor audit is not equivalent to alleging an intent to deceive." (quoting *Ezra Charitable Tr. v. Tyco Int'l Ltd.*, 466 F.3d 1, 12 n.10 (1st Cir. 2006)); *Special Situations*, 33 F. Supp. 3d at 427 ("Allegations of a negligent or shoddy audit fail to establish fraudulent intent." (internal quotation marks omitted)).

-15-

which Plaintiffs have also failed to support with particularized facts.  Far from demonstrating that PwC's audit of Mattel amounted to "no audit at all," *New Mexico*, 641 F.3d at 1098, the Complaint supports the non-fraudulent inference that PwC suggested enhancements for Mattel to consider in its internal controls over the deferred tax asset valuation allowance and exercised professional judgment to address a complex accounting issue.

*First,* Plaintiffs themselves allege that PwC in October 2017 identified an error in Mattel's draft third quarter valuation allowance, and thereby prevented Mattel from overstating income for that quarter by "hundreds of millions of dollars."  Compl. ¶¶ 103-07, 332-33.  Plaintiffs further allege this "was precisely the same type of error" as the HiT IP issue that would later give rise to the restatement.  *Id.* ¶ 121.  Thus, to support scienter, Plaintiffs would have the Court draw the implausible inference that PwC in October 2017 identified an error in Mattel's valuation allowance and then, just three months later, the same PwC team inexplicably pivoted and committed fraud to conceal the "same type of error."  *See McCasland v. FormFactor Inc.*, No. C 07-5545, 2009 WL 2086168, at *7 (N.D. Cal. July 14, 2009) (rejecting inference of scienter as implausible where facts were inconsistent with plaintiff's theory of "fraud and accounting cover-up").

*Second*, Plaintiffs admit that, after identifying the October 2017 error, PwC suggested enhancements for Mattel to consider to its internal controls over the deferred tax asset valuation allowance.  Compl. ¶ 115.  Whitaker then allegedly discovered the issue with HiT IP in January 2018 through the process of implementing that very control.  *Id.* ¶¶ 119-20.  Thus, far from conducting "no audit at all," PwC's audit efforts were—according to the Complaint—the only reason the HiT IP issue surfaced.  These facts also dispel any fraudulent inference that Plaintiffs ask the Court to draw from the fact that PwC's audit opinion did not

identify a material weakness in Mattel's internal controls over financial reporting. *See McCasland,* 2009 WL 2086168, at *7.[8]

*Third,* Mattel's January 2018 accounting determination, with which PwC agreed, that HiT IP was a finite-lived asset beginning in the fourth quarter of 2017, proved *correct*—the restatement maintained that accounting treatment, and restated only the provision for income taxes.[9]  Compl. ¶ 194; *see id.* ¶¶ 193, 269 (alleging only that Mattel should have recorded a credit to income in the fourth quarter results as a result of the reduction of the valuation allowance in the third quarter). The Complaint pleads no basis to assert that Mattel's underlying accounting decision to revise HiT IP's estimated useful life to finite-lived and commence amortization starting on October 1, 2017 violated GAAP, much less that it evinces fraud.  At most, Plaintiffs allege Mattel made a highly technical GAAP error in its quarterly unaudited financial statements as part of a complex tax accounting estimate.  *See generally id.* ¶¶ 269-71 (alleging failure to restate third quarter results and record credit in fourth quarter violated GAAP).  As noted above, Plaintiffs cannot establish auditor scienter merely by pointing to a GAAP violation or a restatement.  *See DSAM*, 288 F.3d at 390; *Zucco*, 552 F.3d at 1000.  And any inference of scienter further diminishes where, as here, the alleged GAAP violation occurred in a matter that "involved complex issues of accounting." *S.E.C. v. Pricewaterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992) (refusing to find fraud or recklessness where accountants could reach different conclusions on complex

---

[8] For the same reasons, Plaintiffs fail sufficiently to allege the falsity of PwC's statement in its audit opinion that it "had conducted an 'audit' of Mattel."  Compl. ¶¶ 373, 416.  Plaintiffs' grievance obviously centers on the adequacy of the audit, not whether it occurred.  Plaintiffs cannot plead falsity based on a statement that is "quite literally true" and "[t]herefore, by definition. . . not misleading." *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1059 (N.D. Cal. 2019); *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1129 (S.D. Cal. 2012) (plaintiffs failed to plead falsity where statement was "literally true"), *aff'd sub nom. Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).
[9] This also contradicts Whitaker's alleged concern that Mattel should have treated HiT IP as an indefinite-lived asset in the fourth quarter of 2017.

-17-

accounting treatment of leases); *see In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 652 (E.D. Va. 2000) ("complexity of the accounting principles at issue mitigate any inferences of scienter"); *see also In re Daou Sys., Inc.*, 411 F.3d at 1017 ("technical" GAAP violations insufficient to establish scienter).

*Fourth,* the Complaint pleads no cogent allegations establishing motive—no plausible rationale for why a premier audit firm would risk its reputation by colluding with a single client to commit fraud. *See In re Worlds of Wonder*, 35 F.3d at 1427 n.7 ("It is highly improbable that an accountant would risk surrendering a valuable reputation for honesty and careful work by participating in a fraud merely to obtain increased fees."). The Complaint includes no allegation that PwC risked losing its relationship with Mattel; indeed, Mattel's decision to retain PwC as its independent auditor *after* the restatement belies any such inference. In any event, general business objectives such as maintaining a client relationship do not establish scienter. *See Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) (rejecting as economically irrational plaintiff's claim of accounting firm's purported motive to garner fees); *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1174 (C.D. Cal. 2007) ("normal business objective . . . cannot by itself establish[] scienter"); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) ("incentives to enhance business prospects . . . are insufficient allegations of scienter").

*Finally,* none of Plaintiffs' other allegations overcome the compelling non-fraudulent inference for PwC's conduct. For instance, Plaintiffs' allegation that PwC performed a "check the box exercise" rather than an audit of Mattel's internal controls (*see* Compl. ¶ 75) lacks factual particulars and contradicts the audit work Plaintiffs do allege, as described above. Plaintiffs' reliance on conclusory allegations about deficiencies in Mattel's general record-keeping likewise are too vague to support any inference that PwC colluded with Mattel or intentionally

-18-

disregarded known issues.  *See, e.g.*, *id.* ¶ 68 (alleging that if you "walked around the halls" of Mattel, "you would know that this place was riddled with issues").

Plaintiffs also try to turn the departure of audit partner Joshua Abrahams into evidence of fraud, but the Complaint fails to connect with particularity his departure to the tax asset valuation allowance error in the unaudited quarterly consolidated financial statements or Mattel's internal control over financial reporting.  *See* Compl. ¶¶ 181-86.  In any event, personnel departures do not establish scienter.  *See Zucco*, 552 F.3d at 981 (resignation of several members of company's financial department did not establish scienter); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 932 (N.D. Cal. 2010) ("nothing suspicious" resignation weeks after corrective disclosure);  *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1050 (N.D. Cal. 2009) (resignation of six officers prior to restatement announcement insufficient to plead scienter); *In re Cornerstone Propane Partners L.P.*, 355 F. Supp. 2d at 1093 (departures, absent termination on basis of fraud, did not give rise to an inference of scienter).

Next, Plaintiffs fault PwC for allegedly developing a "technical argument" to avoid an accounting issue, Compl. ¶ 141, which professional standards allow. Indeed, accounting issues are often "technical," and an auditor's exercise of professional judgment in interpreting and applying accounting guidance does not constitute fraud.  *See Reiger*, 117 F. Supp. 2d at 1008 ("the complex professional judgment required to perform an audit[] make it exceedingly difficult for a securities plaintiff to plead facts suggesting that an independent accountant acted with the deliberate state of mind now required to withstand a motion to dismiss"); *see also New Mexico*, 641 F.3d at 1097 ("an auditor exercises complex and subjective professional judgments that courts are not ideally positioned to second guess"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1197 (C.D. Cal. 2008) (same).  Similarly, that PwC's audit team allegedly felt pleased to close the 2017 audit without a Mattel restatement does not in any way suggest

-19-

fraud.  *See* Compl. ¶¶ 20, 155 (alleging that the audit team "high-fiv[ed]" over the lack of restatement).  Last, Plaintiffs cite the alleged existence of other errors in Mattel's financial statements that PwC determined to be below the materiality threshold and therefore unnecessary to disclose (*id.* ¶¶ 153-54), but Plaintiffs do not allege the falsity of this decision.

In short, rather than demonstrating a strong inference of scienter, the Complaint evinces a much more plausible non-fraudulent inference regarding PwC's alleged involvement, and the facts alleged directly contradict the concept that PwC conducted "no audit at all."  The Court therefore should dismiss the claim against PwC for lack of scienter.

## C.   Alternatively, the Court Should Dismiss Plaintiffs' Challenge to PwC's Audit Opinions Concerning Year-End Financials

The Court should dismiss the Complaint in its entirety as to PwC for the reasons set forth above.  However, in the alternative, the Court should dismiss Plaintiffs' claim against PwC to the extent it challenges the portions of PwC's audit opinions stating that the "consolidated financial statements … present fairly, in all material respects, the financial position of the Company as of December 31, 2017."  Compl. ¶ 301 (alleging that this opinion was materially misleading).  The Complaint does not adequately allege that these statements were false, nor could it, because they were not false at the time PwC made them, and are not false now.[10]  As detailed above, Mattel's restatement impacted only quarterly *unaudited* financial statements (essentially changing the amount of its tax provision between unaudited periods).  PwC did not opine on those quarterly results, and therefore there exists no actionable statement attributable to PwC about Mattel's quarterly

---

[10] *See* 5 U.S.C. § 78u-4(b)(1)(B) (requiring complaint to identify with particularity all statements alleged to be false or misleading, and set forth specific facts showing the reasons why each statement was false or misleading); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (under Rule 9(b) and the PSLRA, plaintiff must allege "the who, what when, where, and how of the misconduct charged . . . .").

financial statements.  Similarly, PwC's opinion that Mattel's financial results presented fairly its financial condition "as of" December 31 was and is true.  *See also In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-CV-870-BEN (RBB), 2005 WL 8158819, at *12 (S.D. Cal. Jan. 20, 2005) (finding auditor not liable for company's misleading statements and SEC filings on which auditors did not opine); *Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 485 (2d Cir. 2007) (holding independent accountant cannot be held liable for company's statements about which it offered no accounting opinion).

Plaintiffs cannot alter the result by arguing that PwC somehow becomes responsible for Mattel's quarterly results because "Note 16—Quarterly Financial Information (Unaudited)" of Mattel's consolidated financial statements contain quarterly financial information.  *See* Compl. ¶ 301.  Section 10(b) liability attaches to those who *make* false statements, *see Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 144 (2011) ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."), and PwC made no statement (false or otherwise) about Mattel's quarterly financial information.  Mattel, not PwC, authored Note 16, and PwC did not audit Note 16.

Thus, at a minimum, the Court should dismiss the claim against PwC insofar as it challenges PwC's opinions that Mattel's consolidated financial statements as of December 2017 and 2018 and for each of the three years in the period ended December 31, 2018 were presented fairly, in all material respects.[11]

---

[11] The Complaint also challenges a summary of PwC's 2017 audit opinion contained in a 2018 Proxy Statement published.  Compl. ¶¶ 379-80.  Plaintiffs do not clearly include this in the claim against PwC.  To the extent Plaintiffs intended to do so, the Court should dismiss it.  Although the Complaint mischaracterizes this as a PwC statement, a review of the document shows that Mattel authored it.

-21-

## IV.   CONCLUSION

The Court should dismiss the claim against PwC with prejudice, particularly given that Plaintiffs have already amended once and cannot plausibly cure the dispositive flaws with the Complaint PwC identifies herein.

Dated:  July 28, 2020              Respectfully submitted,


                                   WILMER CUTLER PICKERING HALE
                                   AND DORR LLP


                                   By: */s/ Timothy J. Perla*
                                   Timothy J. Perla (*pro hac vice*)
                                   timothy.perla@wilmerhale.com
                                   Wilmer Cutler Pickering Hale and Dorr LLP
                                   60 State Street
                                   Boston, Massachusetts  02109
                                   Tel:   (617) 526-6000
                                   Fax:   (617) 526-5000


                                   Jenny Pelaez (Bar No. 326765)
                                   jenny.pelaez@wilmerhale.com
                                   Joshua Vittor (Bar No. 326221)
                                   joshua.vittor@wilmerhale.com
                                   Wilmer Cutler Pickering Hale and Dorr LLP
                                   350 South Grand Avenue, Suite 2100
                                   Los Angeles, CA 90071
                                   (213) 443-5300 Telephone
                                   (213) 443-5400 Facsimile


                                   Matthew T. Martens (*pro hac vice*)
                                   Matthew.martens@wilmerhale.com
                                   Wilmer Cutler Pickering Hale and Dorr LLP
                                   1875 Pennsylvania Avenue, NW
                                   Washington, DC 20006
                                   (202) 663-6921 Telephone
                                   (202) 663-6363 Facsimile

                                   *Counsel for Defendant PricewaterhouseCoopers LLP*

MEMORANDUM ISO DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS
Case No. 2:19-cv-10860-AB-PLA