Jenny Pelaez (Bar No. 326765)
jenny.pelaez@wilmerhale.com
Joshua Vittor (Bar No. 326221)
joshua.vittor@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
Tel:    (617) 526-6000
Fax:    (617) 526-5000

Counsel for Defendant PricewaterhouseCoopers LLP

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re Mattel, Inc. Securities Litigation | Case No. 2:19-cv-10860-MCS-PLA<br><br>**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: January 25, 2021<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: Hon. Mark C. Scarsi |

Defendant PwC respectfully submits this Reply in Support of its Motion to Dismiss and in response to Plaintiffs' Opposition (ECF No. 54 ("Opp.")).  PwC also joins the Mattel Defendants' Reply in Support of Request for Judicial Notice.

## I.   PRELIMINARY STATEMENT

The Opposition does not cure the Complaint's failure to allege particularized facts establishing either that PwC's audit opinions caused Plaintiffs to suffer a loss or that PwC acted with scienter.  The Court should dismiss the claim against PwC.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Plead Loss Causation as to PwC

#### 1.   Controlling Authority Confirms that the Court Should Dismiss Plaintiffs' Claim

The Complaint fails to allege plausibly and with the particularity Rule 9(b)[1] requires that PwC's audit opinions caused Plaintiffs to suffer any loss.  Plaintiffs' alleged loss results from a drop in Mattel's stock price following Mattel's August 2019 announcement of a cancelled bond offering and receipt of a whistleblower letter (the "August Announcement").  The August Announcement said nothing about PwC's audits (or about any accounting matters), and the Complaint does not and could not allege that the market perceived the August Announcement to communicate about such topics.  Consequently, Plaintiffs fail to allege a fundamental component of loss causation in a fraud-on-the-market case: that the revelation of the truth concerning the allegedly misrepresented matter caused their loss.  *In re BofI Holding, Inc. Sec. Litig.*, 2020 WL 5951150, at *5 (9th Cir. Oct. 8, 2020) ("*BofI*") ("[t]o establish loss causation in a fraud-on-the-market case, the plaintiff must show . . . 'the truth became known,' [and] the revelation caused" a stock drop) (citing *Dura Pharm. v. Broudo*, 544 U.S. 336, 347 (2005)); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir.

---

[1] Plaintiffs misstate that only Rule 8(a) pleading standards govern loss causation. Opp. at 41.  In fact, Rule 9(b) applies.  *See In re BofI Holding, Inc. Sec. Litig.*, 2020 WL 5951150, at *14 (9th Cir. Oct. 8, 2020). That said, Plaintiffs fail to comply even with notice pleading standards.

-1-

2018) ("*First Solar*") (similar); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (similar). As a result, the Complaint suffers from the same fatal flaw as the complaints in *Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014) and other cases PwC cited in its opening brief. *See* Mot. at 11-12.

Indeed, the Ninth Circuit in *BofI*: (i) elucidated the level of detail necessary for a plaintiff to plead loss causation based on a whistleblower complaint while (ii) reaffirming the above controlling principle. *See* 2020 WL 5951150, at *5. In *BofI*, a company allegedly made misstatements about the strength of its underwriting standards, internal controls, and compliance infrastructure. A whistleblower filed a complaint in federal court making allegations concerning the same subject matter. The *New York Times* published the details as well. The Ninth Circuit held that the company's alleged misstatements about underwriting standards, controls, and compliance caused the resulting stock drop because the whistleblower complaint contained "highly detailed and specific" allegations about these same subjects, and as a result, revealed the relevant truth to the market. *Id.* at *9, 15-17. In reaching this conclusion, the Court rejected the company's argument that, because the whistleblower complaint was only an accusation, it did not reveal any information.

Here, Plaintiffs' claim against PwC does not come close to meeting the Ninth Circuit's *BofI* standard. Unlike the "highly detailed and specific" revelations in the *BofI* whistleblower complaint, the August Announcement said nothing about the substance of the whistleblower letter—much less PwC's audit opinions, Mattel's misstated financial statements, or Mattel's internal controls. Moreover, whereas in *BofI* the Ninth Circuit found that the market "perceived" the whistleblower complaint to reveal the truth about past misstatements, the Complaint here does not and cannot allege that the generic August Announcement communicated anything the market perceived as relevant to PwC's audit opinions or Mattel's accounting issues. *See* 2020 WL 5951150, at *7. Thus, under *BofI*, the August Announcement and ensuing stock drop do not establish loss causation as to

PwC. *See id.* (no loss causation where "an announcement does not reveal to the market any facts that could call into question the veracity of [defendant's] prior statements"). This critical pleading deficiency alone compels dismissal.

Plaintiffs make no headway relying on *First Solar*.[2] *First Solar* stands for the unremarkable proposition that a plaintiff can establish loss causation in more ways than by pointing to the disclosure of fraud and associated stock drop. 881 F.3d at 754. *First Solar,* however, confirms the fundamental requirement that, for fraud to cause a loss in a fraud-on-the-market case, the "truth" must enter the market (and remove the prior price inflation the purported fraud caused) even if the disclosure does not specifically reveal fraud. *Dura*, 544 U.S. at 347; *First Solar*, 881 F.3d at 753-54 (explaining "it is the underlying facts concealed by fraud that affect the stock price . . . . Fraud simply causes a delay in the revelation of those facts"). Thus, plaintiffs can establish loss causation by showing the truth became known and caused a stock drop. *First Solar*, 881 F.3d at 754; *see BofI,* 2020 WL 5951150, at *5. Plaintiffs do not point to a single fraud-on-the-market case that analyzed loss causation differently.

Moreover, the district and circuit court's application of these principles in *First Solar* demonstrates that the August Announcement fails to establish loss causation. The *First Solar* plaintiffs alleged that defendants had concealed manufacturing defects, misrepresented the cost and scope of those defects, and reported false information on their financial statements. 881 F.3d at 750. Plaintiffs alleged loss causation based on stock drops following two categories of events: (i) a series of financial disclosures reporting defects and associated costs, and (ii) an announcement of the CEO's departure. *Id.* The district court concluded—and the Ninth Circuit affirmed—that plaintiffs (i) could establish loss

---

[2] Plaintiffs try to discard many unfavorable cases by asserting that they pre-date *First Solar*, a 2018 opinion. *See* Opp. at 45-46. This now backfires—under Plaintiffs' logic, *BofI*, not *First Solar*, controls and dictates the outcome here. Regardless of date, *BofI* is clearly the case most factually on point, specifically evaluating a whistleblower letter in the loss causation context.

DEFENDANT PWC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. 2:19-cv-10860-MCS-PLA

causation based on the financial disclosures because they revealed facts about manufacturing defects that the market could perceive caused the company's poor performance, but (ii) could *not* base loss causation on the announcement of the CEO's departure, because it *did not reveal anything about the manufacturing defects or their connection to the company's financials*. *See Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 985, 997 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018).

This set of rulings compels dismissal here.  Unlike the August Announcement, the financial disclosures in *First Solar* communicated factual information relevant to the truth of the challenged statements, *i.e.*, the existence of defects and associated financial impact.  In contrast, the August Announcement communicated *no substance* concerning the whistleblower letter.  Thus, the August Announcement is akin to the announcement of the CEO departure in *First Solar*. Both disclosures revealed an event (there, a CEO departure; here, a debt offering cancellation and receipt of a whistleblower letter) with no associated information that the market perceived to relate to or reveal the truth about any prior disclosure. Plaintiffs thus plead no loss causation because, of course, an announcement devoid of content cannot reveal a truth.[3]

### 2.  Plaintiffs' New Theory of Causation Changes Nothing

Unable to reconcile their claim with controlling authority, Plaintiffs attempt to walk away from the theory of loss causation in their Complaint that the August Announcement revealed the truth to the market, thereby causing Mattel's stock to drop.  The Opposition instead claims not to base causation on the revelation of any truth, and posits an unpleaded causal chain whereby: (i) a fraud existed concerning

---

[3] Plaintiffs' reliance on *Lloyd v. CVB Financial Corporation*, *see* Opp. at 43, 46, fails because there the defendant's initial disclosure that precipitated a stock drop communicated the substance of an investigation, which the market understood to pertain to the same subject as the second disclosure containing corrective information that did not result in a stock drop.  811 F.3d at 1204, 1210.  Moreover, *Lloyd* confirms that the analysis properly focuses on what the market understood.

DEFENDANT PWC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. 2:19-cv-10860-MCS-PLA

"Mattel's misstatements of financial results and internal control deficiencies," (ii) that led to a whistleblower letter, and (iii) when the market learned of the whistleblower letter's existence (but not substance), the stock price declined.  Opp. at 43.  This newly-minted theory also fails for several independent reasons.

*First*, an Opposition cannot introduce unpleaded allegations.  *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1011 (S.D. Cal. 2011) (excluding argument as "unpersuasive and without merit since [it was] presented for the first time in Plaintiffs' opposition papers and was never alleged in Complaint").  Under any fair reading, the Complaint relies exclusively on a theory that the August Announcement "revealed to the market" Defendants' alleged misstatements and omissions.  Compl. ¶ 435 ("[t]he artificial inflation in Mattel's stock price was removed when the conditions and risks misstated and omitted by Defendants were revealed to the market. . . through a disclosure on August 8, 2019").[4]  *First Solar* teaches—in a passage Plaintiffs omit from their Opposition—that:

> When plaintiffs plead a causation theory based on market revelation of the fraud, [the court] evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory.

881 F.3d at 754; *see also Eng v. Edison Int'l*, 2018 WL 1367419, at *2 (S.D. Cal. Mar. 16, 2018), *aff'd sub nom. City of Fort Lauderdale Gen. Emps.' Ret. Sys. v. Edison Int'l*, 786 F. App'x 685 (9th Cir. 2019) (analyzing complaint to determine whether plaintiff sufficiently pleaded loss causation as causally connected to a revelation of fraud "because Plaintiff himself advanced this sole theory of loss causation in" his complaint).  The Court should evaluate the loss causation *allegations of the Complaint*—not a theory introduced in an Opposition.

*Second*, Plaintiffs' unpleaded causal chain is still squarely a revelation of truth theory:  Plaintiffs explicitly rely on the August Announcement as a revelation

---

[4] The Opposition cites several Complaint paragraphs (¶¶ 161-68, 434-39, 461) that Plaintiffs contend articulate a theory of loss causation untethered to the revelation of a fraud.  Opp. at 45.  Plaintiffs are wrong: the cited paragraphs either do not address loss causation or specifically articulate a revelation of fraud theory.

-5-

to the market, arguing that "when Mattel *disclosed* the receipt of the whistleblower letter, its stock price declined." Opp. at 43 (emphasis added). As such, the Court should analyze the theory under the *BofI* and *First Solar* framework requiring a revelation of truth and a causal connection to the claimed loss. As explained above, Plaintiffs fail to satisfy that standard. Far from revealing anything about PwC's audit opinions, the August Announcement merely disclosed the receipt of the whistleblower letter and the cancellation of the bond offering. *BofI* and *First Solar* mandate that disclosure fails to plead loss causation.[5]

*Third*, Plaintiffs' unpleaded causal chain fails to establish a relationship between PwC's alleged misstatements and the stock drop. Plaintiffs essentially posit that the existence of Mattel's financial misstatements and internal control deficiencies precipitated the whistleblower letter, the existence of which precipitated the stock drop. Opp. at 43. Even if correct, this highly attenuated chain of events does not causally connect PwC's audit opinions to Plaintiffs' alleged loss. Indeed, Plaintiffs cannot even show "but for" causation because the same chain would exist even if PwC did not issue audit opinions. Thus, Plaintiffs' unpleaded causal chain does not "trace[] the loss back to '*the very facts about which [PwC allegedly] lied*.'" *First Solar*, 881 F.3d at 753 (emphasis added).

*Finally*, the absence of a stock drop in connection with either the October 2019 announcement of the restatement or the November 2019 restatement further confirms the absence of any causal relationship between PwC's audit opinions and Plaintiffs' claimed loss. Plaintiffs allege (as they must to sustain any hope of class treatment) that Mattel stock traded in an efficient market (Compl. ¶ 443(a)), meaning that the stock price reacted quickly to new information. The August Announcement supplied no information relevant to PwC, so PwC's audit opinions

---

[5] Plaintiffs incorrectly accuse PwC of suggesting that revelation of fraud is the only possible theory of loss causation. Opp. at 42, 44-45. In fact, PwC acknowledged that loss causation only requires "a causal connection" between PwC's alleged misrepresentations and Plaintiffs' loss. Mot. at 9. PwC focused on revelation of fraud because Plaintiffs attempted to plead that theory.

could not have caused the ensuing stock drop.  In October and November, when the market learned that PwC was revising its audit opinions, Plaintiffs themselves allege that *the stock price did not decline.  See id.* ¶ 439.  This absence of a negative price reaction in a market that Plaintiffs allege was efficient confirms that PwC's audit opinions, and any revelation concerning them, did not cause losses.

### B.    Plaintiffs Fail to Plead Scienter as to PwC

Plaintiffs concede that, to raise an inference of scienter, they must allege particularized facts showing PwC's audit procedures were so deficient that the audit "amounted to no audit at all, or . . . that no reasonable accountant would have made the same decisions."  *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011) (cited in Opp. at 34, 37).  The Complaint falls short of these exacting requirements because, as the Opposition acknowledges, it does not allege that PwC's practices here amounted to not conducting an audit at all.  Mot. at 15-20; *see New Mexico*, 641 F.3d at 1098 (allegations of a poorly executed audit insufficient to plead scienter).  Plaintiffs instead attempt to water down the standard by recasting it as a mere "reasonable accountant" standard and contending there is no difference between alleging scienter against an auditor and alleging scienter against an issuer where a plaintiff claims (here, implausibly) that an auditor actively participated in fraud.  *See* Opp. at 34, 36-37.  That is incorrect.

The "no audit at all" test reflects a common-sense acknowledgment that auditors, unlike corporate insiders, "lack [] a rational economic incentive . . . to participate in fraud" with their clients.  *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000), *aff'd sub nom. DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).  The very cases on which Plaintiffs rely demonstrate that courts in the Ninth Circuit uniformly recognize that "pleading sufficient facts to support a strong inference . . . is difficult because outsider auditors have more limited information than, for example, the company executives who oversee the audit."  *In re Silver Wheaton*

-7-

*Corp. Sec. Litig.*, 2019 WL 1512269, at *13 (C.D. Cal. Mar. 25, 2019) (quoting *New Mexico*, 641 F.3d at 1097) (cited in Opp. at 35-36). Indeed, the Opposition points to no case in which a court has applied a more lenient standard than the "no audit at all" test when assessing allegations of scienter against an auditor. The Court should decline Plaintiffs' invitation to ignore well-settled precedent.[6]

Moreover, the Complaint's allegations undermine Plaintiffs' central theory that PwC conspired with Mattel to defraud investors. The far stronger inference is that PwC diligently audited Mattel's year-end financial statements, in connection with which it provided Mattel with guidance on complex accounting issues: As described in PwC's brief, and as Plaintiffs begrudgingly admit (*see* Opp. at 37), the Complaint itself alleges that (i) PwC identified an error in Mattel's FY17 Q3 valuation allowance, thereby preventing Mattel from overstating its quarterly income by "hundreds of millions of dollars" (Compl. ¶¶ 103-07, 332-33); (ii) the error "was precisely the same type of error" that later gave rise to the restatement; (*id.* ¶ 121); (iii) PwC suggested enhancements to Mattel's internal controls, which surfaced the issue with the HiT IP (*id.* ¶ 115); and (iv) PwC evaluated and agreed with Mattel's conclusion to revise the useful life of the HiT IP from indefinite-lived to finite-lived (*id.* ¶¶ 119-43), an accounting decision the substance of which Plaintiffs have not challenged.[7] These allegations show PwC not only *performing an audit*, but doing so diligently, an inference far more compelling than the nefarious ones Plaintiffs suggest. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (scienter inference must be "more than merely

---

[6] *See, e.g., New Mexico*, 641 F.3d at 1097–98; *DSAM*, 288 F.3d at 390; *Buttonwood Tree Value Partners, L.P. v. Sweeney*, 667 F. App'x 238, 239 (9th Cir. 2016); *In re Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir. 1994).

[7] Plaintiffs try to obfuscate by arguing that the revision to Hit IP's estimated useful life was not "legitimate." Opp. at 36-38. But accounting treatments are not legitimate or illegitimate—they are correct or incorrect. Plaintiffs do not allege that the accounting treatment was incorrect. Indeed, the restatement maintained as correct the accounting treatment that the Complaint alleges PwC approved.

-8-

plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

In addition, Plaintiffs' failure to allege any plausible motive for PwC to engage in fraud underscores the implausibility of their claim. *See McCasland v. FormFactor Inc.*, 2009 WL 2086168, at *7-8 (N.D. Cal. Jul. 14, 2009) (scienter implausible where alleged facts "run directly counter to the plaintiffs' theory of fraud"); *N. Atl. Operating Co. v. Desertstar Wholesale*, 2015 WL 12777227, at *4 (C.D. Cal. Feb. 26, 2015) (no scienter where alleged cover-up "makes no economic sense and is, at best, implausible"). Plaintiffs argue that PwC had a motive to avoid a restatement because "PwC's clients issue significantly more restatements than clients of the other Big Four accounting firms." Opp. at 39. But there is no factual support for the implausible claim that restatements by *other* clients, reported in an article published *years after* PwC issued the allegedly false audit opinions (*see* Compl. ¶ 320), motivated PwC when it issued its opinions. The Complaint lacks any factual allegations linking any other restatement to this one: there are no allegations that another restatement involved the same PwC personnel or the same accounting issues. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210, at *16 (C.D. Cal. May 10, 2016) (allegations of "completely unrelated" misconduct do not help establish scienter). Nor does the article the Complaint cites suggest that PwC concealed accounting errors related to any restatement. Rather, these allegations—together with allegations of PwC's diligent audit of Mattel's statements—plausibly support only the *non-fraudulent* inference PwC does not conceal accounting errors where they exist. Plaintiffs' motive allegations do not contribute to an inference of scienter.

### C.   At Minimum, the Court Should Dismiss Plaintiffs' Claim Based on PwC's Audit Opinions Concerning Year-End Financials

Plaintiffs do not dispute that (i) PwC neither audited nor opined on the *quarterly* financials that form the basis of Plaintiffs' case against Mattel, and (ii)

that PwC's statements that Mattel's *yearly* financial results—the only results PwC audited or opined on—presented fairly Mattel's financial condition were, and remain, accurate.  Statements that are "quite literally true" are not fraudulent.  *See, e.g.*, *McGovney v. Aerohive Networks, Inc.* 367 F. Supp. 3d 1038, 1059 (N.D. Cal. 2019).  Thus, at minimum, the Court should dismiss Plaintiffs' claim against PwC to the extent it challenges PwC's opinions about the accuracy of Mattel's annual financial statements.  *See* Compl. ¶ 301.

Plaintiffs' only response to these dispositive points is to argue that PwC's opinions about financial results somehow were misleading because, although the opinions only concern *yearly* results, they omit that unaudited *quarterly* results were incorrect.  Opp. at 40-41.  This fraud-by-omission argument has no foundation in the Complaint.  Plaintiffs cite the Complaint at paragraph 301 (Opp. at 40-41), which asserts only that *Mattel's* 2017 Form 10-K misstated *unaudited quarterly* information; it does not identify any information PwC allegedly omitted from its audit opinion.  Moreover, there is no legal support for the proposition that PwC had a duty to opine on quarterly financial statements it did not audit.  *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) ("Rule 10b-5 is violated by nondisclosure only when there is a duty to disclose.") (citations omitted).  Settled law does not require auditors to "insist that a corporation correct inaccuracies in unaudited quarterly reports."  *See, e.g.*, *In re SeraCare Life Scis., Inc. Sec. Litig.*, 2008 WL 11508499, at *6 (S.D. Cal. Mar. 14, 2008) (distinguishing auditor's "review" of financials from an "audit," and concluding that auditor "had no duty to insist that corporation correct inaccuracies in unaudited quarterly reports") (citation omitted).

## III.  CONCLUSION

The Court should dismiss the Complaint as to PwC with prejudice.

DEFENDANT PWC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. 2:19-cv-10860-MCS-PLA

Dated:  October 26, 2020          Respectfully submitted,


                                  WILMER CUTLER PICKERING HALE
                                  AND DORR LLP


                                  By: */s/ Timothy J. Perla*
                                  Timothy J. Perla (*pro hac vice*)
                                  timothy.perla@wilmerhale.com
                                  Wilmer Cutler Pickering Hale and Dorr LLP
                                  60 State Street
                                  Boston, Massachusetts  02109
                                  Tel:    (617) 526-6000
                                  Fax:    (617) 526-5000


                                  Jenny Pelaez (Bar No. 326765)
                                  jenny.pelaez@wilmerhale.com
                                  Joshua Vittor (Bar No. 326221)
                                  joshua.vittor@wilmerhale.com
                                  Wilmer Cutler Pickering Hale and Dorr LLP
                                  350 South Grand Avenue, Suite 2400
                                  Los Angeles, CA 90071
                                  (213) 443-5300 Telephone
                                  (213) 443-5400 Facsimile


                                  Matthew T. Martens (*pro hac vice*)
                                  Matthew.martens@wilmerhale.com
                                  Wilmer Cutler Pickering Hale and Dorr LLP
                                  1875 Pennsylvania Avenue, NW
                                  Washington, DC 20006
                                  (202) 663-6921 Telephone
                                  (202) 663-6363 Facsimile


                                  *Counsel for Defendant PricewaterhouseCoopers LLP*

DEFENDANT PWC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. 2:19-cv-10860-MCS-PLA