JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
john.gildersleeve@mto.com
LAUREN C. BARNETT (SBN 304301)
lauren.barnett@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for MATTEL, INC.,
MARGARET H. GEORGIADIS,
JOSEPH J. EUTENEUER,
and KEVIN FARR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MATTEL, INC. SECURITIES LITIGATION | Case No. 19-CV-10860-MCS (PLAx) **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** Date:   January 25, 2021 Time:   9:00 a.m. Ctrm:   7C Judge:  Hon. Mark C. Scarsi |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ..................................................................................... 1

    A.    No Specific Facts Support a "Strong Inference" of Scienter ................. 1

       1.    Whitaker's Limited Account Does Not Suffice ........................... 1

       2.    Plaintiffs Cannot Explain Away PwC's Advice .......................... 4

       3.    Plaintiffs' Miscellaneous Other Arguments Fail ......................... 5

    B.    No "Revelation" of "Truth" Caused the Alleged Loss ......................... 6

       1.    No New Facts Were Revealed on August 8, 2019 ...................... 6

       2.    Plaintiffs Cannot Rewrite the Loss Causation Test ..................... 8

III.  CONCLUSION ................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Accuray, Inc. Sec. Litig.*,
    757 F. Supp. 2d 936 (N.D. Cal. 2010)....................................................................3

*In re BofI Hldg., Inc. Sec. Litig.*,
    __ F.3d __, 2020 WL 5951150 (9th Cir. 2020)..............................................*passim*

*In re Cadence Design Sys., Inc. Sec. Litig.*,
    692 F. Supp. 2d 1181 (N.D. Cal. Mar. 2, 2010)......................................................4

*In re Cisco Sys. Inc. Sec. Litig.*,
    2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ........................................................3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
    Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ....................................................................................6

*Curry v. Yelp Inc.*,
    875 F.3d 1219 (9th Cir. 2017) ..............................................................................2, 4

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ..................................................................................3

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ....................................................................................5

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................................7

*Edenbrook Capital, LLC v. RhythmOne Plc*,
    2019 WL 1791419 (N.D. Cal. Apr. 24, 2019)........................................................10

*In re Impac Mortg. Hldgs., Inc. Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008)....................................................................5

*Karinski v. Stamps.com, Inc.*,
    2020 WL 281716 (C.D. Cal. Jan. 17, 2020)...........................................................10

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016)......................................................................2, 4, 9, 10

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014)..................................................................................8

*Mauss v. NuVasive, Inc.*,
   2018 WL 656036 (S.D. Cal. Feb. 1, 2018) ..........................................................10

*Mild v. PPG Indus., Inc.*,
   2018 WL 6787351 (C.D. Cal. Dec. 21, 2018)........................................................6

*Mineworkers Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018)..........................................................................8, 9, 10

*In re New Century*,
   588 F. Supp. 2d 1206 (C.D. Cal. 2008).................................................................4

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020)............................................................................1, 6

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014)...............................................................................1

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)..................................................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014)................................................................................3

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996)...............................................................................4

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)................................................................................3

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012)..................................................................................5

*Robb v. Fitbit Inc.*,
   2017 WL 219673 (N.D. Cal. Jan. 19, 2017) .........................................................4

*Smilovits v. First Solar Inc.*,
   119 F. Supp. 3d 978 (D. Ariz. 2015).....................................................................9

-iii-

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re VeriFone Hldgs., Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ................................................................................. 3

*In re WageWorks, Inc. Sec. Litig.*,
   2020 WL 2896547 (N.D. Cal. June 1, 2020) ....................................................... 6

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) ............................................................. 10

*Webb v. SolarCity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ....................................................................... 4, 5, 6

*In re Wet Seal, Inc.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................... 5

*Zucco Ptrs., LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................................................... 2, 5

**FEDERAL RULES**

Fed. R. Civ. P. 8 ............................................................................................................. 7

Fed. R. Civ. P. 9(b) ....................................................................................................... 7

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

## I.  **INTRODUCTION**

Not every accounting error is securities fraud, as Plaintiffs' opposition confirms. Plaintiffs plead that Mattel hid nothing from its outside auditor, but rather consulted it and followed its advice at every turn. Plaintiffs concede that the error was non-cash and had no effect on Mattel's year-end financials. They concede that their narrative of alleged fraud turns on a single employee who had no contact with the individual Mattel defendants. They concede that those individuals sold no stock while the error was uncorrected. And, Plaintiffs concede—or at least cannot possibly dispute—that *no facts* about the error were publicly revealed before the stock-price decline they claim was caused by fraud.

Under Ninth Circuit law, this is not securities fraud. In pleading scienter, "[t]he PSLRA's 'strong inference' requirement has teeth." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). In pleading loss causation, specific facts must show that "the truth became known" and that its "revelation" caused the alleged loss. *In re BofI Hldg., Inc. Sec. Litig.*, __ F.3d __, 2020 WL 5951150, at *5 (9th Cir. 2020). Plaintiffs' opposition confirms they cannot plead either scienter or loss causation. The Court should dismiss the AC on those independent grounds.

## II.  **ARGUMENT**

### A.  **No Specific Facts Support a "Strong Inference" of Scienter**

Plaintiffs are wrong that "recklessness is enough to show scienter" and "recklessness is all that is required." Opp. 26 & n.2. Plaintiffs must plead "more than '*mere* recklessness.'" *Nguyen*, 962 F.3d at 414. They must plead specific facts supporting a "strong inference of, at a minimum, '*deliberate* recklessness'" that reflects "some degree of intentional or conscious misconduct." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). The AC does not meet that test.

#### 1.  **Whitaker's Limited Account Does Not Suffice**

Recognizing that "detailed and specific allegations" must establish a "nexus between the [alleged] wrongful behavior and Individual Defendants' knowledge,"

-1-

*Curry v. Yelp Inc.*, 875 F.3d 1219, 1227-28 (9th Cir. 2017), Plaintiffs argue that Whitaker, the AC's narrator, was at the "eye of the storm." Opp. 27. But the opposition's rhetoric cannot insert Whitaker into the critical meetings from which Plaintiffs *plead* he was excluded because "only VPs and above would attend," ¶ 140, nor imbue him with knowledge of decisions even he says were "beyond my understanding," ¶ 156. Whitaker recounts nothing about what matters: that is, what happened *after* other employees raised the error with CFO Euteneuer, who rightfully directed them to consult Mattel's outside auditor, PwC. ¶ 139. Nor does Whitaker deserve credit for "going on record with his identity." Opp. 27. His identity undercuts a scienter inference by revealing him as too low in the corporate hierarchy to have "reliable personal knowledge of the defendants' mental state." *Zucco Ptrs., LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009).

Plaintiffs argue that recounting hearsay does not "automatically disqualify" Whitaker, Opp. 28 (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016)), but the problem is far deeper than hearsay. Whitaker relays *no facts*—hearsay or not—that shed light on the individual defendants' state of mind, let alone facts "specific in time, context, and details." *Lloyd*, 811 F.3d at 1208. Even statements by "witnesses with sufficient reliability and personal knowledge *must themselves be indicative of scienter.*" *Zucco*, 552 F.3d at 995 (emphasis added).

For example, Whitaker relays Wong's purported statement that Euteneuer—at least before directing his team to consult PwC—"accepted" or "did not dispute" that despite "a thin sliver of hope" otherwise, a restatement would be required. ¶¶ 132, 139, 201. But that does not indicate scienter, and from there, Whitaker's purported knowledge ends. Plaintiffs ask the Court to presume that Euteneuer, with fraudulent intent, "went along with the plan to conceal the misstatement." Opp. 20. But the more compelling inference is that Euteneuer agreed with PwC's and his team's ultimate judgment that no restatement was required.

Capturing why the AC fails, Plaintiffs suggest that Euteneuer "presumably"

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

did not direct his team to consult PwC "without ever speaking another word of it to Mattel's executives or PwC." *Id.*  But Whitaker and Plaintiffs have *no idea* whether Euteneuer spoke another word to anyone, let alone insight into what he might have said or been told.  Nor does Whitaker claim to have seen documents that Euteneuer or Georgiadis also saw that might show their state of mind.  His lack of contact with them therefore is dispositive.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (rejecting "impressions of witnesses who lacked direct access to the executives"); *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *11 (N.D. Cal. Mar. 29, 2013) ("[T]here are no facts alleging that any of the confidential witnesses had direct contact with either [CEO] or [CFO]. Consequently, [their] statements … are insufficient to establish a strong inference of scienter."); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 948-49 (N.D. Cal. 2010) ("[S]ix of the seven individual Defendants … had no personal interactions with any of the CWs.  Thus, it is difficult to surmise how the opinions and observations of the CWs could support a reasonable inference about what these individual Defendants knew or did not know ….").

The decisions Plaintiffs cite only confirm they fail to plead scienter.  In *In re Quality Systems, Inc. Securities Litigation*, the CEO sold 87% of his stock, the individual defendants publicly admitted they monitored the relevant sales data, and seven witnesses, including two directors, confirmed the admissions.  865 F.3d 1130, 1138-39, 1145-46 (9th Cir. 2017).  In *In re Daou Systems, Inc.*, the individual defendants sold $30 million of stock and many witnesses showed "with specificity that the top executives actually directed the improper revenue recognition."  411 F.3d 1006, 1023-24 (9th Cir. 2005).  And in *In re VeriFone Holdings, Inc. Securities Litigation*, for three straight quarters, the CEO and CFO ordered adjustments that "happened to be the precise amounts … identified as necessary to hit earnings targets," which was either fraud or a series of absurd coincidences.  704 F.3d 694, 709 (9th Cir. 2012).  By contrast, the AC pleads that Mattel followed mistaken

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

advice on an arcane tax accounting question, and pleads nothing relevant about what the individual defendants did or did not know.

Finally, Plaintiffs argue that CEO Georgiadis, about whom no specific facts are pleaded, had scienter because scienter "pervaded Mattel's C-suite."  Opp. 30. But even if Plaintiffs showed pervasion (they do not), no "C-suite" shortcut exists around establishing "Individual Defendants' knowledge."  *Curry*, 875 F.3d at 1227-28.  In *Robb v. Fitbit Inc.*, the court inferred executives' knowledge about "the basic functioning of products that constituted 80% of Fitbit's revenue stream," not a non-cash accounting error with no effect on year-end financials.  2017 WL 219673, at *6 (N.D. Cal. Jan. 19, 2017); *see In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1192-93 (N.D. Cal. Mar. 2, 2010) (inferring knowledge of "certain key facts about certain key deals" that "made the difference between missing and meeting Cadence's projections").  And, Plaintiffs barely mention Farr at all.

### 2.    Plaintiffs Cannot Explain Away PwC's Advice

Plaintiffs devote five sentences of a 51-page brief to their own allegations that PwC advised Mattel *not* to restate financials or disclose a control weakness.  Opp. 28-29; ¶¶ 23, 111, 177, 305.  Plaintiffs decline to discuss *any* decision cited in the opening brief on this point.  Mot. 15-16 (citing, *e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (scienter less likely where "error was so subtle that it appears that even the company's … professional auditors missed it"); *Lloyd*, 811 F.3d at 1207 (scienter more likely where "auditors counseled against a practice")); *see also Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) ("If it is true that defendants withheld material information from their accountants, defendants will not be able to rely on their accountant's advice as proof of good faith.").

Plaintiffs cite one decision, *In re New Century*, but there too, the court held: "'Although a clean outside audit opinion does not rule out a finding of scienter, a clean audit may be considered in determining whether there is scienter.'"  588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008) (quoting *In re Wet Seal, Inc.*, 518 F. Supp. 2d

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

1148, 1166 (C.D. Cal. 2007)).  In *New Century*, a clean audit did not "preclude" scienter because, unlike here, the auditor made no "specific references" to relevant issues and ample other allegations not present here supported a "strong inference" of scienter, including "an array of confidential witness statements" and $53 million in stock sales by the individual defendants.  *Id.* at 1225, 1231-32.

Plaintiffs argue that PwC's advice to Mattel cannot bear on scienter because PwC allegedly was "complicit."  Opp. 29.  Conclusory allegations of complicity, however, do not excise auditor approval from the scienter calculus, especially as Plaintiffs fail even to plead with whom at Mattel PwC purportedly was complicit.  Plaintiffs plead nothing about any interaction between PwC and either Euteneuer or the lower-level employees who, Plaintiffs concede, held out hope that a restatement might not be required.  ¶¶ 132, 134.

That Mattel attributed the error not just to "reliance on the accounting advice … [of] Mattel's outside auditor," but also to "lapses in judgment by management," does not negate PwC's advice, either.  Opp. 23; ¶ 177.  "Lapses in judgment" are not an intent to defraud.  *See DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud."); *see also Webb*, 884 F.3d at 855-56 (no scienter inference even if facts "paint a picture of a mismanaged organization"); *Zucco*, 552 F.3d at 991 ("inexcusable negligence" is not enough); *In re Impac Mortg. Hldgs., Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1087 (C.D. Cal. 2008) ("poor judgment" is not enough).

### 3.    Plaintiffs' Miscellaneous Other Arguments Fail

On stock sales, Plaintiffs misstate the law.  Opp. 29 ("The Mattel Defendants also incorrectly argue that their lack of stock sales undercuts any scienter inference.").  "[L]ack of stock sales can detract from a scienter finding," *Webb*, 884 F.3d at 856, and "supports the opposite inference," *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012); *see also Nguyen*, 962 F.3d at 415 ("If

-5-

defendants had sought to profit from this scheme … , the theory might have more legs."). True, scienter does not *require* insider selling. But the absence of such allegations indisputably further undercuts any scienter inference.

On Euteneuer's departure, Plaintiffs bypass all three Ninth Circuit decisions cited in the opening brief. Opp. 23-24; Mot. 16-17. Plaintiffs cannot do what the Ninth Circuit requires: plead specific facts to "rebut the 'reasonable assumption'" that the bare fact of a restatement, not fraud, caused the departure. *Webb*, 884 F.3d at 857. Plaintiffs' cases show the kind of facts that rebuttal requires. *See In re WageWorks, Inc. Sec. Litig.*, 2020 WL 2896547, at \*7 (N.D. Cal. June 1, 2020) ("KPMG's repeated, strident, and unusual calling out of [CEO], including calling for his resignation, in connection with the restatements"); *Mild v. PPG Indus., Inc.*, 2018 WL 6787351, at \*2 (C.D. Cal. Dec. 21, 2018) (terminated executive "'directed his subordinates to improperly override … internal controls'"). Plaintiffs allege no such facts. They also ignore that Euteneuer's over six-month transition period undercuts any scienter inference. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017).

Finally, Plaintiffs claim "internal control deficiencies were severe, pervasive, obvious, well-known and widely-discussed," Opp. 33, without citing *any* pleaded facts to sustain this flight of "alarming adjectives." *Nguyen*, 962 F.3d at 416. Plaintiffs argue that purported "swings" in the *third* quarter of 2017 were "grounds enough to know the risk of a misstatement was very high." Opp. 18-19. But the opposite is true. The first "swing" reflected Mattel's and PwC's quick response to the late-breaking Toys "R" Us bankruptcy, ¶ 93, and the second reflected PwC's promptly catching Whitaker's error, ¶ 111.

## B. No "Revelation" of "Truth" Caused the Alleged Loss

### 1. No New Facts Were Revealed on August 8, 2019

Plaintiffs misstate the standard for pleading loss causation. Opp. 41 ("Loss causation is subject only to Rule 8(a)'s notice pleading requirements."); *id.* 2 ("loss

-6-

causation … is subject only to Rule 8's notice pleading requirements"). "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

In any event, Plaintiffs fail to plead loss causation. The Ninth Circuit recently summarized "the loss causation requirement, with the aim of illuminating the function this element serves." *BofI*, 2020 WL 5951150, at *4. It held:

> To establish loss causation in a fraud-on-the-market case, the plaintiff must show that after purchasing her shares and before selling, the following occurred: ***(1) "the truth became known," and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated***.

*Id.* at *5 (emphasis added) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (requiring facts showing that "share price fell significantly after the truth became known")).

Plaintiffs claim "the truth became known" when, on August 8, 2019, Mattel disclosed that it had been "made aware of an anonymous whistleblower letter" and was terminating a bond offering set to close that day "[t]o provide the Company with an opportunity to investigate the matters set forth in the letter." Opp. 15; *see id.* 43 ("when Mattel disclosed the receipt of the whistleblower letter, its stock price declined, resulting in Plaintiffs' loss"); ¶ 435 ("The information was disseminated through a disclosure on August 8, 2019.").

No specific pleaded facts show "the truth became known" on August 8, 2019. *BofI*, 2020 WL 5951150, at *5. *No factual information* about any accounting error, or about Mattel's financial statements or internal controls, was revealed that day. That is apparent from the face of Mattel's three-line Form 8-K filing. Ex. 4 at 255. And it is confirmed by market analysts, who called the whistleblower letter "a mystery," Ex. 16 at 487, that "could be anything," Ex. 10 at 432. Plaintiffs plead exactly when the "revelation" of "truth" occurred: on October 29, 2019, when Mattel described the error and announced it would restate financials and had control weaknesses, ¶ 172, and on November 12, 2019, when Mattel issued the restatements

REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

and described the weaknesses, ¶ 439. Those "revelation[s]" could not possibly have "caused the fraud-induced inflation in the stock's price to be reduced or eliminated" on August 8, 2019, nearly three months earlier. *BofI*, 2020 WL 5951150, at \*5.

The facts of *BofI* are instructive. An employee filed a whistleblower lawsuit, "the details of which were disclosed in a *New York Times* article published that same day." *Id.* at \*3. The next day, BofI's stock price fell 30%. *Id.* The Ninth Circuit held the loss actionable because the factual disclosure preceding the stock drop was "*highly detailed and specific*." *Id.* at \*7 (emphasis added). Critically, it contrasted that disclosure with the "announcement of [an] investigation standing alone," a non-actionable disclosure that "does not reveal to the market any *facts*," such that "all the market could react to was 'speculation' about 'what the investigation will ultimately reveal.'" *Id.* (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014)).

This case is precisely the "different situation" that the Ninth Circuit, applying *Loos* (a decision Plaintiffs call "irrelevant," Opp. 45), held *cannot* support loss causation. *BofI*, 2020 WL 5951150, at \*8. A whistleblower letter on an unspecified topic, and a to-be-conducted investigation, did not "reveal[] new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *Id.* at \*5. Indeed, here, the market's "'speculation' about 'what the investigation will ultimately reveal,'" *id.* at \*7, concerned not just the investigation's outcome, but its very subject matter. *E.g.*, Ex. 12 at 450 ("there is wide range of speculation as to what the claim entails"); Ex. 13 at 456 ("[T]here are too many unknowns. The list of hypotheticals ranges from the benign to the extreme.").

### 2. Plaintiffs Cannot Rewrite the Loss Causation Test

Plaintiffs repeatedly invoke *Mineworkers Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018), as a cure-all for defective loss causation allegations. Opp. 41-47. But there is nothing transformative in *First Solar*'s description of loss causation as a "proximate cause" inquiry. Rather, the Ninth Circuit endorsed its

intervening decision in *Lloyd*, discussed at length in the opening brief.  *See First Solar*, 881 F.3d at 753 ("Our most recent decision on loss causation, *Lloyd*, was published after the district court's order and clarifies the applicable rule.").  And, as with *BofI*, the facts of *First Solar* confirm the AC fails.  First Solar's stock price fell 25% when it announced that its CEO was leaving but did not say why, a disclosure akin to Mattel's August 8, 2019 8-K.  The district court—applying what the Ninth Circuit called the "correct test," *id.* at 752—held that unlike other disclosures, the disclosure of the CEO's departure was *not* actionable because it revealed no new facts about the alleged fraud, but rather reflected only market "speculation." *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 997 (D. Ariz. 2015).

Nothing in Ninth Circuit law permits stringing together, in hindsight, what Plaintiffs christen a "chain of causation."  Opp. 3; *see id.* 43 ("chain of proximate causation"), *id.* 45 ("chain of events"), *id.* 47 ("chain of causation").  Plaintiffs claim that but for the accounting error in 2017, there would have been no letter in 2019; that but for the chance timing of when Mattel received the letter, the offering would not have been cancelled at the last minute (an "extremely rare" occurrence, ¶ 167); and that but for the last-minute cancellation, no uncertainty would have led investors to sell Mattel stock.  Opp. 47 ("even assuming *arguendo* that Mattel's stock price decline was in response to pulling the bond offering, loss causation is still adequately pled" because Mattel "pulled the bond offering because it received the whistleblower letter").

That is not proximate causation—it is *but-for* causation, which the Ninth Circuit forecloses by requiring that an alleged fraud "foreseeably caused" a loss. *First Solar*, 881 F.3d at 753.  Plaintiffs cannot explain how this sequence, which turns on the coincidence that Mattel received the letter two days before the offering, was foreseeable.  Nor can Plaintiffs show it was foreseeable that the restatement would cause a loss.  Analysts called it "benign," Ex. 16 at 487, and "much less significant an issue than feared," Ex. 14 at 471—that is, not the sort of "bombshell"

-9-

the Ninth Circuit has found makes a stock drop inevitable. *Lloyd*, 811 F.3d at 1210. Indeed, on news of the restatement, Mattel's stock price rose. ¶ 171.

Plaintiffs grossly misstate *Waterford Township Police & Fire Retirement System v. Mattel, Inc.*, 321 F. Supp. 3d 1133 (C.D. Cal. 2018), as finding "loss causation adequately pled where plaintiff 'at least alleged a correlation between' disclosures and stock price declines." Opp. 42. Neither Judge Phillips nor the Ninth Circuit reached loss causation, let alone found it "adequately pled." *Id.* *Waterford* was dismissed at the pleading stage and the dismissal was affirmed. Nor did Judge Phillips hold that *correlation* suffices for loss causation. Rather, reciting the parties' arguments, she noted that "Defendants do not appear to dispute that Plaintiff has at least alleged a correlation between the … disclosures and significant declines," before "declin[ing] to rule on loss causation." *Waterford*, 321 F. Supp. 3d at 1157.

Plaintiffs' other cited cases also are inapt. In *Karinski v. Stamps.com, Inc.*, the disclosure revealed *new facts*—the loss of the company's exclusive contract with USPS, reflecting 50% of its revenue. 2020 WL 281716, at *17 (C.D. Cal. Jan. 17, 2020). *Edenbrook Capital, LLC v. RhythmOne Plc*, 2019 WL 1791419 (N.D. Cal. Apr. 24, 2019), did not even involve a Section 10(b) claim. And in *Mauss v. NuVasive, Inc.*, the defendants insisted on a "revelation of fraud" requirement. 2018 WL 656036, at *4 (S.D. Cal. Feb. 1, 2018). Despite Plaintiffs' strawman view of what "Defendants' loss causation arguments boil down to," Opp. 2-3, Defendants have never claimed that *fraud* must be revealed. Rather, as *BofI* confirms, there must be a "revelation" of "truth" in the form of "new facts." 2020 WL 5951150, at *5; *see First Solar*, 881 F.3d at 754 ("it is the underlying facts concealed by fraud that affect the stock price").

Notice pleading, but-for causation, and correlation are not Ninth Circuit law. The AC cannot plead loss causation based on the August 8, 2019 disclosure.

## III.   CONCLUSION

The claims against the Mattel Defendants should be dismissed with prejudice.

-10-

Dated:  October 26, 2020

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:  _____ */s/ John W. Spiegel* _____
                        JOHN W. SPIEGEL

Attorneys for MATTEL, INC.,
MARGARET H. GEORGIADIS,
JOSEPH J. EUTENEUER,
and KEVIN FARR

-11-
REPLY MEMORANDUM ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT