Jenny Pelaez (Bar No. 326765)
jenny.pelaez@wilmerhale.com
Joshua Vittor (Bar No. 326221)
joshua.vittor@wilmerhale.com
Wilmer Cutler Pickering Hale and
Dorr LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Matthew T. Martens (*pro hac vice*)
Wilmer Cutler Pickering Hale and
Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6921 Telephone
(202) 663-6363 Facsimile
matthew.martens@wilmerhale.com

Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000 Telephone
(617) 526-5000 Facsimile

Counsel for Defendant PricewaterhouseCoopers LLP

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| In re Mattel, Inc. Securities Litigation | Case No. 19-CV-10860-MCS (PLAx) |
|---|---|
| | **DEFENDANT PRICEWATERHOUSECOOPERS LLP'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND NOTICE OF JOINDER TO MATTEL'S OPPOSITION** |
| | Judge: Hon. Mark C. Scarsi<br>Courtroom: 7C, 7th Floor<br>Date: September 20, 2021<br>Time: 9:00 a.m. |

Plaintiffs seek certification of a class of purchasers of Mattel common stock "from August 2, 2017 to August 8, 2019, inclusive, and who were damaged thereby." Notice of Motion, ECF No. 90 at 1 (the "Plaintiffs' Proposed Class"). For the reasons stated in Mattel's concurrently filed Opposition, which Defendant PricewaterhouseCoopers LLP ("PwC") joins, the Motion should be denied in its entirety. PwC submits this Opposition to the definition of Plaintiffs' Proposed Class because it includes persons without Article III standing to sue PwC. Consequently, to the extent the Court certifies a class at all, it should create a subclass for the claim against PwC composed of investors who purchased Mattel stock between February 27, 2018 and August 8, 2019 (the "Proposed PwC Subclass").

## I.    THE COURT SHOULD CREATE A PWC SUBCLASS

The Court has authority under Rule 23(c)(5) to create subclasses. *See, e.g., Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786-87 (9th Cir. 1982) (empowering Court to create subclasses); *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1072 (N.D. Cal. 2005) ("A court may divide a class into subclasses on motion of either party, or *sua sponte*."). Here, the Court should create a PwC subclass because Plaintiffs' Proposed Class includes investors who lack standing and presents significant manageability problems. The Proposed PwC Subclass solves these issues.

### A. Plaintiffs' Proposed Class Includes Members Who Lack Standing to Sue PwC

Under Ninth Circuit precedent, "[n]o class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (internal citations and quotation marks omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 792-93 (9th Cir. 2021) (holding that even a *de minimis* percentage of uninjured class members is sufficient to defeat class certification). The reason is simple:

Rule 23 requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  If a portion of the class is uninjured, "common questions of law or fact would not be shared by substantially all the class members . . . ."  *Olean*, 993 F.3d at 792.[1]  Further, because class certification is a procedural mechanism under the Federal Rules, and does not alter substantive rights, it would be anomalous if an investor who could not sue individually due to a lack of Article III standing could nevertheless become part of a class under Rule 23.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right' . . . .") (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)); *Transunion LLC v. Ramirez*, 594 U.S. ___, slip op. at 15 (June 25, 2021) ("Every class member must have Article III standing in order to recover individual damages [because] 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, *class action or not*.'") (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)) (emphasis added).

Ninth Circuit precedent holds that an investor has standing to bring a securities fraud claim only if she purchases shares ***after*** the alleged misstatement: "[a]s a matter of law, 'conduct actionable under Rule 10b-5 must occur ***before*** investors purchase the securities.'"  *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999) (quoting *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1487 (9th Cir. 1991)) (emphasis added); *see also Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) ("Statements issued after a plaintiff's purchase of stock cannot form the basis of a Section 10(b) or Rule 10b-5 claim because the

---

[1] For example, in *Mazza*, a false advertising case, the proposed class included "many class members [who] were never exposed to the allegedly misleading advertisements."  666 F.3d at 595.  The panel concluded that "the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading."  *Id.* at 596.

statements could not have affected the plaintiff's decision to purchase stock."). Investors who purchase stock prior to the alleged misstatement lack standing to sue. *See, e.g.*, *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 605 (N.D. Cal. 1991) ("Individuals who purchase prior to the performance of such allegedly fraudulent acts lack standing to complain about later misleading statements.").  The class period in a securities case therefore cannot commence until the date of the first alleged misstatement.  *See, e.g.*, *In re Tenet Healthcare Corp. Sec. Litig.*, 2007 WL 5673884, at *1 (C.D. Cal. Dec. 5, 2007) ("The parties agree that the Class Period for KPMG should start on August 15, 2000, *the first day that KPMG allegedly misled the market*.") (emphasis added); *Ravens v. Iftikar*, 174 F.R.D. 651, 668 (N.D. Cal. 1997) (holding that, in a securities case, a class period should begin "when a security's price begins its divergence from value"); *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) (noting that "the district court is well situated to winnow out those non-injured members . . . [by] redefin[ing] the class definition").

Here, these principles require the Court to create a subclass as to the PwC claim that begins no earlier than February 27, 2018.  Although the Complaint asserts that the Mattel Defendants made a misstatement on August 2, 2017, the Complaint does not assert a misstatement by PwC until February 27, 2018, *i.e.*, the first PwC audit opinion that Plaintiffs challenge in this case.  Compl. ¶ 372; *see also* Declaration of Jenny Pelaez ("Pelaez Decl."), Ex. A at 24-25 (Plaintiffs' Response to Request For Admission, admitting that the 2017 audit opinion was PwC's first alleged misstatement).  Thus, an investor prior to February 27, 2018 did not purchase shares at a price inflated on account of an alleged misstatement by PwC.  Plaintiffs admitted as much in response to a Request For Admission.  *See* Pelaez Decl., Ex. A at 24-25 (admitting that, prior to February 27, 2018, "the market price of Mattel stock was not inflated due to the alleged misstatements explicitly made by PwC," and that "a person who purchased Mattel stock prior to

February 27, 2018 could not have suffered a loss due as to that purchase to any of the alleged misstatements made explicitly by PwC").

Because Plaintiffs' Proposed Class would impermissibly capture investors who lack standing to sue PwC (*i.e.*, purchasers between August 2, 2017 and February 26, 2018), the Court should at most certify as to PwC a subclass beginning on February 27, 2018. *See Torres*, 835 F.3d at 1137; *Mason v. Ashbritt, Inc.*, 2020 WL 789570, at \*7 (N.D. Cal. Feb. 7, 2020) ("[N]on-injured class members can be excluded through the normal operation of Rule 23.").[2]

### B. Plaintiffs' Proposed Class Would Create Manageability Problems

Although the inclusion of persons who lack standing to sue PwC is dispositive, the Court should also consider that Plaintiffs' Proposed Class raises manageability problems as to the PwC claim. *See* Fed. R. Civ. P. 23(b)(3) (requiring Plaintiffs to show that their proposed class is "superior to other available methods for fairly and efficiently adjudicating the controversy"); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). If the "likely difficulties in managing a class action" outweigh the efficiencies associated with class-wide adjudication of a plaintiff's claims, class treatment is not appropriate. Fed R. Civ. P. 23(b)(3)(D); *see also Wolin*, 617 F.3d at 1175-76 ("Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair.").

---

[2] Case law allows a class definition inadvertently to capture a *de minimis* number of uninjured individuals, but that is not what is occurring here. The Ninth Circuit in *Olean* recently noted that "5% to 6% constitutes the outer limits of a de minimis number" of uninjured class members that could be tolerated. 993 F.3d at 792. Here, the Plaintiffs' Proposed Class includes 184 days (or 25% of the entire 736-day period) prior to PwC's first allegedly actionable conduct.

PWC OPPOSITION TO MOT. FOR CLASS CERTIFICATION
Case No. 2:19-cv-10860-MCS-PLA

Certifying a single class that includes persons with no claim against PwC would create manageability problems that subclassing avoids.  For instance, a single class would breed confusion: investors prior to February 27, 2018 receiving a notice that they are part of a single class, in a case with PwC as a defendant, could wrongly conclude that they have a claim against PwC when that is not in fact true.  Moreover, as the case progresses, if Mattel for any reason drops out (*e.g.*, settles or wins summary judgment), the Court would have to redo class certification and approve a new notice process to narrow the class to only those investors with claims against PwC.  Further, with respect to opt out rights, a single class removes the possibility of an investor wishing to opt out as to just one of Mattel or PwC.  At trial, if a jury were to find against only one of PwC or Mattel, it would be ambiguous or complicated to determine how to treat investors between August 2, 2017 and February 27, 2018.  If there is a claim submission process (either via settlement or post judgment), the Court would need to apportion damages to ensure that investors between August 2, 2017 and February 27, 2018 do not receive a payout as to the claim against PwC.  Finally, should PwC prevail in this litigation, there could be ambiguity as to the scope of res judicata— investors prior to February 27, 2018 could contend they were wrongfully included in the class and are not bound.

The Court can easily avoid these issues by certifying the Proposed PwC Subclass.  Doing so will mean that, no matter how this case proceeds, it is clear to the parties, the class members, and the Court which investors are suing PwC, and thus which investors are bound by any judgment or receive any payout.  Subclassing would also simplify future proceedings if one of PwC or Mattel drop out of the case.  *See, e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 624 (C.D. Cal. 2009) (creating subclasses to "help divide the issues[,]" "enhance manageability and avoid confusion"); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 104-05 (S.D.N.Y. 1999) (creating subclasses because "although a single overall

PWC OPPOSITION TO MOT. FOR CLASS CERTIFICATION
Case No. 2:19-cv-10860-MCS-PLA

scheme" was alleged, "the proof of the scheme will relate to different methods and different periods" because one defendant did not "have any alleged or demonstrated participation in the overall scheme" until a later date); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 133 (S.D.N.Y. 2019) (splitting proposed class into subclasses, by claim, where single class would be overbroad as to some class members, and where one subclass "would likely be significantly larger" than the other subclass).

## II.   CONCLUSION

For the reasons stated in the Mattel Opposition, the Court should deny the Motion altogether.  Alternatively, for the reasons stated herein, the Court should, at most, certify a subclass as to PwC that begins no earlier than February 27, 2018.

PWC OPPOSITION TO MOT. FOR CLASS CERTIFICATION
Case No. 2:19-cv-10860-MCS-PLA

Dated:  July 12, 2021

Respectfully submitted,

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:  */s/ Timothy J. Perla*
Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000 Telephone
(617) 526-5000 Facsimile

Jenny Pelaez (Bar No. 326765)
jenny.pelaez@wilmerhale.com
Joshua Vittor (Bar No. 326221)
joshua.vittor@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Matthew T. Martens (*pro hac vice*)
Matthew.martens@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6921 Telephone
(202) 663-6363 Facsimile

*Counsel for Defendant PricewaterhouseCoopers
LLP*