1  Jonathan D. Uslaner (Bar No. 256898)       Jenny Pelaez (SBN 326765)
   jonathanu@blbglaw.com                       Jenny.Pelaez@wilmerhale.com
2  Lauren M. Cruz (Bar No. 299964)            Joshua Vittor (SBN 326221)
   lauren.cruz@blbglaw.com                     Joshua.Vittor@wilmerhale.com
3  **BERNSTEIN LITOWITZ BERGER**              **WILMER CUTLER PICKERING**
   **& GROSSMANN LLP**                        **HALE AND DORR LLP**
4  2121 Avenue of the Stars                   350 South Grand Ave., Suite 2400
   Los Angeles, CA 90067                      Los Angeles, CA 94304
5  Telephone: (310) 819-3470                  Telephone: (213) 443-5300
                                              Fax: (213) 443-5400
6  John Rizio-Hamilton (*pro hac vice*)
   johnr@blbglaw.com
7  **BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**                        *Counsel for Defendant*
8  1251 Avenue of the Americas                *PricewaterhouseCoopers LLP*
   New York, New York 10020
9  Telephone: (212) 554-1400
   Facsimile: (212) 554-1448
10
   *Lead Counsel for Lead Plaintiffs and the*
11 *Class*
12 [Additional counsel appear on signature page]

13              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
14                    **WESTERN DIVISION**

15

16 | *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-cv-10860-MCS (PLAx) |

17                                              **JOINT STIPULATION**
                                                **REGARDING PLAINTIFFS'**
18                                              **MOTION TO COMPEL**
                                                **DISCOVERY FROM**
19                                              **PRICEWATERHOUSECOOPERS**
                                                **LLP**
20
                                                Date: August 11, 2021
21                                              Time: 10:00 a.m.
                                                Ctrm: 780, 7th Floor
22
                                                Discovery Cutoff: December 3, 2021
23                                              Pretrial Conf.: Not Set
                                                Trial Date: Not Set
24
                                                The Honorable Paul L. Abrams
25
                                                **DISCOVERY MATTER**
26
                                                **REDACTED VERSION OF DOCUMENT**
27                                              **PROPOSED TO BE FILED UNDER SEAL**
28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................1

I.      PLAINTIFFS' INTRODUCTORY STATEMENT ...............................................1

II.     DEFENDANT'S INTRODUCTORY STATEMENT .........................................4

III.    DISCOVERY IN DISPUTE ...............................................................................6

IV.     PLAINTIFFS' ARGUMENT ...............................................................................7

        1.      The Appropriate Search Period Starts Three Months Before the Class Period ...................................................................................8

        2.      The Appropriate Search Period Includes March 2018 Through August 2019 .....................................................................................10

        3.      PwC Must Provide in Response to Interrogatory No. 4 Information About Its Oral Presentations to the Government ...............12

V.      DEFENDANT'S ARGUMENT .........................................................................14

        1.      PwC Conducted A Reasonable Search For Documents Responsive to Plaintiffs' Requests for Production ...................................15

                a.      Plaintiffs' Request For Additional Documents Created Between May and July 31, 2017 Is Unjustified and Disproportionate.................................................................16

                b.      Plaintiffs' Request For Additional Documents Created Between March 2018 and August 2019 Is Unjustified and Disproportionate.................................................................17

        2.      PwC's Response to Interrogatory No. 4 Complies With Its Obligations Under Rule 33.................................................................20

In accordance with L.R. 37-2, Lead Plaintiffs DeKalb County Employees Retirement Plan and New Orleans Employees' Retirement System (collectively, "Plaintiffs"), together with Defendant PricewaterhouseCoopers LLP ("PwC"), submit this Joint Stipulation setting forth the parties' respective positions regarding Plaintiffs' motion to compel.  The parties exchanged correspondence and met-and-conferred but were unable to resolve the matter.  In accordance with Local Rule 37-2.1, a copy of the initial case management order is attached as Exhibit 1 to the accompanying declaration of John Rizio-Hamilton (the "Rizio-Hamilton Declaration").

## I.   PLAINTIFFS' INTRODUCTORY STATEMENT

This motion concerns Defendant PwC's refusal to search for and produce (i) responsive documents dated between May 2017 and July 31, 2017, which is the three-month period leading up to the Class Period; and (ii) responsive emails and quarterly workpapers dated between March 2, 2018 and August 2019, which is during the heart of the Class Period and when 60% of the misstatements at issue were made. This motion also concerns PwC's refusal to provide information about its oral presentations to the U.S. Department of Justice ("DOJ") and the SEC concerning the fraud at issue in response to Plaintiffs' Interrogatory No. 4.

The Class Period in this Action begins on August 2, 2017, when PwC's client, Mattel, filed its report with the SEC for the second quarter of 2017 (the "Q2 2017 10-Q") and runs until August 8, 2019, when Mattel disclosed that it had been made aware of a whistleblower letter concerning the fraud at issue in this case.  In the Q2 2017 10-Q and Mattel's subsequent SEC filings, Defendants asserted—falsely—that Mattel had effective internal controls over financial reporting.  In reality, as detailed in the Complaint and confirmed by former Mattel executives, Mattel's internal controls suffered from severe deficiencies.  *See* Rizio-Hamilton Decl. Ex. 4.  These deficiencies contributed to material misstatements in Mattel's financial statements contained in its SEC filings during the Class Period.  Significantly, Mattel and PwC knew of the misstated financial results but, rather than disclose the known errors, they

conspired to conceal them from investors.  This deception succeeded until early August 2019, when a whistleblower ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ *See* Rizio-Hamilton Decl. Ex. 5. Following an investigation by its Audit Committee, Mattel issued a formal restatement in which it conceded that its financial results were materially misstated and admitted to control deficiencies.  Mattel separated from its CFO and PwC removed its lead audit partner for Mattel, Defendant Joshua Abrahams.  The DOJ initiated a criminal investigation into the misconduct at issue, and the SEC initiated a civil investigation.

In this Action, Plaintiffs must (i) prove that each of the challenged SEC filings were false when issued and made with scienter; and (ii) overcome Defendants' affirmative defenses, including Mattel's stated defense that it should not be liable because it justifiably relied upon "PricewaterhouseCoopers staff and partners, including Joshua Abrahams, Chip Lightfoot, and John Brierley" (Mattel Defendants' "Reliance Defense").  *See* Rizio-Hamilton Decl. Ex. 6 at 2.  Thus, Plaintiffs requested the documents subject to this motion.

***Pre-Class Period Documents.***  PwC's refusal to search for responsive documents preceding the Class Period deprives Plaintiffs of critical evidence and is at odds with established precedent in this District.  As one example, evidence concerning PwC's analysis of Mattel's internal controls' effectiveness in the quarter covered by the Q2 2017 10-Q necessarily exists in the time shortly before the Class Period began. This evidence is relevant to the falsity of Mattel's statements on August 2, 2017 (i.e., the first day of the Class Period) about effective internal controls and its knowledge thereof.  Indeed, what could be more relevant to those issues than documents showing that Mattel's own auditor identified deficiencies and weaknesses in Mattel's internal controls during the months leading up to the Class Period?  Reasons such as these are why courts in this District have repeatedly found that "facts predating the class period

are relevant to establish that statements made during the class period were materially false" and that "'common sense' dictates that facts relevant to scienter 'will ordinarily date from before any alleged misrepresentations' because the 'circumstances preceding the statements ... would be among those knowable at the time of the statements.'"  *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012) (citing cases).  Thus, PwC should search for responsive documents from, at minimum, the three months preceding the Class Period.

***Class Period Documents***.  PwC also refuses to search for responsive documents dated during much of the Class Period itself.  Specifically, PwC refuses to search for and produce (i) emails dated between March 2, 2018 and August 2019, which constitutes 70% of the Class Period; and (ii) PwC's workpapers for Mattel's quarterly financial statements for 2018 and the first and second quarters of 2019.  PwC's position ignores, among other things, that over half of the misstatements in this Action were made during this period.  PwC was Mattel's auditor throughout this period, reviewed each of these filings, and issued false audit opinions during this period.

For the same reasons documents immediately preceding the Class Period are relevant to prove Defendants knowingly made false statements at the start of the Class Period, documents from during the Class Period are relevant to prove Defendants knowingly made false statements during the Class Period.  They are also relevant to the whistleblower's accusations and identity.  PwC claims it lacks knowledge of the whistleblower's identity.  There is little wonder why: PwC has refused to search its employees' emails from the months predating the August 2, 2019 letter.

***Oral Presentations to the Government***.  PwC's counsel has admitted that PwC made oral presentations to the SEC and DOJ in connection with their investigations of Defendants' violations of the securities laws.  Yet PwC refuses to identify the information that it provided during those oral presentations.  Such information is relevant to determining what, if any, admissions PwC made to the Government and to test whether PwC waived privilege.  Indeed, to the extent that PwC provided any

"privileged" information to the SEC or the DOJ, it waived privilege over such information. *See Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4286325, at *1 (N.D. Cal. Sept. 22, 2017) ("Marvell waived any work-product or attorney-client privilege over those documents by presenting its findings to the SEC"). Indeed, PwC's counsel has been ordered to produce otherwise privileged witness interview memoranda that it summarized to the SEC during oral presentations. *See In re Banc of Ca. Sec. Litig.*, 2018 WL 2373860, at *1 (C.D. Cal. May 23, 2018). Plaintiffs are entitled to a response to Interrogatory No. 4 to determine whether a similar waiver occurred here.

## II.    **DEFENDANT'S INTRODUCTORY STATEMENT**

PwC has already agreed to a broad scope of discovery that fulfills Plaintiffs' need to gather relevant information. The additional requests Plaintiffs now press are cumulative, unduly burdensome, and seek irrelevant materials. The Court should deny relief.

***Plaintiffs' Document Requests.*** PwC has produced over 300,000 pages of documents in response to Plaintiffs' 51 requests for production, including audit work papers, electronic discovery from 23 custodians, copies of productions to the government, and other documents. PwC has also consistently maintained its willingness to produce additional documents upon a reasonable proposal from Plaintiffs, and, in an effort to resolve Plaintiffs' specific concerns, recently produced additional electronic communications from August 1, 2019 through November 22, 2019. But Plaintiffs' broad request—that PwC undertake a search of electronic documents from two dozen custodians for an additional 20 months—has no meaningful limitation and is not proportional to the needs of the case.

Plaintiffs' claim against PwC is limited to two allegedly fraudulent statements, the first of which did not occur until more than six months after the alleged class period began: (1) PwC's year-end audit opinion for Mattel's 2017 year-end disclosures, dated February 28, 2018, and (2) PwC's year-end audit opinion for Mattel's 2018 year-end disclosures, dated February 22, 2019. PwC has already conducted a reasonable search

for and produced documents related to those events and beyond, including the most pertinent source of information related to PwC's audit, which are the audit workpapers.

Given that Plaintiffs do not allege any PwC misstatement or related misconduct until well into the class period, Plaintiffs' request for documents for the three months prior to the class period is patently overbroad.  Plaintiffs' motion acknowledges this request is not aimed at obtaining discovery related to any alleged ***PwC*** misstatement— the first of which did not occur until February 2018—but rather may be relevant to ***Mattel's*** August 2, 2017 disclosure.  Plaintiffs ignore that PwC did not audit that disclosure, which contained no PwC statements alleged to be fraudulent, and, in any event, predated by months any of the underlying misconduct alleged in the Complaint.

Plaintiffs' request for an additional collection and search of documents for the seventeen-month period from March 2018 through August 2019 is likewise overbroad. This period post-dates the alleged fraud and Plaintiffs have not pointed to anything other than conjecture to suggest that other PwC documents from his period are relevant. Plaintiffs argue, for example, that they are seeking to learn the identity of the whistleblower, but PwC has already informed Plaintiffs it does not know the whistleblower's identity.

Finally, although PwC has already complied with its discovery obligations, in further demonstration of PwC's ongoing willingness to resolve this dispute, PwC is willing to produce workpapers for its quarterly reviews of Mattel's financials for the second quarter of 2017, 2018, and the first and second quarters of 2019.  This more than fulfills any obligation to provide discovery covering this time period.

***Oral Presentations to the Government.***  In response to Interrogatory No. 4, and in the parties' ensuing correspondence and conferences, PwC (i) propounded objections to the overbreadth, ambiguity, and redundancy of the interrogatory; (ii) identified all documents it produced to government regulators in connection with investigations pertaining to the matters at issue in this case; (iii) confirmed that it

produced to Plaintiffs all documents produced to regulators in connection with such investigations; (iv) confirmed its intention to produce to Plaintiffs any such documents it produces to government regulators in the future; and (v) confirmed that it has not provided any government regulators with any written materials in connection with any oral presentations for such investigations.  This response is fully compliant with PwC's obligations under Rule 33.  Yet, Plaintiffs now press for PwC to respond to an interrogatory recounting the oral communications of PwC outside counsel with the government.  There is no basis for such a demand.

Plaintiffs offer arguments concerning privilege, but PwC has **never** claimed privilege over its oral communications with the government and is not objecting to the interrogatory on that basis.  The authority Plaintiffs cite is therefore inapposite.  Unlike those cases, Plaintiffs here request PwC provide Plaintiffs' counsel with a readout of every single oral communication PwC or its counsel has ever had with government entities about certain regulatory inquiries that are separate and apart from this private civil litigation.  The Federal Rules do not entitle Plaintiffs to transform PwC's in-house and outside counsel into fact witnesses, and Plaintiffs cite no authority whatsoever saying otherwise.

Plaintiffs also request—for the first time through this motion—PwC's "internal analyses and memoranda summarizing interviews of current and former PwC and Mattel witnesses about the fraud at issue."  This request does not fall under the scope of Interrogatory No. 4, which seeks information "produced or provided to" the government, nor have Plaintiffs identified this request in any correspondence or conference.  To the extent such information exists at all, such core investigative work product was **not** shared with the government (or any third party).

## III.   DISCOVERY IN DISPUTE

The discovery dispute at issue concerns the search period to be applied by PwC in locating documents responsive to Plaintiffs' First Requests for the Production of

Documents.  A copy of Plaintiffs' document requests and PwC's responses thereto are included as Exhibits 2 and 3 to the accompanying Rizio-Hamilton Declaration.

The discovery dispute at issue also concerns PwC's response to Interrogatory No. 4, which is reprinted below:

> **PLAINTIFFS' INTERROGATORY NO. 4:** Identify all Documents and information, whether conveyed orally or in writing, that You produced or provided to a Governmental body in connection with a Governmental Investigation or in response to a Governmental Subpoena.
>
> **PWC'S RESPONSE TO INTERROGATORY NO. 4:** PwC objects to this Interrogatory as vague and ambiguous to the extent that it uses the undefined phrase "conveyed orally or in writing," and to the extent that identifying "Documents" that were "conveyed orally" is unintelligible. PwC further objects to this Interrogatory as overbroad, unduly burdensome, and as seeking information that is neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of evidence that is relevant to the claim or defense of any party, insofar as it seeks, without limitation, "all Documents and information" that PwC "produced or provided" to, without limitation, any Governmental body in connection with any Governmental Investigation or in responses to any Governmental Subpoena.  PwC accordingly construes this Interrogatory as seeking the identification of only such documents produced to the Government in connection with matters related to the allegations in the Complaint.  PwC further objects to this Interrogatory because it seeks information that is duplicative of other discovery taken by Plaintiff and may be better ascertained through other discovery mechanisms, including from PwC's document productions produced to Plaintiffs on April 14, 2021 in response to Plaintiffs' First Set of Requests for Production.
>
> Subject to and without waiving the foregoing objections, PwC responds as follows: pursuant to Federal Rule of Civil Procedure 33(d), PwC directs Plaintiffs to its productions of documents transmitted to Plaintiffs on April 14, 2021 (Bates stamped PWC_00271_SEC_00000001 through PWC_00271_SEC_00303721).

## IV.   **PLAINTIFFS' ARGUMENT**

Plaintiffs seek an order compelling PwC to search and produce (i) responsive documents dated between May 2017 and July 31, 2017, which is the three-month

period leading up to the Class Period; and (ii) responsive emails and quarterly workpapers for the period between March 2, 2018 and August 2019, which comprises 70% of the Class Period and when 60% of the misstatements at issue were made. Additionally, Plaintiffs seek a response to Interrogatory No. 4 that describes what information PwC provided to the SEC and DOJ during its oral presentations to them, including whether PwC provided the SEC or DOJ information that it is now withholding in this Action as "privileged."  As detailed further below, Plaintiffs are entitled to the information and documents requested by this motion.

### 1.   The Appropriate Search Period Starts Three Months Before the Class Period

Courts in this District and elsewhere have long recognized that, in securities class actions, it is "beyond dispute that discovery is not limited to the class period." *Toyota*, 2012 WL 3791716, at *4 (collecting cases).  The reason why document discovery is necessary in securities class actions from the period of time before the Class Period is clear.  "[F]acts predating the class period are relevant to establish that statements made during the class period were materially false," and "'common sense' dictates that facts relevant to scienter 'will ordinarily date from before any alleged misrepresentations' because the 'circumstances preceding the statements ... would be among those knowable at the time of the statements.'" *Id.* (*quoting Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 971 (N.D. Cal. 2005)).

For these reasons, courts have repeatedly required defendants in securities class actions to search for and produce responsive documents dated before the start of the class period.  *See Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (ordering defendant to start its search period eleven months before the start of the class period); *Toyota*, 2012 WL 3791716, at *4 (ordering defendant to start its search period more than four years before the beginning of the class period); *In re New Century*, 2009 WL 9568860, at *2 (C.D. Cal. July 8, 2009) (ordering auditor to start its search period eleven months before the start of the class period); *In re BofI*

*Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *6 (S.D. Cal. May 6, 2021) (ordering defendant to start its search period five months before the start of the class period); *In re SupportSoft, Inc. Sec. Litig.*, 2006 WL 2403577, at *1 (N.D. Cal. Aug. 18, 2006) (ordering defendants to start their search period three years before start of class period); *In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993) (ordering defendants to start their search period five months before the start of the class period).

PwC is a named Defendant in this action, and not merely a third party. Plaintiffs seek an order compelling PwC to search for responsive documents from the three-month period immediately before the start of the Class Period—i.e., a far shorter period than what other courts have required of defendants. Plaintiffs' proposal is also a far shorter period than what Plaintiffs originally sought in its document requests, and reflects the compromise that Plaintiffs proposed to PwC's counsel during the meet-and-confer process. Plaintiffs require responsive documents from the three-month period prior to the Class Period for two primary purposes: (i) to demonstrate the falsity of Mattel's "effective control" statements in the Q2 2017 10-Q, which was issued on the first day of the Class Period; and (ii) to rebut the Mattel Defendants' Reliance Defense, through which Mattel attempts to shift the blame for Defendants' misstatements to PwC alone.

During the meet-and-confer process, PwC suggested that it need not search for relevant documents dated before the Class Period because (i) Mattel—not PwC—technically published the Q2 2017 10-Q at the start of the Class Period; and (ii) PwC "only" published two false audit opinions during the Class Period, the first of which was issued on February 28, 2018. This argument is sorely misplaced. Regardless of which Defendant uttered the first public misstatements during the Class Period, both Mattel and its auditor, PwC, have documents in their files bearing on the veracity of *all* the Class Period misstatements, including those in the Q2 2017 10-Q. ███████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████   *See* Rizio-Hamilton Decl. Ex. 7 at 062.   Plaintiffs are entitled to discovery

about ██████████████████████████████████████████████

████   as well as all other documents that support Plaintiffs' claims that Mattel and PwC

knew that Mattel lacked effective controls.

PwC's documents leading up to the Class Period are also critical to address the

Mattel Defendants' purported Reliance Defense.   As noted, the Mattel Defendants'

primary defense in this Action is that, when making the statements at issue, they

justifiably relied upon "PricewaterhouseCoopers staff and partners, including Joshua

Abrahams, Chip Lightfoot, and John Brierley."   *See* Rizio-Hamilton Decl. Ex. 6 at 2.

To support this defense, Mattel invariably will point to the fact that PwC reviewed

Mattel's quarterly and annual filings with the SEC.   To demonstrate why Mattel's

purported "reliance" on PwC was unjustified, Plaintiffs need access to PwC's files

from the period prior to the Class Period to examine the work PwC performed and the

conclusions it reached.   Such documents can show that PwC identified control

deficiencies that required disclosure or, at a minimum, failed to conduct a reasonable

review of Mattel's internal controls justifying Defendants' purported reliance.   In

short, Plaintiffs are entitled to test Mattel Defendants' Reliance Defense, and PwC's

documents are a necessary and important component to doing so.

## 2.   The Appropriate Search Period Includes March 2018 Through August 2019

PwC also impermissibly attempts to excise from discovery most of the Class

Period itself, specifically documents dated between March 2, 2018 and August 2019.

This portion of the Class Period (i) spans 70% of the duration of the Class Period; and

(ii) includes 6 of the 10 challenged SEC filings at issue in this case.   Significantly, it

also includes the months leading up to the whistleblower's letter to PwC, which

triggered Mattel's internal investigation, restatement, and precipitous stock drop at the

end of the Class Period. For this portion of the Class Period, PwC has refused to search for *any* responsive emails and has not produced PwC's workpapers for Mattel's quarterly SEC filings for all of 2018 and the first and second quarters of 2019.

The documents that Plaintiffs seek from the period between March 2018 and August 2019 are critical to, among other things, proving that the internal control weakness that Mattel has now admitted existed in the third and fourth quarters of 2017 persisted during the remainder of the Class Period. As such, these documents are directly relevant to Plaintiffs' claims that all of Mattel's Class Period SEC filings contained material misstatements. If permitted to exclude such Class Period documents from its review and production, PwC and Mattel will then be able to argue to the jury that Plaintiffs have not introduced documentary evidence that the deficiencies in Mattel's internal controls that existed at the start of the Class Period persisted throughout the Class Period. PwC and Mattel will instead be able to keep well-hidden from the jury the documentary evidence that will invariably show, as alleged in Plaintiffs' complaint sustained by Judge Scarsi (*see* Rizio-Hamilton Decl. Ex. 8), that Mattel's control weakness continued unabated throughout the Class Period.

Additionally, such documents are also relevant to the issue of what discussions Defendants had concerning the known misstatements of Mattel's financial results during this time period—evidence that goes directly to falsity and scienter. Further, by refusing to review its documents dated between March 2, 2018 and August 2019, PwC creates a real risk that the whistleblower's identity will remain a mystery forever. The period PwC refuses to search includes the months before the whistleblower submitted their letter to PwC. By omitting this period from its search, PwC increases the likelihood that Plaintiffs will never be able to identify the whistleblower—a critical witness in this Action. This is particularly true because ███████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ *See* Rizio-

Hamilton Decl. Ex. 5.

PwC's refusal to produce responsive emails from within the Class Period is also contrary to the law in this District and elsewhere. As the Honorable Steve Kim explained in rejecting a similar attempt in a recent securities class action, "Defendants' arguments for their timeframe limitations—including a carve out for the middle of the class period—are unpersuasive." *Stamps.com*, *Inc.*, 2020 WL 5084093, at *2. Indeed, it is axiomatic that documents within the Class Period are relevant in discovery, and courts consistently require defendants to produce responsive documents during the Class Period, and even well beyond. *See, e.g., Toyota*, 2012 WL 3791716, at *4-8 (ordering defendants to use a search period that includes the entire class period, as well as the period before and after the class period); *New Century*, 2009 WL 9568860, at *2 (same); *BofI Holding*, 2021 WL 1812822, at *6 (same); *SupportSoft*, 2006 WL 2403577, at *1 (same); *Seagate Tech. II*, 1993 WL 293008, at *1 (same).

### 3. PwC Must Provide in Response to Interrogatory No. 4 Information About Its Oral Presentations to the Government

PwC also improperly refuses to disclose to Plaintiffs what information it provided to the SEC and DOJ during its oral presentations. PwC's counsel has admitted that PwC has made presentations to the DOJ and SEC in connection with their ongoing investigations. During the meet-and-confer process, Plaintiffs' counsel has explained to counsel for PwC that Interrogatory No. 4 is intended to determine (i) whether PwC made any oral admissions to the Government that are contrary to the positions taken by it in this Action; and (ii) whether PwC disclosed to the Government information that it is now improperly withholding from Plaintiffs in this Action on the grounds of "privilege." Plaintiffs proposed that, in responding to Interrogatory No. 4, PwC may limit its response to PwC's substantive communications with the Regulators during oral presentations and should identify any information it is now withholding in this action as "privileged" that it orally conveyed to the Government.

PwC's factual representations and admissions to the SEC and DOJ regarding

1  the events underlying Plaintiffs' claims are plainly relevant to this Action.  They

2  constitute, among other things, party admissions, and there is no burden in PwC's

3  describing them to Plaintiffs in response to Interrogatory No. 4.  Indeed, PwC has

4  tacitly admitted the relevance of the SEC's investigation to this Action by pointing

5  Plaintiffs to PwC's SEC production to purportedly satisfy its obligation to respond to

6  Interrogatory No. 4.

7  Information about PwC's oral presentations to the DOJ and the SEC are also

8  important for a separate reason: to test PwC's broad assertions of privilege in this

9  matter.  During discovery, PwC has withheld, among other things, its internal analyses

10  and memoranda summarizing interviews of current and former PwC and Mattel

11  witnesses about the fraud at issue.

12  To the extent that "privileged" information was conveyed to the Government—

13  such as the "privileged" information in the memoranda that PwC or Mattel prepared

14  summarizing witness interviews—Plaintiffs are entitled to it.  Judge McCormick of

15  this District specifically compelled PwC's counsel to produce witness interview

16  memoranda it summarized during oral presentations to the SEC in another securities

17  class action.  *See Banc of Cal.*, 2018 WL 2373860, at *1.  Judge McCormick held that

18  this "disclosure of summaries of the witness interviews [to the SEC] acted to waive

19  any work product or attorney-client privilege over any notes or memoranda

20  memorializing those interviews." *Id*.  Likewise, Judge Alsup of the Northern District

21  of California held that when a defendant "present[ed] its findings to the SEC," that

22  also "waived any work-product or attorney-client privilege over those documents."

23  *Marvell Tech.*, 2017 WL 4286325, at *1.  For this reason, Judge Alsup ordered the

24  defendants to produce "interview memorandum and [forensic accountant] work papers

25  that were created in connection with [the defendant company's] audit committee's

26  investigation and [the defendant's] presentation to the SEC regarding [its review of

27  the company's accounting practices]." *Id*.  In response to Interrogatory No. 4,

28  Plaintiffs are entitled to know whether PwC or its counsel made similar presentations

of witness interviews or any other "privileged" information to the Government and thus waived any purported privilege it is asserting in this Action.

*   *   *

For these reasons, Plaintiffs respectfully request an order compelling Defendant PwC (i) to produce responsive documents dated between May 2017 and July 31, 2017, which is the three-month period leading up to the Class Period; (ii) to produce responsive Class Period emails and quarterly workpapers from between March 2, 2018 and August 2019 and specifically PwC's workpapers for Mattel's quarterly SEC filings for all of 2018 and the first and second quarters of 2019; and (iii) identify the admissions it made and information it provided during its oral presentations to the SEC and DOJ, including specifically any information it is now withholding in this action as "privileged."

## V.   DEFENDANT'S ARGUMENT

PwC at all times has engaged in the "cooperative, transparent, and pragmatic approach" to discovery promoted by Rule 34. *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020).   PwC has produced over 300,000 pages of relevant documents, appropriately responded and objected to Plaintiffs' overbroad discovery requests, and met and conferred in good faith to attempt to provide Plaintiffs with additional materials that were proportional to the needs of this case.   Plaintiffs' motion ignores these facts and seeks materials that are entirely disproportionate to Plaintiffs' needs and would impose undue burden on PwC.   *See Grober v. Mako Prods., Inc.*, 2016 WL 7429139, at *1 (C.D. Cal. Aug. 9, 2016) ("Plaintiffs' desire to see every single document that might in any possible way be related to this litigation, without regard to the scope of discovery.   But, as the new Federal Civil Rules emphasize, discovery is based on proportionality and relevancy, not scorched earth."), *aff'd*, 745 F. App'x 159 (Fed. Cir. 2018).

### 1. PwC Conducted A Reasonable Search For Documents Responsive to Plaintiffs' Requests for Production

On April 14, 2021, PwC produced over 300,000 pages of documents responsive to Plaintiffs' document requests. PwC also provided Plaintiffs with detailed search parameters used to populate that production. PwC's production included PwC's workpapers for fiscal periods relevant to PwC's alleged fraud and disclosure thereof, *i.e.*, PwC's year-end audits of Mattel's financial statements for 2017 and 2018, PwC's review of Mattel's Q3 2017 financial disclosure, and PwC's work relating to Mattel's Q3 2019 disclosures, including the restatement. This is critical: as the formal documentation of the bases and support for PwC's conclusions, the workpapers are the best source of information on PwC's audits and reviews of Mattel's financial statements. PwC's initial production also included substantial electronically stored documents from 23 PwC custodians, including communications between and among PwC's engagement team, its national office, and Mattel. The production further included other materials such as the whistleblower letter, documents regarding PwC's investigation of tax accounting and independence issues, policies and procedures, documents related to Mattel's engagement of PwC, as well as personnel files.

During the meet and confer process, PwC repeatedly offered to discuss collecting and reviewing additional documents if, after reviewing PwC's substantial production, Plaintiffs identified specific gaps in PwC's production. As part of the ensuing negotiations, PwC agreed to produce ESI from relevant custodians dated between August 1, 2019 and November 22, 2019, which captured documents from the period between the receipt of the whistleblower letter and Mattel's restatement.

Plaintiffs never provided a reasonable proposal to PwC for the collection and search of additional documents from the May through July 2017, or March 2018 through August 2019 time periods. Instead, Plaintiffs maintained that these documents were categorically relevant and simply insisted PwC must collect, review, and produce them, without limitation as to custodians or time period.

### a. Plaintiffs' Request For Additional Documents Created Between May and July 31, 2017 Is Unjustified and Disproportionate

While the alleged class period is not dispositive of relevancy for discovery purposes, relevancy is always determined on a case-by-case basis based on the facts at issue. *See, e.g.*, *Toyota*, 2012 WL 3791716, at *2 (denying in part plaintiffs' motion to compel documents for the entire time period sought).[1]   Plaintiffs' motion acknowledges that the documents Plaintiffs seek from the May through July 2017 time period are not relevant to Plaintiffs' claims against PwC.  Instead, Plaintiffs contend that they require documents from this time period to demonstrate the falsity of *Mattel's* Q2 2017 Form 10-Q, which Mattel issued on the first day of the class period. But any documents related to Mattel's quarterly statement, which PwC neither audited nor authored, are duplicative and cumulative of documents obtainable from Mattel.[2]

To the extent Plaintiffs' claims against Mattel entitle them to seek from PwC materials related to its findings on Mattel's control weaknesses, PwC already provided such documents to Plaintiffs.  Specifically, PwC has already produced (1) its work papers from its audit of Mattel's internal controls statements from fiscal years 2017 and 2018, which formally document PwC's work to review Mattel's internal controls for those years and support for its conclusions, as well as (2) electronic communications related to events underlying the purported misstatements in PwC's

---

[1] Plaintiffs' other cited authority acknowledges the same. *See, e.g.*, *Stamps.com, Inc.*, 2020 WL 5084093, at *1 (agreeing with defendants that "indiscriminately requesting all communications" might be disproportionate); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5-6 (acknowledging that "discovery must be determined on a case-by-case basis" and that "discovery into time periods further removed from the subject matter of the alleged misstatements would be increasingly less relevant").

[2] As Plaintiffs are aware, there is a critical difference between a review and an audit. *See* PCAOB Auditing Standards 4105.07 (noting that the "objective of a review of interim financial information differs significantly from that of an audit … [it] does not contemplate (a) tests of accounting records through inspection, observation, or confirmation; (b) tests of controls to evaluate their effectiveness; (c) obtaining corroborating evidence in response to inquiries; or (d) performing certain other procedures ordinarily performed in an audit").

opinions following those audits, which PwC specifically searched for references to

deficiencies and material weaknesses. ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Rizio-

Hamilton Decl. Ex. 7 at 062 (emphasis added).  Plaintiffs supply no reason to believe

that a burdensome search of PwC's pre-class period for documents related to Mattel's

unaudited quarterly statements would yield additional documents relevant to

Plaintiffs' claims.

Plaintiffs' contention that PwC should be required to search and produce pre-

class period documents to rebut Mattel's reliance defense also does not withstand

scrutiny.  Pre-class period documents—which by definition predate Mattel's Q3

valuation error and later decisions to correct that error—plainly are not relevant to any

defense that Mattel relied on PwC in making statements or decisions related to that

error.  Moreover, documents related to any PwC statements on which Mattel

purportedly relied are readily and more appropriately obtainable from Mattel.

Given the limited relevance of the pre-August 2017 time period to Plaintiffs'

claims against PwC (or Mattel's reliance defense), PwC's extensive production of

documents related to its audits of Mattel internal controls, and the availability of

documents from Mattel, Plaintiffs' request for pre-class period documents is

overbroad and unduly burdensome.  In further demonstration of PwC's ongoing

willingness to resolve this dispute, however, PwC is willing to produce its workpapers

for its quarterly reviews of Mattel's financials for the second quarter of 2017.

**b. Plaintiffs' Request For Additional Documents Created Between**
**March 2018 and August 2019 Is Unjustified and Disproportionate**

With respect to documents from March 2018 to August 2019, Plaintiffs' motion

likewise fails to justify imposing on PwC the substantial burden of collecting,

searching and reviewing electronic communications across a seventeen-month time

1   period—the entirety of which post-dates the alleged fraudulent conduct underlying
2   Plaintiffs' claims against PwC.

3   Plaintiffs' claim against PwC is based on two year-end audit opinions regarding
4   Mattel's internal control over financial reporting for 2017 and 2018.   Plaintiffs'
5   allegations that PwC issued material misstatements for **both** of PwC's audit opinions
6   are entirely based on events that took place between the fall of 2017 and February
7   2018.   Plaintiffs allege that PwC's opinions on Mattel's internal control over financial
8   reporting were false or misleading because Mattel had incorrectly classified a deferred
9   tax asset related to its valuation allowance calculation in Q3 2017 and identified the
10  error in January 2018.   Plaintiffs' attempt to characterize March 2018 to August 2019
11  as spanning 70% of the Class Period and including 6 out of the 10 challenged SEC
12  filings ignores this reality.   Nor do any of Plaintiffs' cited cases stand for the
13  proposition that documents are *per se* discoverable just because they were created
14  during the class period.[3]

15  PwC already produced workpapers related to its preparation of the allegedly
16  fraudulent year-end audit opinions—which comprise the formal documentation
17  providing support for PwC's audit conclusions and are the best source of information
18  on PwC's audits and reviews—as well as related electronic communications and other
19  electronically-stored information.   PwC also produced workpapers and electronic
20  communications covering later events Plaintiffs list in an attempt to justify their

---

[3] For example, in *Stamps.com*, the Court found Defendants' proposed "carve out for the middle of the class period" was not justified because the requested documents were "relevant to Defendants' ***knowledge when they made the alleged misstatements***." 2020 WL 5084093, at *2 (emphasis added).   PwC's alleged misstatements were made in February 2018 and February 2019, respectively; Plaintiffs offer no justification for their blanket request for documents spanning seventeen months during which PwC made only one allegedly actionable statement.   The alleged facts underpinning PwC's alleged knowledge of Mattel's control deficiencies all arose months prior to March 2018, during which time period PwC has already produced all relevant documents.

1  request—*i.e.*, "the whistleblower's letter to PwC, . . . Mattel's internal investigation,

2  restatement, and [the] stock drop at the end of the Class Period."  These documents

3  include PwC's workpapers related to Mattel's November 2019 restatement, a copy of

4  the whistleblower letter, documents related to PwC's independence assessment and

5  investigation of tax accounting matters, and personnel files from 2018 and 2019.

6      To the extent Plaintiffs are entitled to PwC documents from this time period to

7  show that Mattel's internal control weaknesses from the third and fourth quarters of

8  2017 persisted during the remainder of the class period, Plaintiffs again ignore that

9  PwC did not audit Mattel's quarterly disclosures and that PwC already produced both

10  workpapers and electronic communications related to its audit of Mattel's year-end

11  statements and Mattel's restatement.  Indeed, Plaintiffs need look no further than the

12  restatement itself, which provides exactly the information they claim they need from

13  PwC.  *See* ECF No. 41-8 at 26 (noting that Mattel determined that "[o]ne of the

14  material weaknesses has been remediated" and that "Mattel is implementing remedial

15  measures to address the other material weakness").  Plaintiffs have not explained what

16  additional information they require, and why it should come from PwC.

17      Finally, Plaintiffs claim they need documents from between March 2, 2018 and

18  August 2019 to help them identify the whistleblower, but provide no basis for their

19  speculation that the two dozen PwC custodians from whom they have asked for

20  documents would have discussed the whistleblower in the seventeen months ***prior*** to

21  PwC's receipt of the whistleblower letter.  █████████████████████

22  ██████████████████████████  does not suggest that PwC discussed the

23  identity of a potential whistleblower during that time.  Indeed, PwC has already

24  responded to Plaintiffs' interrogatory that it is unaware of the identity of the

25  whistleblower, specifically searched electronic communications from August 1, 2019

26  through November 22, 2019 for references to the whistleblower, and produced an

27  initial production of responsive documents resulting from that search on July 12, 2021.

28  PwC has invited Plaintiffs to review its supplemental production prior to initiating

1   motion practice; PwC remains willing to consider a reasonable proposal for additional

2   searches and time periods.  To date, Plaintiffs have not offered such a proposal.

3        Nevertheless, PwC is willing to search and produce workpapers not previously

4   produced to Plaintiffs for its quarterly reviews of Mattel's financials for 2018 and the

5   first and second quarters of 2019.

6        **2. PwC's Response to Interrogatory No. 4 Complies With Its**

7        **Obligations Under Rule 33**

8        Interrogatory No. 4 asks PwC to identify "all documents and information,

9   whether conveyed orally or in writing," that PwC provided to any government entity

10  about any government investigation or in response to any government investigation.

11  The request is overbroad and ambiguous on its face, and PwC specifically objected to

12  the request for documents and information "conveyed orally" as overbroad, unduly

13  burdensome, and unintelligible.  *See supra* § III.  PwC then identified, pursuant to Rule

14  33(d), over 300,000 pages of documents it produced to the SEC in response to two

15  subpoenas pertaining to matters at issue in this case.   Thus, PwC responded to

16  Interrogatory No. 4 "to the extent it [was] not objected to."  Fed. R. Civ. P. 33(b)(3).

17       Plaintiffs' counsel sent PwC's counsel a letter dated May 14, 2021 that identified

18  the following information missing from PwC's response: "(1) what other documents

19  outside of its production—e.g., whitepapers, proffers, admissions, memos—PwC has

20  provided to the SEC; (2) what oral admissions and representations PwC has made to

21  the SEC; (3) what documents or information PwC has provided to the Department of

22  Justice, or any additional governmental body, in connection with its investigation."

23  During the meet and confer process, PwC repeatedly confirmed to Plaintiffs' counsel

24  that PwC had produced to Plaintiffs all documents it had produced to government

25  agencies in response to relevant investigations to date, and that it would supplement

26  such productions with any documents produced to the government in the future.  PwC

27  also confirmed that it did not provide any whitepapers, proffers, admissions, memos or

28  other work product to the SEC, DOJ, or any other government entity.   These

confirmations resolved items (1) and (3) from the May 14 letter, and Plaintiffs do not contend otherwise here.

What remains is Plaintiffs' remarkable request for all "oral admissions and representations PwC has made to the SEC" (and, apparently, now DOJ as well), and the even more remarkable—and false—claim that PwC has withheld such information on privilege grounds. PwC has never claimed that what its counsel said to government lawyers is protected by privilege.

Rather, PwC objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the case insofar as it seeks to transform PwC's counsel into fact witnesses. *See, e.g.*, *Mustang Mktg., Inc. v. Chevron Prods. Co.*, 2006 WL 5105559, at *3 (C.D. Cal. Feb. 28, 2006) ("There is a general presumption that lawyers should not be called to testify in cases where their client is a party because doing so compromises the standards of the legal profession."). The only people capable of verifying, pursuant to Rule 33(b)(5), an interrogatory response providing plaintiffs with a readout of everything ever said orally to the SEC and DOJ on PwC's behalf are PwC's outside counsel. Plaintiffs have applied for a license to conduct a fishing expedition into counsel's recollection of facts relayed to the government so they can use those statements as party admissions. These are not proper subjects for interrogatories. *See, e.g.*, *E. & J. Gallo Winery v. Rallo*, 2006 WL 8458562, at *3 (E.D. Cal. Nov. 8, 2006) (denying leave to serve interrogatories seeking "information from [counsel] about statements made and documents produced, ***responses to which would be nothing more than second hand accounts of information [counsel] learned from other sources***" (emphasis added)). If Plaintiffs want facts, they are perfectly entitled to discover facts from the witnesses with percipient knowledge of them. *See Song v. Drenberg*, 2019 WL 5095743, at *4 (N.D. Cal. Oct. 11, 2019) (denying motion to compel discovery from party's counsel absent substantial need, but noting that counsel "is free to take discovery of any fact witnesses he believes possess information relevant to a claim or defense in the case").

Plaintiffs cite no authority supporting their position that a party's attorney can be compelled to summarize, via interrogatory response, statements that attorney made to the government or other third party.  And because PwC does not claim privilege over the oral statements made by its counsel to the government, the two district court cases on which Plaintiffs do rely (one of which is only two sentences long and contains no analysis or citation to authority) are completely inapposite.  Both involved requests to produce documents over which, it was held, privilege had been waived.  *See In re Banc of Cal. Sec. Litig.*, 2018 WL 2373860, at *1 (C.D. Cal. May 23, 2018) (summarizing motion to compel counsel "to produce any notes and memoranda memorializing the interviews it took in connection with its internal investigation" and holding that counsel's "disclosure of summaries of the witness interviews acted to waive any work product or attorney-client privilege" over the requested documents); *Marvell*, 2017 WL 4286325, at *1 (ordering defendants "to produce interview memoranda and KPMG work papers" because defendants had "waived any work-product or attorney-client privilege over those documents").  Neither of these cases say anything about compelling attorneys to testify in response to an interrogatory about what they may have said to the government.  For the avoidance of doubt, however, PwC confirms here that it has not "provided the SEC [or the DOJ] with oral summaries" of any witness interviews it conducted in connection with its internal investigation.  *Banc of Cal.*, 2018 WL 2373860, at *1.  That should end the matter.

Ultimately, as Plaintiffs' position statement makes clear, Plaintiffs seek to use Interrogatory No. 4 as an excuse to engage in freewheeling discovery into whether PwC may possibly have waived privilege over documents Plaintiffs have not even requested.  To the extent any interview notes, memoranda, or other internal investigative work product exists, no such material was ever shared with the government (or any third party).  All of this therefore has nothing to do with Interrogatory No. 4, which only seeks information disclosed to the government.  In any event, Plaintiffs failed to identify its apparent request for PwC to disclose its

investigative work product in its deficiency letter, and never raised it with PwC's counsel during the meet and confer process.  Raising it here therefore violates Local Rule 37.  *See, e.g.*, *Henderson v. JPMorgan Chase Bank*, 2012 WL 12888829, at *2 (C.D. Cal. July 31, 2012) ("Discovery motions must be filed in compliance with Local Rule 37, <u>i.e.</u>, only after counsel for the moving party has served a letter ***identifying each discovery request in dispute***.") (emphasis added).

Plaintiffs' motion should be denied in its entirety.

Dated: July 16, 2021               Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
Matthew Traylor (admitted *pro hac vice*)
matthew.traylor@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (370) 819-3480

*Lead Counsel for Lead Plaintiffs and the Class*

*/s/      Joshua Vittor*
Jenny Pelaez (SBN 326765)
Jenny.Pelaez@wilmerhale.com
Joshua Vittor (SBN 326221)
Joshua.Vittor@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 94304
Telephone: (213) 443-5300
Fax: (213) 443-5400

Timothy J. Perla (*pro hac vice*)
timothy.perla@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL
CASE NO. 19-CV-10860-MCS (PLAx)

Matthew T. Martens (*pro hac vice*)
matthew.martens@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendant
PricewaterhouseCoopers LLP*

1
2
### CERTIFICATE PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULE 5-4.3.4(a)(2)(i)

3       I, John Rizio-Hamilton, am the ECF User whose ID and password are being used
4  to file the foregoing document.  In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby
5  attest that counsel for PwC concurs in this filing's content and has authorized the filing.
6
Dated: July 16, 2021
7
8                                          */s/ John Rizio-Hamilton*
                                           John Rizio-Hamilton
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SIGNATURE ATTESTATION
CASE NO. 19-CV-10860-MCS (PLAx)