# Exhibit 2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-CV-10860-MCS (PLAx) |

**PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION**
**OF DOCUMENTS DIRECTED TO PRICEWATERHOUSECOOPERS AND**
<u>**JOSHUA ABRAHAMS**</u>

Lead Plaintiffs DeKalb County Employees Retirement Plan ("DeKalb") and New Orleans Employees' Retirement System ("New Orleans"), and additional named plaintiff Houston Municipal Employees Pension System ("Houston Municipal," together with DeKalb and New Orleans, "Plaintiffs"), by and through their undersigned counsel, hereby propounds Plaintiffs' First Request for the Production of Documents Directed to Defendants PricewaterhouseCoopers ("PwC") and Joshua Abrahams ("Abrahams") (collectively, "Defendants") in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court. Plaintiffs requests that Defendants produce the documents described below for inspection and copying at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, New York 10020 within the time period mandated by the Rules, or at such other time and place as the parties mutually agree.

## **DEFINITIONS**

The following definitions apply to each request for Documents (defined below) set forth herein and are deemed to be incorporated in each Request.

1.      "Abrahams" means Joshua Abrahams.

2.      "ASC" refers to Accounting Standards Codification, containing the provisions of GAAP (defined below).

3.      "Audit Committee" means the Audit Committee of the Board (defined below).

4.      "Board" means Mattel's (defined below) Board of Directors, including present and former directors.

5.      "Bond Offering" means Mattel's offering of 6.00% Senior Notes due 2027 that was scheduled to close on August 8, 2019 and was terminated on August 8, 2019.

6.      "Communications" means the transmission, sending, or receipt of information in any form, oral or written, including voicemails, electronic mail, text messages, instant messages, or Documents (defined below).

7.      The "Company" or "Mattel" means Mattel, Inc. and all of its present and former divisions, subsidiaries, affiliates, predecessors, successors, present and former officers, directors, and employees.

8.      "Concerning" or "relating to" means referring to, describing, evidencing, or constituting.

9.      The "Complaint" means the Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in the above-captioned action on May 29, 2020 (ECF No. 34).

10.      "Defendants" means PwC (defined below) and Abrahams.

11. "Document" or "Documents" shall have the same meaning and be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). For the avoidance of any doubt, Documents includes Communications and auditor Work Papers (defined below). A draft or non-identical copy is a separate Document within the meaning of this term.

12. "Electronically stored information" or "ESI" has the same meaning and is equal in scope to the usage of the term in the Sedona Conference Definitions (defined below), and includes, without limitation, the following:

(a) All items covered by Federal Rule of Civil Procedure 34(a)(1)(A);

(b) Information or data that is generated, received, processed, and recorded by computers or other electronic devices, including Metadata;

(c) Internal or external websites;

(d) Output resulting from the use of any software program, including but not limited to, any word-processing Documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, AOL or Bloomberg Instant Messenger (or similar program), bulletin-boards programs, operating systems, source codes, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, deleted file, or file fragment; and

(e) All items stored on Electronic Media (defined below).

13. "Euteneuer" means Joseph Euteneuer, Mattel's Chief Financial Officer.

14. "Financial Statements" includes, but is not limited to, the following, whether audited or unaudited, and whether final, interim, pro forma, complete, or partial and all drafts of

such statements: consolidated and non-consolidated balance sheets; statements of earnings, retained earnings, revenues, profits, losses, stockholders' equity, additional paid-in capital or sources and application of funds; cash flow statements; cash flow projections; footnotes to each of such statements; and all other statements and notes which pertain to the applicable entity's or individual's past or present financial condition, including accountants' research notes, drafts, memoranda and work papers for the Relevant Time Period (defined below).

15. "GAAP" means Generally Accepted Accounting Principles.

16. "Georgiadis" means Margaret Georgiadis, Mattel's Chief Executive Officer.

17. "Government" or "Governmental" refers to any local, state or federal governmental or administrative entity, whether domestic or foreign, including the Department of Justice, SDNY, and SEC (as defined herein).

18. "HiT IP" means the intellectual property asset related to Mattel's 2011 acquisition of HIT Entertainment Ltd.

19. "Including" means including, but not limited to.

20. "Internal Controls" means Mattel's internal control over financial reporting, and includes Mattel's disclosure controls.

21. "Metadata" has the same meaning and is equal in scope to the usage of the term in the Sedona Conference Definitions and means data that describes the characteristics, history, tracking, or management of ESI, including but not limited to all information concerning the dates and times the Documents were created, modified, or distributed, the format of the Documents, the owner or custodian of the Documents, the authors and recipients (including "bcc" recipients of the Documents), and the substance of changes to the Documents.

22. "Paragraph" or "¶" corresponds to paragraphs in the Complaint.

23.     "PCAOB" means the Public Company Accounting Oversight Board.

24.     "PwC" means PricewaterhouseCoopers.

25.     "Restatement" means Mattel's restated third quarter 2017 and fourth quarter 2017 Financial Statements filed on November 12, 2019 on Form 10-K/A.

26.     "SDNY" refers to the United States Attorney's Office for the Southern District of New York.

27.     "SEC" means the United States Securities and Exchange Commission.

28.     "Sedona Conference Definitions" means The Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition – July 2014 Version).

29.     "Whistleblower" means the author of the Whistleblower Letter (defined below) or the source of its assertions.

30.     "Whistleblower Letter" means the letter referenced by Mattel on August 8, 2019 in a Form 8-K filed with the SEC.

31.     "Whistleblower Investigation" means the internal investigation Mattel conducted in the second half of 2019 as announced in its Form 8-K filed with the SEC on August 8, 2019.

32.     "Whitaker" means Brett Whitaker.

33.     "Work Papers" means all Documents concerning the procedures applied, work performed, evidence obtained, and conclusions reached in an Engagement by any auditor, practitioner, consultant, or any other person working on Your behalf. Work papers for any Audit, review or attestation include, but are not limited to, records kept by the auditor or practitioner of the procedures applied, the tests performed, the information obtained, and the pertinent conclusions reached in the Engagement. Examples of work papers include Audit Documentation as defined under PCAOB Auditing Standard 1215, Audit Documentation (formerly, PCAOB

Auditing Standard No. 3), audit programs, analyses, memoranda, letters of confirmation and representations, abstracts of Company Documents, emails from/to members of the audit staff either from/to each other or from/to the Company and/or other third parties, and schedules or commentaries prepared or obtained by the auditor. Work papers may also be in the form of data stored on tapes, films or other media

34.     "You" and "Your" means Defendants PwC and Abrahams.

<strong><u>INSTRUCTIONS</u></strong>

1.     All discovery requests shall be construed pursuant to the applicable Federal Rules of Civil Procedure and Local Rules of this Court.

2.     In producing Documents and other materials, You are requested to furnish all Documents (including ESI) or things (including Electronic Media) in Your possession, custody or control, regardless of whether the Documents or materials are possessed directly by You or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by Your attorneys or their agents, employees, representatives, or investigators. This includes all responsive Documents and materials stored in any hard copy library maintained by Mattel.

3.     Pursuant to Federal Rule of Civil Procedure 34(b), Documents shall be produced as they are kept in the usual course of business so that Plaintiff can ascertain the files in which they were located, their relative order in the files, and how the files were maintained. Unless otherwise agreed upon, Documents responsive to these requests, including ESI, shall be produced on a computer diskette, DVD, or CD-ROM. Documents stored in electronic form or format of any kind are to be produced in their standard black-and-white, single-page Group 4 TIFF image format with Opticon image and Concordance data load files containing their corresponding extracted text and related Metadata fields. Dynamic files (e.g., databases, spreadsheets, project files, and slide

6

presentations) and Documents prepared, organized, or managed using any proprietary software system shall be produced in original native format with all accompanying Metadata, and any software necessary to utilize those Documents as they are used in the ordinary course of business shall also be made available if that software is not readily commercially available. For comparison purposes and to ensure authenticity, where Documents are produced in native format, such Documents shall also be produced in TIFF format. Plaintiff reserves the right to request that additional Documents be produced in native format. Documents attached to each other should not be separated.

4.      Documents shall be produced in such a fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s). ESI shall be preserved in such a fashion as to identify the file path, the source or custodian, and all relevant Metadata. Electronic Media such as backup tapes shall be preserved to the extent that such media is the only source of ESI that is responsive to these requests.

5.      A copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document – whether by reason of Metadata that differs in any respect, or by reason of any handwritten or other notation or any omission – constitutes a separate Document and must be produced, whether or not the original of the Document is within Your possession, custody, or control. Accordingly, all prior versions and all drafts of all Documents and emails must be produced.

6.      If any otherwise responsive Document was, but is no longer in existence or in Your possession, custody, or control, state, in writing, whether the Document: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred or delivered, voluntarily or involuntarily, to another

person or entity, the name and address of that person or entity, and at whose request the transfer

or delivery was made; or (iv) has been otherwise disposed of, and in each instance explain the

circumstances surrounding, and the date or approximate date of, the disposition.

7.     When referring to a person, "to identify" means to give, to the extent known, the

person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment. Once a person has been identified in

accordance with this subparagraph, only the name of that person need be listed in response to

subsequent discovery requesting the identification of that person.

8.     When referring to Documents, "to identify" means to give, to the extent known, the

(i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s),

addressee(s) and recipient(s). In the alternative, the responding party may produce the Documents,

together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

9.     The terms "all," "any," and "each" shall each be construed as encompassing any

and all.

10.    The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of these Document requests all responses that

might otherwise be construed to be outside their scope.

11.    The use of the singular form of any word includes the plural and vice versa.

12.    If no Documents or materials exist that are responsive to a particular request, state

so in writing.

13.    If You redact information or otherwise withhold information or Documents

(including attachments to Documents) responsive to these Document requests based upon any

claim of privilege (including work product), or for any other reason, provide a log that includes all

necessary information to evaluate a claim of privilege (if the privilege is governed by state law, indicate the jurisdiction whose privilege rule is being invoked), including: (i) the specific privilege asserted or other particular reason relied upon for not producing the Document or information; (ii) the date of the Document and any different date when it was prepared; (iii) the author, addressee(s) and copyee(s) of each Document; (iv) the subject matter of the Document or information withheld; (v) the medium (e.g., paper or electronic); (vi) the type (e.g., letter, memorandum, presentation); (vii) any other information as is sufficient to identify the Document for a subpoena duces tecum, including the author of the Document, the addressees of the Document, any other recipients shown in the Document, and the relationship of the author, addressees, and recipient to each other; and (viii) every fact or basis upon which You claim any privilege.

14.     Notwithstanding the assertion of any objection to production, any Document as to which an objection is raised containing non-objectionable matter that is responsive to these requests must be produced, but that portion of the Document for which the objection is asserted may be withheld or redacted provided that the Document is marked with the legend "Redacted" so as to reflect all portions that have been redacted, and provided that the requested information in Instruction No. 13 above is furnished.

15.     These requests are continuing so as to require supplemental responses as specified in Federal Rule of Civil Procedure 26(e). Each supplemental response shall be served on Plaintiff within five (5) business days of the discovery or creation of such additional Documents.

## **RELEVANT TIME PERIOD**

Unless otherwise stated in a Document request, all Documents and Communications requested are for the period from January 1, 2017 through the present (the "Relevant Time Period"), and shall include all Documents and Communications that relate, in whole or in part, to such period even though dated, prepared or received before or after that period. If a Document or

Communication is not dated and the date of its preparation cannot be determined, it shall be produced if otherwise responsive to these requests.

## **REQUESTS FOR PRODUCTION**

### **DOCUMENT REQUEST NO. 1**

All Documents concerning the subpoena Mattel received from the SEC as described at ¶197 of the Complaint, including, but not limited to:

    a.  Documents produced by You to the SEC;

    b.  Documents received by You from the SEC;

    c.  Communications concerning the subpoena or its subject matter, including with the SEC;

    d.  Documents concerning any results or findings of the SEC's investigation; and

    e.  Transcripts and notes of all depositions and interviews taken in connection with the subpoena.

For the avoidance of doubt, to the extent You have received a subpoena related to the same or similar subject matter, this request applies to such subpoena as well.

### **DOCUMENT REQUEST NO. 2**

All Documents concerning the subpoena Mattel received from the United States Attorney's Office for the Southern District of New York as described at ¶198 of the Complaint, including, but not limited to:

    a.  Documents produced by You to the SDNY;

    b.  Documents received by You from the SDNY;

    c.  Communications concerning the subpoena or its subject matter, including with the SDNY;

    d.  Documents concerning any results or findings of the SDNY's investigation; and

    e.  Transcripts and notes of all depositions and interviews taken in connection with the subpoena.

For the avoidance of doubt, to the extent You have received an SDNY subpoena related to the same or similar subject matter, this request applies to such subpoena as well.

## DOCUMENT REQUEST NO. 3

To the extent not captured by the foregoing two document requests, all Documents concerning any subpoena, investigation, or inquiry by a Governmental body, whether formal or informal, relating to PwC's audits of Mattel, Mattel's Internal Controls, Financial Statements, or tax accounting, including, but not limited to:

a. Documents produced by You to the relevant Governmental body;

b. Documents received by You from the relevant Governmental body;

c. Communications concerning the request or its subject matter, including with the Governmental body;

d. Documents concerning any results or findings of such investigation; and

e. Transcripts and notes of all depositions and interviews taken in connection with such proceeding(s).

## DOCUMENT REQUEST NO. 4

All Documents concerning any subpoena, investigation or inquiry by the PCAOB, whether formal or informal, relating to PwC's audits of Mattel, Mattel's Internal Controls, Financial Statements, or tax accounting, including, but not limited to:

a. Documents produced by You to the PCAOB;

b. Documents received by You from the PCAOB;

c. Communications concerning the request or its subject matter, including with the PCAOB;

d. Documents concerning any results or findings of such investigation; and

e. Transcripts and notes of all depositions and interviews taken in connection with such proceeding(s).

**DOCUMENT REQUEST NO. 5**

All Documents concerning the Whistleblower Letter, including, but not limited to:

a. The Whistleblower Letter;

b. Communications concerning the Whistleblower Letter or its assertions, including Communications with Mattel, analysts, investors or any other third parties;

c. Documents concerning any consideration of whether to disclose the Whistleblower Letter or make any disclosure of its contents in connection with Mattel's August 8, 2019 Form 8-K or at any other time;

d. Documents and Communications concerning how to respond to the Whistleblower Letter.

**DOCUMENT REQUEST NO. 6**

Documents concerning the Whistleblower, including, but not limited to:

a. Communications with the Whistleblower regarding Mattel's internal controls, Financial Statements (including footnotes thereto), accounting, GAAP, PwC's audits, or any other matter addressed in the Whistleblower Letter;

b. Documents concerning the Whistleblower's assertions; and

c. Minutes, transcripts and notes from meetings or interviews during which the Whistleblower's assertions were discussed.

**DOCUMENT REQUEST NO. 7**

Documents concerning the Audit Committee investigation into the matters raised in the Whistleblower Letter, including, but not limited to:

a. Documents provided to the Audit Committee by You;

b. Documents received by You from the Audit Committee;

c. Communications with the Audit Committee;

d. Communications concerning the Audit Committee investigation, including Communications with Mattel;

e. Documents concerning remedial measure(s) or disciplinary action(s) arising out of the Audit Committee investigation;

f.   Transcripts and notes of any interviews, whether formal or informal, conducted in connection with the Audit Committee investigation;

g.   Analysis and reports, including draft reports, prepared by O'Melveny & Myers LLP or FTI Consulting in connection with the investigation;

h.   Communications with O'Melveny & Myers LLP or FTI Consulting concerning the Whistleblower Letter or the allegations therein; and

i.   Meeting minutes and notes concerning the Audit Committee investigation

## DOCUMENT REQUEST NO. 8

All Documents concerning the results, findings, and conclusions of the Audit Committee investigation, including, but not limited to:

a.   The conclusion that Mattel's Financial Statements for the three and nine months ended September 30, 2017 and the three months ended December 31, 2017 "should no longer be relied upon due to material misstatements";

b.   The conclusion that "there were material weaknesses in [Mattel's] internal control over financial reporting at the time of the preparation of its Financial Statements for the quarters ending September 30, 2017, and December 31, 2017," that "continued to be ineffective as of December 31, 2018";

c.   The conclusion that "Mattel's disclosure controls and procedures were not effective as of December 31, 2018";

d.   The conclusion the accounting error associated with Mattel's tax valuation allowance "was not properly assessed nor were findings and conclusions documented"; and that "lapses in judgment by management contributed to these failures";

e.   The determination that "the investigation did not find that management engaged in fraud," including all documents supporting or undermining such determination;

f.   The conclusion that PwC was in violation of the SEC's auditor independence rules;

g.   The finding concerning "failures to properly consider and disclose such errors to [the CEO] and the Audit Committee"; and

h.   The finding that "management's reliance on the accounting advice sought and received on the error from the lead audit engagement partner of Mattel's outside auditor . . . contributed to these failures."

**DOCUMENT REQUEST NO. 9**

All Documents concerning the Restatement, including, but not limited to:

a.  All Documents, including Work Papers, on which the Restatement was based;

b.  Communications concerning the Restatement;

c.  Meeting minutes and notes from meetings during which the need for a restatement or the Restatement was discussed;

d.  All Documents, including Work Papers, concerning the basis for determining that Mattel's third and fourth quarter 2017 Financial Statements were materially misstated;

e.  All Documents, including Work Papers, concerning Internal Control deficiencies that existed in 2017, including material weaknesses in Internal Controls;

f.  All Documents concerning any withdrawal, qualification or alteration of any previously-issued opinions by PwC as to Mattel's Financial Statements or the effectiveness of its Internal Controls;

g.  All Documents concerning PwC's determination included in Mattel's restated 2018 Form 10-K that Mattel "did not maintain, in all material respects, effective internal control over financial reporting as of December 31, 2018, based on criteria established in Internal Control-Integrated Framework (2013) issued by the COSO because a material weakness in internal control over financial reporting existed as of that date as the Company did not properly design and operate effective monitoring control activities to properly assess and communicate known financial statement errors and internal control deficiencies in a timely manner to those parties responsible for taking corrective action, including the chief executive officer and the board of directors, as appropriate."

h.  Documents concerning anticipated or actual market or investor reaction to the Restatement.

**DOCUMENT REQUEST NO. 10**

Documents concerning the HiT IP, including, but not limited to:

a.  All Documents, including Work Papers, concerning the classification of the HiT IP as either a finite lived asset or an indefinite lived asset;

b.  All Documents, including Work Papers, concerning the reclassification of the HiT IP, including as described at ¶¶141-48 of the Complaint;

c.  All Communications with Mattel concerning the reclassification of the HiT IP;

d.  The document referred to at ¶118 of the Complaint;

e.  The spreadsheet referred to at ¶145 of the Complaint;

f.  All Documents concerning the SEC's anticipated response to a reclassification of the HiT IP;

g.  Meeting minutes and notes from meetings during which the classification of the HiT IP was discussed;

h.  Communications concerning the reclassification of the HiT IP;

i.  Documents concerning the valuation allowance related to the HiT IP or its classification;

j.  Documents concerning amortization of the HiT IP; and

k.  Documents concerning Mattel's tax accounting for the HiT IP.

## DOCUMENT REQUEST NO. 11

All Documents concerning the determinations described in Mattel's 2017 Form 10-K that:

> in the third quarter of 2017, Mattel performed the annual impairment test for its nonamortizable intangible asset as required and determined that the nonamortizable asset was not impaired as the fair value exceeded its carrying value.  In the fourth quarter of 2017, Mattel determined a triggering event had occurred due to a change in brand strategy, which resulted in lower forecasted revenue attributable to the nonamortizable intangible asset.  As a result, Mattel performed an interim impairment test which determined that the fair value was in excess of its carrying value, with an estimated fair value approximately 1.05x its carrying value.  As such, Mattel determined that the intangible asset should no longer be designated as a nonamortizable intangible asset but should be amortized starting in the fourth quarter of 2017.

This request includes (a) all Documents concerning the tests, analyses, forecasts and determinations described above, including all Documents related to the change in brand strategy referenced above, and (b) all Documents concerning this disclosure itself, including drafts of the disclosure.

**DOCUMENT REQUEST NO. 12**

Documents, including Work Papers, concerning any consideration of whether Mattel was required to restate its Financial Statements for either the third or fourth quarters of 2017, or full year 2017, including, but not limited to:

a. All Documents concerning any such consideration, including any determination that a restatement was necessary;

b. All Documents concerning any consideration of whether there was, or any determination that there was, a material weakness(es) in Mattel's Internal Controls;

c. All Documents concerning the January 15, 2018 meeting described at ¶127 of the Complaint;

d. All Documents concerning the January 16, 2018 meeting described at ¶136 of the Complaint;

e. All Documents and Communications concerning whether Mattel could report a "Little r" restatement rather than a "Big R" restatement described at ¶¶132-36 of the Complaint;

f. All Documents and Communications concerning Abrahams' direction that Mattel and PwC should find a way to avoid a restatement and reporting a material weakness described at ¶141 of the Complaint;

g. All Documents concerning any actual or anticipated market or investor reaction to a restatement;

h. All Communications with Georgiadis and Euteneuer concerning any consideration of restating financial results;

i. All Documents, including meeting minutes and notes, concerning meetings with Georgiadis and Euteneuer regarding any consideration of issuing a restatement; and

j. All Communications with PwC regarding any consideration of issuing a restatement.

**DOCUMENT REQUEST NO. 13**

Documents, including Work Papers, concerning any consideration of whether Mattel should disclose a material weakness(es) in Mattel's Internal Controls, including, but not limited to:

a.  Communications on this subject, including but not limited to Communications with Mattel, Georgiadis, or Euteneuer;

b.  Meeting minutes and notes from meetings, whether formal or informal, during which material weaknesses in Mattel's Internal Controls, or whether to disclose them, were discussed;

c.  Documents regarding any actual or anticipated impact that restating or disclosing a material weakness(es) would have on Mattel; and

d.  Documents concerning any actual or anticipated market or investor reaction to the disclosure of a material weakness(es).

## DOCUMENT REQUEST NO. 14

Documents, including Work Papers, concerning Mattel's Internal Controls and related practices, policies, and procedures, including, but not limited to:

a.  Any analysis, reports or reviews conducted by Mattel's Internal Audit team;

b.  Any third-party audit, analysis consultation or investigation;

c.  Any internal control deficiencies and/or material weaknesses, including but not limited to those described at ¶¶56-79 of the Complaint;

d.  Remedial actions taken concerning Mattel's Internal Controls deficiencies;

e.  Documents concerning Internal Controls related to Mattel's deferred tax assets and deferred tax liabilities; and

f.  Documents concerning Internal Controls related to Mattel's tax valuation allowance.

## DOCUMENT REQUEST NO. 15

Documents concerning Mattel's process and practice for determining, calculating, documenting, and confirming its deferred tax asset valuation allowance.

## DOCUMENT REQUEST NO. 16

Documents, including Work Papers, concerning the valuation allowance that Mattel recorded against its Deferred Tax Assets in the third quarter of 2017 as described at ¶¶92-102 of the Complaint, including, but not limited to:

a. Documents concerning the impact of the Toys "R" Us bankruptcy on Mattel's decision whether to record a valuation allowance;

b. The initial decision not to record a valuation allowance against Mattel's deferred tax assets in the third quarter of 2017, as described at ¶¶80-91 of the Complaint;

c. The decision to record a valuation allowance against Mattel's deferred tax assets in the third quarter of 2017, as described at ¶¶92-102 of the Complaint;

d. Documents concerning the calculation of the valuation allowance recorded against Mattel's deferred tax assets for the third quarter of 2017;

e. Documents concerning the error discovered prior to Mattel publishing its third quarter 2017 Financial Statements as described at ¶¶104-06 of the Complaint;

f. Documents concerning the revision of the valuation allowance, as described at ¶¶107-14 of the Complaint;

g. Documents concerning the recalculation of the tax valuation allowance for the third quarter of 2017, including, but not limited to, the spreadsheet described at ¶106-07 of the Complaint;

h. Documents concerning the discovery of the error in the valuation allowance Mattel recorded in its third quarter 2017 Financial Statements, as described at ¶¶116-22 of the Complaint;

i. Documents concerning the meeting Whitaker had with Dermott Martin during which the error was discovered, as described at ¶¶116-22 of the Complaint;

j. Documents concerning the impact that recording a valuation allowance would have on Mattel's financial performance;

k. Documents concerning the anticipated or actual response to a valuation allowance by analysts, investors, or the media;

l. Meeting notes and minutes from meetings during which recording a valuation allowance was discussed; and

m. Communications concerning any valuation allowance or consideration of recording a valuation allowance.

**DOCUMENT REQUEST NO. 17**

Documents concerning the new Internal Control(s) that Whitaker was asked to develop concerning Mattel's deferred tax valuation allowance process as described at ¶¶115-16 of the Complaint.

**DOCUMENT REQUEST NO. 18**

Documents concerning any meeting between all or any of Euteneuer, Georgiadis, You, and the Mattel Audit Committee prior to filing Mattel's 2017 Form 10-K, as described at ¶¶150-52 of the Complaint.

**DOCUMENT REQUEST NO. 19**

Documents concerning Mattel's policies, procedures, and processes for reporting errors to the Audit Committee.

**DOCUMENT REQUEST NO. 20**

Documents concerning Mattel's Financial Statements for the third or fourth quarter of 2017 including, but not limited to, draft Financial Statements sent to Euteneuer or Georgiadis.

**DOCUMENT REQUEST NO. 21**

To the extent not produced in response to the foregoing requests, Documents concerning Mattel's accounting for, and disclosure of, its deferred tax assets, deferred tax liabilities, intangible assets, and tax valuation allowance.

**DOCUMENT REQUEST NO. 22**

Documents concerning Mattel's compliance or non-compliance with GAAP provisions ASC 740 and ASC 250 as described in ¶¶247-71 of the Complaint, including any audits or analyses of these issues.

**DOCUMENT REQUEST NO. 23**

Documents concerning all Board meetings during the Relevant Time Period. This Request includes all Board Communications, Board meeting minutes, notes, Board materials and presentations, as well as drafts thereof.

**DOCUMENT REQUEST NO. 24**

Documents concerning all Audit Committee meetings during the Relevant Time Period. This Request includes all Audit Committee Communications, Audit Committee meeting minutes, notes, Committee materials and presentations, as well as drafts thereof.

**DOCUMENT REQUEST NO. 25**

Documents, including Work Papers, concerning the impact, whether anticipated or actual, of the Toys "R" Us bankruptcy on Mattel, including its financial performance, assets, liabilities, or accounts receivable.

**DOCUMENT REQUEST NO. 26**

Documents concerning Euteneuer's departure from Mattel as described in ¶179 of the Complaint.

**DOCUMENT REQUEST NO. 27**

Documents concerning the removal of Abrahams from the PwC audit team in 2019 as described in ¶¶181, 184 of the Complaint, including (i) all reasons for his removal; (ii) whether his removal was voluntary; (iii) Communications concerning his removal, including but not limited to those with investors, analysts, the media or Mattel; (iv) any terms of his removal; (v) any compensation paid, to be paid, foregone or reduced in connection with his removal, and (vi) whether his removal was voluntary.

**DOCUMENT REQUEST NO. 28**

Documents concerning Abrahams' compensation, including any relationship between hia compensation (whether cash, incentive compensation, equity or options, bonuses, or otherwise) and PwC's revenues generated from its Mattel account, including Documents and Communications sufficient to show the absence of such a relationship.

**DOCUMENT REQUEST NO. 29**

Documents concerning the movement in Mattel's stock price on any of the following dates: August 9, 2019, October 29, 2019, and November 12, 2019, including the cause or causes of that movement.

**DOCUMENT REQUEST NO. 30**

Without limit as to time period, Documents concerning Your engagements with Mattel, including, but not limited to:

a. Documents concerning the total amount of compensation You have earned from engagements with Mattel;

b. Documents concerning consulting agreements between You and Mattel, including any engagement letters;

c. Documents concerning engagement letters for auditing services You performed for Mattel; and

d. Documents sufficient to show the amount of compensation Mattel paid You for each audit and consulting engagement.

**DOCUMENT REQUEST NO. 31**

Documents concerning the alleged false and misleading statements in the Complaint, including those described at ¶¶324-433 of the Complaint. This Request includes without limitation any drafts, scripts, and Communications with analysts, investors, the media, or the SEC concerning such statements.

21

**DOCUMENT REQUEST NO. 32**

Documents, including Work Papers, concerning Mattel's August 8, 2019 Form 8-K, including Documents concerning the response thereto by analysts, investors, rating agencies, lenders, and the media.

**DOCUMENT REQUEST NO. 33**

Documents, including Work Papers, concerning Mattel's October 29, 2019 Form 8-K, including Documents concerning the response thereto by analysts, investors, rating agencies, lenders, and the media.

**DOCUMENT REQUEST NO. 34**

To the extent not produced in response to the foregoing Requests, Documents concerning Communications with analysts, investors,  the media, rating agencies or lenders regarding: (i) the Whistleblower or the Whistleblower Letter or its contents; (ii) the Restatement; (iii) the Audit Committee investigation or determinations; (iv) Euteneuer's departure; (v) Mattel's financial results, including but not limited to its financial results for the third quarter of 2017, the fourth quarter of 2017, and the third quarter of 2019; (vi) Mattel's Internal Controls; (vii) the retention of PwC as Mattel's auditor; (viii) the removal of Abrahams from the PwC audit team for Mattel; (ix) the termination of the Bond Offering; and (x) the movements in Mattel's stock price on any of the following days: August 9, 2019, October 29, 2019, and November 12, 2019.

**DOCUMENT REQUEST NO. 35**

All Documents You have relied on or intend to rely on in this litigation in support of any assertion or defense.

**DOCUMENT REQUEST NO. 36**

Your Document retention, preservation, or destruction policies.

**DOCUMENT REQUEST NO. 37**

All insurance policies under which any insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any judgment.

**DOCUMENT REQUEST NO. 38**

Documents concerning Your policies, standards, and procedures for auditing the Financial Statements of publicly traded companies in compliance with PCAOB auditing standards, including AS 1001, AS 1005, AS 1015, AS 1301, AS 1305, AS 3101, AS 2201, AS 2905, and AS 4105.

**DOCUMENT REQUEST NO. 39**

Documents concerning Your policies, standards, and procedures for auditing the Financial Statements of publicly traded companies in compliance with PCAOB ethics and independence standards, including PCAOB Rules 3502, 3525, and 3526.

**DOCUMENT REQUEST NO. 40**

Documents concerning Your policies, standards, and procedures for auditing the Financial Statements of publicly traded companies in compliance with the criteria established in *Internal Control – Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway.

**DOCUMENT REQUEST NO. 41**

Documents concerning Your policies, standards, and procedures for the calculation of deferred tax assets and for determining when a company must record a valuation allowance against any such deferred tax assets pursuant to ASC 740-10-30-5 and ASC 740-10-30-24, as described at ¶¶84, 255.

**DOCUMENT REQUEST NO. 42**

Documents concerning Your policies and procedures related to compliance with ASC 250, including which errors in financial reporting require a "Big R" restatement, require a "Little r" restatement, or no restatement – all as identified at ¶135.

**DOCUMENT REQUEST NO. 43**

Documents, including Work Papers, concerning audit(s), interim review(s), or analyses of Mattel's Internal Controls conducted in 2016, 2017, 2018, 2019, or 2020, including:

    a.  The findings and results of such audits or analyses;

    b.  Your recommendations, proposals, or advice concerning the subject of any such audits or analyses, whether or not adopted;

    c.  Communications concerning such audits or analyses, either internally, with Mattel, or other third parties;

    d.  Notes and meeting minutes of meetings during which audits or analyses were discussed; and

    e.  Documents concerning any changes You or Mattel did or did not implement as a result of such audits or analyses.

**DOCUMENT REQUEST NO. 44**

Documents including Work Papers concerning Your unqualified Audit Reports in Mattel's 2016 Form 10-K, Mattel's 2017 Proxy Statement, Mattel's 2017 Form 10-K, Mattel's 2018 Proxy Statement, Mattel's 2018 Form 10-K, and Mattel's 2019 Proxy Statement including:

    a.  Communications, whether internal, with Mattel, or any other third parties, pursuant to issuing the above Audit Reports in accordance with AS 3101;

    b.  Notes and meeting minutes of meetings during which the above Audit Reports and conclusions were discussed; and

    c.  Documents concerning PwC's bases for issuing the above Audit Reports;

    d.  Schedules maintained of any proposed audit adjustments, whether ultimately recorded or not by Mattel;

    e.   Documents assessing the existence of any material weaknesses in Mattel's Internal Controls in accordance with AS 2201;

    f.   Documents concerning whether PwC's unqualified audit opinions violated AS 2201 and AS 3103 as identified at ¶296.

## DOCUMENT REQUEST NO. 45

To the extent not produced in response to the above request, Documents, including Work Papers, concerning all audits or interim reviews of Mattel's Financial Statements, results of operations, or consolidated balance sheets conducted in 2016, 2017, 2018, 2019, or 2020.

## DOCUMENT REQUEST NO. 46

Documents concerning any deficiencies in Internal Controls reporting identified at Mattel by Mattel and You during the Relevant Time Period.

## DOCUMENT REQUEST NO. 47

Documents concerning audits, interim reviews, or analyses of Mattel's deferred tax assets and the decision to record or not record a valuation allowance against those assets conducted by You, including:

    a.   The findings and results of such audits or analyses;

    b.   PwC's recommendations, proposals, or advice concerning the subjects of any such audit or analyses, whether or not adopted;

    c.   Communications concerning such audits or analyses;

    d.   Notes and meeting minutes of meeting during which such audits or analyses were discussed; and

    e.   Documents concerning any changes You or Mattel did or did not implement as a result of such audits or analyses.

**DOCUMENT REQUEST NO. 48**

Documents concerning audits, interim reviews, analyses of Mattel's internal controls or formal processes for determining, documenting, and confirming its deferred tax assets, liabilities and tax valuation allowances.

**DOCUMENT REQUEST NO. 49**

Documents concerning the PCAOB's investigation of PwC over possible violations of PCAOB rules, policies, or standards in its auditing of Mattel during the Relevant Time Period, including:

    a.   All Documents produced by You to the PCAOB;

    b.   All Documents provided to You by the PCAOB;

    c.   Communications concerning such investigation(s) or inquiry(ies), including Communications between You and the Governmental Entity; and

    d.   Transcripts of any depositions and/or interviews taken in connections with such proceeding(s).

**DOCUMENT REQUEST NO. 50**

Documents concerning any PwC internal investigation(s) into PwC's work on behalf of Mattel in 2017, 2018, 2019, or 2020.

**DOCUMENT REQUEST NO. 51**

To the extent not produced in response to the foregoing requests, Documents concerning Your Audit Opinions concluding that Mattel's disclosure controls and procedures were effective as stated, for example, in ¶359.

Dated: February 12, 2021         _/s/ Jonathan D. Uslaner_

                        Jonathan D. Uslaner
                        Bar No. 256898
                        **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
                        2121 Avenue of the Stars

Suite 2575
Los Angeles, CA 90067
Telephone: (31) 819-3470
jonathanu@blbglaw.com

John Rizio-Hamilton (admitted *pro hac vice*)
Brenna D. Nelinson (admitted *pro hac vice*)
Matthew W. Traylor (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: johnr@blbglaw.com
Email: brenna.nelinson@blbglaw.com
Email: matthew.traylor@blbglaw.com

*Lead Counsel for Lead Plaintiffs and the Class*

Jacob A. Walker (SBN 271217)
Block & Leviton LLP
260 Franklin Street Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jake@blockesq.com

*Additional Counsel for Additional Named Plaintiff*
*Houston Municipal Employees Pension System*

27