**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES-GENERAL**

Case No.: **CV 19-10860-MCS (PLAx)**                                Date: **August 4, 2021**

Title:   **In re Mattel, Inc. Securities Litigation**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRESENT:  THE HONORABLE    **PAUL L. ABRAMS**
                                    **UNITED STATES MAGISTRATE JUDGE**

|   **Christianna Howard**   |   **N/A**   |   **N/A**   |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

ATTORNEYS PRESENT FOR PLAINTIFF(S):          ATTORNEYS PRESENT FOR DEFENDANT(S):
                    NONE                                                    NONE

PROCEEDINGS:  (IN CHAMBERS)  **Plaintiffs' Motion to Compel Further Discovery from PricewaterhouseCoopers LLP (ECF No. 96); Application to File Documents Under Seal (ECF No. 113)**

On July 16, 2021, the parties in this purported class action filed a Joint Stipulation (alternatively "JS" (ECF No. 97-1)) in support of their positions regarding the Motion ("Motion" or "Mot." (ECF No. 96)) filed by lead plaintiffs DeKalb County Employees Retirement Plan and New Orleans Employees' Retirement System ("plaintiffs"), seeking to compel defendant PricewaterhouseCoopers LLP ("PwC" or "defendant") to do the following:  (1) search for and produce documents that are responsive to plaintiffs' Request for Production of Documents ("RFPs"), dated between May 2017 and July 31, 2017 (the three months leading up to the Class Period); (2) search for and produce emails responsive to plaintiffs' RFPs and quarterly work papers, dated between March 2, 2018, and August 2019 ("during the heart of the Class Period . . . when 60% of the misstatements at issue were made"); and (3) supplement its responses to plaintiffs' Interrogatory number 4 by providing the requested information about its oral presentations to the Securities and Exchange Commission ("SEC") and Department of Justice ("DOJ") concerning the fraud at issue in this action.  (Mot. at 1; JS at 1). On July 28, 2021, plaintiffs filed their Supplemental Memorandum.[1]  (ECF No. 115).  Having considered the pleadings submitted in connection with the Motion, the Court has concluded that oral argument will not be of material assistance in determining the Motion.  Accordingly, the hearing scheduled for August 11, 2021, is **ordered off calendar**.  See Local Rule 7-15.

By way of background, plaintiffs state that the Class Period in this action begins on August 2, 2017, when PwC's client, Mattel, filed its report with the SEC for the second quarter of 2017 (the "Q2 2017 10-Q"), and runs until August 8, 2019, when Mattel disclosed it had been "made aware of a whistleblower letter concerning the fraud at issue in this case." (JS at 1).  Plaintiffs contend that defendants, in their Q2 2017 10-Q, falsely asserted that Mattel had effective internal controls over financial reporting, when its internal controls actually "suffered from severe deficiencies."  (Id. (citing Rizio-Hamilton Decl. Ex. 4)).  The deficiencies contributed to material misstatements in Mattel's financial statements contained in its SEC filings during the Class Period, and Mattel

--------

[1]   Plaintiffs' unopposed Application to file certain documents under seal (ECF No. 113) is **granted**.

and PwC "knew of the misstated financial results but, rather than disclose the known errors, they conspired to conceal them from investors." (Id. at 1-2).  Then, in August 2019, a whistleblower sent a letter to PwC concerning the fraud at issue in this case. (Id. at 1).  After an investigation by Mattel's Audit Committee, Mattel issued a formal restatement in which it "conceded that its financial results were materially misstated and admitted to control deficiencies." (Id. at 2).  Mattel then "separated" from its CFO and PwC removed its lead audit partner for Mattel -- defendant Joshua Abrahams.  (Id.).  The DOJ initiated a criminal investigation into the misconduct at issue, and the SEC initiated a civil investigation.  (Id.).

**Legal Standard**

The Court will examine the issues in the Motion using the general standard set forth in Federal Rule of Civil Procedure 26 ("Rule 26").  Rule 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.  Information need not be admissible in evidence to be discoverable.  Id.  However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Finally, the Court is mindful of the imperative that the Federal Rules of Civil Procedure be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1 (emphasis added); see also Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (a court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).  Even so, the scope of discovery is not without limits as Rule 26(b) (as amended in 2015) now provides that discovery is limited to information that is relevant to a claim or defense in the lawsuit *and* proportional to the needs of the case.  The party seeking to compel discovery "has the initial burden of demonstrating relevance" under Rule 26.  See Integon Preferred Ins. Co. v. Saavedra, 2019 WL 4228372, at *2 (C.D. Cal. July 12, 2019) (citations omitted).  Thereafter, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Sullivan v. Prudential Ins. Co. of Am., 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

**The Time Periods at Issue**

The RFPs at issue defined the relevant time period for the documents sought, as follows:

> Unless otherwise stated in a Document request, all Documents and Communications requested are for the period from January 1, 2017 through the present (the "Relevant Time Period"), and shall include all Documents and Communications that relate, in whole or in part, to such period even though dated, prepared or received before or after that period.

(Rizio-Hamilton Decl. Ex. 2 at 9-10). During the parties' meet and confer discussions, plaintiffs narrowed the disputed period for the subject discovery to the three-month period immediately prior to the Class period: May 1, 2017, to July 31, 2017. (JS at 9). PwC refused to search for responsive documents preceding the Class Period. (Id. at 2).

Plaintiffs also note that PwC "impermissibly attempts to excise from discovery most of the Class Period itself, specifically documents dated between March 2, 2018 and August 2019." (Id. at 10). They state that PwC "refused to search for *any* responsive emails [from this period] and has not produced PwC's workpapers for Mattel's quarterly SEC filings for all of 2018 and the first and second quarters of 2019." (Id. at 11; see also Pls.' Supp'l Mem. at 1 ("PwC refuses to search for communications during the modest, three months leading up to the Class period, and refuses to search for communications during the [17-month] period that comprises 70% of the Class Period") (emphasis in original)).

### Documents Dated Between May 2017 and July 31, 2017

Plaintiffs seek an order requiring defendant to search for and produce responsive documents dated between May 2017 and July 2017, the three-month period leading up to the Class Period. (JS at 7-8). They state that courts have "repeatedly required defendants in securities class actions to search for and produce responsive documents dated before the start of the class period" because facts "predating the class period are relevant to establish that statements made during the class period were materially false," and "'common sense' dictates that facts relevant to scienter 'will ordinarily date from before any alleged misrepresentations' because the 'circumstances preceding the statements . . . would be among those knowable at the time of the statements.'" (Id. at 8 (quoting In re Toyota Motor Corp. Sec. Litig., 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012))).

Plaintiffs state they have two reasons for requesting these documents: (1) "to demonstrate the falsity of Mattel's 'effective control' statements in the Q2 2017 10-Q, which was issued on the first day of the Class Period"; and (2) "to rebut the Mattel Defendants' Reliance Defense, through which Mattel attempts to shift the blame for Defendants' misstatements to PwC alone." (Id. at 9).

Plaintiffs explain that the Mattel defendants' primary defense is that, "when making the statements at issue, they justifiably relied upon 'PricewaterhouseCoopers staff and partners, including Joshua Abrahams, Chip Lightfoot, and John Brierley.'" (Id. at 10 (quoting Rizio-Hamilton Decl. Ex. 6 at 2)). Plaintiffs surmise that to demonstrate why Mattel's reliance on PwC was justified, defendants "will point to the fact that PwC reviewed Mattel's quarterly and annual filings with the SEC." (Id.). They state that they need access to PwC's files from the period prior to the Class Period to examine the work PwC performed and the conclusions it reached, which "can show that PwC identified control deficiencies that required disclosure or, at a minimum, failed to conduct a reasonable review of Mattel's internal controls justifying Defendants' purported reliance." (Id.).

PwC responds that plaintiffs' claim against PwC "is limited to two allegedly fraudulent statements, the first of which did not occur until more than six months after the alleged class period began: (1) PwC's year-end audit

opinion for Mattel's 2017 year-end disclosures, dated February 28, 2018, and (2) PwC's year-end audit opinion for Mattel's 2018 year-end disclosures, dated February 22, 2019." (Id. at 4). It asserts that it has already conducted a "reasonable search for and produced documents related to those events and beyond, including the most pertinent source of information related to PwC's audit, which are the audit workpapers." (Id. at 4-5). PwC states that as plaintiffs did not allege any PwC misstatement or related misconduct "until well into the class period," their RFPs seeking documents for the three-month period prior to the class period are "patently overbroad." (Id. at 5).

PwC notes that plaintiffs acknowledge that the RFPs may be relevant to "***Mattel's*** August 2, 2017 disclosure," and argue, therefore, that the discovery "is not aimed at obtaining discovery related to any alleged ***PwC*** misstatement -- the first of which did not occur until February 2018." (Id. at 5 (emphases in original), 16). Thus, according to PwC, the documents are not relevant to plaintiffs' claim against PwC. (Id. at 5). It also states that it neither audited nor authored Mattel's Q2 2017 Form 10-Q, and that plaintiffs' requests, therefore, are "duplicative and cumulative of documents obtainable from Mattel." (Id. at 16).

With respect to plaintiffs' argument that the requests will provide information to rebut Mattel's reliance defense, PwC states that "[p]re-class period documents -- which by definition predate Mattel's Q3 valuation error and later decisions to correct that error -- plainly are not relevant to any defense that Mattel relied on PwC in making statements or decisions related to that error," and documents related to PwC statements on which Mattel purportedly relied "are readily and more appropriately obtainable from Mattel." (Id. at 17).

It further states that it has already produced "(1) its work papers from its audit of Mattel's internal controls statements from fiscal years 2017 and 2018, which formally document PwC's work to review Mattel's internal controls for those years and support for its conclusions, as well as (2) electronic communications related to events underlying the purported misstatements in PwC's opinions following those audits, which PwC specifically searched for references to deficiencies and material weaknesses." (Id. at 16-17). PwC asserts that plaintiffs "supply no reason to believe that a burdensome search of PwC's pre-class period for documents related to Mattel's unaudited quarterly statements would yield additional documents relevant to Plaintiffs' claims." (Id. at 17). It concludes that (a) given the limited relevance of this time period to plaintiffs' claims against PwC or to Mattel's reliance defense, (b) PwC's extensive production of documents related to its audits of Mattel's internal controls, and (c) the availability of documents from Mattel, plaintiffs' request "for pre-class period documents [from PwC] is overbroad and unduly burdensome." (Id.). It states that to demonstrate its "ongoing willingness to resolve this dispute," it "is willing to produce its workpapers for its quarterly reviews of Mattel's financials for the second quarter of 2017."[2] (Id.).

After careful consideration of the parties' positions and cited authority, the Court determines that PwC's contention that plaintiffs' request for responsive documents from the three-month period prior to the start of the Class Period is overbroad and seeks irrelevant information because such documents do not relate to plaintiffs' claim asserted against PwC is unavailing. This is not the standard. Instead, discovery is available regarding any nonprivileged matter that is "relevant to *any* party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). As noted by plaintiffs, such documents, if they exist, may be relevant to refuting Mattel's reliance

---

[2]     The Court notes that in plaintiffs' RFPs, "Work Papers" was a specifically defined term. (See Rizio-Hamilton Decl. Ex. 2 at 5-6). Here, PwC does not limit its offer to "produce workpapers not previously produced . . . for its quarterly reviews . . ." in any way other than by date -- "for the second quarter of 2017." (JS at 5; see also id. at 20 (stating it is willing to search for workpapers "for 2018 and the first and second quarters of 2019")). Accordingly, the Court determines that as used herein, "workpapers" is given the same definition as "Work Papers" in the RFPs.

defense.

Likewise, PwC's suggestion that plaintiffs' request for documents from PwC is duplicative and cumulative of documents requested from Mattel also is not persuasive. Responsive documents in PwC's possession, custody, or control (if they exist) may not have been in Mattel's possession, custody, or control, or, for any number of reasons, may not have been previously produced by Mattel. Additionally, PwC has not met its burden of showing that requiring it to provide its responsive documents dated between May and July 2017 is <u>unreasonably</u> cumulative or duplicative, or burdensome.

Based on the foregoing, plaintiffs' Motion to compel PwC to search for documents dated between May and July 2017, responsive to plaintiffs' RFPs, is **granted**. **No later than August 25, 2021**, defendant shall produce (1) its "workpapers for its quarterly reviews of Mattel's financials for the second quarter of 2017" as it represented to plaintiffs (and this Court) its willingness to do (JS at 17); and (2) any other responsive non-privileged documents in its possession, custody, or control dated between May 2017 to July 31, 2017.

### <u>Emails and Quarterly Workpapers for the Period Between March 2, 2018, and August 2019</u>

Plaintiffs contend that the documents they are seeking from the period between March 2, 2018, and August 2019 "are critical to, among other things, proving that the internal control weakness that Mattel has now admitted existed in the third and fourth quarters of 2017 persisted during the remainder of the Class Period." (JS at 11). They assert that these documents are directly relevant to plaintiffs' claims that all of Mattel's Class Period SEC filings contain material misstatements. (<u>Id.</u>).

Plaintiffs argue that if PwC is "permitted to exclude such Class Period documents from its review and production, PwC and Mattel will then be able to argue to the jury that Plaintiffs have not introduced documentary evidence that the deficiencies in Mattel's internal controls that existed at the start of the Class Period persisted throughout the Class Period." (<u>Id.</u>). They submit that such documents "are also relevant to the issue of what discussions Defendants had concerning the known misstatements of Mattel's financial results during this time period -- evidence that goes directly to falsity and scienter." (<u>Id.</u>). Plaintiffs further assert that by refusing to review its documents dated in this period, "PwC creates a real risk that the whistleblower's identity will remain a mystery forever" as the subject period "includes the months before the whistleblower submitted their letter to PwC" and the whistleblower is a "critical witness" in this action. (<u>Id.</u>).

In support of their position, plaintiffs observe that another court in this district in a recent securities class action rejected a "similar attempt" to carve out a responsive period. (<u>Id.</u> at 12 (quoting <u>Karinski v. Stamps.com, Inc.</u>, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (holding that "Defendants' arguments for their timeframe limitations -- including a carve out for the middle of the class period -- are unpersuasive"))). That court also noted that "[s]ome discovery shortly before and after the class period began is both relevant to Defendants' knowledge when they made the alleged misstatements and proportional to the needs of the case." <u>Karinski</u>, 2020 WL 5084093, at *2.

PwC responds that plaintiffs' request to compel further documents and/or responses from this time period is cumulative, unduly burdensome, and seeks irrelevant materials. (JS at 4). It states that it has already produced over 300,000 pages of documents in response to plaintiffs' RFPs, "including audit work papers, electronic discovery from 23 custodians, copies of productions to the government, and other documents." (<u>Id.</u>). PwC asserts that the requests are "likewise overbroad," as the period "post-dates [PwC's] alleged fraud and Plaintiffs have not pointed to anything other than conjecture to suggest that other PwC documents from [t]his period are relevant." (<u>Id.</u>). It also states that although plaintiffs have argued they are seeking to learn the identity of the whistleblower, it has already informed plaintiffs that it does not know the whistleblower's identity. (<u>Id.</u>). It

contends that it has been willing to produce additional documents "upon a reasonable proposal from Plaintiffs . . . and recently produced additional electronic communications from August 1, 2019 through November 22, 2019." (Id.).

PwC asserts that plaintiffs are seeking to "undertake a search of electronic documents from two dozen custodians for an additional 20 months" period (i.e., from May to July 2017, and from March 2018 to August 2019) and contends that this "broad request" has no "meaningful limitation and is not proportional to the needs of the case." (Id. at 4, 17-18). It notes that documents from this time period entirely "post-date[] the fraudulent conduct underlying Plaintiffs' claim[] against PwC." (Id. at 18). It explains that plaintiffs allege that PwC's opinions on Mattel's internal control over financial reporting were false or misleading because "Mattel had incorrectly classified a deferred tax asset related to its valuation allowance calculation in Q3 2017 and identified the error in January 2018." (Id.). PwC asserts, therefore, that plaintiffs' "attempt to characterize March 2018 to August 2019 as spanning 70% of the Class Period and including 6 out of the 10 challenged SEC filings ignores this reality." (Id.). It submits that none of the cases cited to by plaintiffs stands for the proposition that "documents are *per se* discoverable just because they were created during the class period." (Id. (footnote omitted)).

PwC represents that although it has already complied with its discovery obligations, it is "willing to produce workpapers not previously produced to Plaintiffs for its quarterly reviews of Mattel's financials for 2018 and the first and second quarters of 2019." (Id. at 20).

Plaintiffs respond that "courts consistently require defendants to search the entirety of the class period and reject attempts -- such as PwC's here -- to 'carve out' portions of the class period from its document searches." (Pls.' Supp'l Mem. at 1 (citing In re Toyota, 2012 WL 3791716, at *4; Karinski, 2020 WL 5084093, at *2)). They further state that the requested documents are "central to Plaintiffs' claims and the asserted defenses," as (a) PwC "was Mattel's auditor and tax consultant before and throughout the entire Class Period and is the primary defendant in this case"; (b) PwC "had non-stop internal discussions about Mattel and communicated with Mattel throughout the Class Period, including about Mattel's internal controls and tax accounting"; and (c) when Mattel recognized the validity of the whistleblower's concerns, it restated its financials, PwC expelled Abrahams from Mattel's audit team, and the DOJ and the SEC commenced investigations into PwC's misconduct. (Id. at 1-2).

Plaintiffs further assert that PwC is ignoring "that its role was not limited to year-end audit opinions," as it was "deeply involved in all of the misstatements at issue in this case, conducting reviews and providing advice about Mattel throughout the entire Class Period (not just at the end of the year)." (Id. at 2). As such, PwC "conducted 'quarterly reviews' during every quarter for all of Mattel's financial statements at issue in this case," and its "year-end audit opinions published to investors encompassed all of these reviews." (Id. (emphases in original)). Plaintiffs submit that PwC was "also in constant dialogue about (and with) Mattel during every quarter about its reviews and a host of other matters central to this case," and "because the relationship was so extensive, PwC was found to have violated the SEC's auditor-client independence rules, and its lead audit partner was terminated." (Id.).

Plaintiffs contend that PwC's offer to produce its "final" workpapers for its quarterly reviews is "insufficient for many reasons." (Id.). They state that the "final" workpapers "are devoid of any PwC internal emails, external emails, texts, handwritten notes, or drafts." (Id. at 2-3). They argue that such documents are "central to this case," and that "[g]iven the lengths and inventive steps that PwC and Mattel took to effectuate their cover-up of the misstatements, one would fully expect them to be careful and clever enough not to include evidence of that cover-up in the final 'workpapers'" they are offering now to produce. (Id. at 3).

Plaintiffs further contend that PwC's "repeated claims of 'burden' are also unsubstantiated and baseless," as it failed to provide the Court with any declaration, affidavit, or evidence of any burden, "much less a burden so

severe as to warrant blocking critical discovery in a case involving hundreds-of-millions of dollars in shareholder losses." (Id. at 4). They also argue that PwC's "unsubstantiated cries of 'burden' are inherently inconsistent with its claim that the requested searches are unlikely to generate many results." (Id.).

After careful consideration of the parties' positions and relevant case authority, the Court determines that plaintiffs have demonstrated that responsive emails from the seventeen-month period from March 2018 to August 2019 are relevant to the parties' claims and defenses and proportional to the needs of the case. PwC's contention, that this period is not relevant and proportional to the needs of the case because it post-dates the fraudulent conduct alleged by plaintiffs against PwC, fares no better with respect to this time period than it did with the three-month pre-class period discussed previously. Additionally, the fact that PwC has been unable to glean the identity of the whistleblower is not a reason to prevent plaintiffs from seeking documents from which they might be able to determine that information. And, as discussed previously, PwC has not met its burden of showing that requiring it to provide responsive documents dated between March 2, 2018, and August 2019 is unreasonably cumulative or duplicative, or otherwise burdensome.

Plaintiffs state that they are seeking to compel PwC to produce its "quarterly workpapers dated between March 2, 2018, and August 2019." (See Proposed Order (ECF No. 96-11) at 2). Although plaintiffs argue that PwC's offer to produce its "quarterly workpapers" is improperly limited by PwC to include only its "final" workpapers, the Court notes that PwC's offer as stated to the Court was to "produce workpapers not previously produced . . . for its quarterly reviews of Mattel's financials for 2018 and the first and second quarters of 2019." (JS at 20). It appears, therefore, that PwC has generally agreed to produce the requested "workpapers." (See also supra note 2).

For the reasons stated by plaintiffs, the Court further determines that responsive emails dated between March 2, 2018, and August 2019, are relevant to the parties' claims and defenses and proportional to the needs of the case.

Based on the foregoing, plaintiffs' Motion to compel PwC to search for documents dated between March 2, 2018, and August 2019, responsive to plaintiffs' RFPs, is **granted**. **No later than August 25, 2021**, defendant shall produce (1) its workpapers not previously produced to plaintiffs dated between March 2, 2018, and August 2019 for its quarterly reviews of Mattel's financials; and (2) any responsive non-privileged emails in its possession, custody, or control dated between March 2, 2018, and August 2019.

**Further Response to Interrogatory Number 4**

Interrogatory number 4 asks PwC to "Identify all Documents and information, whether conveyed orally or in writing, that You produced or provided to a Governmental body in connection with a Governmental Investigation or in response to a Governmental Subpoena." (JS at 7). Plaintiffs assert that this Interrogatory "is intended to determine" the following:

> (i) whether PwC made any oral admissions to the Government that are contrary to the positions taken by it in this Action; and (ii) whether PwC disclosed to the Government information that it is now improperly withholding from Plaintiffs in this Action on the grounds of "privilege."

(Id. at 12). PwC responded to this request as overbroad and ambiguous on its face, and to the phrase "conveyed orally" as overbroad, unduly burdensome, and unintelligible. (Id. at 7, 20). It also objected on the ground that the request seeks information that is neither relevant to the subject matter of this lawsuit, nor reasonably calculated to lead to the discovery of evidence that is relevant to the claim or defense of any party. (Id. at 7).

Plaintiffs propose that PwC may limit its response to Interrogatory number 4 by identifying PwC's substantive communications with the regulators during oral presentations, as well as any information it is now withholding in this action as "privileged" that it orally conveyed to the Government.  (Id. at 12).  They assert that such representations and admissions "are plainly relevant to this Action," and "constitute, among other things, party admissions."  (Id. at 12-13).  According to plaintiffs, information about PwC's oral presentations are also important "to test PwC's broad assertions of privilege in this matter," as it has withheld "its internal analyses and memoranda summarizing interviews of current and former PwC and Mattel witnesses about the fraud at issue."  (Id. at 13).  Plaintiffs assert they are entitled to such allegedly privileged information because any disclosure to the government of summaries of witness interviews serves to waive any work product or attorney-client privilege over any notes or memoranda memorializing such interviews.  (Id. (citing In re Banc of Cal. Sec. Litig., 2018 WL 2373860, at *1 (C.D. Cal. May 23, 2018); Luna v. Marvell Tech. Grp., Ltd., 2017 WL 4286325, at *1 (N.D. Cal. Sept. 22, 2017))).  Plaintiffs conclude, therefore, that if PwC or its counsel made presentations of witness interviews or any other privileged information to the government, it has waived any purported privilege.  (Id. at 13-14).

PwC states that it produced to plaintiffs over 300,000 pages of documents that it had produced to the SEC "in response to two subpoenas pertaining to matters at issue in this case," and responded to Interrogatory number 4 "to the extent it [was] not objected to."  (Id. at 20 (citing Fed. R. Civ. P. 33(b)(3))).  It explains that on May 14, 2021, plaintiffs' counsel sent PwC's counsel a letter that identified the following information missing from PwC's response:

> (1) what other documents outside of its production -- e.g., whitepapers, proffers, admissions, memos -- PwC has provided to the SEC; (2) what oral admissions and representations PwC has made to the SEC; (3) what documents or information PwC has provided to the Department of Justice, or any additional governmental body, in connection with its investigation.

(Id.).  PwC asserts that it "repeatedly confirmed" to plaintiffs' counsel that it had produced to plaintiffs all documents it had produced to government agencies in response to relevant investigations to date, and that it would continue to supplement such productions with any documents produced to the government in the future. (Id.).  It also confirmed that it did not provide any "whitepapers, proffers, admissions, memos or other work product to the SEC, DOJ, or any other government entity."  (Id.).  PwC says this takes care of plaintiffs' issues 1 and 3 from the May 14, 2021, meet and confer letter and all that now remains in dispute is "Plaintiffs' remarkable request for all 'oral admissions and representations PwC has made to the SEC' (and, apparently, now DOJ as well), and the even more remarkable -- and false -- claim that PwC has withheld such information on privilege grounds," when PwC has never claimed that what its counsel said to government lawyers is protected by privilege.  (Id. at 20-21).

PwC contends that plaintiffs are seeking to "transform PwC's counsel into fact witnesses."  (Id. (citing Mustang Mktg., Inc. v. Chevron Prods. Co., 2006 WL 510559, at *3 (C.D. Cal. Feb. 28, 2006))).  It argues that because the only people capable of "verifying, pursuant to Rule 33(b)(5), an interrogatory response providing plaintiffs with a readout of everything ever said orally to the SEC and DOJ on PwC's behalf are PwC's outside counsel," plaintiffs "have applied for a license to conduct a fishing expedition into counsel's recollection of facts relayed to the government so they can use the statements as party admissions."  (Id.).  It distinguishes the cases relied on by plaintiffs as involving disputes over document requests "over which, it was held, privilege had been waived."  (Id. at 22 (citations omitted)).  It "confirms here that it has not 'provided the SEC [or the DOJ] with oral summaries' of any witness interviews it conducted in connection with its internal investigation."  (Id.).

---

PwC further confirms that to the extent "any interview notes, memoranda, or other internal investigative work product exists, no such material was ever shared with the government (or any third party)," and this Interrogatory "only seeks information disclosed to the government." (Id.). PwC concludes that plaintiffs "failed to identify [their] apparent request for PwC to disclose its investigative work product in its deficiency letter, and never raised it with PwC's counsel during the meet and confer process"; thus, raising it here, "violates Local Rule 37." (Id. at 23 (citation omitted)).

Plaintiffs respond that PwC's refusal to disclose what it told the Government during its oral presentations is improper. (Pls.' Supp'l Mem. at 5). They argue that they are entitled to discover whether the oral presentations included substantive admissions or other statements that might undermine defendants' positions in this case, and are entitled to know what information PwC "orally conveyed to determine whether PwC waived privilege." (Id. (citations omitted)). Plaintiffs state that the fact that in-house or outside counsel participated in the oral presentations "provides no basis to withhold the requested information" as the presentations are not privileged because they are communications with a third party. (Id.). They submit that they are seeking "first-hand accounts of admissions by PwC's agents to the Government, and Plaintiffs cannot obtain this information through any other means." (Id. (emphases in original)).

The Court finds that under the circumstances here, to the extent discussed below, plaintiffs are not entitled to a further response to Interrogatory number 4.

In Banc of Cal. Sec. Litig., outside counsel who had been hired to investigate alleged financial ties between Banc's then-CEO and a convicted white collar criminal, conducted interviews of 15 individuals as part of its investigation. Banc of Cal. Sec. Litig., 2018 WL 2373860, at *1. Counsel presented its findings to the SEC; it then, at the SEC's later request, provided the SEC with oral summaries of its 15 interviews. Id. The Magistrate Judge found that counsel's disclosure of the summaries of the witness interviews "acted to waive any work product or attorney-client privilege over any notes or memoranda memorializing those interviews."[3] Id. (citing United States v. Reyes, 239 F.R.D. 591, 602 (N.D. Cal. 2006) (finding that attorneys who provided the SEC and the DOJ with oral briefings about their interviews had waived their work product and attorney-client privileges by disclosing the substance of their investigative interviews to the government)).

In Reyes, prior to meetings with officials from the SEC and DOJ, two law firms hired by the corporation's audit committee prepared notes and memoranda in preparation for the meetings. Reyes, 239 F.R.D. at 596. One of the law firms provided the government "with only oral briefings on their interviews and findings"; the other law firm provided briefings, "as well as a multimedia presentation." Id. The court held that the law firms "gave up their work-product privilege when they shared the substance of their work product with the government," and "employed their confidential communications and their work product for testimonial and evidentiary purposes." Id. at 603. Thus, to the extent the law firms disclosed to the government -- an adversary -- any information contained in any of the written material sought by the defendants' subpoenas, the court found they had waived "any right to protect it under the attorney-client or work-product privileges." Id. at 604.

---

[3]    There is no indication that counsel in Banc of Cal. Sec. Litig. had provided this information in response to interrogatories. Indeed, the briefing on the underlying motion in that action appears to reflect that the information was gleaned from various public documents authored by counsel as well as from documents produced in response to requests for production. See, e.g., In re Banc of California Securities Litigation, C.D. Cal. Case No. 17-118-DMG-DFM, ECF No. 194 at 2-7 (May 4, 2018) (noting that the results of counsel's investigation were presented to the SEC, the DOJ, and KPMG, and publicly disclosed in two press releases); see also id. ECF No. 198 at 11-14.

In this case, PwC represented to plaintiffs (and this Court) that it has produced to plaintiffs all documents that it produced to government agencies in response to two subpoenas "pertaining to matters at issue in this case." (JS at 20).  It also represented that it would continue to supplement such productions with any documents produced to the government in the future.  (Id.).  PwC also confirmed that it did not provide any "whitepapers, proffers, admissions, memos or other work product to the SEC, DOJ, or any other government entity" (id.), and that "it has not 'provided the SEC [or the DOJ] with oral summaries' of any witness interviews it conducted in connection with its internal investigation."  (Id. at 22).

Plaintiffs have not pointed to any of the 300,000+ pages produced by PwC -- or any other source -- as an indication that PwC disclosed information to the government it had gleaned during its investigation that was otherwise protected by the attorney-client privilege or the work product doctrine.  Neither has PwC disavowed its possession of "whitepapers, proffers, admissions, memos or other work product," but it does aver that it did *not* provide any such documents to the SEC or the DOJ.  If, indeed, PwC presented any information *orally* to the government otherwise protected by the attorney-client privilege or work product doctrine, i.e., such as orally summarizing its witness interviews during the proceedings, then plaintiffs might well be entitled to production of such documents.  There is, however, only plaintiffs' speculation that such information may exist.  The Court also determines that plaintiffs' request that PwC identify all information conveyed orally to the SEC and/or other agencies, is overbroad and burdensome.

Accordingly, plaintiffs' Motion to compel further response to Interrogatory number 4 is **denied**.  However, **no later than August 25, 2021**, PwC must submit a **declaration, signed under penalty of perjury by a corporate officer and/or, if applicable, its in-house or outside attorney with relevant personal knowledge**, **stating, if true**, the following:  (1) PwC has produced to plaintiffs all documents that it produced to the SEC or DOJ, whether in response to a subpoena or otherwise; (2) PwC (including its in-house or outside counsel) has not provided any "whitepapers, proffers, admissions, memos, or other work product" to the SEC or DOJ, whether in response to a subpoena or otherwise; (3) PwC (including its in-house or outside counsel) has not orally conveyed any information to the SEC or DOJ contained in PwC's "whitepapers, proffers, admissions, memos, or other work product," if any exist; and (4) PwC (including its in-house or outside counsel) has not provided the SEC or DOJ with oral summaries of any witness interviews it conducted in connection with its internal investigation.

IT IS SO ORDERED.

cc:    Counsel of Record

Initials of Deputy Clerk _____ch_____