# Exhibit C

Exhibit C
Page 67

## Washington University Law Review

Volume 93
Issue 2 *New Directions for Corporate and Securities Litigation*

2015

# Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias

Alon Brav
*Duke University Fuqua School of Business, National Bureau of Economic Research*

J. B. Heaton
*Bartlit Beck Herman Palenchar & Scott LLP*

Follow this and additional works at: https://openscholarship.wustl.edu/law_lawreview

 Part of the Business Organizations Law Commons, Economics Commons, and the Securities Law Commons

### Recommended Citation

Alon Brav and J. B. Heaton, *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias*, 93 Wash. U. L. Rev. 583 (2015).
Available at: https://openscholarship.wustl.edu/law_lawreview/vol93/iss2/15

This Article is brought to you for free and open access by the Law School at Washington University Open Scholarship. It has been accepted for inclusion in Washington University Law Review by an authorized administrator of Washington University Open Scholarship. For more information, please contact digital@wumail.wustl.edu.

Exhibit C
Page 68

# EVENT STUDIES IN SECURITIES LITIGATION: LOW POWER, CONFOUNDING EFFECTS, AND BIAS

ALON BRAV[*]
J.B. HEATON[**]

ABSTRACT

*An event study is a statistical method for determining whether some event—such as the announcement of earnings or the announcement of a proposed merger—is associated with a statistically significant change in the price of a company's stock. The main inputs to an event study are historical stock returns for the companies under study, benchmark returns like the return to the broader stock market, and standard statistical tests like t-tests that are used to test for statistical significance. In securities litigation and regulation, event studies are used primarily to detect the impact of disclosures of alleged fraud on the price of a single traded security.*

*But are event studies in securities litigation reliable? What is interesting about the use of event studies in securities litigation is that the methodology litigants use in court differs from the methodology that economists apply in their research. With few exceptions, securities litigation event studies are single-firm event studies, while almost all academic research event studies are multi-firm event studies. Multi-firm event studies are generally accepted in financial economics research, and peer-reviewed journals contain them by the hundreds. By contrast, single-firm event studies—the mainstay of modern securities fraud litigation—are almost nonexistent in peer-reviewed journals.*

[*] Robert L. Dickens Professor, Duke University Fuqua School of Business and National Bureau of Economic Research. brav@duke.edu.

[**] Partner, Bartlit Beck Herman Palenchar & Scott LLP. jb.heaton@bartlit-beck.com. The views expressed here are Heaton's own, and do not express the views of Bartlit Beck Herman Palenchar & Scott LLP, its attorneys, or its clients.

For very helpful comments and suggestions, we thank Josh Ackerman, Reid Bolton, Peter Clayburgh, Brad Cornell, Chris Culp, Kevin Dages, Tiago Duarte-Silva, Marc Gross, Chris Hagale, Jeff Hall, Mike Keable, Ashley Keller, Chris Landgraff, Dan McElroy, Katherine Minarik, Mark Mitchell, Steve Nachtwey, Martha Pacold, David Ross, Cindy Sobel, David Tabak, Sanjay Unni, David Wensel, and participants at the 21st Annual Institute for Law and Economic Policy Conference: New Directions for Corporate and Securities Litigation (co-sponsored by the *Washington University Law Review* and the Institute for Law and Economic Policy). We are especially grateful to Jim Cox for inviting us to think hard about single-firm event studies. All errors are our own.

Washington University Open Scholarship

Exhibit C
Page 69

606        WASHINGTON UNIVERSITY LAW REVIEW        [VOL. 93:583

have observed a combination of an event price impact of -5.0% and an unrelated price impact of +1.0% in the other direction. In general, the abnormal return we observe is comprised of a component related to the event plus a component related to non-event movements, but we have no mathematically precise way to separate them from each other.[56]

### B. Confounding Effects in Case Law

Courts are well aware that confounding effects are "[a] recurring problem in event studies" in securities litigation.[57] For example, a key issue in securities fraud cases is loss causation—demonstrating that the defendant's misrepresentation caused the losses that plaintiff seeks to recover.[58] The event study plays a prominent role in addressing loss causation. As one court summarized:

> Sorting out which declines were caused by such extraneous factors and which were caused by [disclosure of the fraud] is generally the province of an expert. It is an expert that produces the almost obligatory 'event study' that begins by isolating stock declines associated with market-wide and industry-wide downturns from those specific to the company itself. Once plaintiff's expert has isolated days where the stock declines were statistically significant relative to these downturns, he must consider firm-specific events that might have caused those declines.[59]

Failing to distinguish the fraud versus non-fraud causes of a price decline is generally fatal, especially where there are obvious confounding events occurring on the same day.[60] As one group of commentators has observed, many cases involve defense expert witnesses

---

56. In addition, the abnormal return will also contain a component related to the fact that there is measurement error in the estimation of the parameters of the model generating the expected return. *See* MacKinlay, *supra* note 1, at 21 (observing that the variance of abnormal returns contains components due to the sampling error in measuring predicted returns).

57. Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. LLC, 752 F.3d 82, 89 (1st Cir. 2014).

58. *See generally* Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005).

59. *In re* Vivendi Universal, S.A. Sec. Litig., 605 F. Supp. 2d 586, 599 (S.D.N.Y. 2009) (citations omitted).

60. *See, e.g.*, Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261, 271 (5th Cir. 2007) (vacating class certification order and noting that "[t]he plaintiffs' expert does detail event studies supporting a finding that Allegiance's stock reacted to the *entire bundle* of negative information contained in the 4Q01 announcement, but this reaction suggests only market efficiency, not loss causation, for there is no evidence linking the *culpable* disclosure to the stock-price movement"), *abrogated by* Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179 (2011); *In re*