# Exhibit E

# William & Mary Business Law Review

Volume 11 (2019-2020)
Issue 2

Article 4

February 2020

## Kill Cammer: Securities Litigation Without Junk Science

J. B. Heaton

Follow this and additional works at: https://scholarship.law.wm.edu/wmblr

Part of the Commercial Law Commons, Securities Law Commons, and the Supreme Court of the United States Commons

### Repository Citation

J. B. Heaton, *Kill Cammer: Securities Litigation Without Junk Science*, 11 Wm. & Mary Bus. L. Rev. 417 (2020), https://scholarship.law.wm.edu/wmblr/vol11/iss2/4

Copyright c 2020 by the authors. This article is brought to you by the William & Mary Law School Scholarship Repository.
https://scholarship.law.wm.edu/wmblr

# KILL *CAMMER*: SECURITIES LITIGATION WITHOUT JUNK SCIENCE

## J.B. HEATON[*]

ABSTRACT

*Securities litigation is a hotbed of junk science concerning market efficiency. This Article explains why and suggests a way out. In its 1988 decision in* Basic v. Levinson, *the Supreme Court endorsed the fraud on the market presumption for securities traded in an efficient market. Faced with the task of determining market efficiency, courts throughout the nation embraced the ad hoc speculations of a first-mover district court that proclaimed, in* Cammer v. Bloom, *how to allege (and presumably prove) facts that would do just that. The* Cammer *court's analysis did not rely on financial economics for its notions, but instead regurgitated the assertions of a single plaintiff's expert affidavit—from a securities law professor, not a financial economist—and a securities law treatise equally uninformed by the relevant field. The result has been thirty years of junk science in securities adjudication. This Article traces the development of the fraud on the market theory from its pre-efficient-markets-hypothesis roots through a brief "gilding the lily" phase where an appeal to social science results on market efficiency was only an ancillary, bolstering argument for already-sufficient precedent for the fraud on the market presumption, to the requirement that litigants plead and prove efficiency using indicia with no support in financial economics. The way out of this embarrassing state of affairs is to return to the roots of fraud on the market in the non-technical notion of "a free and open public market" that inquires only whether the market for the security at issue is open to active buyers and sellers and is not subject to substantial seller lockups or*

[*] J.B. Heaton, P.C., Chicago, Illinois, jb@jbheaton.com. For very helpful comments and suggestions on a preliminary draft, I am grateful to Jacquelyn Bouwman, Alon Brav, Brad Cornell, Elisabeth de Fontenay, Marc Gross, Davidson Heath, Ashley Keller, Tom Miles, and Eric Posner.

Exhibit E
Page 97

2020] KILL *CAMMER* 467

There are court opinions in nine-figure securities cases that would fail a college freshman's statistics exam on such reasoning, as in the case of *In re American International Group, Inc.*,[219] a case where the court determined that defendants had rebutted the fraud-on-the-market presumption on certain dates because price moves were statistically significant only at the 10 percent level (size) but not the 5 percent level.[220] It used to be rare but refreshing when courts got it right.[221] As courts have become more aware of the games defendants play in such situations, they have begun more frequently rejecting the junk science requirement of statistical significance proffered by defense experts.[222]

---

AND LIVES, at 1–2, 45, 222 (2008) (providing for a definitive treatment of the widespread misunderstanding of statistical significance and its consequences).

[219] 265 F.R.D. 157, 187 (S.D.N.Y. 2010), *vacated and remanded*, 689 F.3d 229 (2d Cir. 2012).

[220] The court determined that the lack of a statistically significant price move at the 5% level on March 30 and 31, 2005, demonstrated that the fraud had not impacted the stock price. *Id.* at 185–87. The same court's determinations regarding AIG bonds have been severely criticized as well. *See* Hartzmark et al., *supra* note 9, at 654–55 (criticizing the AIG court, which "found insufficient empirical evidence to hold that the $1.71 billion in AIG bonds, issued by the world's largest insurance company, traded in open, developed, and efficient markets."). Courts continue to botch the application of this factor in more recent cases. *See, e.g.*, Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp., No. 4:08CV0160, 2018 WL 3861840, at *17 (N.D. Ohio Aug. 14, 2018) ("Upon weighing the evidence, as the Court must, the Court holds that OPERS has failed to establish market efficiency.") Federal Home Loan Mortgage Corporation's market capitalization was in the many billions of dollars. The Court plainly lacked an understanding of the statistical evidence. *Id.* at 11 ("Statistical significance, however, is essential to give meaning to statistical evidence. As courts have recognized, absent statistical significance, correlation is meaningless.").

[221] In one reported case, the judge saw through the fallacious argument that "in an efficient market material news should result in a statistically significant change in [the issuer's] stock price." *In re* Nature's Sunshine Product's Inc., 251 F.R.D. 656, 664 (D. Utah 2008) (rejecting defendants' argument that market for stock was not efficient because "of the 93 event days chosen by [plaintiffs' expert], only 23 of those days (or less than 25%) result in a statistically significant change to Nature's stock price").

[222] *See, e.g.*, Vizirgianakis v. Aeterna Zentaris, Inc., No. 18-2474, 2019 WL 2305491, at *2 (3d Cir. May 30, 2019) ("Aeterna's hired expert, Dr. David Tabak, responded to the declaration of plaintiffs' expert, pointing out that Dr. Werner had not proven—to a 95% confidence level—that the alleged misrepresentations made on August 30, 2011 impacted the price of Aeterna's common stock. The district court found this evidence insufficient to rebut the