JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
john.gildersleeve@mto.com
LAUREN C. BARNETT (SBN 304301)
lauren.barnett@mto.com
ROWLEY J. RICE (SBN 313737)
rowley.rice@mto.com
BRIAN R. BOESSENECKER (SBN 331409)
brian.boessenecker@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for MATTEL, INC.,
MARGARET H. GEORGIADIS,
JOSEPH J. EUTENEUER,
and KEVIN FARR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MATTEL, INC. SECURITIES LITIGATION | Case No. 19-CV-10860-MCS (PLAx) |
| | **SURREPLY OF MATTEL DEFENDANTS IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |
| | Hearing: Under Submission |
| | Judge:  Hon. Mark C. Scarsi |

The Mattel Defendants respectfully submit this surreply to the new arguments and evidence in Plaintiffs' reply in support of their motion for class certification. Nothing in the reply refutes the ample evidence that the alleged misrepresentations "more likely than not" did not affect Mattel's stock price. *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021).

***Conflating price impact and loss causation.*** Plaintiffs first urge the Court to equate price impact (in the context of rebutting the presumption of reliance) with the merits element of loss causation, arguing that "ignoring the August 9 decline" would "violate binding Ninth Circuit law" on when "loss causation exists." Reply 1. But the Supreme Court made clear that price impact and loss causation are different. *See Goldman*, 141 S. Ct. at 1960-61 & n.2. Plaintiffs ignore that there are two *Halliburton* decisions; *Halliburton I* held that courts may not consider loss causation at class certification, 563 U.S. 804, 813 (2011), whereas *Halliburton II* held that "defendants must be afforded an opportunity before class certification" to show lack of price impact, 573 U.S. 258, 284 (2014). Here, class certification is inappropriate under *Halliburton II*: the August 9 decline after disclosure of the whistleblower letter (but not its contents) cannot support an inference of *price impact* because that disclosure did not *match* the *contents* of the alleged misrepresentations made years earlier. *See Goldman*, 141 S. Ct. at 1961.

Plaintiffs ask the Court to substitute a causation-like "tracing" test for what the law actually requires, which is a determination of whether "there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Id.*; *see* Reply 6 ("the stock price decline is directly traceable to the misstatements"). Plaintiffs are wrong that "*Goldman* did not remotely consider, let alone decide, what sort of 'corrective disclosure' may count for price impact purposes." Reply 1. The Court did just that in describing a "mismatch" in "contents"—without any mention of "traceability." Nor did the Court in any way suggest its holding does not apply to cases involving "financial statements." *Id.* 6. Finally, distinguishing price impact

-1-

and loss causation does not "make zero sense," as Plaintiffs claim, *id.* 5, because they address different points in time.  Price impact is "front-end price inflation"—that is, the notion that statements caused stock-price inflation at the time they were made.  *Goldman*, 141 S. Ct. at 1961.  A back-end decline *may* imply front-end price inflation—but for it to do so, the contents of the alleged misrepresentation and the "corrective disclosure" must match.  By contrast, a back-end decline can support the merits element of loss causation as long as Plaintiffs prove it is proximately caused by alleged misrepresentations.[1]

***Offering unreliable empirical evidence.***  Plaintiffs argue, alternatively, that the August 9 decline can support an inference of front-end price inflation if one (1) attempts to isolate the portion of the October 30 increase due to the corrective disclosure on October 29, and then (2) nets the result against the August 9 decline, leaving what remains as price impact.  Reply 6-10; *see id.* 9 (purporting to identify "-$1.46 of net price impact").  But as Dr. Heaton explains, this exercise is unreliable and fails to overcome the compelling qualitative *and* quantitative evidence of no price impact.  The inherent limitations of what Dr. Kothari claims to do perfectly illustrate why courts hold that, in assessing price impact at class certification, event study evidence is afforded no special weight.  *See Goldman*, 141 S. Ct. at 1960-61; *id.* at 1963 (Sotomayor, J., concurring) ("So-called 'price impact' may be disproved with a variety of evidence, alone or in combination.").

Dr. Kothari's netting exercise presumes, incorrectly, that the portion of the October 30 increase due to the corrective disclosure can be isolated reliably.  In fact, no reliable methodology exists for the disaggregating Dr. Kothari claims to do in the single-firm context.  *See* Barnett Decl. Ex. A ("Heaton Reply Rpt.") ¶¶ 9-19.  As the

---

[1] In any event, Plaintiffs are wrong to refer to "this Court's holding that the stock price decline here <u>was</u> causally connected to the fraud."  Reply 1.  This Court made clear it was ruling only on the pleadings:  "conclusively deciding reasons for the market's reaction is premature, and reasonable theories concerning that reaction do not warrant Rule 12 dismissal."  ECF No. 74 at 27.

SURREPLY OF MATTEL DEFENDANTS IN
OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Second Circuit put it, citing Dr. Heaton, "it can be extremely difficult to isolate the price impact of any one piece of information in the presence of confounding factors, such as other simultaneously released news about the company." *In re Petrobras Sec.*, 862 F.3d 250, 278-79 (2d Cir. 2017). It therefore is unsound to purport to find price impact on this basis given the substantial other evidence (both qualitative and quantitative) foreclosing it. The same goes for Dr. Kothari's related attempts to compare returns on August 9 and October 30. *See* Heaton Reply Rpt. ¶¶ 7-8.

Plaintiffs' view that other evidence, such as "subjective reactions of analysts," is "no substitute for the type of empirical evidence necessary to demonstrate an absence of price impact" is contrary to *Goldman*. Reply 13. Plaintiffs misleadingly cite the Seventh Circuit's *disapproving* statement that "event studies have come to be treated as the sine qua non for proving or disproving price impact." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 613 n.6 (7th Cir. 2020). In its next sentences, the court said event studies should *not* play that role: "Event studies may help, but there is no reason in the class certification inquiry to limit evidence to those …. Courts should be open to all probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Id.* (citation omitted). The Supreme Court then adopted that language in *Goldman*. 141 S. Ct. at 1960. And the Seventh Circuit's next sentence cited Dr. Heaton for the notion that "experts … caution courts to think carefully about how such study designs and findings often do a poor job of answering the legal questions at stake." 966 F.3d at 613 n.6.[2]

***Claiming manipulation.*** Plaintiffs argue that finding no price impact would reward Mattel for disclosure "tactics," Reply 3, but that charge is baseless. The timing of Mattel's August 8 disclosure was driven by a bond offering that was set to

---

[2] *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439 (W.D. Tex. 2019), cited by Plaintiffs, leads to the same doorstep. The court cited *Petrobras* as "suggesting district courts should not rely solely upon directional event studies at the class certification stage because 'methodological constraints limit their utility in the context of single-firm analyses,'" *id.* at 450 n.10—a notion for which *Petrobras* cited Dr. Heaton's work.

-3-

close on that date.  Mattel's receipt of the whistleblower letter two days earlier, and the ensuing need to investigate its allegations, required cancelling the offering.  That timing was pure chance, not tactics.  As for the letter's contents, Mattel had no duty under the securities laws to "self-flagellat[e]" by disclosing allegations it had not yet had time to investigate.  *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("companies are not required to engage in 'self-flagellation' by disclosing unproven allegations").

Plaintiffs attempt to invoke this Court's statement that it is not "logical to suggest a company could foreclose loss causation by manipulating disclosure," Reply 3 (quoting ECF No. 74 at 27), but the Court faced a different question at that time:  whether to foreclose liability for failure to plead loss causation.  *See also, e.g.*, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016) (loss causation ruling on the pleadings).  But loss causation at the 12(b)(6) stage is not price impact at the class certification stage.  The question now is whether, as a *factual* matter, the August 9 decline is evidence of front-end stock-price inflation.

As for Mattel's October 29 disclosure of the investigation's results, Plaintiffs' premise—that disclosure on another date would have yielded a decline—is contrary to Dr. Kothari's analysis as well as the evidence of uniform analyst reaction, all of which shows the stock price would have increased on any disclosure date.  *Pelletier v. Endo International PLC*, 2021 WL 2023608 (E.D. Pa. May 20, 2021), cited by Plaintiffs, thus is inapt; Plaintiffs do not claim the October 30 increase was "*less than would have occurred* without the purported disclosure on that date."  *Id.* at *35.

***Writing off analyst commentary.***  Faced with analysts' lack of interest in the valuation allowance, Plaintiffs argue that analysts did not "opine[] on" price impact.  Reply 13-14.  Similarly, Plaintiffs reject the assessment of their own investment manager, who bought their Mattel stock, that Mattel's error "did not impact [] long-term value," Heaton Rpt. ¶ 71, arguing that Southeastern did not "opine on whether" any statements affected the stock price, Reply 15.  But analysts and Southeastern are

-4-

not expert witnesses; rather, they are market actors whose contemporaneous views provide compelling factual evidence of what affected Mattel's stock price.

Against this real-world evidence of no price impact, Plaintiffs excerpt their own allegations, including statements by Brett Whitaker, positing investor concern. Reply 12-13. Dr. Kothari also literally counts words spoken by Mattel's CFO about "tax issues and the valuation allowance," Kothari Reply Rpt. ¶ 154, without disputing the far more meaningful fact that analysts chose to evaluate Mattel using a metric that *excluded* the valuation allowance. Heaton Reply Rpt. ¶ 29. Plaintiffs also claim that "investors remained concerned" by the time of Mattel's November 2019 conference call. Reply 14-15. But Plaintiffs do not attempt to reconcile that assertion with the lack of any analyst reports expressing dissatisfaction with the call. Heaton Reply Rpt. ¶ 24.

***Theorizing about possible price impact.*** Dr. Kothari does not dispute that price impact requires an effect on expected future cash flows or the discount rate. Instead, he makes literature-based generalizations about *possible* impact without showing that impact occurred here. *See, e.g.*, Kothari Reply Rpt. ¶ 176 ("average" impact of restatements), ¶ 185 ("Summarizing, the literature shows that the disclosure of material weaknesses in internal controls *may* negatively impact prices …."); Rizio-Hamilton Decl. Ex. H (PwC website) ("consequences *may include* [effects] which *may lead* to declines in share price") (all emphases added). If citing averages and possibilities were enough, lack of price impact could never be shown, as plaintiffs always could suggest that a case *could* be among those where there was an impact. Heaton Reply Rpt. ¶¶ 23, 28. Dr. Kothari makes no attempt to quantify an effect of the alleged misrepresentations on expected future cash flows or discount rate—because as Dr. Heaton explains, there was none. *Id.* ¶¶ 31-32.[3]

---

[3] Dr. Kothari's speculation that the corrective disclosure raised Mattel's discount rate is belied by the actual market data, which shows that Mattel's stock had lower "beta" risk after the disclosure than before. *See* Heaton Reply Rpt. ¶¶ 26-27.

-5-

SURREPLY OF MATTEL DEFENDANTS IN
OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Dated:  September 2, 2021

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:  _____ /s/ John W. Spiegel_____
JOHN W. SPIEGEL

Attorneys for MATTEL, INC.,
MARGARET H. GEORGIADIS,
JOSEPH J. EUTENEUER,
and KEVIN FARR

SURREPLY OF MATTEL DEFENDANTS IN
OPPOSITION TO MOTION FOR CLASS CERTIFICATION