Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and
the Class*

[Additional counsel appear on signature
page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-cv-10860-MCS (PLAx) |
| | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Judge:      Hon. Mark C. Scarsi |
| | Courtroom:  7C, 7th Floor |
| | Date:       May 2, 2022 |
| | Time:       9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 2, 2022 at 9:00 a.m., in Courtroom 7C of the First Street Courthouse, 350 W. First Street, Los Angeles, California, 90012, the Honorable Marc C. Scarsi presiding, the Court-appointed Lead Plaintiffs and Class Representatives DeKalb County Employees Retirement System and New Orleans Employees' Retirement System will and hereby do move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of (1) a judgment granting final approval of the proposed settlement of the above-captioned securities class action; and (2) an order granting approval of the proposed plan for allocating the net settlement proceeds.

This motion is made pursuant to the Court's January 18, 2022 Order re: Motion for Preliminarily Approval of Class Action Settlement (ECF No. 146) ("Preliminary Approval Order") and is based upon: (1) this Notice of Motion, (2) the supporting Memorandum of Points and Authorities set forth below, (3) the accompanying Declaration of John Rizio-Hamilton and the exhibits attached thereto, (4) the Stipulation and Agreement of Settlement dated November 23, 2021 (ECF No. 143-1) filed previously with the Court, (5) the pleadings and records on file in this action, and (6) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objections to the Settlement and any requests for exclusion from the Class must be received by April 11, 2022. To date, no objections to the Settlement have been received. Proposed orders will be submitted with Lead Plaintiffs' reply submission, which will be filed on April 25, 2022, after the deadline for objections and exclusions has passed.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 4

    A.   Lead Plaintiffs and Lead Counsel Have Adequately
       Represented the Class ............................................................................ 6

    B.   The Settlement is the Result of Arm's Length
       Negotiations ........................................................................................ 7

    C.   The Relief Provided for the Class is Adequate ........................................ 9

       1.    The Amount Offered in the Settlement Weighs in
           Favor of Final Approval ............................................................. 9

       2.    The Settlement Weighs the Strength of Lead
           Plaintiffs' Claims with the Substantial Risks of
           Continuing Litigation ............................................................... 11

       3.    The Proposed Method for Distributing Relief to
           the Class is Effective ................................................................. 14

       4.    Lead Counsel's Fee and Expense Request is Fair
           and Reasonable ......................................................................... 15

       5.    The Parties Have No Side Agreements Other Than
           the Supplement Agreement Concerning Opt-Outs ................... 16

       6.    All Class Members are Treated Equitably ................................. 17

    D.   The Extent of Discovery Completed and the Stage of the
       Proceedings Favor Final Settlement Approval ....................................... 17

    E.   The Risk of Maintaining a Class Action Through Trial
       Supports Approval .............................................................................. 18

    F.   The Experience and Views of Counsel Favor Settlement ......................... 19

    G.   The Reaction of the Class ................................................................... 20

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
    ADEQUATE .......................................................................................... 20

IV.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF
    RULE 23, DUE PROCESS, AND THE PSLRA ........................................ 22

V.    CONCLUSION ..................................................................................... 24

i

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................................. 18

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................... 4, 12, 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ......................................................................................... 6

*Arnaud van der Gracht de Rommerswael on Behalf of Puma
  Biotechnology, Inc. v. Auerbach*,
  2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) ........................................................ 8

*In re Banc of California Sec. Litig.*,
  2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ........................................................ 8

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12697736 (C.D. Cal. June 5, 2015) ...................................................... 6

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .................................... 10, 19, 20

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) .................................................. 11

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ................................................... 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................. 13

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................................. 11, 23

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .......................................................................... 20

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................................... 23

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

*Elliott v. Rolling Frito-Lay Sales, LP*,
  2014 WL 2761316 (C. D. Cal. June 12, 2014)...................................................18

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)...........................................9, 11, 19

*Fleming v. Impax Lab'ys Inc.*,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021).................................................16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).............................................5, 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).....................................................*passim*

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)...................................................16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...........................................15, 23

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................................7, 20

*Hill v. Canidae Corp.*,
  2021 WL 4988032 (C.D. Cal. Apr. 2, 2021).......................................................7

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012)...............................................8, 10

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................................................12

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)...............................................13

*In re LJ Int'l Inc. Sec. Litig.*,
  2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)...............................................10

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2013 WL 6577020 (C.D. Cal. Dec. 5, 2013).............................................19, 20

iii

*McKenzie v. Fed. Exp. Corp.*,
    2012 WL 2930201 (C.D. Cal. July 2, 2012) ...................................................... 19

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................9, 10, 17

*Murphy v. Precision Castparts Corp.*,
    2021 WL 2080016 (D. Or. May 24, 2021) ......................................................... 11

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ................................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................11, 14, 17

*Officers for Justice v. Civil Serv. Comm'n of City and County of San
    Francisco*,
    688 F.2d 615 (9th Cir. 1982) .....................................................................4, 5, 9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 20

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .......................................................................... 11

*Roberti v. OSI Sys., Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ....................................................... 7

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................... 19

*In re Snap Inc. Sec. Litig.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ...................................................... 10

*Sudunagunta v. NantKwest, Inc.*,
    2019 WL 2183451 (C.D. Cal. May 13, 2019) .............................................. 14, 17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .......................................................................... 4

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .................................................... 18

iv

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014)................................................. 14, 20

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ....................................................... 7

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ..................................................... 17

**RULES AND STATUTES**

15 U.S.C. § 78u-4(a)(7) ................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 23

Fed. R. Civ. P. 23(e) ...........................................................................*passim*

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs and Class Representatives DeKalb County Employees Retirement System ("DeKalb") and New Orleans Employees' Retirement System ("New Orleans") (together, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Settlement and approval of the proposed Plan of Allocation.[1]

## I.   INTRODUCTION

After more than two years of hard-fought litigation—including substantial fact discovery, certification of the Class, and arm's-length negotiations facilitated by an experienced mediator—Lead Plaintiffs have reached a proposed Settlement for $98,000,000 in cash. Subject to the Court's final approval, the Settlement will resolve all claims asserted in the Action. The Settlement is an outstanding result for the Class and readily satisfies the standards for final approval under Rule 23(e)(2).

The Settlement provides a considerable benefit to the Class. It confers a substantial, certain, and near-term recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Class would recover

---

[1] Unless otherwise noted, capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement (ECF No. 143-1) (the "Stipulation") or the accompanying Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl."). Lead Plaintiffs respectfully refer the Court to the Rizio-Hamilton Declaration for a detailed description of the claims asserted, the procedural history of the Action, the negotiations resulting in the Settlement, the risks of continued litigation, compliance with the Court-approved notice plan, and the Plan of Allocation. Citations to "¶ __" herein refer to paragraphs in the Rizio-Hamilton Declaration and citations to "Ex. __" herein refer to exhibits to the Rizio-Hamilton Declaration.

nothing or less than the Settlement Amount after years of extensive litigation and delay.

The $98 million Settlement represents a significant percentage of the Class's likely recoverable damages.  According to an analysis by Lead Plaintiffs' damages expert, before accounting for issues of loss causation, the absolute maximum theoretical class-wide damages were approximately $550 million. After accounting for issues of loss causation, the more likely maximum recoverable damages were approximately $320 million.   ¶¶ 79-80.   Accordingly, the Settlement represents nearly 18% of theoretical maximum damages and approximately 31% of the likely maximum recoverable damages.  This is well above the norm in securities class actions and represents an outstanding result for the Class.

The Settlement is particularly favorable in light of the risks of continued litigation.  While Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that the Action presented substantial risks to establishing Defendants' liability, including in proving each of the necessary elements of scienter, loss causation, and damages.   As to scienter, Defendants would have argued that the original accounting error was a mistake; that Mattel relied on its auditor in not disclosing the error in the subsequent quarterly filing; and that PwC exercised good faith judgment regarding how to address a technical accounting error.  Defendants also would have contended that they made no insider sales and otherwise lacked a clear motive to commit fraud.  Mattel's Audit Committee—with the assistance of independent counsel and a forensic auditor—reviewed the evidence and concluded that, while the Company's financials included certain accounting errors, the errors were the result of "one-time events," with Audit Committee explaining that they "did not find that management engaged in fraud." ¶¶ 64-67.

As to loss causation and damages, upon the disclosure of the Audit Committee's findings, Mattel's stock increased substantially, offsetting almost entirely the decline following the Company's earlier announcement that it received an anonymous whistleblower letter.  The Mattel Defendants and their financial experts would invariably argue to the Court and jury that these facts undermine Lead Plaintiff's theory of loss causation, demonstrating that the alleged misstatements were not the cause of the decline in Mattel's stock price.  ¶¶ 70-74.  They would further argue that, in calculating investors' damages, the increase in Mattel's stock price must be offset against the stock price decline.  ¶ 75.  Had the Court or a jury accepted any of these arguments, either in whole or in part, damages would have been reduced dramatically or eliminated entirely.

By the time the Parties agreed to the Settlement, Lead Plaintiffs had developed a robust understanding of the strengths and weaknesses of the claims and defenses asserted in this Action.  The Settlement is the product of Lead Plaintiffs' extensive litigation efforts, including: (1) completing an thorough investigation of the claims at issue, including interviewing former Mattel employees; (2) preparing and filing the detailed 234-page Complaint; (3) successfully opposing Defendants' motions to dismiss the Complaint; (4) prevailing on Lead Plaintiffs' motion to certify the Class; and (5) engaging in substantial fact discovery, including obtaining and reviewing over 675,000 pages of documents from Defendants and 31 key non-party witnesses.  ¶¶ 5, 13-55.

In addition, the Parties engaged in extensive arm's-length settlement negotiations, including during two formal mediation sessions.  The mediation sessions were conducted under the supervision of former United States District Judge Layn R. Phillips, an experienced mediator of securities class actions and other complex litigation.  ¶¶ 56-57.  Following the second mediation session, Judge Phillips

1  issued a mediator's recommendation that the Action be settled for $98,000,000 in

2  cash, which the Parties accepted.  ¶ 57.

3    In light of the result achieved, the risks of litigating this Action, and the

4  substantial delay that would accompany continued litigation of this Action through

5  the completion of discovery, a summary judgment motion, trial, and post-verdict

6  appeals, Lead Plaintiffs and Lead Counsel believe that the Settlement is a highly

7  favorable result for the Class.  Each of the factors set forth by the Ninth Circuit in

8  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) and Rule 23(e)(2)

9  supports final approval.  The Settlement represents a substantial portion of the Class's

10  maximum realistic trial damages; was the product of a recommendation by an

11  independent mediator; and is endorsed by Lead Plaintiffs, who are sophisticated

12  institutional investors.  Accordingly, Lead Plaintiffs respectfully submit that the

13  Court should approve the Settlement as fair, reasonable, and adequate.

14    Lead Plaintiffs also request that the Court approve the proposed Plan of

15  Allocation for the Net Settlement Fund.  The Plan of Allocation is designed to

16  distribute equitably the Settlement Fund proceeds to Authorized Claimants.  The Plan

17  was prepared with the assistance of Lead Plaintiffs' damages expert, who calculated

18  the artificial inflation in the prices of Mattel common stock during the Class Period,

19  and is substantially similar to numerous other plans of allocation that have been

20  approved in this District and around the country as fair and reasonable.

21  ## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

22    The Ninth Circuit has long recognized the "strong judicial policy that favors

23  settlements, particularly where complex class action litigation is concerned."  *In re*

24  *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Amgen Inc. Sec.*

25  *Litig.,* 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016) (same).  The Ninth Circuit

26  has emphasized that "voluntary conciliation and settlement are the preferred means

27  of dispute resolution," and that this is "especially true in complex class action

28

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

litigation." *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether: (1) the class representatives and counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit also considers the following *Hanlon* factors in determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon,* 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

The Court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *See id.* at 628. The question is "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* The Court's assessment is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

As discussed below, the Rule 23(e)(2) and *Hanlon* factors strongly support a finding that the Settlement is fair, reasonable, and adequate, and warrants final approval.

### A.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736, at *4 (C.D. Cal. June 5, 2015). As the Court found in its order certifying the Class, Lead Plaintiffs, are adequate representatives of the Class. ECF No. 137, at 5. Lead Plaintiffs are sophisticated institutional investors with a significant financial interest in the case. Lead Plaintiffs and the other Class Members all purchased Mattel common stock during the Class Period and were damaged by the same alleged false and misleading statements. If Lead Plaintiffs proved their claims at trial, they would also prove the Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (investor class "will

prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Further, Lead Plaintiffs and Lead Counsel have adequately represented the Class in their vigorous prosecution of the Action and in their negotiation and achievement of the Settlement.  Lead Plaintiffs ably oversaw the prosecution of the Action; searched for and produced documents in response to Defendants' document requests; sat for depositions; participated in the mediation sessions; and evaluated and approved the Settlement.  *See* Robertson Decl. (Ex. 1), at ¶ 5; Evans Decl. (Ex. 2), at ¶ 5.  Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4A-5), and effectively led the prosecution of the litigation against skilled and experienced opposing counsel.

### B.   The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator Following Substantial Discovery

Courts have found that a strong presumption of fairness attaches to a proposed settlement if the settlement is reached in good faith after well-informed arm's length negotiations.  *See Weeks v. Kellogg Co.*, 2013 WL 6531177, at *12 (C.D. Cal. Nov. 23, 2013); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *3 (C.D. Cal. June 10, 2005).   The presumption applies here.   As discussed in the Rizio-Hamilton Declaration, the Settlement was reached after Lead Plaintiffs had conducted an extensive investigation of the claims; obtained and reviewed a substantial amount of document discovery from Defendants and third parties; and engaged in lengthy settlement negotiations.  ¶¶ 13-57.  As a result, by the time the Settlement was reached, Lead Plaintiffs and Lead Counsel possessed a firm understanding of the strengths and weaknesses of the Class's claims and Defendants' defenses.

Moreover, the Settlement was secured only after the Parties participated in an extended mediation process before Judge Phillips, a preeminent mediator of

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

complex litigation and, in particular, securities litigation.  Courts find that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015); *see also Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019) (that settlement was reached after "significant arms-length negotiations with a third-party mediator" was "important factor" in finding settlement "fair, reasonable, and appropriate"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement to be fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips").

The Parties' settlement negotiations and mediation efforts in this case were substantial.  The Parties exchanged detailed mediation statements and participated in two full-day mediation sessions on June 24, 2021 and October 25, 2021. ¶¶ 56-57.  Throughout the settlement negotiations, multiple reputable and experienced firms—including Munger, Tolles & Olson LLP, and Wilmer Cutler Pickering Hale and Dorr LLP—vigorously represented Defendants.  No agreement was reached at either mediation session.  Following the second mediation session, Judge Phillips issued a mediator's recommendation that the Action be settled for $98 million, which the Parties accepted.  The mediator's recommendation was issued on a "triple-blind basis," meaning that if one of the Parties (Lead Plaintiffs, Mattel Defendants, or PwC) rejected the proposal, the others would not find out whether any other Parties had accepted the proposal. ¶ 57.

These facts further demonstrate the Parties' good-faith arm's-length negotiations and support approval of the Settlement. *See, e.g., Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach,* 2019 WL 7753447, at *3 (C.D. Cal. Jan. 7, 2019) (approving settlement where "Plaintiffs did extensive document review, exchanged initial settlement demands with Defendants, and participated in months of telephonic and written negotiations and mediation," finding the "arms-length negotiations before a qualified mediator" supported approval of the settlement).

**C.    The Relief Provided for the Class is Adequate Considering the Costs, Risks, and Delay of Further Litigation and Other Relevant Factors**

**1.    The Amount Offered in the Settlement Weighs in Favor of Final Approval**

The $98 million cash Settlement constitutes a meaningful percentage of the maximum recovery for the Class, especially taking into account the uncertainty, risks, and costs associated with attempting to obtain a greater amount. *See Mild v. PPG Indus., Inc.,* 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair."). To evaluate the adequacy of the settlement amount, courts primarily consider "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Extreme Networks, Inc. Sec. Litig.,* 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019). In undertaking this analysis, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Lead Plaintiffs' damages expert calculated the maximum class-wide recoverable damages in this case, assuming that Lead Plaintiffs prevailed through

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

summary judgment, trial, and appeals on all claims and arguments concerning liability, loss causation, and damages.   Before accounting for issues of loss causation, Lead Plaintiffs' damages expert determined that the absolute maximum theoretical class-wide damages would be approximately $550 million. After accounting for issues of loss causation, Lead Plaintiffs and their expert estimated the realistic maximum damages in this case were approximately $320 million.   ¶¶ 79-80.  The Settlement obtained here represents 31% of the realistic maximum damages.

Lead Counsel and Lead Plaintiffs appreciated that Defendants had additional meaningful arguments concerning loss causation and damages that, if accepted by the Court or the jury, would materially decrease the amount of recoverable damages well below $320 million.  For example, Defendants contended that, in assessing damages, they were entitled to the full benefit of the October 30, 2019 rebound in Mattel's stock price.  If they were to succeed on this argument, damages would have been reduced to approximately $139 million.   The Settlement obtained here represents 71% of that potential outcome.

Accordingly, judged by any of these benchmarks, the Settlement far exceeds the percentage recovery typically achieved in securities class actions.  *See, e.g., In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *PPG*, 2019 WL 3345714, at *6 (approving settlement representing "approximately 5.8% of the total maximum damages potentially available"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages"); *Int'l Game Tech.*, 2012 WL 5199742, at *3 (approving settlement where recovery was 3.5% of maximum damages); *In re LJ*

*Int'l Inc. Sec. Litig.,* 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities class action settlement where recovery was 4.5% of maximum damages).

### 2.     The Settlement Weighs the Strength of Lead Plaintiffs' Claims with the Substantial Risks of Continuing Litigation

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Extreme Networks,* 2019 WL 3290770, at *8 (citing *Hanlon,* 150 F.3d at 1026). Courts favor settlements as they conserve valuable judicial resources and avoid further "protracted and uncertain litigation" and "subsequent appeals." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see Garner*, 2010 WL 1687832, at *10 ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class."). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *7 (C.D. Cal. July 22, 2016).

Here, Lead Plaintiffs considered the many milestones that remain in this litigation. Courts recognize that "securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *see also Extreme Networks,* 2019 WL 3290770, at *8 ("Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win"). Complex securities fraud class actions, such as this one, present myriad risks that plaintiffs must overcome to secure a recovery through a judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,

395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *5 (D. Or. May 24, 2021) (granting summary judgment after more than five years of litigation in light of new Ninth Circuit precedent, finding that plaintiffs failed to establish falsity and loss causation).

As to "scienter," Defendants would continue to maintain that they did not act with any fraudulent intent.   ¶¶ 64-67.   Establishing a defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence."   *Amgen*, 2016 WL 10571773, at *3; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult to establish at trial").   In opposing Lead Plaintiffs' efforts to prove scienter, the Mattel Defendants would contend that they relied on the professional advice of PwC, a nationally recognized audit firm.   ¶ 66.   The Mattel Defendants would further argue that the Company's executives did not have any motive to commit fraud, including because they did not sell any of their Mattel stock during the Class Period.   ¶ 64.   Based on such facts and its review of the documents produced in this case, the Company's Audit Committee—with the assistance of independent counsel and a forensic auditor— "did not find that management engaged in fraud."   ¶ 66.

At summary judgment and trial, Defendants would challenge the credibility of Lead Plaintiffs' primary witness, a former Mattel tax employee.   Specifically, they would continue to argue that he lacked personal knowledge because he did not personally interact with the Executive Defendants.   ¶ 64.   For its part, PwC would also contend that it made its accounting judgments in good faith and had no motive to commit fraud—an argument that the Court noted at the motion to dismiss stage. ¶ 67.

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

As to "loss causation," Defendants would continue to argue at summary judgment and trial that the decline in Mattel's stock price on August 9, 2019 was not caused by the revelation of any fraud.  To that end, Defendants would point to the fact that, on August 8, 2019, Mattel disclosed only its receipt of a "whistleblower letter"—and did not disclose the contents of the letter or the nature of the whistleblower's concerns.  ¶ 71.  Accordingly, Defendants would continue to argue that the price decline on August 9 could not be connected to the revelation of financial misstatements at issue.  *Id.*  Defendants would argue that, instead, the price decline on August 9 was largely, if not entirely, the result of uncertainty stemming from the news that the Company would postpone a planned bond offering until the completion of its investigation into the whistleblower's accusations.  ¶ 72.  As additional support for their "loss causation" and related damages arguments, Defendants would likely continue to point to the fact that Mattel's stock price increased by 14% on October 30, 2019 after the results of the investigation were disclosed—which Defendants contended defeated any showing of "loss causation."  ¶ 73.  Defendants would have bolstered their argument by contending that the errors at issue would not have moved the stock price because they were non-cash, had no impact on year-end results, and were not considered significant by analysts. ¶ 74.

Lead Plaintiffs believe that they would have advanced strong arguments in response to each of Defendants' arguments.  However, there was certainly a risk that a jury, the Court, or the Ninth Circuit could side with Defendants.  *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury returned a verdict for defense after trial in securities fraud class action, finding that defendants were not liable for securities fraud).

Moreover, the resolution of the disputed issues regarding loss causation and damages would have come down to a "battle of experts," and Defendants would invariably offer a well-qualified expert who would opine that the Class had little or

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

no damages.  As Courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk and supports the reasonableness of a settlement in a securities class action.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) (damages in a securities action would come down to a "'battle of experts' … with no guarantee whom the jury would believe"); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "battle of experts" supported approval of settlement); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("Proving and calculating damages require[s] a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky.")

Moreover, absent settlement now, the Parties might face years litigating this Action to a final resolution, including further discovery, summary judgment motions, trial, and likely post-trial appeals.  *See Sudunagunta v. NantKwest, Inc.,* 2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding the likelihood of "further deposition and expert discovery, motion practice, trial, and potentially appeals following trial" to favor settlement); *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 527 ("even if [a jury] did reach unanimous verdicts, it is likely that an appeal would have followed").

### 3. The Proposed Method for Distributing Relief to the Class is Effective

In evaluating a Settlement, the Court may also consider "the effectiveness of [the] proposed method of distributing relief to the class."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund.  In the Preliminary Approval Order,

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

the Court appointed JND Legal Administration ("JND") to serve as the Claims Administrator.  JND is an experienced class action administrator, whose management team has overseen some of the largest securities class action settlements in history, including the $6.15 billion *WorldCom Securities Litigation* settlement, the $3.2 billion *Tyco International Securities Litigation* settlement, and the $2.2 billion *Nortel Networks Securities Litigation* settlement.

With the oversight of Lead Counsel, JND will process the claims received, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund after Court-approval.  Claims processing like the method proposed here is both standard and effective in securities class action settlements.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval").

### 4.  Lead Counsel's Fee and Expense Request is Fair and Reasonable

The relief provided by the Settlement remains adequate upon consideration of the terms and timing of the proposed award of attorneys' fees.  See Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 25% of the Settlement Fund, net of Litigation Expenses, to be paid upon the Court's approval, are reasonable in light of the substantial efforts devoted by Plaintiffs' Counsel, the recovery obtained for the Class, and the significant risks that Plaintiffs' Counsel confronted.  Moreover, the request for attorneys' fees is consistent with the Ninth Circuit's "benchmark" award in common fund cases and is within range of fee percentages awarded to counsel in comparable class actions in

this Circuit.  *See* Fee Memorandum at 6-7.  The approval of attorneys' fee is entirely separate from the approval of the Settlement, and neither Lead Plaintiffs nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees.  Stipulation ¶ 15.

### 5.  The Parties Have No Side Agreements Other Than the Supplement Agreement Concerning Opt-Outs

Lastly, as previously disclosed, the only agreement the Parties entered into, other than the Stipulation itself, is a standard confidential Supplemental Agreement providing Defendants with the right to terminate the Settlement if the number of Class Members who request exclusion from the Class exceeds a certain threshold (the "Termination Threshold").  *See* Stipulation ¶ 35.  Such agreements are common in securities class action settlements, and do not weigh against final approval.  *See Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 22, 2021) ("The existence of a termination option triggered by the number of class members or shares that opt out of the Settlement does not by itself render the Settlement unfair.").

Lead Plaintiffs submitted a copy of the Supplemental Agreement to the Court *in camera* simultaneously with the filing of this motion.  As is standard practice in securities class actions, the terms of the Supplemental Agreement are not being made public to avoid incentivizing third parties from excluding themselves from the Settlement for the purpose of leveraging the Termination Threshold to exact an individual settlement.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep [the Termination Threshold] confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.''); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold 'is typically not disclosed and is kept confidential to

encourage settlement and discourage third parties from soliciting class members to opt out.'"), *aff'd,* 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### 6.   All Class Members are Treated Equitably

Rule 23(e) also includes consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  As described herein, the proposed Plan of Allocation is fair, reasonable and adequate because it does not treat Lead Plaintiffs or any other Class Member preferentially.  *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) (finding the plan of allocation "distributes the funds without giving undue preferential treatment to any class members").

Under the Plan of Allocation, Class Members who submit timely claims will receive payments based on the timing and number of shares they purchased and the extent of their injury related to the alleged fraud.  In addition, the Plan allocates a subset of the Settlement Fund to be distributed to the PwC Subclass in recognition of their claims against PwC and PwC's contribution to the Settlement.  Lead Plaintiffs, just like all other Class Members, will be subject to the same formula for distribution of the Settlement.  Thus, this factor weighs in favor of approval.  *See PPG*, 2019 WL 3345714, at *6.

### D.   The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval

In assessing a class action settlement, courts also consider whether plaintiffs and their counsel had sufficient information to "make an informed decision about the merits of their case." *Amgen*, 2016 WL 10571773, at *4.  Specifically, "a settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528; *see also NantKwest*, 2019 WL 2183451, at *4 (finding "review and analysis of over 140,000 pages of

documents" and "extensive adversarial motion practice, including motions to dismiss" supportive of final approval).

Here, Lead Plaintiffs' decision to enter into the Settlement was based on its thorough understanding of the strengths and weaknesses of its claims and Defendants' defenses.  Lead Plaintiffs and Plaintiffs' Counsel had a comprehensive understanding of the case and evidence through their (1) extensive pre-suit investigation, which included interviews of former Mattel employees; (2) preparing and filing the detailed Complaint; (3) successfully opposing Defendants' motions to dismiss the Complaint; (4) obtaining certification of the Class through a contested class certification motion; and (5) conducting substantial fact discovery, including obtaining and reviewing over 675,000 pages of documents from Defendants and 31 subpoenaed non-parties.  ¶¶ 5, 13-55.

In sum, when the Settlement was reached, Lead Plaintiffs and Lead Counsel had ample information to assess the strengths and weaknesses of their case and "to effectively evaluate […] the advantages of the settlement."  *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *8 (C. D. Cal. June 12, 2014).  This factor weighs in favor of final approval of the Settlement.  *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *4 (C.D. Cal. Oct. 24, 2017) (final settlement approval supported where the "parties engaged in extensive adversarial motion practice" and "researched, prepared, and drafted comprehensive mediation briefs").

**E.    The Risk of Maintaining a Class Action Through Trial Supports Approval**

By the time of the Settlement, Lead Plaintiffs had already secured an order certifying the Class.  There was, however, always a possibility that the Court may later revisit is class certification order or narrow the scope of the Class at summary judgment or trial.  *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) ("Even had the court certified a class, [] subsequent

facts adduced through discovery might have led to decertification.  Avoiding such a risk … favors approval of the settlement.").

Additionally, at the time the Settlement was reached, the Mattel Defendants were pursuing a Rule 23(f) petition to the Ninth Circuit to overturn the Court's order certifying the Class.  Lead Plaintiffs believe the Court's class certification order was correct and supported by established precedent.  However, there was a possibility that the Ninth Circuit may have disagreed with the Court and reversed the Court's class certification order.  There was also a possibility that the Court's future decision on summary judgment may have reduced the Class Period or limited the potential members of the Class.  The Settlement removes these potential risks.  *See McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012) (despite prior class certification, this factor favored final approval because "settlement avoids all possible risk").

### F.    The Experience and Views of Counsel Favor Settlement

"In reviewing a settlement for final approval, courts accord 'great weight' to the recommendation of counsel.  Counsel 'are most closely acquainted with the facts of the underlying litigation' and are therefore in an ideal position to assess the fairness of the settlement offer."  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *15 (C.D. Cal. Dec. 5, 2013); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties.").  Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, including within this Circuit and District.[2]  Lead Counsel believes that the Settlement is an excellent result because it provides the Class with genuine and substantial relief.  *See Extreme*

---

[2]   *See* firm resume of BLB&G, attached as Exhibit 4A-5 to the Rizio-Hamilton Declaration.

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

*Networks*, 2019 WL 3290770, at *9 ("That such experienced counsel advocate in favor of the settlement weighs in favor of approval"); *Biolase*, 2015 WL 12720318, at *5 ("recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

### G.    The Reaction of the Class

In evaluating class action settlements, courts also consider the reaction of class members to the proposed settlement.  *See Hanlon,* 150 F.3d at 1026.  Here, the deadline for submission of objections to the Settlement or requests for exclusion from the Class is April 11, 2022.  To date, no objections have been received, ¶ 89, and only three requests of exclusion have been received.  Segura Decl. ¶ 13.  Lead Plaintiffs will address any objections that may be received and all requests for exclusion in their reply brief due April 25, 2022.

Moreover, both Lead Plaintiffs—sophisticated institutional investors that were closely involved throughout the litigation and the settlement negotiations—strongly support final approval of the Settlement.  *See* Robertson Decl. (Ex. 1), at ¶¶ 3-6; Evans Decl. (Ex. 2), at ¶¶ 3-6.  *See Countrywide*, 2013 WL 6577020, at *16 (granting final approval and stating that "Courts afford special weight to the opinions of class representatives").

In sum, as discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors support a finding that the Settlement is fair, reasonable, and adequate.  Final approval is, therefore, appropriate.

## III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

1   1045 (N.D. Cal. 2008).  An allocation formula need only have a reasonable, rational

2   basis, particularly if recommended by experienced class counsel.  *See Radient,* 2014

3   WL 1802293, at *5; *Heritage Bond,* 2005 WL 1594403, at *11.  Courts hold that "[a]

4   plan of allocation that reimburses class members based on the extent of their injuries

5   is generally reasonable."  *Biolase, Inc.*, 2015 WL 12720318, at *5.

6       The Plan of Allocation is found in Appendix A to the Notice.  *See* Segura Decl.

7   Ex. A, at pp. 16-20.  In developing the Plan of Allocation, Lead Plaintiffs' damages

8   expert calculated the estimated amount of artificial inflation in the per-share closing

9   price of Mattel common stock allegedly caused by Defendants' alleged

10  misrepresentations and material omissions.  Plan ¶ 3.  In calculating the estimated

11  alleged artificial inflation, Lead Plaintiffs' damages expert considered price changes

12  in Mattel common stock on August 9, 2019, following the alleged corrective

13  disclosure, adjusting for price changes on that day that were attributable to market or

14  industry forces.  *Id.*

15      Under the Plan of Allocation, Recognized Loss Amounts are the lesser of:

16  (i) the difference between the amount of alleged artificial inflation in Mattel common

17  stock at the time of purchase or acquisition and the time of sale, or (ii) the difference

18  between the actual purchase price and the sale price.  ¶ 94.  To have a Recognized

19  Loss Amount, claimants must have held their shares until at least the close of trading

20  on August 8, 2019.  ¶ 95.  In addition, in accordance with the PSLRA, Recognized

21  Loss Amounts for shares of Mattel common stock sold during the 90-day period after

22  the end of the Class Period (or held until the end of that period) are further limited to

23  the difference between the purchase price and the average closing price of the stock

24  from the end of the Class Period to the date of sale.  ¶ 94.

25      The Net Settlement Fund is equitably divided into two parts: (a) a "Mattel

26  Distribution Fund" of $86 million, less the proportional amount of all Court-approved

27  attorneys' fees, Litigation Expenses, and Notice and Administration Costs; and (b) a

28

"PwC Distribution Fund" of $12 million, less the proportional amount of all Court-approved attorneys' fees, Litigation Expenses, and Notice and Administration Costs. ¶ 97. The Plan of Allocation calculates a "Mattel Recognized Loss Amount" for each purchase of Mattel common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided, and a "PwC Recognized Loss Amount" for each purchase of Mattel common stock during the PwC Subclass Period (from February 27, 2018 to August 8, 2019). ¶ 96. The Mattel Distribution Fund will be distributed on a *pro rata* basis to eligible claimants based on their Mattel Recognized Loss Amounts and the PwC Distribution Fund will be distributed on a *pro rata* basis to eligible claimants based on their PwC Recognized Loss Amounts. ¶ 97.

The Plan of Allocation is fair and reasonable because it is consistent with the damages and loss causation calculations performed by Lead Plaintiffs' expert and reasonably allocates funds to Class Members based on the amount of their losses attributable to the alleged fraud, and based on the Defendants against whom they were able to assert claims. ¶ 98. To date, after mailing more than 193,000 copies of the Notice, no Class Members have objected to the Plan of Allocation.

## IV.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

In accordance with the Court's Preliminary Approval Order, JND began mailing copies of the Notice and Claim Form (the 'Notice Packet") to potential Class Members and nominees on February 4, 2022. *See* Segura Decl. (Ex. 3), at ¶¶ 3-6. Through March 25, 2022, JND has mailed a total of 193,392 Notice Packets. *See id*. ¶ 9. In addition, JND caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on February 15, 2022. *Id.* ¶ 10. JND also established a dedicated website, www.MattelSecuritiesLitigation.com, to provide additional information about the Action and the Settlement, as well as access

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

to downloadable copies of the Notice and Claim Form and other Settlement-related documents.  *See id*. ¶ 12.   Copies of the Notice and Claim Form can also be downloaded from Lead Counsel's website, www.blbglaw.com.

In accordance with Rule 23 and the PSLRA, the Notice apprised Class Members of, *inter alia*: (i) the claims asserted in the Action and the definition of the Class; (ii) the amount of the Settlement; (iii) the reasons why the Parties are proposing the Settlement; (iv) the estimated average recovery per affected share of Mattel common stock; (v) the maximum amount of attorneys' fees and expenses that will be sought; (vi) the identity and contact information for representatives from Lead Counsel available to answer questions concerning the Settlement; (vii) the right of Class Members to object to the Settlement, Plan of Allocation, or motion for attorneys' fees and expenses; (viii) the right of Class Members to request exclusion from the Class; (ix) the binding effect of a judgment on Class Members; (x) the dates and deadlines for certain Settlement-related events; and (xi) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website.  *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7).  The Notice also contained the Plan of Allocation and provides Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

Courts have approved notice programs similar to this one in a multitude of class action settlements.  *See e.g. Rentech,* 2019 WL 5173771, at *8 (approving mailed notice, published summary notice, and availability of online notice); *Hefler,* 2018 WL 6619983, at *5 (approving similar notice program); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances").  Moreover, this Court has already found that the proposed notice program is adequate, at set forth in the Preliminary

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

Approval Order.  *See* Preliminary Approval Order (ECF No. 146), at 5-6.  Lead Counsel and JND carried out the notice program as proposed in that order.

Accordingly, Lead Plaintiffs respectfully submit that the Notice fairly apprises Class Members of their rights with respect to the Settlement and is the best notice practicable under the circumstances.

## V.   CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated:  March 28, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

/s/ *John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Lead Counsel for Lead Plaintiffs and the Class*

Jacob A. Walker (SBN 271217)

LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION
CASE NO. 2:19-cv-10860-MCS (PLAx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BLOCK & LEVITON LLP**
260 Franklin Street
Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jake@blockleviton.com

*Additional Counsel for Additional Named Plaintiff Houston Municipal Employees Pension System*

25