Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and the Class*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-cv-10860-MCS (PLAx) **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** Judge: Hon. Mark C. Scarsi Courtroom: 7C, 7th Floor Date: May 2, 2022 Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 2, 2022 at 9:00 a.m., in Courtroom 7C of the First Street Courthouse, 350 W. First Street, Los Angeles, California, 90012, the Honorable Marc C. Scarsi presiding, Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), Court-appointed counsel for the Class and Lead Plaintiffs DeKalb County Employees Retirement System and New Orleans Employees' Retirement System (collectively, "Lead Plaintiffs"), will and hereby does move, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an Order granting an award of attorneys' fees and litigation expenses in the above-captioned securities class action.

This motion is made pursuant to the Court's January 18, 2022 Order re: Motion for Preliminarily Approval of Class Action Settlement (ECF No. 146) ("Preliminary Approval Order") and is based upon (1) this Notice of Motion; (2) the supporting Memorandum of Points and Authorities in Support set forth below; (3) the accompanying Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, and the exhibits attached thereto; (4) the pleadings and records on file in this action; and (5) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objection to the motion for attorneys' fees and Litigation Expenses must be filed on or before April 11, 2022. To date, no objections have been filed. A proposed Order will be submitted with Lead Counsel's reply brief, which will be filed on April 25, 2022, after the deadline for objections has passed.

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS (PLAx)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.     INTRODUCTION ...........................................................................................1

II.    THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED ..........................................................................4

    A.    Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund ................................................................4

    B.    The Requested Attorneys' Fees Are Reasonable Under the Percentage Method....................................................................6

III.   ALL OTHER FACTORS CONSIDERED BY NINTH CIRCUIT COURTS SUPPORT APPROVAL OF THE REQUESTED FEE.................7

    A.    The Results Achieved ..........................................................8

    B.    The Litigation was Risky and Complex ................................8

    C.    The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee ..............................12

    D.    The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee ......................................................................................13

    E.    The Lodestar Cross-Check Supports the Reasonableness of the Fee ...........................................................................13

    F.    The Requested Fee Is Consistent With Or Less Than Awards Made In Similar Cases On A Percentage or Lodestar Multiplier Basis...................................................17

    G.    Lead Plaintiffs' Approval Support The Requested Fee.......17

IV.   PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE ..........................................................................18

V.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)...........................................................................20

VI.    CONCLUSION ..........................................................................21

# **TABLE OF AUTHORITIES**

**CASES**                                                                                              **PAGE(S)**

*In re 3Com Corp. Sec. Litig.*,
    No. C-97-21083-EAI (N.D. Cal. Mar. 9, 2001), ECF No. 180............................. 15

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
    2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ......................................................... 6

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................ 10, 20

*In re Anthem, Inc. Data Breach Litig.*,
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)........................................................ 6, 7

*In re Apollo Grp. Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................................................ 7

*In re Bank of Am. Corp. Sec. Litig.*,
    772 F.3d 125 (2d Cir. 2014) .................................................................................... 20

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013)............................................................................. 12

*In re Baxter Int'l, Inc. Sec. Litig.*,
    No. 19-cv-07786 (N.D. Ill. Aug. 13, 2021), ECF No. 73 ..................................... 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935, 942 (9th Cir. 2011)............................................................................. 5

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................................................... 5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................... 4

*In re Broadcom Corp. Sec. Litig.*,
    2005 WL 8153006 (C.D. Cal. Sept. 12, 2005)......................................................... 7

*In re Brocade Sec. Litig.*,
    No. 05-cv-2042-CRB (N.D. Cal. Jan. 26, 2009), ECF No. 496 ............................. 7

*In re Brocade Sec. Litig.*,
  No. 05-cv-2042-CRB (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 ......................... 15

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) ................................................. 9, 15

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 3348055 (N.D. Cal. June 30, 2011) ....................................................... 15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................... 18

*In re CenturyLink Sales Practices & Sec. Litig.*,
  No. 18-cv-296-MJD (D. Minn. July 21, 2021), ECF No. 380 ............................... 17

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................... 5, 9

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  No. 16-cv-06509-ES (D.N.J. Dec. 20, 2021), ECF No. 184 .................................. 17

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................... 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ....................................................... 13

*Fischel v. Equitable Life Assurance Soc'y*,
  307 F.3d 997 (9th Cir. 2002) ............................................................................... 6, 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................. 5

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................. 9, 15, 16

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................. 11, 12

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................................... 6

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS
(PLAx)

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
2022 WL 826903 (C.D. Cal. Mar. 14, 2022) ........................................................ 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................... 20

*In re Int'l Rectifier Corp. Sec. Litig.*,
No. 07-cv-02544-JFW (C.D. Cal. Feb. 8, 2010), ECF No. 316 ............................. 7

*Knurr v. Orbital ATK, Inc.*,
No. 16-cv-01031-TSE (E.D. Va. June 7, 2019), ECF No. 462 ............................... 7

*Local 703 v. Regions Fin. Corp.*,
2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) ..................................................... 7

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ................................................................... 17

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
No. 08-cv-5653-PAC (S.D.N.Y. May 10, 2016), ECF No. 277 ............................. 7

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust*
*Litig.,* 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ............................................. 15

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008) ............................................................................. 18

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................................ 13

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .............................................................................. 6

*Parkinson v. Hyundai Motor Am.*,
796 F. Supp. 2d 1160 (C.D. Cal. 2010) .............................................................. 16

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ......................................................................................... 14

vi

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS
(PLAx)

*Schulein v. Petroleum Dev. Corp.*,
   2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) .......................................................... 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................... 7

*In re Snap Inc. Sec. Litig.*,
   2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............................................................. 6, 8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................................... 14

*Thomas v. MagnaChip Semiconductor Corp.*,
   2018 WL 2234598 (N.D. Cal. May 15, 2018) ............................................................ 19

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...................................................... 19, 20

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................................... 5, 6

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   No. 08-cv-11117-TPG  (S.D.N.Y. Aug. 19, 2011), ECF No. 603 ............................... 7

*van Wingerden v. Cadiz, Inc.*,
   2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) .............................................................. 15

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ........................................................................................ 4

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................ 5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................*passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.
   Litig.*, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................... 5, 11

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS
(PLAx)

*In re Willis Towers Watson plc Proxy Litig.*,
No. 17-cv-1338-AJT (E.D. Va. May 21, 2021), ECF No. 347 ................................ 17

**STATUTES**

15 U.S.C. §78u-4(a)(4) .............................................................................................. 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), counsel for Lead Plaintiffs DeKalb County Employees Retirement System ("DeKalb") and New Orleans Employees' Retirement System ("New Orleans") and Court-appointed class counsel for the Class, respectfully submits this memorandum in support of its motion for (a) an award of attorneys' fees for Plaintiffs' Counsel in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded by the Court; (b) payment of the $1,139,330.73 in litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (c) proposed awards pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class in the total amount of $8,615.00.[1]

## I.    INTRODUCTION

Through its effective advocacy and significant efforts over the past two years, Plaintiffs' Counsel achieved a Settlement of $98 million in cash for the benefit of the Class.  Plaintiffs' Counsel undertook this litigation on a fully contingent basis— without any guarantee of compensation or reimbursement of expenses.  Plaintiffs' Counsel devoted thousands of hours of attorney and staff time to achieve this

---

[1] "Plaintiffs' Counsel" means Lead Counsel BLB&G and Block & Leviton LLP, counsel for additional named plaintiff Houston Municipal Employees Pension System.  Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated November 23, 2021 (ECF No. 143-1) (the "Stipulation") or the Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl."), filed herewith.  Citations to "¶ __" in this memorandum refer to paragraphs in the Rizio-Hamilton Declaration and citations to "Ex. __" herein refer to exhibits to the Rizio-Hamilton Declaration.

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-CV-10860-MCS (PLAx)

Settlement, all the while recognizing the risk that the Class may recover nothing and that Plaintiffs' Counsel may never receive any compensation for its work.

The prosecution and settlement of this litigation required extensive efforts on the part of counsel over the past two years. Among other things, Plaintiffs' Counsel (i) conducted a comprehensive investigation of the claims, which included interviewing former Mattel employees; consulting with experts on issues of accounting and damages; reviewing and analyzing Mattel's public SEC filings, conference call transcripts, and media reports; and conducting legal research on key issues in the case; (ii) drafted a 234-page consolidated complaint replete with the detail necessary to satisfy the stringent pleading standards governing securities actions; (iii) thoroughly researched, briefed, and defeated Defendants' motion to dismiss; (iv) successfully moved for certification of the Class over Defendants' strenuous opposition and challenges to Lead Plaintiffs' expert; (v) conducted extensive discovery, including obtaining over a half-million of pages of documents from Defendants and 31 non-parties; and (vi) successfully negotiated a favorable Settlement for the benefit of the Class far in excess of the typical recovery rate in comparable securities class actions. ¶¶ 5, 13-55.

The Settlement achieved through the efforts of Plaintiffs' Counsel is a particularly favorable result when considered in light of the significant risks confronted in the litigation, including challenges related to proving Defendants' liability and establishing loss causation and damages. To start, Defendants vehemently denied that they acted with the "scienter" necessary to prove Lead Plaintiffs' securities fraud claims. ¶¶ 64-67. Defendants pointed to the fact that Mattel's Audit Committee conducted an extensive internal investigation with the assistance of independent counsel and a forensic accounting firm and "did not find that management engaged in fraud," with Mattel relying upon the professional advice and judgment of PwC, its outside auditor. ¶ 66. The Mattel Defendants further

2

argued that the Company's executives did not have any motive to commit fraud, including because they did not sell any of their personally held Mattel stock during the Class Period. ¶ 64. For its part, PwC contended that it made professional judgments involving complex tax issues in good faith and with no motive to lie. ¶ 67. If Plaintiffs' Counsel were ultimately unable to overcome Defendants' arguments that Defendants acted with the requisite state of mind—and convince a unanimous jury—investors would have recovered nothing. ¶ 68.

From the outset of this litigation, Plaintiffs' Counsel also faced meaningful challenges in proving loss causation and demonstrating significant damages. ¶¶ 69-76. At summary judgment and trial, Defendants and their experts would argue that the alleged fraud did not cause the 16% decline in Mattel's stock price on August 9, 2019. On that date, Mattel disclosed its receipt of a "whistleblower letter"—it did not disclose the contents of the letter or the nature of the whistleblower's concerns. For this reason, Defendants argued that the decline in Mattel's stock price on August 9 was not attributable to the revelation of any alleged misstatements. ¶¶ 71-72. Defendants also asserted that Mattel's stock price *increased* when Mattel revealed two months later the error in its prior financials and the contents of the whistleblower letter. ¶ 73. Defendants would argue that these facts demonstrate, as both a legal and factual matter, that investors did not consider material Mattel's accounting misstatements, and the alleged fraud was not the cause of Mattel's stock price decline on August 9, 2019. ¶¶ 71-74. They would further argue that, in calculating any damages in this case, Plaintiffs' Counsel and its experts would need to account for the 14% offsetting rebound in Mattel's stock price, which would dramatically reduce damages in this case. ¶ 75. In the face of these considerable risks, Lead Counsel vigorously pursued this Action on a contingent basis with no guarantee of payment or reimbursement of expenses.

Lead Counsel's fee request of 25% is consistent with the Ninth Circuit's "benchmark" for percentage fee awards in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts in this District regularly award percentage fees of 25% or higher in comparable securities class actions. The reasonableness of Lead Counsel's fee request is also supported by a lodestar cross-check, which yields a multiplier of approximately 2.7. *See id.* (noting that multipliers typically range from 1.0 to 4.0 and affirming a 28% fee award on a $97 million settlement that resulted in a 3.65 multiplier). Lead Counsel also seeks $1,139,330.73 for Plaintiffs' Counsel's litigation expenses, and for an award, pursuant to 15 U.S.C. §78u-4(a)(4), of $8,615.00 for time and expenses incurred by Lead Plaintiffs in their representation of the Class.

Lead Plaintiffs—sophisticated fiduciaries that collectively manage over $1.8 billion in assets and who were closely involved in the prosecution and settlement of the Action—fully endorse Lead Counsel's fee application. While the deadline for Class Members to object to the requested attorneys' fees has not yet passed, thus far no objections to the fee or expense requests have been lodged. As set forth in more detail below, Lead Counsel respectfully requests that the Court approve this motion.

## II. THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

### A. Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759,

769 (9th Cir. 1977). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id*. at 900 n.16. The Ninth Circuit has consistently approved the use of the percentage method in common fund cases. *See Vizcaino*, 290 F.3d at 1050 ("the primary basis of the fee award remains the percentage method"); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998); *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376-77 (9th Cir. 1993). Indeed, the percentage method "is typically used where attorney's fees will be paid out of a common fund." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*5 (C.D. Cal. Oct. 10, 2019); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (the "use of the percentage method in common fund cases appears to be dominant").

The percentage-of-recovery method is particularly appropriate in common fund cases where, as here, "the benefit to the class is easily quantified." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). As courts in this District have explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at \*9 (C.D. Cal. May 6, 2014).

### B. The Requested Attorneys' Fees Are Reasonable Under the Percentage Method

Plaintiffs' Counsel requests an award of attorneys' fees consistent with the Ninth Circuit "benchmark" of 25% for common fund cases. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047-48; *Torrisi*, 8 F.3d at 1376. Courts in this District have recognized that the Ninth Circuit's 25% "benchmark is 'presumptively reasonable,' and it should only be adjusted upward or downward for 'unusual circumstances.'" *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018).

Of note, while a 25% fee is the "benchmark" in the Ninth Circuit, courts in this District have observed that, in "most common fund cases, the award *exceeds* that benchmark," with a 30% fee "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'" *Omnivision*, 559 F. Supp. 2d at 1047; *accord In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005); *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018); *see also Schulein v. Petroleum Dev. Corp.*, 2015 WL 12762256, at *1 (C.D. Cal. Mar. 16, 2015) (same).

The fee requested here is consistent with the Ninth Circuit's "benchmark" of 25%, below the "norm" of 30%, and well within the range of percentage fees that have been awarded in other securities class actions with comparable recoveries. *See*, *e.g.*, *Vizcaino,* 290 F.3d at 1051 (affirming award of 28% of $97 million settlement, representing a 3.65 multiplier); *Snap*, 2021 WL 667590, at *1, *3 (awarding 25% of $154.7 million settlement); *Anthem*, 2018 WL 3960068, at *4 (awarding 27% of $115 million settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33.3% of $145 million settlement); *In re Int'l Rectifier*

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES CASE NO. 2:19-CV-10860-MCS (PLAX)

*Corp. Sec. Litig.*, No. 07-cv-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (Ex. 7) (awarding 25% of $90 million settlement); *In re Brocade Sec. Litig.*, No. 05-cv-2042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 (Ex. 8) (awarding 25% of $160 million settlement); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4-*5 (C.D. Cal. Sept. 12, 2005) (awarding 25% of $160 million settlement).

The requested fee is also consistent with fee awards in similarly sized settlements of securities class actions in other circuits. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468 at *24 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement, net of expenses); *Knurr v. Orbital ATK, Inc.*, No. 16-cv-01031-TSE, slip op. at 2 (E.D. Va. June 7, 2019), ECF No. 462 (awarding 28% of $108 million settlement) (Ex. 9); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-cv-5653-PAC, slip op. at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (awarding 28% of $110 million settlement) (Ex. 10); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-cv-11117-TPG, slip op. at 2 (S.D.N.Y. Aug. 19, 2011), ECF No. 603 (awarding 30% of $91.8 million settlement) (Ex. 11).

In sum, Lead Counsel's requested fee award of the benchmark 25% is reasonable and well within the range of what courts in this Circuit regularly award in common fund cases. Moreover, as discussed below, each of the other factors considered by courts in the Ninth Circuit also strongly supports a finding that the requested fee is reasonable.

### III. ALL OTHER FACTORS CONSIDERED BY NINTH CIRCUIT COURTS SUPPORT APPROVAL OF THE REQUESTED FEE

The attorneys' fee request is fair and reasonable in light of the relevant factors, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and

the quality of work; (iv) the contingent nature of the fee and the financial burden carried; and (v) awards made in similar actions. *See Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

### A.    The Results Achieved

As detailed in the motion for final approval of the Settlement, the result achieved—the creation of a settlement fund in the amount of $98,000,000—is an excellent result for the Class that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of summary judgment, trial, and appeal.

Furthermore, the maximum theoretical damages were $550 million, before accounting for loss causation issues. Once loss causation was taken into account, Lead Plaintiffs' assessment based on the evidence and extensive consultation with financial experts is that the more likely maximum damages were approximately $320 million. Against that benchmark, the Settlement represents a favorable recovery of 31% of the Class's maximum likely damages—a range that far exceeds the typical recovery rate in securities class actions. *See, e.g.*, *Snap*, 2021 WL 667590, at *1 (noting that a settlement representing approximately 7.8% of damages was "similar to the percent recovered in other court-approved securities settlements"). Class Members will thus enjoy the significant benefit of the Settlement now, without the risk of no or lesser recovery. Considering the substantial $98 million all-cash recovery, complexities and uncertainties of this case, and the present and time value of money, the Settlement presents an exceptional result and warrants approval of Lead Counsel's fee request.

### B.    The Litigation was Risky and Complex

"The risk that further litigation might result in Plaintiffs not recovering at all,

particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Rentech*, 2019 WL 5173771, at \*9. While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. As one court in this District aptly explained:

> By their very nature, securities class actions … involve complex legal and factual issues. … To succeed in this litigation, Plaintiffs would have been required to prove falsity, scienter, reliance and loss causation on the part of Defendants, which would be by no means guaranteed. … Moreover, both sides' arguments on loss causation and establishing damages at trial would have relied heavily on expert testimony, with no guarantee of whose testimony the factfinder would credit.

*Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at \*7 (C.D. Cal. July 22, 2016); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain'"). This Action was no exception.

As discussed above and detailed in the motion for final approval of the settlement, there was a very real risk in this Action that Lead Plaintiffs and the Class might recover nothing or less than the amount of the Settlement. Even with all of their successes to-date, Plaintiffs' Counsel still ultimately faced a significant chance that they could lose on one or more of the serious defenses mounted by Defendants. For example, Plaintiffs faced the difficult task of convincing a jury at trial that Defendants acted with scienter. Courts have recognized that proof of Defendants' state of mind is one of the most significant challenges of a prosecution under the Exchange Act. *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*3 (C.D. Cal. Oct. 25, 2016). Moreover, here, Defendants had significant evidence that they could point to in arguing that the misstatements in Mattel's financials were not made with any intent to deceive. First, Defendants were expected to argue the original misstatements in

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS (PLAx)

Mattel's financial statements in 2017 were simply an unintentional mistake, and that no misstatements were knowingly false or made with deliberate recklessness at that time. ¶ 65. With respect to the alleged cover-up when the error was discovered in early 2018, Mattel would have argued that it relied on the professional advice of its auditor, PwC, a nationally recognized audit firm, which signed off on the Company's accounting decisions and financial statements in the handling of the matter. ¶ 66. Moreover, the Mattel Defendants would point to the fact the individual Defendants did not sell any of their Mattel stock during the Class Period and, thus, they would argue, had no motive to commit fraud. ¶ 64. Defendants could also point to the results of the investigation undertaken by Mattel's Audit Committee, in conjunction with outside counsel and a forensic accounting firm, which concluded that Mattel management had not engaged in any fraud. ¶ 66. Finally, PwC and Abrahams would similarly have contended that PwC's decision not to disclose Mattel's prior accounting error was a legitimate professional accounting judgment, that PwC made its accounting judgments in good faith, and had no motive to commit fraud. ¶ 67.

Absent the Settlement, Lead Plaintiffs would also have to confront significant challenges in proving loss causation and damages at trial. ¶¶ 69-76. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants and their expert raised substantial arguments that some or all of the losses suffered by the Class as a result of the decline in the price of Mattel common stock on August 9, 2019, immediately following the disclosure of the whistleblower letter, were not caused by Defendants' alleged misstatements about Mattel's financial statements and internal controls. ¶¶ 70-72. Defendants argued that, because the August 8, 2019 disclosure did not describe the contents of the letter or the nature of the whistleblower's concerns, it could not be found to have "revealed the truth" and thus the price decline on August 9 could not be causally connected to the

revelation of alleged misstatements. ¶ 71. Defendants would argue that the reaction of Mattel's stock price in October 2019 (i.e., when detailed information concerning the misstatements was ultimately disclosed) supports their argument. Mattel's stock price rebounded substantially when the Company ultimately disclosed the actual misstatements at issue, which Defendants would argue to a jury demonstrate that the misstatements at the center of this case were not what concerned investors. ¶ 73.

On all of the liability, loss causation, and damages issues, Lead Plaintiffs would have had to prevail at several further stages—on a motion for summary judgment, at trial, and again on appeal. ¶ 77. At each stage, there would be very significant risks attendant to the continued prosecution of the Action, as well as considerable delay. That Lead Counsel faced and overcame these very significant risks during the course of the litigation, through their extensive efforts and skilled lawyering, strongly supports the requested fee.

Lead Counsel prosecuted this Action on a fully contingent basis and assumed numerous substantial litigation risks that might have resulted in no or lesser recovery for the Class (and thus no or lesser compensation to counsel). Notwithstanding these risks, Lead Counsel dedicated many millions of dollars of their attorneys' and other staff members' time to litigating this Action as forcefully as possible for the Class, and incurred over $1 million in litigation expenses in prosecuting the claims for the Class. These risks further support the reasonableness of the requested fee. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision,* 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301.

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES CASE NO. 2:19-CV-10860-MCS (PLAX)

**C.    The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee**

Courts also consider the skill required and quality of work performed in determining what fee to award. *See Heritage Bond*, 2005 WL 1594389, at \*12 ("The experience of counsel is also a factor in determining the appropriate fee award"). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047.

Here, Plaintiffs' Counsel prosecuted the case vigorously, provided high quality legal services, and achieved an excellent result for the Class. Plaintiffs' Counsel are among the most experienced and skilled practitioners in the securities litigation field, as discussed in the firm resumes attached to the Rizio-Hamilton Declaration as Exhibit 4A-5. Plaintiffs' Counsel's reputation as experienced and competent counsel in complex class action cases, willing and able to litigate the case to trial if necessary, facilitated their ability to deliver the $98 million recovery for the Class. ¶ 109.

The quality and vigor of opposing counsel are also considered in evaluating the services rendered by Plaintiffs' Counsel. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Here, Defendants were represented by very experienced attorneys practicing at the top of their fields from well-respected nationwide firms including Munger, Tolles & Olson LLP, which represented the Mattel Defendants; Wilmer Cutler Pickering Hale and Dorr LLP, which represented PwC; and Paul Hastings LLP, which represented Defendant Abrahams. ¶ 110. The attorneys were highly skilled and supported by considerable financial resources. *Id*. Nevertheless, Plaintiffs' Counsel were able to persuade Defendants to settle the case on terms favorable to the Class.

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS (PLAx)

### D. The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee

Determination of a fair and reasonable fee also includes consideration of the contingent nature of the fee.[2]  It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects a premium to normal hourly billing rates.  *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011).  "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney."  *Id.*

Here, Plaintiffs' Counsel received no compensation during the more than two years of this litigation.  Unlike defense counsel—who typically receive payment on a timely basis whether they win or lose— Plaintiffs' Counsel sustained the entire risk that they would have to fund the expenses of this Action and that, unless Plaintiffs' Counsel succeeded, they would not be entitled to any compensation whatsoever.  Accordingly, the contingent nature of the representation, and the burden carried by Plaintiffs' Counsel, support the requested fee.

### E. The Lodestar Cross-Check Supports the Reasonableness of the Fee

The reasonableness of a percentage fee may be confirmed, or "cross-checked," using the lodestar-multiplier method.  *See Vizcaino*, 290 F.3d at 1050 n.5.  In conducting a lodestar cross-check, the court engages in a two-step analysis.  First, the court multiplies the number of hours each attorney spent on the case by the reasonable hourly rate to obtain the lodestar.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  Second, the court adjusts that lodestar figure

---

[2] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047.

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES CASE NO. 2:19-cv-10860-MCS (PLAx)

(by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. *Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir. 2003). Here, utilizing the lodestar cross-check method confirms the reasonableness of Lead Counsel's requested fees.

Plaintiffs' Counsel have collectively spent 18,675.35 hours in connection with the Action. As summarized above and set forth in greater detail in the Rizio-Hamilton Declaration, Plaintiffs' Counsel vigorously pursued this litigation, by among other things: (1) conducting a detailed investigation into the Class's claims, including interviews with former Mattel employees, such as a high-level former tax executive who provided a detailed account; (2) preparing and filing the detailed 234-page Complaint; (3) successfully opposing Defendants' motions to dismiss the Complaint; and (4) obtaining certification of the Class through a contested class certification motion. ¶¶ 13-29, 46-55. In addition, Plaintiffs' Counsel conducted substantial fact discovery, which included drafting and serving requests for production of documents and interrogatories on Defendants and subpoenas on 31 non-parties; engaging in extensive meet-and-confers related to discovery and a litigated motion to compel that resulted in production of additional key documents; obtaining and reviewing over 675,000 pages of documents from Defendants and non-parties; defending the depositions of representatives of each of the Lead Plaintiffs, and noticing and preparing for 15 fact depositions that had been scheduled at the time the Settlement was reached . ¶¶ 30-45.

Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their current hourly rates, is $9,077,838.75. ¶ 105. Plaintiffs' Counsel's lodestar based on the hourly rates in effect at the time the work was performed ("historical rates") is $8,991,108.75. *Id*. Thus, the requested fee of 25%, net of expenses, which equates to approximately

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-cv-10860-MCS (PLAx)

$24,213,013, plus interest earned, represents a multiplier of 2.67 of Plaintiffs' Counsel lodestar at current rates and 2.69 at historical rates.

The difference between the lodestars under current or historical rates is relatively minimal here, and under either approach the resulting multiplier is well within the range of multipliers that courts have approved.  However, it is common and appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment.  *See Fischel*, 307 F.3d at 1010 (finding it appropriate to use "attorneys' current rates to all hours billed during the course of the litigation" as a method to compensate for the delay in payment); *Hefler*, 2018 WL 6619983, at *14 n.17 ("The Court uses Plaintiffs' Counsel's current rather historic rates, which is a well established method of ensuring that '[a]ttorneys in common fund cases [are] compensated for any delay in payment.'").

The lodestar multiplier of approximately 2.7 is well within the range of lodestar multipliers commonly awarded.  *See Vizcaino*, 290 F.3d at 1052-54 (concluding that multipliers most commonly fall range from 1.0 to 4.0 and affirming fee representing a 3.65 multiplier); *van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) ("[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation"); *China Integrated Energy*, 2016 WL 11757878, at *12 ("Courts often approve percentage-fee awards that result in a positive lodestar multiplier between three and four."); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *1 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier); *In re Brocade Sec. Litig.*, No. 05-cv-2042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 (Ex. 8) (awarding fee representing a 3.5 multiplier); *In re 3Com Corp. Sec. Litig.*, No. C-97-21083-EAI, slip op. at 10 (N.D. Cal. Mar. 9, 2001), ECF No. 180 (Ex. 12) (awarding fee representing a 6.67 multiplier); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (4.3 multiplier).

The current hourly rates for Plaintiffs' Counsel range from $775 to $1,150 for partners or senior counsel, from $425 to $650 for associates, and from $300 to $350 for paralegals and case managers.  The rates of BLB&G's staff attorneys, who were integrally involved in the review and analysis of documents, are $375 or $400 per hour depending on their years of experience, with two Senior Staff Attorneys with a rate of $425.  The blended hourly rate for all timekeepers in the application (at current rates) is $486.  These rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District and comparable jurisdictions.  *See, e.g.*, *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *see also Hefler*, 2018 WL 6619983, at *14 (in securities class action settled in 2018, finding rates ranging "from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check in which the court found that: "The blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").[3]

In addition, Lead Counsel's current hourly rates have repeatedly been accepted by other Courts for purposes of a lodestar cross-check in securities class actions.  *See*

---

[3] "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).  Here, Plaintiff's Counsel's rates are consistent with other attorneys engaged in similar litigation dand of comparable ability and reputation.

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-CV-10860-MCS (PLAX)

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-06509-ES (D.N.J. Dec. 20, 2021), ECF No. 184 (awarding fee based on lodestar analysis using BLB&G 2021 rates); *In re Baxter Int'l, Inc. Sec. Litig.*, No. 19-cv-07786 (N.D. Ill. Aug. 13, 2021), ECF No. 73 (same); *In re CenturyLink Sales Practices & Sec. Litig.*, No. 18-cv-296-MJD (D. Minn. July 21, 2021), ECF No. 380 (same); *In re Willis Towers Watson plc Proxy Litig.*, No. 17-cv-1338-AJT (E.D. Va. May 21, 2021), ECF No. 347 (same).

### F.    The Requested Fee Is Consistent With Or Less Than Awards Made In Similar Cases On A Percentage or Lodestar Multiplier Basis

Counsel's fee request is well within the range of what courts in this Circuit commonly award in complex securities class actions.  As discussed above, *see* Part II.B, the 25% fee request is consistent with the Ninth Circuit's 25% "benchmark" and fee percentages regularly awarded in comparable settlements.   As also discussed above at Part III.F, the requested fee represents a multiplier that is well within the range of lodestar multipliers typically awarded in cases of this nature.

### G.    Lead Plaintiffs' Approvals Support The Requested Fee

Lead Plaintiffs, who both took an active role in the litigation and closely supervised the work of Lead Counsel, support the approval of the requested fee based on the result obtained, the efforts of counsel, and the risks in the Action.  *See* Robertson Decl. (Ex. 1), at ¶¶ 3-5, 7; Evans Decl. (Ex. 2), at ¶¶ 3-5, 7.  Lead Plaintiffs' endorsement of the fee request further supports its approval.  *See, e.g., In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

Moreover, the fact that the fee request is based on an *ex ante* fee agreement that Lead Counsel agreed to at the outset of the action further supports the request. Numerous courts have found that, in light of Congress's intent to empower lead

plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class, a fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation warrants considerable weight by the Court. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness"); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("We expect . . . that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.").

## IV. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Plaintiffs' Counsel also requests payment of Litigation Expenses the amount of $1,139,330.73 that Plaintiffs' Counsel incurred in prosecuting and resolving the Action on behalf of the Class. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Plaintiffs' Counsel were aware that they might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Plaintiffs' Counsel were motivated to, and did, take steps to minimize expenses without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 116.

The expenses for which Plaintiffs' Counsel seek payment are detailed in the accompanying lodestar and expense declarations, attached as Exhibit 4 to the Rizio-

18

Hamilton Declaration, setting forth the specific categories of expenses incurred and the amount. The types of expenses for which Plaintiffs' Counsel seek payment were necessarily incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour. These include expenses associated with, among other things, experts, mediation costs, court fees, legal research, electronic document management, and copying costs. *See Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (approving reimbursement of expenses for "experts and consultants," "mediation fees," and "necessary travel, filing fees, investigator fees, and document storage and maintenance fees").

The largest component of counsel's expenses by far, $1,000,590.75, approximately 88% of the total expense amount, is for the costs of experts and consultants, including for the retention of experts on issues of tax accounting and on damages, loss causation, and market efficiency. ¶¶ 46-47. Plaintiffs' Counsel worked extensively with these experts throughout the litigation. While the work of these experts did not come cheap, Plaintiffs' Counsel were required to retain the best possible experts they could in order to maintain a level playing field with the deep-pocketed Defendants who had also hired highly credentialed experts.

The Notice informed potential Class Members that Plaintiffs' Counsel would apply for Litigation Expenses in an amount not to exceed $1.5 million, which may include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Class. *See* Segura Decl. Ex. A at ¶¶ 5, 60. The total amount of

expenses requested is $1,147,945.73, which includes $1,139,330.73 for Plaintiffs' Counsel's litigation expenses, and $8,615.00 in proposed PSLRA awards for reasonable expenses incurred by Lead Plaintiffs as described below. This amount is significantly less than the $1.5 million maximum amount stated in the Notice.

## V. PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(A)(4)

In connection with their motion for Litigation Expenses, Plaintiffs' Counsel also seek reimbursement of $1,139,330.73 in expenses incurred by Lead Plaintiffs directly related to their representation of the Class. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Consistent with that statute, courts regularly reimburse lead plaintiffs and class representatives in PSLRA actions for their reasonable costs and expenses, including the time devoted to the Action. *See, e.g.*, *In re Bank of Am. Corp. Sec. Litig*., 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *Amgen*, 2016 WL 10571773, at *10 (awarding $30,983.99 to PSLRA lead plaintiffs in reimbursement for time spent by lead plaintiffs' employees in reviewing court filings, attending hearings, and preparing for depositions); *STAAR Surgical Co*., 2017 WL 4877417, at *6 (awarding $10,000 for the "significant time and effort Lead Plaintiff expended to support this litigation," "including reviewing and commenting on the complaints and significant briefs, . . . and communicating with counsel to oversee the litigation"); *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (awarding $40,000 reimbursement to lead plaintiff).

Here, Lead Plaintiffs request reimbursement of a total of $8,615.00 based on the value of time devoted to the Action by employees of DeKalb and New Orleans,

including, for example, time spent communicating with Lead Counsel, reviewing pleadings and briefs, assisting in the production of documents and other discovery responses, preparing for depositions and being deposed, attending two formal mediations, and consulting with counsel during the course of settlement negotiations. *See* Robertson Decl. ¶¶ 5, 10; Evans Decl. ¶¶ 5, 10.  These efforts required employees of Lead Plaintiffs to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties and thus represented a cost to the Lead Plaintiffs. *Id.*  The awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on the active involvement of Lead Plaintiffs in the Action, and should be granted.

## VI.  CONCLUSION

Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund (net of Litigation Expenses); payment of Plaintiffs' Counsel's Litigation Expenses in the amount of $1,139,330.73; and payment of PLSRA awards to Lead Plaintiffs in the total amount of $8,615.00.

Dated:  March 28, 2022                     Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

/s/ *John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-CV-10860-MCS (PLAX)

Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Lead Counsel for Lead Plaintiffs and the Class*

Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street
Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jake@blockleviton.com

*Additional Counsel for Additional Named Plaintiff Houston Municipal Employees Pension System*

#3090775

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:19-CV-10860-MCS (PLAX)