Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and the Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-cv-10860-MCS (PLAx) |
| | **DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF (I) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES** |
| | Judge:     Hon. Mark C. Scarsi |
| | Courtroom: 7C, 7th Floor |
| | Date:     May 2, 2022 |
| | Time:     9:00 a.m. |

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................2

II.   HISTORY OF THE ACTION ...........................................................................4

    A.    Background ...........................................................................................4

    B.    Commencement of the Action and the Appointment of Lead Plaintiffs and Lead Counsel .................................................................5

    C.    The Pre-Suit Investigation and Filing of the Complaint ......................5

    D.    Defendants' Motions to Dismiss the Complaint ..................................7

    E.    The Parties Conduct Substantial Discovery .......................................11

    F.    Work With Experts..............................................................................14

    G.    Lead Plaintiffs' Class Certification Motion .......................................14

    H.    The Parties' Mediation Efforts and the Settlement of the Action.......17

    I.    The Court Grants Preliminary Approval of the Settlement ................18

III.  RISKS OF CONTINUED LITIGATION .........................................................19

    A.    Risks Concerning Liability..................................................................19

    B.    Risks Related to Loss Causation and Damages ..................................21

    C.    The Settlement Amount Compared to Likely Damages that Could Be Proved at Trial...................................................................23

IV.   LEAD PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE ......................................25

V.    ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT..................................................................................................27

VI.   THE FEE AND EXPENSE APPLICATION....................................................30

    A.    The Fee Application .............................................................................30

        1.    Lead Plaintiffs Have Authorized and Support the Fee

i

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Application.................................................................................31

2.      The Time and Labor of Plaintiffs' Counsel..............................31

3.      The Skill and Experience of Lead Counsel .............................37

4.      Standing and Caliber of Defendants' Counsel.........................38

5.      The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases...................................................................38

6.      The Reaction of the Class to the Fee Application ...................39

B.      The Litigation Expense Application ..................................................39

VII.   CONCLUSION.............................................................................................42

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

# EXHIBIT LIST

| Ex. No. | Description |
|---|---|
| 1 | Declaration of Robbie Robertson, Retiree Representative and Vice Chairman of DeKalb County Employees Retirement System, in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Robertson Decl.") |
| 2 | Declaration of Jesse Evans, Jr., Director of the New Orleans Employees' Retirement System, in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Evans Decl.") |
| 3 | Declaration of Luiggy Segura of JND Legal Administration Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Segura Decl.") |
| 4 | Summary of Plaintiffs' Counsel's Lodestar and Expenses |
| 4A | Declaration of John Rizio-Hamilton in Support of Lead Counsel's Motion For Attorneys' Fees and Litigation Expenses, Filed on Behalf of Bernstein Litowitz Berger & Grossmann LLP |
| 4B | Declaration of Jacob Walker in Support of Lead Counsel's Motion For Attorneys' Fees and Litigation Expenses, Filed on Behalf of Block & Leviton LLP |
| 5 | Breakdown of Plaintiffs' Counsel's Expenses by Category |
| 6 | Summary of Lead Plaintiffs' Request for PSLRA Award |
| | *Unpublished Authorities Cited in Fee Memorandum* |
| 7 | *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-cv-02544-JFW, slip op. (C.D. Cal. Feb. 8, 2010), ECF No. 316 |

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

iii

| 8 | *In re Brocade Sec. Litig.*, No. 05-cv-2042-CRB, slip op. (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 |
|---|---|
| 9 | *Knurr v. Orbital ATK, Inc.*, No. 16-cv-01031-TSE, slip op. (E.D. Va. June 7, 2019), ECF No. 462 |
| 10 | *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-cv-5653-PAC, slip op. (S.D.N.Y. May 10, 2016), ECF No. 277 |
| 11 | *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-cv-11117-TPG, slip op. at 2 (S.D.N.Y. Aug. 19, 2011), ECF No. 603 |
| 12 | *In re 3Com Corp. Sec. Litig.*, No. C-97-21083-EAI, slip op. (N.D. Cal. Mar. 9, 2001), ECF No. 180 |

iv

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

I, JOHN RIZIO-HAMILTON, declare as follows:

1.     I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G").  BLB&G serves as Lead Counsel for the Class and counsel for Lead Plaintiffs DeKalb County Employees Retirement System ("DeKalb") and New Orleans Employees' Retirement System ("New Orleans") (together, "Lead Plaintiffs") in the above-captioned action (the "Action").[1]  I have personal knowledge of the matters set forth herein based on my oversight of and active participation in all aspects of the prosecution and settlement of the Action.

2.     I submit this declaration in support of: (i) Lead Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 23(e), for final approval of the proposed Settlement and the proposed plan of allocation of Settlement proceeds (the "Plan of Allocation"); and (ii) Lead Counsel's motion for attorneys' fees and litigation expenses (the "Fee and Expense Application").

3.     In support of these motions, Lead Plaintiffs and Lead Counsel also submit: (i) the exhibits attached hereto; (ii) the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, (the "Settlement Memorandum"); and (iii) the Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Fee Memorandum").

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated November 23, 2021 (ECF No. 143-1) (the "Stipulation"), which was entered into by and among (i) Lead Plaintiffs, on behalf of themselves and the Class, and (ii) defendant Mattel, Inc. ("Mattel" or the "Company"); Mattel's former Chief Executive Officer, Margaret H. Georgiadis; Mattel's former Chief Financial Officer, Joseph J. Euteneuer; and Mattel's former Chief Financial Officer, Kevin Farr (together with Mattel, the "Mattel Defendants"); Mattel's auditor, PricewaterhouseCoopers LLP ("PwC"); and its former PwC audit partner, Joshua Abrahams (collectively, "Defendants").

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

## I.    INTRODUCTION

4.      The proposed Settlement before the Court provides for the resolution of the claims in the Action in exchange for a cash payment of $98,000,000 for the benefit of the Class.  As detailed herein, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement represents an excellent result and is in the best interests of the Class.  The proposed $98 million Settlement represents a substantial percentage of the maximum damages that reasonably could be established at trial. The Settlement provides a considerable benefit to the Class by conferring a substantial, certain, and immediate recovery while avoiding the significant risks and expense of continued litigation, including the risk that the Class could recover nothing or less than the Settlement Amount after years of additional litigation and delay.

5.      The proposed Settlement is the result of extensive efforts by Lead Plaintiffs and Lead Counsel, which included, among other things: (i) conducting an extensive pre-suit investigation; (ii) drafting a detailed, 234-page Complaint based on this investigation; (iii) successfully opposing Defendants' motions to dismiss the Complaint through extensive briefing; (iv) undertaking substantial fact discovery, which included obtaining and reviewing more than 675,000 pages of documents from Defendants and third parties; (v) successfully moving to compel PwC to produce critical documents during discovery; (vi) successfully moving to certify the class; (vii) consulting extensively with experts throughout the litigation, including experts in the areas of accounting, loss causation and damages; and (viii) engaging in extended arm's-length settlement negotiations, which included two formal mediation sessions with former United States District Judge Layn Phillips.

6.      As a result of the efforts summarized herein, Lead Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in the Action at the time they reached an agreement to settle.  Moreover,

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

the Settlement was the product of a mediator's recommendation issued by Judge Phillips, following the Parties' extensive arm's-length negotiations and two mediation sessions.

7.    Both Lead Plaintiffs—each of whom is a sophisticated institutional investor that was actively involved in supervising the litigation—have endorsed the Settlement and believe it provides an excellent recovery for the Class.  *See* Declaration of Robbie Robertson on behalf of DeKalb ("Robertson Decl.") (attached as Exhibit 1), at ¶¶ 3-6; Declaration of Jessie Evans, Jr. on behalf of New Orleans ("Evans Decl.") (attached as Exhibit 2), at ¶¶ 3-6.

8.    Lead Plaintiffs also seek approval of the proposed Plan of Allocation of the Net Settlement Fund.  As discussed in further detail below, the Plan of Allocation was developed with the assistance of Lead Plaintiffs' damages expert and provides a fair and reasonable method of allocating the Net Settlement Fund among Class Members who submit Claim Forms that are approved for payment by the Court on a *pro rata* basis based on Class Members' losses attributable to the alleged fraud.

9.    For its efforts in achieving the Settlement, Lead Counsel requests a fee award of 25% of the Settlement Fund, net of the Court-awarded Litigation Expenses, on behalf of all Plaintiffs' Counsel.[2]  As discussed in the Fee Memorandum, the fee requested is equal to the "benchmark" fee award in the Ninth Circuit and is well within the range of percentage awards granted by courts in this Circuit and elsewhere in similarly sized class action settlements.  The fee requested is also consistent with the retainer agreements entered into with Lead Plaintiffs and has been approved by Lead Plaintiffs.  Moreover, the requested fee represents a multiplier of 2.7 of Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically

---

[2] Plaintiffs' Counsel are Lead Counsel BLB&G, which is counsel for the Lead Plaintiffs, and Block & Leviton LLP, which is counsel for additional named plaintiff Houston Municipal Employees Pension System.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

awarded in class actions with significant contingency risks such as this one, and thus, the lodestar cross-check also supports the reasonableness of the fee request.

10. For the reasons set forth herein and in the accompanying memoranda, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are fair, reasonable and adequate, and should be approved. In addition, Lead Counsel respectfully submits that its request for attorneys' fees and litigation expenses is also fair and reasonable, and should be approved.

## II.    HISTORY OF THE ACTION

### A.    Background

11. Defendant Mattel is a global toy-manufacturing conglomerate. At all relevant times, Mattel common stock traded on the NASDAQ under the stock symbol "MAT."

12. On August 8, 2019, Defendant Mattel disclosed that it had received a whistleblower letter and that it was cancelling a $250,000,000 debt offering scheduled to close on August 8, 2019, while it investigated the allegations. On November 29, 2019, Defendants announced the results of Mattel's Audit Committee's investigation into the whistleblower's allegations, including that "[t]he Audit Committee's investigation found errors in publicly-filed Mattel financial statements for the last two quarters of 2017," and that Mattel would restate those financial statements. The Audit Committee further concluded, however, that "[t]he investigation did not find that management engaged in fraud" and that "[t]he investigation determined that income tax expense was understated by $109 million in the third quarter of 2017, and overstated by $109 million in the fourth quarter of 2017, with no impact for the full year."

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

**B.    Commencement of the Action and the Appointment of Lead Plaintiffs and Lead Counsel**

13.    On December 24, 2019, Houston Municipal Employees Pension System ("Houston") filed a class action complaint in this Court against Mattel and Euteneuer entitled *Houston Municipal Employees Pension System v. Mattel, Inc., et al.*, Case No. 2:19-cv-10860, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of purchasers of Mattel common stock during the period from October 26, 2017 through August 8, 2019, inclusive.  ECF No. 1.

14.    On January 31, 2020, New Orleans filed a class action complaint, styled *New Orleans Employees' Retirement System v. Mattel, Inc., et al.*, Case No. 2:20-cv-01056, alleging violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of purchasers of Mattel common stock during the period of August 2, 2017 through August 8, 2019, inclusive.

15.    On February 24, 2020, DeKalb and New Orleans filed a joint motion for appointment as lead plaintiffs on behalf of purchasers of Mattel common stock during the period from August 2, 2017 through August 8, 2019, inclusive under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  ECF No. 17.

16.    By Order dated April 20, 2020, the Court (the Honorable André Birotte Jr.) consolidated the two cases and recaptioned the master docket as *In re Mattel, Inc. Securities Litigation*, Master File No. 2:19-cv-10860 (the "Action").  ECF No. 27.  The Court also appointed DeKalb and New Orleans as Lead Plaintiffs, and approved Lead Plaintiffs' selection of BLB&G as Lead Counsel.  *Id.*

**C.    The Pre-Suit Investigation and Filing of the Complaint**

17.    Prior to filing the amended complaint on behalf of Lead Plaintiffs, Lead Counsel undertook an extensive investigation into the facts concerning the alleged fraud.  This investigation included a thorough review and analysis of a substantial

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

volume of information, including: (i) transcripts of Mattel's investor conference calls, press releases, news articles, and other public statements issued by or concerning the Defendants; (ii) research reports issued by financial analysts concerning the Mattel; and (iii) reports and other documents filed publicly by Mattel with the U.S. Securities and Exchange Commission ("SEC").

18. In connection with this investigation, Lead Counsel and its in-house investigators also contacted certain former Mattel employees, including Mattel's former Director of Tax, Brett Whitaker. Plaintiffs' Counsel spoke extensively with Mr. Whitaker, whose first-hand account of alleged misstatements and internal control deficiencies at Mattel was included in the Complaint.

19. Lead Counsel also retained and worked closely with an accounting expert and a damages expert in connection with the preparation of the Complaint. As a result, Lead Counsel had a firm grasp of the potential claims and the impact of Defendants' alleged misstatements and omissions on the market price of Mattel's common stock and the damages suffered by Mattel shareholders.

20. On May 29, 2020, Lead Plaintiffs and additional named plaintiff Houston served and filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF No. 34. The Complaint asserted claims against Mattel; Margaret H. Georgiadis, Mattel's former Chief Executive Officer; Joseph J. Euteneuer, Mattel's former Chief Financial Officer; and Kevin Farr, Mattel's former Chief Financial Officer (together with Mattel, the "Mattel Defendants"); PricewaterhouseCoopers LLP ("PwC"), Mattel's auditor; and Joshua Abrahams, a former PwC audit partner (together with the Mattel Defendants and PwC, "Defendants"). The Complaint asserted claims against Mattel, Georgiadis, Euteneuer, Farr, and PwC under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against Georgiadis, Euteneuer, Farr, and Abrahams under Section 20(a) of the Exchange Act. The 234-page Complaint alleged that

6

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Defendants made materially false and misleading statements about Mattel's financial results and internal controls, including by concealing that the Defendants had made and then covered up misstatements in Mattel's third and fourth quarter 2017 financial statements. The Complaint further alleged that the price of Mattel common stock was artificially inflated during the Class Period as a result of Defendants' alleged misstatements and declined when the truth was revealed through Mattel's announcement of its receipt of the whistleblower letter on August 8, 2019.

### D.    Defendants' Motions to Dismiss the Complaint

21.    On July 28, 2020, Defendants served and filed motions to dismiss the Complaint. ECF No. 39-41.

22.    The Mattel Defendants filed a joint motion arguing that the Complaint should be dismissed because the Complaint failed to allege facts giving rise to a strong inference of scienter and failed to allege loss causation. ECF No. 41-1. In their 25-page brief in support of their motion to dismiss, the Mattel Defendants argued, among other things, that:

(a)    Mattel's restatement did not show scienter, particularly because "the Audit Committee, based on an investigation by independent counsel, 'did not find that management engaged in fraud.'";

(b)    the Complaint alleged no specific facts showing knowledge of wrongdoing;

(c)    Whitaker never interacted or attended meetings with Defendants Georgiadis or Euteneuer and thus purportedly lacked personal knowledge of their mental state;

(d)    Mattel's reliance on PwC's professional advice undercut any inference of scienter;

DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF MOTION FOR SETTLEMENT AND ATTORNEY'S FEES CASE NO. 19-cv-10860-MCS (PLAx)

(e)   the lack of suspicious stock sales by Mattel insiders undercut any inference of scienter;

(f)   the announcement of the investigation into the whistleblower letter and cancellation of the debt offering did not "reveal the fraud" or show that Defendants' statements were false; and

(g)   the lack of a stock-price decline when the findings of the investigation were later disclosed further disproved loss causation.

ECF No. 41-1. The Mattel Defendants' memorandum of points and authorities in support of their motion to dismiss was accompanied by over 551 pages of exhibits. ECF No. 41-2 to 41-24.

23.   Defendant PwC filed a separate motion to dismiss, which argued that the Complaint failed to state claims against PwC because it purportedly failed to allege facts giving rise to a strong inference of PwC's scienter, failed to allege loss causation, and failed to allege any false statements made by PwC. ECF No. 39-1. PwC argued, among other things, that the inference of scienter as to PwC was not plausible because, PwC contended, Defendants' decision to retroactively recharacterize the HiT IP asset (the classification of which was at the center of the tax valuation allowance question) was based on legitimate professional judgment and not fraudulent intent.

24.   Finally, Defendant Abrahams filed a joinder and separate motion to dismiss. ECF No. 40. Defendant Abrahams joined in the Mattel Defendants' and PwC's arguments that the Complaint failed to state a primary violation of Section 10(b) of the Exchange Act because it failed to properly allege scienter and loss causation. Defendant Abrahams further argued that the Section 20(a) claim as to him should be dismissed because the Complaint purportedly failed to allege that he was a "control person" of PwC.

8

25.     On September 25, 2020, Lead Plaintiffs served an omnibus 51-page memorandum of law in opposition to the Defendants' motions to dismiss the Complaint, which addressed the arguments Defendants raised in their motions.  ECF No. 54.  Among other things, Lead Plaintiffs argued that the Complaint adequately alleged Defendants' scienter, including through the following facts:

(a)     Mattel's most senior executives in its Accounting, Tax, Internal Audit and Legal departments concluded that Mattel materially misstated its third quarter 2017 financial results, and was required to restate those results;

(b)     Mattel's most senior executives informed Defendants Euteneuer, PwC, and Abrahams of their conclusions;

(c)     Rather than disclose these facts to investors, Mattel's senior executives and Abrahams concealed the misstatement, which involved misstating Mattel's results for the fourth quarter of 2017 in the opposite direction;

(d)     Thereafter, Defendants Euteneuer, Georgiadis, and Abrahams met with Mattel's Audit Committee and falsely assured them that the Company's financial results were accurate and its internal controls over financial reporting were sound;

(e)     Mattel issued its false financial results to investors in its 2017 Form 10-K, with Defendant Euteneuer and others falsely certifying their accuracy; and

(f)     Within weeks of receiving the whistleblower letter, Defendants admitted that Mattel had materially misstated its results and management had known of the errors.

ECF No. 54.  In addition, Lead Plaintiffs argued that the Complaint adequately pleaded loss causation by alleging a causal connection between Defendants' fraud and investors' losses, including that: (1) Defendants made false statements to

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

investors concerning Mattel's financial results and internal controls; (2) that fraud triggered a whistleblower letter; and (3) when Mattel disclosed its receipt of the whistleblower letter, its stock price declined, causing investors' losses. Lead Plaintiffs contended further that Defendants' loss-causation challenge ignored and was inconsistent with controlling Ninth Circuit law. ECF No. 54. Finally, Lead Plaintiffs argued that their Section 20(a) claims were properly asserted against Georgiadis, Euteneuer, Farr, and Abrahams, who were all senior executives of Mattel or PwC.

26. On October 2, 2020, the Action was transferred from Judge Birotte to the Honorable Mark C. Scarsi. ECF No. 58.

27. Defendants filed and served their reply memorandum in support of their motions to dismiss on October 26, 2020. ECF Nos. 63-65. These reply briefs included additional legal citations that were not contained in Defendants' opening motions to dismiss. In response to this new authority, Lead Plaintiffs sought leave to file a surreply in opposition to Defendants' motions to dismiss. ECF No. 67. Defendants filed a response on November 2, 2020 (ECF No. 68), and Lead Plaintiffs filed a further reply on November 5, 2020 (ECF No. 72).

28. On January 26, 2021, the Court issued an order denying Defendants' motions to dismiss the Complaint. ECF No. 74. The Court found that the Complaint (i) adequately alleged facts to support a strong inference that Defendants made their false statements with the requisite scienter; (ii) adequately alleged facts showing that Defendants' alleged false statements and omissions caused the losses Mattel investors suffered; and (iii) adequately pleaded Section 20(a) claims against the Individual Defendants.

29. Defendants filed their Answers to the Complaint on March 11, 2021. ECF Nos. 81-83. In their Answers, Defendants denied the substantive allegations set forth in the Complaint. Additionally, the Mattel Defendants asserted 16

affirmative defenses (ECF No. 82); Defendant PwC asserted 15 affirmative defenses (ECF No. 83) and Defendant Abrahams asserted 31 affirmative defenses (ECF No. 81).

### E.      The Parties Conduct Substantial Discovery

30.      Discovery in this Action commenced in February 2021, following the resolution of Defendants' motions to dismiss.  On February 25, 2021, the parties conducted a conference in accordance with Federal Rule of Civil Procedure 26(f).

31.      The Parties exchanged their Initial Disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure on March 25, 2021.

32.      The Parties also negotiated a Joint Status Report under Rule 26(f) and a Joint Stipulation for an order regarding pretrial deadlines, which they submitted to the Court on March 11, 2021.  ECF Nos. 77, 78.  The Joint Status Report set forth the Parties' views on the scope of discovery to be conducted and e-discovery procedures.

33.      The Court thereafter entered two Orders setting pretrial deadlines on March 11, 2021 (ECF No. 84) and March 12, 2021 (ECF No. 85).  Under those orders, Lead Plaintiffs were to file its motion for class certification by April 30, 2021, fact discovery was to be completed by December 3, 2021, and expert discovery was to be completed by March 14, 2022.

34.      Thereafter, the Parties negotiated the terms of a protective order governing the treatment of confidential documents and other information produced in discovery, which the Parties submitted to the Court on April 30, 2021.  ECF No. 88.  The Court entered the stipulated protective order on the same day.  ECF No. 89.

35.      The Parties also negotiated and entered into a Stipulated Agreement Regarding Discovery of Electronically Stored Information (the "ESI Stipulation") on May 11, 2021.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

36. Additionally, Lead Plaintiffs prepared and served four sets of document requests on the Mattel Defendants, and three sets of documents requests on Defendants PwC and Abrahams.

37. Lead Plaintiffs also prepared and served document subpoenas on 31 non-parties, including former employees of Mattel and PwC. Lead Plaintiffs also served separate requests for admissions and interrogatories on each of the Defendants.

38. Lead Plaintiffs' efforts to obtain discovery from Defendants were highly contested, resulting in the exchange of numerous discovery letters and meet-and-confers concerning the scope of discovery.

39. The Parties were generally able to resolve their discovery disputes through the meet-and-confer process. However, when PwC refused to produce certain documents, Lead Plaintiffs filed a motion to compel. Specifically, Lead Plaintiffs moved to compel PwC to produce key documents dated prior to the Class Period and within the Class Period that PwC contended were not relevant. ECF Nos. 96-98. Lead Plaintiffs filed the motion to compel on July 16, 2021. *Id.* On August 4, 2021, Chief Magistrate Judge Paul L. Abrams issued an order largely granting Lead Plaintiffs' requests, and compelling PwC to expeditiously make additional document production. ECF No. 117. As a result of this order, PwC produced thousands of pages of additional documents, including certain key emails. Additionally, following the order, Mattel agreed to produce communications from an additional 20 custodians and other sources from a three-year period that it previously refused to produce.

40. As a result of Lead Plaintiffs' extensive discovery efforts, Defendants and non-parties produced a total of over 675,000 pages of documents.

41. Lead Plaintiffs also provided Defendants with discovery. Among other things, Lead Plaintiffs produced nearly 48,000 pages of their own documents to

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Defendants in response to Defendants' document requests. Lead Plaintiffs also responded to Defendants' requests for admission.

42. Lead Counsel devoted extensive efforts to reviewing and analyzing the over 675,000 pages of documents produced by Defendants and the 31 subpoenaed non-parties. Lead Counsel developed a detailed process for reviewing documents produced in the litigation and sharing information among counsel and its experts. Lead Counsel developed guidelines for the review and "coding" of documents, prepared chronologies of events, lists of key players, and a deposition plan. These materials, which were updated and refined as document discovery unfolded, were provided to the team of ten highly experienced staff attorneys responsible for analyzing the documents produced by Defendants. In addition, Lead Counsel held regular meetings to review substantive issues in the case and ensure that new developments were shared widely across the team.

43. In reviewing the documents, attorneys were tasked with making several analytical determinations as to the documents' importance and relevance. Specifically, they determined whether the documents were "hot," "relevant," or "irrelevant." They also identified particular issues implicated by a document – such as tying documents to specific Defendants – and created tags in the document database to identify potential deponents with respect to whom the document would be relevant so that the documents could be easily retrieved when preparing for the depositions of those witnesses.

44. For documents identified as "hot," the attorneys explained their substantive analysis of the document's importance. Specifically, the attorneys made electronic notations on the document review system explaining what portions of the documents were hot, how they related to the issues in the case, and why the attorney believed that information to be significant. Lead Counsel held regular meetings, typically weekly, to discuss documents of particular significance as a group.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

45. Defendants took the depositions of representatives of both Lead Plaintiffs. Lead Counsel defended those depositions. Lead Plaintiffs had noticed and were prepared to take an agreed-upon 15 depositions, including fact depositions of senior Mattel and PwC officers and employees, at the time the Settlement was achieved.

### F. Work With Experts

46. Lead Plaintiffs consulted with highly qualified experts and consultants in such disciplines as accounting, damages, and loss causation to assist in the prosecution of this Action. Lead Counsel consulted with these experts throughout the litigation and believes that the development of this expert evidence was critical to the successful prosecution of the claims. Lead Plaintiffs' experts and consultants included (1) Dr. S.P. Kothari, the Gordon Y Billard Professor of Accounting and Finance from MIT Sloan School of Management, who provided Lead Plaintiffs with expert advice on damages and loss causation issues and drafted an expert report on the efficiency of the market for Mattel securities; and (2) Harris Devor, from Friedman LLP Accountants and Advisors, who provided expert advice on the accounting matters at issue in the Action.

47. Lead Counsel consulted extensively with these experts throughout the litigation of the Action, including in preparing the Complaint, in reviewing documents produced in discovery, and throughout the Parties' settlement negotiations.

### G. Lead Plaintiffs' Class Certification Motion

48. On April 30, 2021, Lead Plaintiffs served and filed their motion for class certification and supporting papers, including the expert report of Dr. Kothari on the efficiency of the market for Mattel common stock in order to establish the predicate for the class-wide presumption of reliance under *Basic v. Levinson*, 485 U.S. 224 (1988) (the "*Basic* presumption"). ECF No. 90. In the motion, Lead

14

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Plaintiffs argued that the Class met all of the requirements of Federal Rule of Civil Procedure 23 and should be certified.

49.    On July 12, 2021, Defendants served and filed their oppositions to Lead Plaintiffs' Class Certification Motion.  ECF No. 93-95.  The Mattel Defendants argued that under *Goldman Sachs Grp., Inc. v. Arkansas Teacher Retirement Systems*, 141 S. Ct. 1951 (2021), a decision that had only recently been issued by the Supreme Court, the Court should not certify the Class because Defendants purportedly could defeat the *Basic* presumption by showing an absence of price impact. In support of that assertion, the Mattel Defendants argued, among other things, that the misstatements were not important to investors and the alleged corrective disclosure did not reveal the fraud.  ECF No. 93.  The Mattel Defendants also argued that Lead Plaintiffs faced unique defenses because their investment manager purportedly had stated that the alleged misrepresentations did not affect Mattel's fundamental valuation and, therefore, they were not "typical" class representatives.

50.    Defendant PwC submitted a separate brief arguing that the Court should create a PwC subclass limited to investors who purchased on or after February 27, 2018, when PwC made its first audit opinion that was challenged in the Complaint. ECF No. 94.  PwC argued that investors who purchased before PwC's first statement lacked standing to bring claims against PwC.  *Id.*  Defendant Abrahams filed a joinder motion.  ECF No. 95.

51.    On August 23, 2021, Lead Plaintiffs served and filed an omnibus reply in further support of the Class Certification Motion. Lead Plaintiffs' reply brief included over 170 pages of briefing and exhibits, including a responsive expert report from Dr. Kothari.  ECF No. 120.  In the reply brief, Lead Plaintiffs argued that (1) Defendants failed to rebut the *Basic* presumption by proving a complete lack of price impact; (2) Lead Plaintiffs satisfied the "typicality" requirement; and (3) the

DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF MOTION FOR SETTLEMENT AND ATTORNEY'S FEES CASE NO. 19-cv-10860-MCS (PLAx)

15

Court should not certify a PwC subclass.

52.     On September 2, 2021, the Mattel Defendants served and filed a request for leave to file proposed surreply papers in further opposition to class certification and an additional expert report.  ECF No. 131.

53.     On September 9, 2021, the Court granted the Mattel Defendants leave to file the surreply papers and allowed Lead Plaintiffs to file a further response.  ECF No. 133.  The same day, the Mattel Defendants served and filed their surreply papers in further opposition to class certification.  ECF No. 134.  On September 15, 2021, Lead Plaintiffs served and filed their response to the surreply.  ECF No. 135.

54.     On October 6, 2021, the Court entered an Order Granting Lead Plaintiffs' Motion for Class Certification ("Class Certification Order").  ECF No. 137.  The Court certified a class consisting of all persons and entities who purchased or otherwise acquired the common stock of Mattel from August 2, 2017 to August 8, 2019, inclusive, and who were damaged thereby.  The Court also certified a subclass (the "PwC Subclass") consisting of all persons and entities who purchased or otherwise acquired the common stock of Mattel from February 27, 2018 to August 8, 2019, inclusive, and who were damaged thereby. Both the Class and the PwC Subclass were subject to certain exclusions.

55.     On October 20, 2021, the Mattel Defendants filed a petition under Rule 23(f) of the Federal Rules of Civil Procedure (the "Rule 23(f) Petition") for leave to appeal the Court's Class Certification Order to the United States Court of Appeals for the Ninth Circuit.  The Parties reached their agreement in principle to settle days before Lead Plaintiffs' answer was due.  After the agreement to settle was reached, the Mattel Defendants voluntarily dismissed their Rule 23(f) petition.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

## H.    The Parties' Mediation Efforts and the Settlement of the Action

56.    The Parties first began exploring the possibility of a settlement in the spring of 2021.  The Parties agreed to engage in private mediation and retained former United States District Judge Layn R. Phillips to act as the mediator.  Pursuant to a schedule set by Judge Phillips, the Parties prepared and exchanged detailed mediation statements that addressed the issues of liability and damages on May 21, 2021 and June 10, 2021, and participated in a full-day mediation session on June 24, 2021.  Representatives of both Lead Plaintiffs attended the mediation.  Despite the Parties' efforts over the full-day mediation, the June 24, 2021 mediation session did not result in an agreement to resolve the Action.

57.    After the Court granted Lead Plaintiffs' motion for class certification and while fact discovery was still ongoing, the Parties renewed their settlement negotiations.  The Parties engaged in another full-day formal mediation session before Judge Phillips on October 25, 2021.  Following the October 25, 2021 mediation session, which also ended without resolution, Judge Phillips issued a mediator's recommendation that the Parties settle the Action for $98,000,000.  The proposal was issued on a triple-blind basis, meaning that if one of the Parties (Lead Plaintiffs, Mattel Defendants, or PwC) rejected the proposal, the others would not find out whether any other Parties had accepted the proposal.  On October 27, 2021, all of the Parties informed Judge Phillips that they accepted the proposal.  On October 28, 2021, the Parties executed a term sheet memorializing their agreement in principle to settle the Action for $98,000,000.  On November 1, 2021, the Parties informed the Court that they had reached an agreement in principle to settle.  ECF No. 141.

58.    Over the following weeks, the Parties negotiated the terms of the Settlement and drafted the settlement agreement and related papers, including the

17

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

notices to be provided to the Class. On November 23, 2021, the Parties executed the Stipulation and Agreement to Settlement (ECF No. 143-1) (the "Stipulation"), which set forth the full terms and conditions of the Parties' agreement to settle all claims asserted in the Action for $98,000,000, subject to the Court's approval.

59.     Also on November 23, 2021, the Parties also entered into a confidential Supplemental Agreement, which gives Defendants the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds a threshold agreed to by Lead Plaintiffs and Defendants. In accordance with the Court's order (ECF No. 146 at 4, 18), a copy of the Supplemental Agreement has been submitted to the Court *in camera* in connection with the filing of Lead Plaintiffs' motion for final approval of the Settlement.

**I.     The Court Grants Preliminary Approval of the Settlement**

60.     On November 24, 2021, Lead Plaintiffs filed a motion for preliminary approval of the Settlement. ECF No. 143. Lead Plaintiffs filed an additional brief in further support of the motion for preliminary approval on December 7, 2021. ECF No. 144.

61.     On January 18, 2021, the Court entered the Order re Preliminary Approval of Class Action Settlement (ECF No. 146) (the "Preliminary Approval Order") which, among other things: (a) preliminarily approved the Settlement; (b) approved the form of Notice, Summary Notice, and Claim Form, and authorized notice to be given to Class Members through mailing of the Notice and Claim Form, posting of the Notice and Claim Form on a Settlement website, and publication of the Summary Notice in *The Wall Street Journal* and over the *PR Newswire*; (c) established procedures and deadlines by which Class Members could participate in the Settlement, request exclusion from the Class, or object to the Settlement, the proposed Plan of Allocation, and/or the fee and expense application; and (d) set a

schedule for the filing of opening papers and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application. The Preliminary Approval Order also scheduled the Settlement Hearing for May 2, 2022 at 9:00 a.m. to determine, among other things, whether the Settlement should be finally approved.

## III. RISKS OF CONTINUED LITIGATION

62. The Settlement provides an immediate and certain benefit to the Class in the form of a $98,000,000 cash payment. Lead Plaintiffs and Lead Counsel believe that the proposed Settlement—which represents a significant portion of the realistically recoverable damages in the Action—is an excellent result for the Class in light of the risks of continued litigation. As explained below, Lead Plaintiffs faced substantial risks with respect to proving liability and establishing loss causation and damages in this case. Absent a settlement, Lead Plaintiffs would need to prevail at several additional stages of the litigation, including defeating Defendants' anticipated motions for summary judgment, and then prevailing at trial. Even after any trial, Lead Plaintiffs would have faced post-trial motions and a likely appeal that might have prevented Lead Plaintiffs from obtaining a recovery for the class or, at a minimum, delayed any recovery for years.

### A. Risks Concerning Liability

63. Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious. They recognize, however, that this Action presented meaningful risks to establishing Defendants' liability.

64. Most notably, Lead Plaintiffs would have faced challenges in proving that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness. Defendants invariably would have argued at summary judgment and trial that the case lacked "traditional" motive allegations to support scienter. For example, Mattel Defendants did not sell any of their

19

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

personally held Mattel stock during the Class Period.  PwC and Abrahams would similarly have contended that they had no motive to commit fraud.  Additionally, Defendants would have challenged the credibility of Lead Plaintiffs' primary witness, a former Mattel tax employee, arguing that he lacked personal knowledge because he did not interact with the individual Mattel Defendants.

65.    In addition, Defendants were expected to argue at summary judgment and trial that the original misstatements in Mattel's financial statements appear to have been a mistake, and that no statements were made knowingly or with deliberate recklessness before the error was discovered in early 2018.

66.    As for the alleged "cover-up" thereafter, Mattel would have continued to argue that it relied on the professional advice of its auditor, PwC, a nationally recognized audit firm, which signed off on the Company's accounting decisions and financial statements.  In support of this argument, the Mattel Defendants undoubtedly would point to the fact that Mattel's Audit Committee conducted a purportedly extensive investigation into the allegations, with the assistance of outside counsel and a forensic accounting firm, and ultimately concluded that it "did not find that management engaged in fraud."

67.    In turn, PwC would have continued to argue that its decision not to disclose Mattel's prior accounting error was a legitimate professional accounting judgment, that it made its accounting judgments in good faith, and had no motive to do otherwise.

68.    While certain of these arguments were made unsuccessfully by Defendants on their motions to dismiss, when the Court was required to accept all allegations in the Complaint as true, there was a possibility that Defendants could have succeeded in these arguments at subsequent stages of the litigation.  If a jury at trial were to accept that Defendants did not act with the requisite state of mind, investors would have recovered nothing in this case.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

**B.    Risks Related to Loss Causation and Damages**

69.    Assuming that Lead Plaintiffs overcame the above risks and successfully established liability, Lead Plaintiffs would have confronted additional challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'").

70.    Defendants would have continued to argue at summary judgment and trial that the Lead Plaintiffs could not prove that Defendants' alleged misstatements caused the losses suffered by the Class as a result of the decline in the price of Mattel common stock on August 9, 2019.

71.    First, Defendants would continue to argue that the August 8, 2019 disclosure revealed only the existence of a whistleblower letter but did not describe the contents of the letter or the nature of the whistleblower's concerns. For these reasons, according to Defendants, the August 8, 2019 disclosure could not be found to have "revealed the truth" or "revealed the fraud" and, as a result, the price decline on August 9 was not causally connected to any revelation of financial misstatements.

72.    Defendants would argue that, instead, the price decline on August 9, 2019 was largely, if not entirely, the result of market uncertainty and the news on that day that Mattel would postpone a planned bond offering. In other words, Defendants would argue that Mattel's stock price declined as a result of the termination of the bond offering (or, at most, uncertainty about the contents of the whistleblower letter), and not because of a revelation of fraud. Given that plaintiffs bear the burden of proving loss causation in this Exchange Act case, this posed a potentially serious risk to the success of Lead Plaintiffs' claims at trial.

73.    As additional support for their "loss causation" argument, Defendants would point to the fact that Mattel's stock price *increased* by 14% on October 30,

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

2019 after the details of the substance of the whistleblower's allegations and the results of Mattel's investigation were ultimately disclosed. Defendants were expected to contend that this increase in the stock price following the disclosure of information about the alleged misstatements defeated any showing that the misstatements were the cause of the Class's losses or, at the very least, minimized damages in the case. While Lead Plaintiffs believe they had strong counter arguments, there was a risk that a jury could accept Defendants' arguments.

74. Defendants would have further bolstered their loss causation arguments by asserting that the source of the misstatements—i.e., a misstated tax valuation allowance—was not important to investors, had no impact on expected future cash flows, and thus would not be expected to negatively impact the stock price. Defendants would have argued that the misstated valuation allowance did not impact Mattel's cash or revenue, did not impact the year-end financial statements at all, and was not considered significant by analysts.

75. Relatedly, Defendants were expected to argue that damages would be severely reduced or eliminated because of the rebound in Mattel's stock price on October 30, 2019. Defendants would have pointed to the fact that Mattel's stock price increased by 14% upon Mattel's announcement of the contents of the whistleblower letter and its Audit Committee's findings—erasing nearly all of the stock price decline on the earlier, "corrective disclosure" date. Based on these facts, Defendants would argue that, at minimum, investors were not entitled to recover the full extent of the share price decline on August 9, 2019. If Defendants had succeeded in convincing the Court or a jury that the Defendants were entitled offset the entire 14% stock price rebound in calculating damages, the Class's recovery could have been virtually eliminated.

76. These disputed loss causation and damages issues would have been hotly contested, with their resolution boiling down to the proverbial "battle of

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

experts." Were the Court or the jury to accept Defendants' arguments, recoverable damages would have been eliminated or significantly reduced.

77. On all the liability, loss causation, and damages issues, Lead Plaintiffs would need to prevail at several stages—including at summary judgment and then at trial. And even if Lead Plaintiffs succeeded at summary judgment and trial, they likely would face years of lengthy appeals. At each stage, there would be very significant risks attendant to the continued prosecution of the Action, as well as considerable delay.

## C. The Settlement Amount Compared to Likely Damages that Could Be Proved at Trial

78. If not for this Settlement, the Action would have continued to be highly contested by the Parties at each subsequent stage. Continued litigation would be complex, costly, and lengthy for the Class. Many more depositions would need to be taken; more experts would need to be designated; and more expert discovery would need to be completed. Additionally, Defendants' Rule 23(f) Petition would need to be briefed and, if granted, the appeal would need to be briefed. Then a motion for summary judgment would need to be briefed and argued, as well as *Daubert* motions and motions *in limine*, followed by extensive pre-trial submissions and a trial that likely would take weeks to complete, even without taking into account the pre- and post-trial motions.

79. The Settlement Amount—$98 million in cash—represents a significant recovery for the Class. The $98 million Settlement is a favorable result when considered in relation to the maximum amount of damages that could be realistically established at trial, in the event Lead Plaintiffs and the Class prevailed on liability issues, including scienter and loss causation. The absolute theoretical maximum potential damages that could be established at trial *before* accounting for any issues of loss causation was approximately $550 million. Even as measured against this

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

estimate, the $98 million recovery represents a recovery of 17.8%.

80. Accounting only for issues of loss causation, Lead Plaintiffs believe based on their expert's analysis that a more likely maximum damages estimate would be $320 million. This figure is net of a portion of the October 30, 2019 stock price rebound. The recovery for the Class here represents 31% of this realistic maximum damages estimate. As noted, this damage estimate again assumes that Lead Plaintiff would prevail at trial on all of the alleged misstatements throughout the entire Class Period, and prove scienter, materiality, and reliance.

81. As noted, Defendants contended that Lead Plaintiffs' damages analysis needed to net out the entire stock price rebound on October 30, 2019 in assessing damages. If Defendants were to succeed on this argument, damages would have been reduced to approximately $139 million. This is because on October 30, 2019—the trading day after the contents of the whistleblower letter were first disclosed—Mattel's stock price rebounded to a high of $13.22, nearly what it was prior to the August 8, 2019 disclosure of the receipt of the whistleblower letter ($13.43). While Lead Plaintiffs believe they had counter arguments, damages would have been reduced significantly if these anticipated arguments were accepted.

82. At the time of the Settlement, Lead Plaintiffs and the Class still faced the substantial risks associated with Defendants' Rule 23(f) petition, further discovery, summary judgment motions, *Daubert* motions, motions *in limine*, other pre-trial submissions and a trial—a process which could possibly extend for a significant amount of time and might lead to a smaller recovery, or no recovery at all. Further, even if Lead Plaintiffs succeeded in proving all elements of their case at trial and in post-trial proceedings, Defendants would almost certainly have appealed. An appeal would have renewed all the risks faced by Lead Plaintiffs and the Class, as Defendants would be able to re-assert all their arguments summarized above, including relitigating their arguments about the interpretation of the Supreme

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Court's recent *Goldman* decision.  All of this would also have engendered significant additional delay and costs before Class Members could have received any recovery from this case.

83.     Given these significant litigation risks and delays, and the immediacy and size of the $98,000,000 recovery for the Class, Lead Plaintiffs and Lead Counsel believe that the Settlement is an excellent result and is in the best interest of the Class.

## IV.     LEAD PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE

84.     The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to the Class.  The Preliminary Approval Order also set an April 11, 2022 deadline for Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application or to request exclusion from the Class, and set a final approval hearing date of May 2, 2022.

85.     Pursuant to the Preliminary Approval Order, Lead Counsel instructed JND Legal Administration ("JND"), the Court-approved Claims Administrator, to disseminate copies of the Notice and the Claim Form by mail and to publish the Summary Notice.  The Notice contains, among other things, a description of the Action, the Settlement, the proposed Plan of Allocation, and Class Members' rights to participate in the Settlement, object, or exclude themselves from the Class.  The Notice also informs Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount up to 25% of the Settlement Fund, and for Litigation Expenses in an amount up to $1,500,000.  To disseminate the Notice, JND obtained

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

information regarding the names and addresses of potential Class Members from Mattel and certain banks, brokers, and other nominees. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Segura Decl."), attached hereto as Exhibit 3, at ¶¶ 3-8.

86.     JND began mailing copies of the Notice and Claim Form (together, the "Notice Packet") to potential Class Members and nominee owners on February 4, 2022. *See* Segura Decl. ¶¶ 3-6. As of March 25, 2022, JND had disseminated a total of 193,392 Notice Packets to potential Class Members and nominees. *Id.* ¶ 9.

87.     On February 15, 2022, in accordance with the Preliminary Approval Order, JND caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. *Id.* ¶ 10.

88.     Lead Counsel also caused JND to establish a dedicated settlement website, www.MattelSecuritiesLitigation.com, to provide potential Class Members with information concerning the Settlement and access to downloadable copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and Complaint. *See* Segura Decl. ¶ 12. That website became operational on February 4, 2022. *Id.* Lead Counsel also made copies of the Notice and Claim Form and other documents available on its own website, www.blbglaw.com.

89.     As set forth above, the deadline for Class Members to file objections to the Settlement, Plan of Allocation, and/or Fee and Expense Application, or to request exclusion from the Class is April 11, 2022. To date, only three requests for exclusion have been received, *see* Segura Decl. ¶ 13, and no objections to the Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application have been received. Lead Counsel will file reply papers on or before April 25, 2022, that will address all requests for exclusion and any objections that may be received.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

## V. ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

90. Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less any (i) Taxes, (ii) Notice and Administration Costs, (iii) Litigation Expenses awarded by the Court, (iv) attorneys' fees awarded by the Court, and (v) any other costs or fees approved by the Court) must submit a valid Claim Form with all required information postmarked no later than June 8, 2022. As set forth in the Notice, the Net Settlement Fund will be distributed among Class Members who submit eligible claims according to the plan of allocation approved by the Court.

91. The proposed Plan of Allocation is set forth at pages 16 to 20 of the Notice mailed to potential Class Members. *See* Segura Decl., Ex. A at pp. 16-20. Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members.

92. As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover at trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Plan ¶ 2. Instead, the calculations under the plan are only a method to weigh the claims of Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. *Id*.

93. The principal calculations under the Plan of Allocation are based on the estimated amount of artificial inflation in Mattel common stock during the Class Period that was allegedly caused by Defendants' alleged false and misleading statements and material omissions, as calculated by Lead Plaintiffs' damages expert. *See* Plan ¶ 3. In calculating the estimated artificial inflation, Lead Plaintiffs' damages expert considered the price changes in Mattel common stock on August 9,

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

2019, following the alleged corrective disclosure, adjusting for price changes on that day that were attributable to market or industry forces. *Id*.

94.    In general, the Recognized Loss Amounts calculated under the Plan of Allocation for each purchase of Mattel common stock will be the lesser of: (i) the difference between the amount of alleged artificial inflation in Mattel common stock at the time of purchase or acquisition and the time of sale, or (ii) the difference between the actual purchase price and the sale price. Plan ¶¶ 5, 9, 10. In addition, in accordance with the PSLRA, Recognized Loss Amounts for shares of Mattel common stock sold during the 90-day period after the end of the Class Period are further limited to the difference between the purchase price and the average closing price of the stock from the end of the Class Period to the date of sale. Plan ¶¶ 9(b)(iii), 10(b)(iii). Recognized Loss Amounts for Mattel common stock still held as of the close of trading on November 6, 2019, the end of the 90-day period, will be the lesser of (i) the amount of artificial inflation on the date of purchase or (ii) the difference between the purchase price and $10.85, the average closing price for the stock during that 90-day period. Plan ¶¶ 9(c), 10(c)

95.    Claimants who purchased and sold Mattel shares before the close of trading on August 8, 2019, will have no Recognized Loss Amount under the Plan of Allocation with respect to those transactions because any loss suffered on those sales would not be the result of the revelation of the alleged misstatements in the Action. Plan ¶¶ 4, 9(a), 10(a).

96.    Based on these principles, a "Mattel Recognized Loss Amount" will be calculated for each share of Mattel common stock purchased during the entire Class Period. Plan. ¶¶ 8-9. In addition, members of the PwC Subclass—*i.e.*, those who purchased Mattel shares from February 27, 2018 to August 8, 2019 (the "PwC Subclass Period")—will also have a "PwC Recognized Loss Amount" calculated in a similar manner with respect to any purchases they made within the PwC Subclass

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Period.

97. Members of the PwC Subclass will be eligible for an additional distribution from a segregated portion of the Net Settlement Fund based on their purchases in the PwC Subclass Period, in recognition of the fact that (a) the PwC Subclass had claims against the PwC that not all Class Members possessed, and (b) PwC is contributing monetarily to the Settlement. Specifically, the Net Settlement Fund will be divided into two parts: (a) a "Mattel Distribution Fund" of $86 million, less the proportional amount of all Court-approved attorneys' fees, Litigation Expenses, and Notice and Administration Costs; and (b) a "PwC Distribution Fund" of $12 million less the proportional amount of all Court-approved attorneys' fees, Litigation Expenses, and Notice and Administration Costs. The Mattel Distribution Fund will be distributed on a *pro rata* basis to eligible claimants based on their Mattel Recognized Loss Amounts and the PwC Distribution Fund will be distributed on a *pro rata* basis to eligible claimants based on their PwC Recognized Loss Amounts.

98. In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Class Members based on damages they suffered on purchases or acquisitions of Mattel common stock that were attributable to the misconduct alleged in the Complaint, and the Defendants against whom they were able to assert claims. Accordingly, Lead Plaintiffs and Lead Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved by the Court.

99. As noted above, as of March 25, 2022, more than 193,000 copies of the Notice, which contains the Plan of Allocation and advises Class Members of their right to object to the proposed Plan of Allocation, had been sent to potential Class Members and nominees. S*ee* Segura Decl. ¶ 9. To date, no objections to the proposed Plan of Allocation have been received.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

## VI. THE FEE AND EXPENSE APPLICATION

100. In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying to the Court, on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees of 25% of the Settlement Fund, net of Litigation Expenses, plus interest earned at the same rate as the Settlement Fund (the "Fee Application"). If the Court awards the $1,147,945.73 in Litigation Expenses sought (which are described further below), the requested 25% fee would be $24,213,013, plus interest. Lead Counsel also requests payment for litigation expenses incurred by Plaintiffs' Counsel in connection with the prosecution and settlement of the Action in the amount of $1,139,330.73. Lead Counsel further requests reimbursement to Lead Plaintiffs of a total of $8,615.00 in costs and expenses that Lead Plaintiffs incurred directly related to their representation of the Class, in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(4). The requested attorneys' fees, litigation expenses, and PSLRA awards are to be paid from the Settlement Fund. The legal authorities supporting the requested fee and expenses are discussed in Lead Counsel's Fee Memorandum. The primary factual bases for the requested fee and expenses are summarized below.

### A. The Fee Application

101. Lead Counsel is applying for a fee award to be paid from the Settlement Fund on a percentage basis. As set forth in the accompanying Fee Memorandum, the percentage method is the appropriate fee calculation method because it aligns the lawyers' interest in being paid a fair fee with the interest of the Lead Plaintiffs and the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances and taking into account the litigation risks faced in a class action. Use of the percentage method has been recognized as appropriate by the Supreme Court and Ninth Circuit for cases of this nature.

30

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

102.   Based on the quality of the result achieved, the extent and quality of the work performed by Plaintiffs' Counsel, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is fair and reasonable and should be approved.  As discussed in the Fee Memorandum, a 25% fee award is consistent with the Ninth Circuit's "benchmark" for fee awards in common-fund cases and is within the range of percentage fees awarded in securities class actions in this Circuit with comparable settlements.

### 1.   Lead Plaintiffs Have Authorized and Support the Fee Application

103.   Lead Plaintiffs are sophisticated institutional investors that closely supervised and monitored the prosecution and settlement of the Action.  *See* Robertson Decl. (Ex. 1), at ¶¶ 3-5; Evans Decl. (Ex. 2), at ¶¶ 3-5.  Each of the Lead Plaintiffs has evaluated the Fee Application and fully supports the fee requested.  *See* Robertson Decl. ¶ 7; Evans Decl. ¶ 7.  In addition, the fee requested is consistent with the retainer agreements entered into between Lead Plaintiffs and Lead Counsel at the outset of the litigation.  *Id*.  After the agreement to settle the Action was reached, Lead Plaintiffs again reviewed the proposed fee and believe it is fair and reasonable in light of the result obtained for the Class, the substantial risks in the litigation, and the work performed by counsel.  *Id*.

### 2.   The Time and Labor of Plaintiffs' Counsel

104.   The time and labor expended by Plaintiffs' Counsel in pursuing this Action and achieving the Settlement also support the reasonableness of the requested fee.  Attached as Exhibits 4A and 4B are my declaration in support of Lead Counsel's motion for attorneys' fees and litigation expenses on behalf of BLB&G and a similar declaration submitted by Jacob Walker of Block & Leviton LLP, counsel for additional named plaintiff Houston (the "Fee and Expense

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Declarations"). The Fee and Expense Declarations indicate the amount of time spent by each attorney and the professional support staff employed by each firm, and the lodestar calculations based on their current hourly rates, as well as a schedule of expenses incurred by the firm, delineated by category. These declarations were prepared from contemporaneous daily time records and expense records regularly maintained and prepared by the respective firms, which are available at the request of the Court.

105. As set forth in the Fee and Expense Declarations, Plaintiffs' Counsel have collectively expended 18,675.35 hours in the prosecution of this Action. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their current or 2021 hourly rates, is $9,077,838.75. Plaintiffs' Counsel's lodestar based on the hourly rates in effect at the time the work was performed ("historical rates") is $8,991,108.75. As noted above, the requested 25% fee, net of Litigation Expenses—if the Court awards the expenses and PSLRA awards as requested—comes to $24,213,013, plus interest.[3] Accordingly, the requested fee results in a multiplier of approximately 2.67 Plaintiffs' Counsel lodestar at current rates and 2.69 at historical rates. As discussed in further detail in the Fee Memorandum, the requested multiplier is well within the range of lodestar multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

106. As described above in greater detail, the work that Plaintiffs' Counsel performed in this Action included: (i) conducting an extensive investigation into the claims asserted, including through a detailed review of public documents, interviews

---

[3] The Settlement Amount ($98,000,000) less the Litigation Expenses sought, including the PSLRA awards sought, ($1,147,945.73) is $96,852,054.27. This amount is then multiplied by 0.25 to arrive at the requested fee.

DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF MOTION FOR SETTLEMENT AND ATTORNEY'S FEES CASE NO. 19-cv-10860-MCS (PLAx)

with former employees of Mattel, and consultation with experts; (ii) researching and drafting a detailed consolidated Complaint based on this investigation; (iii) researching and briefing Lead Plaintiffs' opposition to Defendants' motions of dismiss; (iv) conducting substantial fact discovery, which included preparing and serving requests for production of documents, interrogatories, and 31 subpoenas to non-parties, and litigation of a motion compel, and resulted in Lead Counsel obtaining and reviewing over 675,000 pages of documents produced by Defendants and non-parties; and (v) successfully moving for certification of the Class over the opposition of Defendants, which included defending the depositions of a representative of each of the two Lead Plaintiffs and submitting an opening and reply report from Lead Plaintiffs' expert on market efficiency and price-impact issues. Lead Counsel also consulted extensively throughout the litigation with a variety of experts and consultants, including experts in accounting, loss causation and damages; and engaged in extensive arm's-length settlement negotiations to achieve the Settlement, including through two formal mediation sessions with Judge Phillips and substantial follow-up negotiations.

107. Consistent with the Court's Standing Order, Plaintiffs' Counsel's Declarations include tables showing (a) a summary of the hours devoted to each task in the litigation, broken down by hours devoted by professionals who worked on that task, with their hourly rates; and (b) a summary of the hours each professional devoted to the case, broken down by different tasks they worked on. These exhibits are based on the contemporaneous time records regularly prepared and maintained by Plaintiffs' Counsel. To the extent that any specific time entries were unclear as to the specific task to which they related or appeared to cover multiple projects, my team and I allocated the time entries between the tasks based on our knowledge of and involvement in the litigation, review of surrounding time entries, and review of the record in this case. A summary of the work performed by Plaintiffs' Counsel in

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

33

each task or category of work follows:

a. **Task #1, Initial Analysis of Claims.** Plaintiff's Counsel's initial review, analysis, and research of potential claims and damages, and communications with clients about their potential involvement in the case.

b. **Task #2, Initial Complaint.** Lead Counsel's research and drafting of the initial complaint filed on behalf of New Orleans on January 31, 2020, including filing & service of this complaint, and drafting and publishing a related PSLRA notice, and Block & Leviton's preparation of an initial complaint filed on behalf of Houston on Dec. 24, 2019.

c. **Task #3, Lead Plaintiff Motion.** Preparing and filing the motion for DeKalb and New Orleans to be appointed Lead Plaintiffs, follow up on motion, and preparation for a potential hearing.

d. **Task #4, Factual Investigation.** Plaintiffs' Counsel and their investigators' factual investigation of claims for purposes of preparing the Amended Complaint, including researching potential witnesses, and interviewing former Mattel employees, including Brett Whitaker.

e. **Task #5, Amended Complaint.** Research, preparation, and filing of the Amended Complaint, filed on May 29, 2020.

f. **Task #6, Opposition to Motions to Dismiss**. Reviewing and analyzing Defendants' motions to dismiss; researching and drafting an omnibus opposition brief and a response to a related motion for judicial notice; and preparing for potential hearing on Defendant's motions to dismiss.

g. **Task #7, Discovery (General)**. Includes a wide variety of discovery related tasks not directly related to review and analysis of documents, preparation for depositions, and work with experts. It includes, for example: planning for discovery; preparing initial disclosures; Rule 26(f) conference; negotiating and preparing the Joint Status Report, Protective

34

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

Order, and Stipulated Agreement Regarding Discovery of Electronically Stored Information; drafting requests for production to documents, requests for admission, and interrogatories directed to Defendants; preparing subpoenas to third parties; discovery-related correspondence; meet and confers with Defendants and third-parties; preparing objections and response to Defendants' document requests; and responding to Defendants' Requests for Admissions and interrogatories directed at Lead Plaintiffs, among other things.

h. **Task #8, Motion to Compel.** Researching and preparing Lead Plaintiffs' motion to compel PwC to produce additional documents and related briefing, as well as work on a potential similar motion related to Mattel documents.

i. **Task #9, Document Review & Analysis**. Review and analysis of documents produced by Defendants and third parties, including general reviews for relevance and targeted reviews on certain subjects; team meetings to discuss most relevant documents; and review of Lead Plaintiffs' documents for production to Defendants.

j. **Task #10, Depositions**. Time spent preparing a deposition plan, noticing depositions, preparing for offensive depositions, including reviewing relevant documents to generate "deposition kits" of the most relevant documents for each witness; and preparing for and defending the depositions of representatives of DeKalb and New Orleans.

k. **Task #11, Experts**. Time spent working with Lead Plaintiffs' experts in connection with the analysis of claims and review and analysis of discovery; assisting with preparation of expert reports; and reviewing past opinions of Defendants' expert.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

l.      **Task #12, Class Certification Motion**.    Researching and drafting the initial motion for class certification, and reply papers in support of the motion; opposing Defendants' motion to file sur-reply; and responding to the Mattel Defendants' petition for review of the class certification order under Rule 23(f).

m.      **Task #13, Mediation and Settlement Negotiations**.    Preparing for the initial mediation with Judge Phillips on June 24, 2021, including researching and drafting opening and reply mediation statements; searches for and analysis of documents to include in mediation filings; drafting settlement authorization memoranda to clients; participating in mediation; preparing and participating in second mediation with Judge Phillips, held on October 25, 2021; and other settlement negotiations and preparations throughout the litigation.

n.      **Task #14, Settlement Agreement**.    Negotiating and drafting the Term Sheet; negotiating and drafting the Stipulation and Agreement of Settlement, and all of its exhibits, including proposed the Preliminary Approval Order, Judgment, Notice, Claim Form, and Summary Notice; and drafting the Supplemental Agreement.

o.      **Task #15, Settlement Approval & Administration**. Researching, drafting, and filing the motion for preliminary approval of Settlement and motion for final approval of Settlement, including drafting of related declarations; administration of the Settlement, including the selection of a Claims Administrator; overseeing the Claims Administrator's finalization and dissemination of settlement notice; and communications with class members, and administering the Escrow Account and the receipt of settlement funds.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

p.    **Task #16, Case Maintenance & Administration**.   Various administrative tasks necessary for maintenance of the Action, such as preparing and filing *pro hac vice* motions and notice of appearances, updating calendars and schedules; litigation support tasks related to the database used to store and review documents produced by Defendant and third parties; and ongoing review and circulation of news, docket filings, and SEC filings regarding Mattel.

108.   Throughout this case, I maintained control of and monitored the work performed by other lawyers at BLB&G.  While I personally devoted substantial time to this case, and personally reviewed and edited all pleadings, court filings, and other correspondence prepared on behalf of Lead Plaintiffs, other experienced attorneys at my firm were involved in settlement negotiations and other matters.  More junior attorneys and paralegals also worked on matters appropriate to their skill and experience level.  Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

### 3.    The Skill and Experience of Lead Counsel

109.   The skill and expertise of Lead Counsel also support the requested fee. As demonstrated by the firm resume attached as Exhibit 4A-5 hereto, Lead Counsel is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases. BLB&G is consistently ranked among the top plaintiffs' firms in the country. Further, BLB&G has taken complex cases such as this to trial, and it is among the few firms with experience doing so on behalf of plaintiffs in securities class actions. I believe Lead Counsel's skill and its willingness and ability to prosecute the claims vigorously through trial, if necessary, added valuable leverage in the settlement negotiations.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

### 4.    Standing and Caliber of Defendants' Counsel

110.   The quality of the work performed by Lead Counsel in attaining the Settlement may also be evaluated in light of the quality of its opposition.  Defendants were represented by a number of well known, highly experienced, and highly skilled law firms who zealously represented their clients.  The Mattel Defendants were represented by Munger, Tolles & Olson LLP; PwC was represented by Wilmer Cutler Pickering Hale and Dorr LLP; and Defendant Abrahams was represented by Paul Hastings LLP.  In the face of this skillful and well-financed opposition, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants and their counsel to settle the case on terms that will significantly benefit the Class.

### 5.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases

111.   The prosecution of these claims was undertaken entirely on a contingent-fee basis, and in the face of the considerable risks.  The risks assumed by Plaintiffs' Counsel, and the time and expenses incurred without any payment, were extensive in this case.

112.   From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, lengthy, and hard-fought litigation with no guarantee of ever being compensated for the substantial investment of time and the outlay of money that vigorous prosecution of the case would require.  In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources (in terms of both attorney and support staff time) were dedicated to the litigation.  Lead Counsel committed to pay all necessary expenses to pursue the case vigorously on a fully contingent basis, including expenses associated with vendors, consultants, and experts that such a case demands.  Because complex securities litigation

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

generally proceeds for several years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Plaintiffs' Counsel here, who have not yet received any compensation, have devoted more than 18,000 hours and incurred more than $1.1 million in expenses in prosecuting this Action for the benefit of the Class.

113. Plaintiffs' Counsel also bore the risk that no recovery would be achieved. From the outset, this case presented a number of significant risks and uncertainties, including substantial challenges in proving scienter and establishing loss causation and damages. Lead Counsel's persistent efforts in the face of the significant risks and uncertainties in this Action have resulted in a significant and certain recovery for the Class. In light of this recovery and Lead Counsel's investment of time and resources over the course of the litigation, Lead Counsel believes the requested attorneys' fee is fair and reasonable and should be approved.

### 6. The Reaction of the Class to the Fee Application

114. As noted above, as of March 25, 2022, over 193,000 Notice Packets had been sent to potential Class Members advising them that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund. *See* Segura Decl. ¶ 9 and Ex. A (Notice ¶¶ 5, 60). In addition, the Court-approved Summary Notice has been published in *The Wall Street Journal* and transmitted over the *PR Newswire*. *Id*. ¶ 10. To date, no objections to the request for attorneys' fees have been received.

### B. The Litigation Expense Application

115. Lead Counsel also seeks payment from the Settlement Fund of $1,139,330.73 for litigation expenses reasonably incurred by Plaintiffs' Counsel in connection with the prosecution of the Action (the "Expense Application").

116. From the outset of the Action, Plaintiffs' Counsel have been aware that they might not recover any of their expenses (if the litigation was unsuccessful), and,

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

further, if there were to be reimbursement of expenses, it would not occur until the Action was successfully resolved, often a period lasting several years. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement of expenses would not necessarily compensate them for the lost use of funds incurred to prosecute the Action. Consequently, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

117. As set forth in the Fee and Expense Declarations included in Exhibit 4, Plaintiffs' Counsel have incurred a total of $1,139,330.73 in unreimbursed litigation expenses in connection with the prosecution of the Action. The expenses are summarized in Exhibit 5, which identifies each category of expense, *e.g.*, expert fees, mediation fees, on-line legal and factual research, document management costs, telephone, and photocopying expenses, and the amount incurred for each category. These expenses are reflected on the books and records maintained by Plaintiffs' Counsel, which are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. These expenses are recorded separately by Plaintiffs' Counsel and are not duplicated by the firms' hourly rates.

118. Of the total amount of expenses, $1,000,590.75, or approximately 88%, was expended for the retention of experts. As discussed above, Lead Counsel consulted extensively with experts in accounting and loss causation and damages, during its investigation and the preparation of the Complaint, during the course of discovery, and in the settlement negotiations. These experts' advice was instrumental in Lead Counsel's appraisal of the claims and in helping achieve the favorable result.

119. Lead Plaintiffs' share of the mediation costs paid to Phillips ADR for the services of Judge Phillips were $53,171.50 or 4.7% of the total expenses.

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

120. The combined costs of on-line legal and factual research were $54,976.74, or approximately 4.8% of the total expenses.

121. Another significant cost was the expense of document management and litigation support, which included the costs of creating and maintaining the database containing the documents produced in the Action. The document management costs in total came to $7,825.84, or approximately 0.7% of the total expenses.

122. The other expenses for which Plaintiffs' Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, copying costs (in-house and through outside vendors), telephone charges, and postage and delivery expenses.

123. In addition, Lead Plaintiffs seek reimbursement of the reasonable costs and expenses that they incurred directly in connection with their representation of the Class. Such payments are expressly authorized by the PSLRA, as more fully discussed in the Fee Memorandum at 20-21. Lead Plaintiff DeKalb seeks reimbursement of $5,515.00 for the 53.25 hours expended in connection with the Action by its Chairman, Vice Chairman and other employees. *See* Robertson Decl. ¶¶ 9-10. Lead Plaintiff New Orleans seeks reimbursement of $3,100.00 for 62 hours expended in connection with the Action by its Director. *See* Evans Decl. ¶¶ 9-10. A summary of hours devoted by Lead Plaintiffs' employees, their hourly rates, and the award sought is attached as Exhibit 6, and will be submitted to the Court in Excel format, as required by the Court's Initial Standing Order for Civil Cases ¶ 10(e).

124. The Notice informed potential Class Members that Lead Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $1,500,000, which might include an application for the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class. Notice ¶¶ 5, 60. The total amount requested, $1,147,945.73, which includes

41

DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF MOTION FOR SETTLEMENT AND ATTORNEY'S FEES CASE NO. 19-cv-10860-MCS (PLAx)

$1,139,330.73 for Plaintiffs' Counsel's litigation expenses and $8,615.00 for the costs and expenses incurred by Lead Plaintiffs, is well below the $1,500,000 that Class Members were advised could be sought. To date, no objection has been raised as to the maximum amount of expenses set forth in the Notice.

125. The expenses incurred by Plaintiffs' Counsel and Lead Plaintiffs were reasonable and necessary to represent the Class and achieve the Settlement. Accordingly, Lead Counsel respectfully submits that the application for payment of Litigation Expenses from the Settlement Fund should be approved.

126. Attached hereto are true and correct copies of the following documents cited in the Fee Memorandum:

Exhibit 7:    *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-cv-02544-JFW, slip op. (C.D. Cal. Feb. 8, 2010), ECF No. 316

Exhibit 8:    *In re Brocade Sec. Litig.*, No. 05-cv-2042-CRB, slip op. (N.D. Cal. Jan. 26, 2009), ECF No. 496-1

Exhibit 9:    *Knurr v. Orbital ATK, Inc.*, No. 16-cv-01031-TSE, slip op. (E.D. Va. June 7, 2019), ECF No. 462

Exhibit 10:   *N.J. Carpenters Health Fund v. DLJ Mortg. Cap.*, Inc., No. 08-cv-5653-PAC, slip op. (S.D.N.Y. May 10, 2016), ECF No. 277

Exhibit 11:   *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-cv-11117-TPG, slip op. at 2 (S.D.N.Y. Aug. 19, 2011), ECF No. 603

Exhibit 12:   *In re 3Com Corp. Sec. Litig.*, No. C-97-21083-EAI, slip op. (N.D. Cal. Mar. 9, 2001), ECF No. 180

## VII.   CONCLUSION

127. For all the reasons set forth above, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate. Lead Counsel further submits that the

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)

requested fee should be approved as fair and reasonable, and the request for payment of total litigation expenses in the amount of $1,147,945.73, which includes Lead Plaintiffs' costs and expenses, should also be approved.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed March 28, 2022.

                              _/s John Rizio-Hamilton_____
                              John Rizio-Hamilton

DECLARATION OF JOHN RIZIO-HAMILTON
IN SUPPORT OF MOTION FOR SETTLEMENT
AND ATTORNEY'S FEES
CASE NO. 19-cv-10860-MCS (PLAx)