

FILED
CLERK, U.S. DISTRICT COURT
6/10/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| In re: Mattel, Inc. Securities Litigation | : Case No. 2:19-cv-10860-MCS-PLA |
| | : **James J. Hayes Motion for** |
| | : **Reconsideration of Order** |
| | : **Approving Plan of Allocation** (ECF 147) |

---

## Motion for Reconsideration of Approval of Plan of Allocation

Under FRCP Rule 59(e), James J. Hayes, the objector, moves to reconsider the Plan of Allocation. Mr. Hayes did not object to the Settlement per se. Still, he would object if Class Members purchasing Mattel securities near the end of the Class Period do not recover substantially all the Recognized Loss determined by Lead Plaintiffs' damage expert. Still, a tabulation of the claims filed is needed to evaluate the Settlement's and Allocation Plan's fairness, reasonableness, and adequacy.

The judicial mistake occurred because the Court overlooked that Mr. Hayes did not object to the proposed Settlement but the Allocation Plan. After all, Class Counsel chose not to include his written objection with the documents they provided the Court supporting settlement approval. Instead, counsel chose documents they considered derogatory of Mr. Hayes, which he did not have the opportunity to explain. As the lead plaintiff in *Hayes v. Harmony Gold*, Mr. Hayes included options traders in the certified class. In addition, Hayes participated with his counsel in a full-day mediation session with the Hon. Layn R. Phillips. The

1

settlement discussions continued with the class counsel, who accepted the mediator's settlement proposal without the approval of Hayes, the certified class representative. Hayes later objected to the settlement and attorney fee award, which he placed at 10% of the settlement fund due to attorney misconduct. Also, the mediator's proposal allocated settlement funds to non-class members, which resulted in a Rule 60 motion after discovery by Mr. Hayes, which was the underlying issue before the Second Circuit. Regardless, the Court erred in overruling Hayes's objection and not considering alternative allocation plans.

### A. Lead Plaintiffs and Class Members Retaining Mattel Stock Do Not Have a Recognized Loss

The Plan of Allocation provides Class Members who did not sell their Mattel stock within 90 days of the Class Period a claim based on an assumed sale at $10.85 per share. This concession provided Lead Plaintiff DeKalb a $2.1 million Recognized Loss, the basis for their lead plaintiff selection. Class Counsel then uses its position to favor the Lead Plaintiffs who purchased shares in 2017 and 2018 over those purchasing shares and options near the end of the Class Period. The IRS does not allow paper losses to offset realized gains for tax purposes, nor should the courts consider paper losses in selecting lead plaintiffs in securities actions. By late January 2020, Dekalb's $2.1 million paper loss had turned into a small profit and a $6.3 million profit if held today, demonstrating the corrupt practice of securities class action litigation that provides compensation for retained shares.

### B. Conflicted Class Representatives' Plan of Allocation Favors Low and No Merit Claims over Meritorious Claims

Class Counsel's Reply Memorandum (ECF No. 152) asserts no merit in an allocation that provides the "greatest level of recovery for Class Members [and

options traders] who purchased immediately before the corrective disclosure on August 8, 2019". However, stock and options purchasers proximate to the corrective disclosure can prove loss causation, an essential element of securities fraud that is not true for purchasers of Mattel stock in 2017 and 2018. It is particularly unfair for the Lead Plaintiff and other Class Members profiting from sales in 2019 to participate in the Net Settlement Fund when Class Members near the end of the Class Period on August 8, 2019, did not have a profit opportunity.

Class Counsel asserts the Plan of Allocation is fair and reasonable 'because it tracks the allegations in the Complaint, the scope of the certified Class, and Lead Plaintiffs' damages expert's analysis of loss causation and damages." It does not. On **August 8, 2019**, Mattel announced an investigation of unspecified matters of an anonymous whistleblower and terminated its offering of 6.00% Senior Notes. On August 9, 2019, Mattel's stock price dropped by $2.12 per share. After adjusting price changes due to market or industry forces, the Lead Plaintiffs' damages expert calculates the artificial inflation of $1.95 per share. Class Representatives allege falsely that the Defendants caused the artificial inflation beginning on August 2, 2017. Mattel's stock price, however, declined steadily from early **August 2016 to early December 2018.** This fact belies the Class Representatives' unsupported allegations that Mattel made material misstatements and omissions in their financial reports beginning August 2, 2017, that artificially inflated Mattel's stock price during the Class Period. Instead, Mattel's deflating stock prices in 2017 and 2018 reflect Mattel's declining business as MATTEL REPORTED NEGATIVE EARNINGS SURPRISES between Q4 2016 and Q3 2018 relative to analysts' estimates of between 10 and 89 percent. In Q3 2017, for example, Mattel reported

3

earnings of $0.09 per share, 84% less than analysts' estimates. In Q4 2018, Mattel lost $0.72 per share! The market efficiently priced Mattel stock in 2017 and 2018. The Lead Plaintiffs' only Class Period sale on February 12, 2019, realized about $126,000 profit on a first-in, first-out basis, evidencing the market's efficiency.

Finally, the Lead Plaintiffs' Plan of Allocation provides additional enhancement of low merit claims that are not available to high merit claims based on the 90-day Look-Back Table. Thus the Lead Plaintiffs' plan calculates average closing prices starting with the $11.31 close on August 9, 2019. The average closing declined through the period reaching a low of $10.17 per share on September 6, 2019, adding $1.24 per share to the Recognized Loss to Class Members selling Mattel stock on September 6. However, the Lead Plaintiff calculated artificial inflation at $1.95 per share based on the $11.31 closing price on August 9, 2019. This closing price provides the best measure of each Class Member's Recognized Loss consistent with the Lead Plaintiffs' artificial inflation theory.

### C. Summary and Conclusion

The conflicted Class Representatives spin false narratives that Defendants made false statements and omitted material facts that artificially inflated Mattel's stock price beginning August 2, 2017, and continuing through August 8, 2019. However, there are no evidence Defendants' allegedly false statements and omitted material facts inflated Mattel's stock price during the Class Period. Instead, the efficient market correctly priced Mattel stock relative to the market, aided by well-informed analysts' timely reports.

Alternatively, Mattel made false and misleading statements on the termination of a 6.00% Note offering on August 8, 2019, new allegations, but

applied the same $1.95 per share loss calculation based on the Lead Plaintiffs' artificial inflation theory. However, the Allocation Plan designed by the conflicted Lead Plaintiffs is grossly unfair and possibly inadequate to Class Members purchasing stock proximate to August 8. However, it is impossible to evaluate the Settlement and the associated Allocation Plan's fairness, reasonableness, and adequacy without analyzing the claims filed. Consequently, the Court should first request the Claims Administrator provide a daily summary for each day of the Class Period showing total and average per-share allocation amounts separately for claimants selling and retaining their stock. In addition, for Class Members selling their stock, separate calculations based on a selling price of $11.31 substituted for prices provided in the 90-day look-back period. Second, the Claim's Administrator should estimate the value loss of the nearest expiring call options and increased value of companion put options based on the "open interest" on August 8, 2019, and the price change recorded on August 9, 2019.

    A plan of allocation that substantially provides all the $1.95 per share loss calculated by the Lead Plaintiffs' damage expert to Class Members proximate to August 8, 2019, will improve the efficiency of securities class litigation and the efficiency of the United States securities markets to the benefit of all Americans.
Dated: June 9, 2022

Respectfully submitted,

/s/ James J. Hayes<br>James J. Hayes Objector Pro Se