**F I L E D**
CLERK, U.S. DISTRICT COURT

12/15/22

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ pk _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

_____

In re: *Mattel Inc Securities Litigation*    Case No. 2:19-cv-10860-MCS

_____

### JAMES J HAYES PRO-SE MOTION TO APPROVE THE OBJECTOR'S ALLOCATION PLAN

James J. Hayes, the Objector to the $98 million Settlement, moves to approve the Objector's Allocation Plan included herein. The court's approval resolves the Objector's appeal to the Ninth Circuit on the allocation and distribution of the Net Settlement Fund, which consists of the $86 million Mattel Fund and the $12 million PwC Fund.

The court certified the class of purchasers of Mattel stock from **August 2, 2017**, through **August 8, 2019,** and who were damaged thereby. However, the Lead Plaintiffs' Allocation Plan relies on the conflicted representation of the Class Counsel and the Lead Plaintiffs for establishing the beginning date of the Class Period, the PwC Subclass, and allocations for retained stock. In addition, conflicted Class Counsel overlooked a splendid fraud-on-the-market action proximate to Mattel's disclosure of a whistleblower investigation that caused the significant price break on August 9, 2019. Consequently, the Objector's Plan includes changing the class/subclass period's start to **June 12, 2019**.

1

The Lead Plaintiffs' damages expert calculated that $1.95 of the per-share loss on August 9, 2019, was proximately caused by Mattel's allegedly false and misleading statements and omissions on August 8, 2019. The principal allegations include the false disclosure on the investigation of a whistleblower letter, and the surprise termination of a 6% Senior Notes offering after Mattel's stock closed at $13.43. Consequently, on August 9, Mattel's stock opened at $11.91, or $1.52 below its August 8 close.

The principal issue is whether Mattel's August 8th disclosures were causative of its August 9, 2019 decline or corrective of earlier false statements and omissions and therefore removed "artificial inflation" as alleged by the Lead Plaintiffs.

However, on October 29, 2019, Mattel announced the conclusions of its whistleblower investigation and that it would be restating its Q3 2017 financials. As a result, on **October 30, 2019**, Mattel's stock price increased by **$1.46** to close at $12.02, trading more than 25 million shares. The significant increase in stock price and trading after the closure of the investigation substantially offset the decrease following the August 8 whistleblower disclosures, showing causation and not correction of "artificial inflation" as alleged by the Lead Plaintiffs.

We also know that Mattel's stock increased by **$1.37,** with over 66 million shares traded on **October 27, 2017**, after Mattel released Q3 2017 earnings. However, this only demonstrates that conflicted Class Counsel knowingly misdefined the Class Period's start on **August 2, 2017**. Regardless, Class Members purchasing Mattel proximate to **August 8, 2019**, have a high-merit fraud-on-the-

market action if not for the conflicted Lead Plaintiffs, whose last purchase was on December 18, 2018.

### I. The Objector's Allocation Plan

**First,** the Claims Administrator changes the start of the Class Period to June 12, 2019, and recalculates each Authorized Claimant's Recognized Loss as the least of $1.95 per share or the purchase price minus **$11.31**, the closing price on August 9, 2019.

**Second**, the Administrator excludes the Recognized Loss for stock retained on November 6, 2019.

**Third**, the Administrator combines the Mattel and the PwC Net Settlement Funds and subtracts the daily recalculated Recognized Claims in order of the sale date beginning with August 9, 2019, until the Fund shows a negative balance, which is the final distribution day. Then the remaining funds are distributed pro rata to the Claimants on the last distribution day.

**Fourth,** the Administrator provides the court with a report showing the number of shares and those for the $1.95 per share for each distribution date, the total amount excluded for retained stock, and the Recognized Loss Amount exceeding $1.50 per share unpaid after the last distribution date.

**Fifth**, seven months after the initial distribution, the Administrator provides the court with the amount remaining in the Fund and a plan to distribute the remainder to claimants on the last distribution date and succeeding days.

## II. Discussion

The court's approval of the Objector's Allocation Plan resolves the appeal on the allocation issues, which expedites the distribution of the Net Settlement Fund and begins the transformation of corrupted securities class litigation.

The Objector's Plan denies Recognized Loss for the no-merit retained stock claims, increasing the recovery for Class Members with high-merit claims. For example, conflicted Class Counsel filed $1.25 million in Recognized Claims for Lead Plaintiff DeKalb's stock retained on November 6, 2019. The Lead Plaintiffs' Allocation Plan multiplies this amount significantly for the class. Plaintiff lawyers routinely argue a client's retained stock losses to win court-approved Private Securities Litigation Reform Act (PSLRA) counsel appointments, but when the cases settle, they must give up these false claims; otherwise, they defraud the class members who sold stock for a loss by reducing their settlement recoveries.

The conflicted Class Counsel also defines the beginning of the Class Period to include all of the Lead Plaintiffs' purchases rather than those made after credible allegations of securities fraud associated with the whistleblower letter. Thus on October 29, 2019, Mattel admitted "material misstatements" in its Q3 2017 financial statements, released on October 26, 2017, after the market closed. However, on **May 29, 2020**, the conflicted Lead Plaintiffs' Counsel filed the Amended Class Action Complaint that inexplicably included August 2, 2017, as the start date for the Class Period. Of concern are the Lead Plaintiffs' purchases of 583,736 shares, representing over 61% of their holdings before **October 27,**

4

**2017,** and about 16% of the class's purchases. However, the Houston Municipal Employees Pension System (Houston) was the first to file on **December 24, 2019**, with a class period starting on October 26, 2017. Then on **May 29, 2020**, Houston joined with the Lead Plaintiffs in their Amended Complaint. Finally, the court granted Class Certification on October 20, 2021, completing the conflicted Class Counsel's fraud to change the beginning date of the Class from October 26, 2017, to August 2, 2017, to benefit Class Counsel and the Lead Plaintiffs to the detriment of the class beginning of October 27, 2019, as defined by first filer Houston.

There is a similar concern with the conflicted Class Counsel's creation of the PwC Subclass beginning **on February 27, 2018**. The only significant difference in the consolidated actions is the addition of PwC as a Defendant and their $12 million contribution to the PwC Settlement Fund. The Lead Plaintiffs alleged the same **$1.95 per share artificial inflation** in the PwC SubClass. But for the conflict, SubClass members would not collect twice on the same low-merit scheme fraud claims. Instead, the Objector's Plan combines Mattel and PwC Net Settlement Funds. It allocates each day's adjusted Recognized Loss entirely based on the date of sale until the Net Settlement Fund is insufficient to pay any more claims, eliminating a second distribution to the PwC SubClass.

The most transforming feature of the Objector's Plan is creating a fraud-on-the-market class/subclass with a short class period beginning **on June 12, 2019**. The Objector believes this class includes many traders who purchased stock after the announcement of a quarterly earnings release date, expecting that Mattel did not

have compromising earnings information; otherwise, they should not have announced an earnings release date. For example, Mattel announced the release of its Q2 2019 financial report and a conference call with securities analysts after the market close **on July 25, 2019**. Then after active trading on July 26, Mattel stock closed at $14.17, an increase of $1.66 with 14.36 million shares traded, nearly equal to that in the three days before the earnings release. This trading pattern shows why Mattel's announcement of the whistleblower letter on August 8, 2019, is causative of Mattel's stock price drop on August 9, 2019, regardless of the Lead Plaintiffs' false allegations that the price drop corrected artificial inflation in stock price created on August 2, 2017. Consequently, the Objector's Plan starts the class period **on June 12, 2019,** because even though the low-value claims added decrease plan efficiency in compensating the high-value $1.95 claims, they are high-merit. Thus, the Objector's Plan denies a Recognized Loss to low-merit scheme fraud claims advanced by conflicted Class Counsel and the Lead Plaintiffs because the Net Settlement Fund is not adequate to pay these high-value low-merit claims without significantly reducing the high-merit claims proximate to the end of the redefined class period that is so vital to improving stock and market efficiency.

The Objector's Plan favors the high-merit claims of traders whose purchases proximate to the market breaking news is vital as such trading activity is the vanguard of establishing stock and market pricing efficiency. *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) supports the high merit of claims for purchases proximate to a misleading causative disclosure. Regardless, the Objector's Plan provides every

class member an equal opportunity to recover up to the $1.95 per share in damages from a Net Settlement Fund greatly enlarged by not paying claims for undamaged shares, the inflated Recognized Loss provided by the 90-Day Look-Back Period, and the low-merit scheme fraud claims put forward by conflicted Class Counsel and the Lead Plaintiffs. In addition, the Objector's Plan substitutes the $11.31 closing price **on August 9, 2019**, for the lower average sale prices in the 90-Day Look-Back, which reduces Recognized Loss. Moreover, high efficiency in fully compensating high-merit claims supports a transformation to short-class-period market fraud supplanting the long-class-period scheme fraud, further improving stock and market pricing efficiency and increasing national wealth.

### III. Summary and Conclusion

The Objector's Plan disqualifies about **$27.8 million in no-merit claims** from the Net Settlement Fund by changing the start of the Class/SubClass Period, eliminating Recognized Loss for retained stock and the PwC Subclass. About $1.42 million of the no-merit/fraudulent claims belong to the conflicted Lead Plaintiffs, representing about 85% of their total claims. The Objector's Plan reallocates the money for no merit claims to maximize the recovery to a short fraud-on-the-market class/subclass beginning **on June 12, 2019**. Most significantly, the Objector's Plan eliminates and reallocates about **$70 million in low-merit scheme fraud claims** because these claims would not exist but for the conflicted representation of the Class Counsel and Lead Plaintiffs. The Objector estimates his

plan is about 61% efficient in paying the $1.95 per share claims compared to zero

efficiencies in the Lead Plaintiffs Plan.

After two months of back-in-forth changes in the start of the class/subclass

periods from August 2, 2017, October 27, 2017, and July 25, 2019, the Objector

concludes with a start date of **June 12, 2019.** The deciding factor in changing the

class/subclass period again is that Mattel's Q2 2019 earnings, released after the

market close on July 25, 2019, beat the fourteen analysts' consensus estimates by

$0.15 per share. Consequently, in July 26 trading, the stock price increased by

$1.66 per share on trading 14.36 million shares, showing the $1.95 loss caused by

Mattel's disclosure of the whistleblower's letter on August 8, 2019, is an actual loss

for these class/subclass members **and not the removal of artificial inflation created

on August 2, 2017,** as alleged by conflicted Class Counsel. Finally, the Objector's

Plan's lottery distribution based on the sale date provides every class/subclass

member the opportunity to recover up to **$1.95 per share** of Recognized Loss based

on an **$11.31** sale price, a historic achievement in securities class litigation that

measures success in nickels and dimes rather than dollars.

Finally, the Objector's Plan provides for a report by the Claims Administrator

showing plan efficiency in recovering the $1.95 per share damages determined by

the Lead Plaintiffs' expert that will aid in transforming securities class litigation

and improve market efficiency and national wealth. For example, based on Mattel's

trading data, the Objector estimates his plan is about 61% efficient in paying the

$1.95 per share claims. In future actions, however, the Objector believes negotiated

settlements by unconflicted class counsel, and lead plaintiffs could improve efficiency to 90% or higher in short class period actions. The needed reform begins with the lead plaintiff selection provisions of the PSLRA, which require the first plaintiff to file an action publish notice to enable others to jump in and compete for lead plaintiff based on a more significant financial interest. However, the determinative factor should be the proximity of the filer to the end of the proposed class period, regardless of economic interest. For example, if the first filer's purchase is proximate to the end of the proposed class period, the court should appoint that filer as the lead plaintiff. However, suppose the first filer submits a lengthy class period. In that case, the subsequent filer purchasing proximate to the end of the proposed class period should receive a lead plaintiff appointment for a fraud-on-the-market action, with the scheme fraud action proceeding separately.

For each reason above, the Objector respectfully requests approval of his allocation and distribution plan. In addition, the Mattel Defendants should share their views in a reply as they owe that duty to their stockholders; the conflicted Class Counsel and Lead Plaintiffs likewise should support the Objector's Plan lest their fraud against the class result in criminal violations, and finally plaintiff Houston's counsel should also file a reply favoring the Objector's Plan to avoid civil fraud against its October 26, 2017 class.

Date 12/14/2022

Respectfully submitted,

/s/ James J. Hayes

_____

James J. Hayes Objector Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
jjhayes@toast.net
(703) 941-4694