Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and*
*the Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| *In re Mattel, Inc. Securities Litigation* | Case No. 2:19-cv-10860-MCS (PLAx) |
| | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF DISTRIBUTION PLAN; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Judge: Hon. Mark C. Scarsi |
| | Courtroom: 7C, 7th Floor |
| | Date: November 20, 2023 |
| | Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 20, 2023 at 9:00 a.m., in Courtroom 7C of the First Street Courthouse, 350 W. First Street, Los Angeles, California, 90012, the Honorable Marc C. Scarsi presiding, the Court-appointed Lead Plaintiffs and Class Representatives DeKalb County Employees Retirement System and New Orleans Employees' Retirement System will and hereby do move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of the accompanying [Proposed] Order Approving Distribution Plan ("Class Distribution Order").

This motion is made pursuant to the Court's May 18, 2022 Order (1) Granting Motion for Final Approval and Plan of Allocation; (2) Granting in Part and Denying in Part Motion for Attorneys' Fees and Litigation Expenses; and Granting in Part and Denying in Part Motion for Leave to File Supplemental Authority (ECF No. 160) ("Final Approval Order") and is based upon: (1) this Notice of Motion; (2) the Declaration of Luiggy Segura in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan ("Segura Declaration") submitted on behalf of the Court-approved Claims Administrator JND Legal Administration ("JND"); (3) the supporting Memorandum of Points and Authorities set forth below; and (4) all other papers and proceedings herein.

Among other things, the Class Distribution Order would: (i) approve the administrative determinations of JND accepting and rejecting Claims submitted in connection with the Settlement reached in the above-captioned Action; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for tax liability and claims administration-related contingencies that may arise; (iii) direct that distribution checks state that the check must be cashed within ninety (90) days after the issue date; (iv) direct that

Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the distribution; (vi) approve JND's fees and expenses incurred and estimated to be incurred in the administration of the Settlement; (vii) release claims related to the administration process; and (viii) authorize the destruction of Claim Forms and supporting documents at an appropriate time.

This motion seeks, among other things, Court approval of the Claims Administrator's determinations accepting and rejecting Claims. The claims administration process afforded Claimants the opportunity to dispute the rejection of their Claims and the right to ask for judicial review of the Claims Administrator's determinations. One claimant has disputed the rejection of his Claim (the "Disputed Claim") and has requested review by the Court.

Lead Counsel has reviewed the Disputed Claim and agrees with the Claims Administrator's determination to reject the Disputed Claim. Segura Declaration explains the basis for the rejection of this Disputed Claim. We are today sending the Claimant with a Disputed Claim a copy of this Motion, the Segura Declaration, the supporting documentation attached to Exhibit D of the Segura Declaration that relates to the Claimant's Disputed Claim, and the proposed Distribution Order. We are informing the Claimant in a cover letter that the Claimant does not need to take any further action to have the Court consider the Claimant's dispute. If, however, the Claimant wishes to make an additional submission the Claimant should direct it to Your Honor's attention with a copy to Lead Counsel and postmarked no later than October 27, 2023. If any such submission is made, Lead Plaintiffs would submit a response by November 3, 2023.

Pursuant to the terms of the Stipulation, Defendants have no interest in the relief sought by the motion.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:19-cv-10860-MCS (PLAx))

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................iv

I.     BACKGROUND ..................................................................................2

II.    CLAIMS ADMINISTRATION ..........................................................3

    A.    Disputed Claim.........................................................................4

    B.    Late Claims and Final Cut-Off Date .......................................5

III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ..................................................................................6

IV.  DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND...............................................................................6

    A.    Initial Distribution of the Net Settlement Fund ....................6

    B.    Additional Distribution(s) of the Net Settlement Fund........8

V.    RELEASE OF CLAIMS ...................................................................10

VI.  CONCLUSION..................................................................................11

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:19-cv-10860-MCS (PLAx))

# TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*In re Capstone Turbine Corp. Sec. Litig.*,
       2020 WL 7889062 (C.D. Cal. Aug. 26, 2020) .......................................10, 11

*In re Illumina, Inc. Sec. Litig.,*
       2021 WL 1017295 (S.D. Cal. Mar. 17, 2021)...............................................10

*In re OCZ Tech. Grp., Inc. Sec. Litig.*,
       2016 WL 7974652 (N.D. Cal. Mar. 11, 2016) ..............................................11

*Hefler v. Wells Fargo & Co.*,
       2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) *aff'd sub nom.*
       *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020)........................................10

Lead Plaintiffs, DeKalb County Employees Retirement System and New Orleans Employees' Retirement System ("Lead Plaintiffs"), respectfully move for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Luiggy Segura ("Segura Decl."), submitted on behalf of the Court-approved Claims Administrator, JND.[1]

The Class Distribution Order will, upon being entered by the Court, permit JND to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve JND's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for tax liability and claims administration-related contingencies that may arise; and (iii) approve JND's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

Pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 17, 21, 23; *see also* Notice ¶ 52. Nevertheless, we provided Defendants' Counsel a copy of these motion papers, and they informed us that

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Segura Declaration, the Stipulation and Agreement of Settlement dated as of November 23, 2021 (ECF No. 143-1) ("Stipulation"), or the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (ECF No. 149-3, Ex. A) ("Notice").

Defendants take no position on this motion.

## I.      BACKGROUND

On May 18, 2022, the Court entered a Final Approval Order (ECF No. 160) approving the $98 million all-cash Settlement of this Action and approving the Plan of Allocation for the Net Settlement Fund, as well as final Judgment Approving Class Action Settlement (ECF No. 161). Following the Ninth Circuit's dismissal of objector James Hayes's appeal from the approval of the Settlement and the expiration of the time for Mr. Hayes to seek further appellate review, the "Effective Date" of the Settlement occurred on June 30, 2023.[2] The Claims Administrator, JND, has completed processing Claims submitted in connection with the Settlement. Therefore, in accordance with paragraph 26 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the Distribution Plan so that the Net Settlement Fund can be distributed to Authorized Claimants.

In accordance with the Court's Order re: Motion for Preliminarily Approval of Class Action Settlement (ECF No. 146) ("Preliminary Approval Order"), JND mailed the Notice and Claim Form (together, the "Notice Packet") to potential Class Members, brokers, and other nominees. Segura Decl. ¶ 2. JND disseminated 216,460 Notice Packets to potential Class Members, brokers, and nominees. *Id.* ¶ 4. The Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly

---

[2] *See* Stipulation ¶ 31(e) (the "Effective Date" occurs when, among other things, "the Court has . . . and entered the Judgment and the Judgment has become Final"); Stipulation ¶ 1(u) ("'Final,' with respect to the Judgment . . . means . . . if there is an appeal from the judgment or order, the date the judgment or order is finally affirmed on an appeal, [or] the expiration of the time to file a petition for a writ of certiorari or other form of review"). Mr. Hayes's appeal was dismissed by the Ninth Circuit on March 31, 2023 and his time to file a petition for certiorari from the dismissal of the appeal expired on June 29, 2023.

executed Claim Form postmarked no later than June 8, 2022. *Id*. ¶ 6.

## II.    CLAIMS ADMINISTRATION

As set forth in the Segura Declaration, through October 10, 2023, the Claims Administrator, JND, received and processed 59,253 Claims. Segura Decl. ¶ 6. All Claims received through October 10, 2023, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and JND has worked with Claimants to help them perfect their Claims. *See id*. ¶¶ 18-29. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by the Claims Administrator. *Id*. ¶¶ 18, 21.

If JND determined a Claim to be defective or ineligible, JND sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 19, 21. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or JND would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 19, 22. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Segura Declaration.

Of the 59,253 Claims that are the subject of this motion, JND determined that 21,772 Claims are acceptable in whole or in part, and that 37,481 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Segura Decl. ¶¶ 39-42. Lead Plaintiffs respectfully request that the Court approve JND's administrative determinations accepting and rejecting Claims as set forth in the Segura Declaration.

-3-

## A.      Disputed Claim

JND carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 20, 27. Consistent with paragraph 24(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of JND's administrative determination of the Claim. *Id*. ¶¶ 19, 22, & Exhibits A & B.

With respect to the fully processed Claims, JND received seventeen (17) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, JND contacted the Claimants requesting Court review and attempted to answer all questions, to explain JND's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 31. As a result of these efforts, six (6) Claimants resolved their deficiencies and their Claims are recommended for approval, and ten (10) Claimants withdrew their request for Court review after receiving further explanation of the reasons for JND's determination. *Id*. Currently one (1) Claim remains disputed and is being submitted to the Court for resolution (the "Disputed Claim"). *Id*. ¶ 32.

Exhibit D of the Segura Declaration contains a copy of the Disputed Claim with its supporting documentation and sets forth the reasons for JND's rejection of the Disputed Claim. *Id*. For privacy reasons, the documents included in Exhibit D have been redacted to remove personal information such as names, street addresses, email addresses, telephone numbers, account numbers, Social Security Numbers, and all financial and transaction information not related to the Claimant's transactions in Mattel common stock. JND recommends that the Disputed Claim be rejected because the Disputing Claimant had no purchases or acquisitions of Mattel common stock during the Class Period and, thus is not a Class Member. All of the

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:19-cv-10860-MCS (PLAx))

Disputing Claimant's claimed purchases of Mattel common stock took place prior to the beginning of the Class Period. Lead Counsel has reviewed the Disputed Claim and JND's determinations and concurs that the Disputed Claim should be rejected for the reasons identified by JND and set forth in the Segura Declaration.

**B.      Late Claims and Final Cut-Off Date**

The 59,253 Claims received through October 10, 2023, include 713 Claims that were postmarked or received after June 8, 2022, the Court-approved Claim submission deadline. *Id*. ¶¶ 33, 41. Those late Claims have been fully processed, and 104 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 104 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. The processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 33. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 8; Notice ¶ 54. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any ***new*** late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim Amount) received after October 10, 2023, shall be barred (*see also* Segura Decl. ¶ 45(f)) – subject to the proviso that if Lead Counsel later determines that an additional distribution is not cost-effective (*see* Segura Decl. ¶ 45(e)), then any post-October 10, 2023 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining

administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

## III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, JND, was responsible for, among other things, disseminating notice of the Settlement to the Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Segura Decl. ¶ 2. JND's fees and expenses for its work performed through September 30, 2023, are $736,879.26, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $65,920.24, which together total $802,799.50. *See id*. ¶ 44. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. The brokerage firms and nominees charged JND another $114,169.22 for their work providing names and addresses to potential Class Members and forwarding notices to their clients. *Id*. To date, JND has received reimbursement in the amount of $635,546.00 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $281,422.52 payable to JND, which amount includes the estimated fees and expenses to be incurred by JND in connection with the Initial Distribution. *Id*. Lead Counsel has reviewed JND's invoices and agrees that the Court should approve JND's fees and expenses.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A. Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, JND will distribute 95% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:19-cv-10860-MCS (PLAx))

preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Segura Decl. ¶ 45(a). In the Initial Distribution, JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 45(a)(1).[3]

JND will first determine each Authorized Claimant's: (a) *pro rata* share of the Mattel Distribution Fund based on the amount of the Authorized Claimant's Mattel Recognized Claim in comparison to the total Mattel Recognized Claims of all Authorized Claimants; and (b) *pro rata* share of the PwC Distribution Fund based on the amount of the Authorized Claimant's PwC Recognized Claim in comparison to the total PwC Recognized Claims of all Authorized Claimants as stated in the Segura Declaration. *Id*. ¶ 45(a)(1). JND will eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* share of the Mattel Distribution Fund and PwC Distribution Fund calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Funds and will be so notified by JND. *Id*. ¶ 45(a)(2). JND will then recalculate the *pro rata* share of the Mattel Distribution Fund and PwC Distribution Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph (a)(1) above. *Id*. ¶ 45(a)(3). An Authorized Claimant's *pro rata* share of the Mattel Distribution Fund and *pro rata* share of the PwC Distribution Fund (as recalculated in the previous sentence) is the Authorized Claimant's Distribution Amount. *Id*.

---

[3] As provided in the Court-approved Plan of Allocation, the Net Settlement Fund is divided into two parts: (i) the "Mattel Distribution Fund" (consisting of $86 million, less the proportional amount of all Court-approved attorneys' fees, Litigation Expenses, Notice and Administration Costs, or other expenses), which will be allocated to claims arising from purchases or acquisitions during the entire Class Period; and (ii) the "PwC Distribution Fund" (consisting of $12 million, less the proportional amount of all Court-approved attorneys' fees, Litigation Expenses, Notice and Administration Costs, or other expenses), which will be allocated to claims arising from purchases or acquisitions claims during the PwC Subclass Period. *See* Notice App. A ¶ 7.

Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 45(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 45(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 45(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 45(b) of the Segura Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 45(c).

**B.  Additional Distribution(s) of the Net Settlement Fund**

After JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, JND will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id*. ¶ 45(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata*

-8-

shares of the funds remaining in the Mattel Distribution Fund and the PwC Distribution Fund. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*.

When Lead Counsel, in consultation with JND, determines that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after October 10, 2023, JND will process those Claims. *Id*. ¶ 45(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after October 10, 2023, may be paid in accordance with paragraph 45(f) of the Segura Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel proposes that such remaining funds (if there are any) be contributed to the Investor Protection Trust ("IPT") be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice App. A ¶ 20.

IPT is a non-sectarian, nonprofit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About the Investor Protection Trust*, Investor Protection Trust, https://iptrust.wpengine.com/about/ (last visited October 10, 2023), *Investor Protection Trust,* Charity Navigator, https://www.charitynavigator.org/ein/396570280 (last visited October 10, 2023). Founded in 1993, IPT's primary mission is "to provide the independent, objective investor education that Americans need to make informed investment decisions." *About the Investor Protection Trust*, Investor Protection Trust, https://iptrust.wpengine.com/about/ (last visited October 10, 2023). IPT's recently funded projects include radio-based and video ad-based investor protection awareness campaigns, the creation and distribution of a digital investor education awareness campaign, and a program to educate professional groups, military

organizations, law enforcement, and religion groups on resources for investor protection. *See Grants*, Investor Protection Trust, https://investorprotection.org/grants/ (last visited October 10, 2023). Federal courts have approved IPT as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g., In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) ("At such time as Lead Counsel, in consultation with the Claims Administrator, determines that no additional distributions are cost-effective, then the funds will be donated to Investor Protection Trust, a non-sectarian, not-for-profit organization."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) ("[T]he Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate cy pres beneficiary."), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *In re Illumina, Inc. Sec. Litig.*, Case No. 3:16-cv-3044, 2021 WL 1017295, at *9 (S.D. Cal. Mar. 17, 2021).

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 28. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims

against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

In the United States District Court for the Central District of California, similar releases in connection with the distribution of settlement proceeds have been repeatedly approved. *See, e.g., In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re OCZ Tech. Grp., Inc. Sec. Litig.*, 2016 WL 7974652, at *2 (N.D. Cal. Mar. 11, 2016) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: October 13, 2023        Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER  
  & GROSSMANN LLP**

/s/ *John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Lead Counsel for Lead Plaintiffs and the Class*

Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street
Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jake@blockleviton.com

*Additional Counsel for Additional Named
Plaintiff Houston Municipal Employees
Pension System*

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
CASE NO. 2:19-cv-10860-MCS (PLAx))